## MARINE OPEN CARGO POLICY

## PROCESSING LOCATION COVERAGE ENDORSEMENT

| ASSURED: | ZYGO CORPORATION | Policy Number POC102950 |
|---|---|---|

1. It is understood and agreed that, subject to all terms and conditions which do not conflict with the provisions set forth herein, this policy is extended to cover property consisting of:      **PROPERTY COVERED**

   A. Property insured under Section I which is the property of the Assured or the property of others from whom the Assured has written instructions to insure while temporarily stored at locations listed in the attached Schedule for the purpose of processing.

   B. Property other than that described above which is the property of the Assured and which is described in the attached Schedule while at any of the locations listed in the Schedule.

2. There is no coverage hereunder for:      **PROPERTY EXCLUDED**

   A. Property consisting of accounts, bills, bullion, currency, evidences of debt, money, notes or securities, jewelry or precious stones;

   B. Contraband or property in the course of illegal transportation or trade.

   C. Property which has been placed on sale by the Assured or by his agent as part of the Assured's or other importer's (in the case of import shipments where, prior to any known or reported loss, damage or accident, the Assured has received written instructions to insure for the account of others) stock in trade at a point of sale or distribution.

3. Coverage hereunder applies only while Property Insured is located at the approved locations shown in the attached Schedule and only for amounts not exceeding the limits shown opposite each location.      **APPROVED LOCATIONS & LIMITS**

4. Property insured under this Coverage Section is valued, premium included:      **VALUATION**

   A. Property Insured in transit to processing locations shall be valued at the amount of the invoice including all charges which form a part of the invoice price, or if no invoice at the Assured's cost, plus any incurred, prepaid and/or advance and/or guaranteed freight not included in the invoice.

   B. Property Insured while at processing locations shall be valued on the basis provided for in Clause A., plus all labor charges incurred at time of loss.

   C. Property Insured in transit from processing locations shall be valued on the basis provided in Clause A., plus all labor charges incurred, plus any incurred, prepaid and/or guaranteed and/or advanced freight not included in the invoice.

5. Property insured under this section is insured against all risks of direct physical loss or damage from any external cause except as excluded below and elsewhere in this policy.      **PERILS INSURED**

6. This insurance does not cover any loss, damage or expense caused by:      **EXCLUSIONS**

   A. The risks excluded by the F.C. & S., S.R. & C.C., Delay, Inherent Vice and Nuclear Exclusion warranties set forth in Section I of this policy;

   B. Loss of use or other consequential loss except as may be hereinafter provided in writing;

   C. Any unexplained disappearance or shortage found upon taking inventory or

**ZYGO-00024**

audit;

D. Infidelity or any dishonest act committed by the Assured, the Assured's employees or authorized representatives, or anyone to whom the Property Insured property may be entrusted (carriers for hire excepted).

E. Seizure or destruction by any governmental authority unless acting to prevent the spread of any fire which would otherwise be covered hereunder.

F. Wear and tear, inherent vice, latent defect, gradual deterioration, insects, vermin, or rodents.

G. Short circuit, blowout or other electrical damage or disturbance within the covered property. But any ensuing direct loss caused by a peril insured hereunder is covered.

H. Mechanical breakdown or machinery failure. But any ensuing direct loss caused by a peril insured hereunder is covered.

I. Faulty, inadequate or defective design, specifications, workmanship or materials.

J. Spoilage, contamination, leakage, breakage, marring, scratching, corrosion, rust, dampness or dryness, cold or heat.

K. Earthquake, landslide, earth movement, but direct loss caused by any ensuing fire or explosion is covered.

L. Volcanic eruption, explosion, but direct loss by ensuing fire is covered

M. Flood, surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether wind driven or not;

N. Mudslide or mudflow;

O. Water that backs up from any sewer or drain;

P. Any release of water impounded by a dam, but ensuing direct loss caused by fire or explosion is covered.

7. Each claim for loss or damage resulting from any one accident or occurrence shall be separately adjusted and the sum shown in the attached schedule shall be deducted from the amount of each separately adjusted claim. **DEDUCTIBLE**

8. It is a condition of this insurance that the Assured shall report to the Company within thirty (30) days after the end of each reporting period shown below the total value of all Insured Property at each location shown in the attached Schedule as of the last day of each month and shall pay premium thereon at the rates shown. The total values of the Insured Property shall be calculated in accordance with the Valuation Clause of this coverage section. **REPORTS & PREMIUM**

Reports to be made: Annually

If a deposit premium for this coverage section is shown elsewhere in this policy, all earned premium hereunder shall be applied against such deposit until such time as it is fully earned. Once the deposit premium is fully earned, any additional earned premium shall become due and payable as of the date the values are reported to the Company.

At the time of any loss, if the Assured has failed to file with the Company reports of values as above required, this Extension of Coverage, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values filed prior to the loss, and further, if such delinquent report is the first report of values herein required to be filed, liability shall be limited to 90% of the amount for which the Company would otherwise be liable.

9. Notwithstanding the foregoing, it is agreed that if the total value at risk exceeds any **FULL VALUE**

ZYGO-00025

|   |   |
|---|---|
| limit of liability expressed above, the Assured will report the full amount at risk to the company and shall pay full premium thereon. | REPORTING |
| Acceptance of such report and premium by the Company shall not alter or increase the limit of liability of the Company, but the Company shall be liable for the full amount of covered loss up to but not exceeding the applicable limit of liability. It is further agreed that payment by the Company of any covered loss shall not serve to reduce the limit(s) of liability shown herein. | |
| 10. It is a condition of this insurance that upon payment of any loss the Company shall be subrogated to all rights and claim against third parties arising out of such loss. It is a further condition of this insurance that the Company shall not be bound to pay any loss if, by agreement or act of the Assured or by his or their assigns, the right of recovery of the Assured for loss of or damage to the Property Insured, against any carrier, bailee, or third party has been impaired, released or lost. | SUBROGATION & IMPAIRMENT OF RECOVERY |
| 11. It is expressly agreed that the insurance under this coverage section shall not cover to the extent of any other valid and collectible insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property, and this Company shall be liable for loss or damage only for the excess beyond the amount of such other insurance, provided such loss or damage would otherwise be recoverable hereunder. | OTHER INSURANCE |
| 12. It is hereby understood and agreed that in the event the policy to which this coverage section is attached is canceled, coverage under this coverage section is automatically terminated as of the date of cancellation. | TERMINATION |

ROYAL & SUNALLIANCE

_____
AUTHORIZED REPRESENTATIVE

ZYGO-00026

| | | |
|---|---|---|
| Assured   ZYGO CORPORATION | | Policy Number: POC102950 |
| Effective   5/1/1999 | | |

## SCHEDULE OF APPROVED PROCESSING LOCATIONS

| | LOCATION | DEDUCTIBLE | RATE | LIMIT |
|---|---|---|---|---|
| 1. | Zygo Corporation<br>Laurel Brook Road<br>Middlefield, CT 06455 | N/A | Included | * |
| 2. | Zygo Advanced Imaging Systems<br>650 North Mary Avenue<br>Sunnyvale, CA 94086 | N/A | Included | * |
| 3. | Zygo Automation Systems<br>2505-A Trade Centre Avenue<br>Longmont, CO 80503 | N/A | Included | * |
| 4. | Zygo Vision Systems<br>2193-B Anchor Court<br>Newbury Park, CA 81320 | N/A | Included | * |

\* Four locations as listed above have a blanket limit of $2,500,000.

Warranted the Assured report to this company any processing locations used of $500,000 and above that are not already listed in the Schedule of approved locations.

It is understood and agreed that a $10,000. deductible shall apply on all claims for Flood and Quake.

ROYAL & SUNALLIANCE

_Allen P. K._

AUTHORIZED REPRESENTATIVE

ZYGO-00027

## SCHEDULE OF RATES

POLICY NO:     POC102950

ASSURED:     ZYGO CORPORATION

1.  Applying to under deck shipments of Property Insured made on and after: 5/1/1999.
2.  By:
    A.  Vessels that are
        (1) metal-hulled, self propelled vessels which are not over 20 years of age nor less than 1000 net registered tons and which are classed A1 American Record or equivalent by a member of the International Association of Classification Societies; or
        (2) vessels over 20 years of age which are approved by this Company, and which are not less than 1000 net registered tons and classed as in (1) above, but only while operating in their regular trades;
        but in either case excluding vessels built:
        (A) for service on the Great Lakes;
        (B) solely for military or naval service; or
        (C) for the carriage of dry bulk or liquid bulk cargoes, and which are more than 15 years of age, unless specifically approved by this Company.
    B.  Aircraft of Regularly Scheduled, Certificate Commercial Air Carriers;
    D.  Truck.
    E.  Rail.
3.  RATES PER $100 On:

| New electro-optical measuring cumponents, parts and related equipment in approved export packing<br>To/From: Places in World<br>To/From: Places in World | Vessel | Air | Truck | Rail |
|---|---|---|---|---|
|  | .023 | .023 | NA | NA |

4.  Duty, if covered, at: one-third of the above marine rates.
5.  On-Deck shipments at rates to be agreed.
6.  Minimum $ 10.00 per any one Declaration.
7.  Minimum $ 10.00 per any one Certificate.
8.  Marine rates are subject to change on thirty (30) days notice.
9.  Risks of War and Strikes, Riots and Civil Commotions, if covered, at the rates current on date of shipment.
10. Domestic Transit, if covered, at rate(s) shown in Section II, Clause 9.B.
11. Warehouse Storage, if covered, at rates specified in Section III, Schedule of Approved Locations.
12. Processing, if covered, at rates specified in the Schedule of Approved Processing Locations.
13. Other property, vessels or voyages not provided for herein, at rates to be agreed.

(Above rate inclusive of Marine and War except to areas "on application")

ROYAL & SUNALLIANCE

_____
AUTHORIZED REPRESENTATIVE

**ZYGO-00028**

In witness whereof, this Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned below by a duly authorized representative of this Company.

*Joyce W. Wheeler*
Corporate Secretary

*Terry Broderick*
President

ROYAL & SUNALLIANCE

Countersigned By: _____
AUTHORIZED REPRESENTATIVE
Authorized Representative

ZYGO-00029

| Endorsement No. 1 | To be attached to and made part of Policy No. POC102950 |
|---|---|
| Assured      ZYGO CORPORATION | |
| Effective    5/1/1999 | |

### S.R. & C.C. ENDORSEMENT
(American Institute December 2, 1993)

THIS INSURANCE ALSO COVERS:

(1) Physical loss of or damage to the property insured directly caused by strikers, locked-out workmen, or persons taking part in labor disturbances or riots or civil commotions; and

(2) Physical loss of or damage to the property insured directly caused by vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional; PROVIDED that any claim to be recoverable under this subsection (2) be not excluded by the FC&S warranty in the policy to which this endorsement is attached.

While the property insured is at risk under the terms and conditions of this Insurance within the United States of America, the Commonwealth of Puerto Rico, the Virgin Islands and Canada, this insurance is extended to cover physical loss of or damage to the property insured directly caused by acts committed by an agent of any government, party or faction engaged in war, hostilities or other warlike operations, provided such agent is acting secretly and not in connection with any operation of military or naval armed forces in the country where the described property is situated.

Nothing in this endorsement shall be construed to include or cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:

a. change in temperature or humidity;

b. the absence, shortage, or withholding of power, fuel, or labor of any description whatsoever during any strike, lockout, labor disturbance, riot or civil commotion;

c. loss of market or loss, damage or deterioration arising from delay;

d. hostilities, warlike operations, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, except to the limited extent that the acts of certain agents acting secretly have been expressly covered above;

e. nuclear reaction, radiation or radioactive contamination.

The Assured agrees to report all shipments attaching under this cover and to pay premiums therefor at the rates established by the Company from time to time.

This endorsement may be canceled by either party upon forty-eight hours written, telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any risks which have already attached hereunder.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

_____
AUTHORIZED REPRESENTATIVE
Authorized Representative

ZYGO-00030

| Endorsement No. 2 | To be attached to and made part of Policy No. POC102950 |
|---|---|

| Assured | ZYGO CORPORATION |
|---|---|

| Effective | 5/1/1999 |
|---|---|

### DUTY

This insurance also covers, subject to policy terms of average, the risk of partial loss by reason of perils insured against on the duties imposed on goods imported into the United States and insured hereunder, it being understood and agreed, however, that when the risk upon the goods continues beyond the time of landing from the overseas vessel, the increased value, consequent upon the payment of such duties, shall attach as an additional insurance upon the goods from the time such duty is paid or becomes due, to the extent of the amounts thereof actually paid or payable.

Any limit of liability expressed in this policy shall be applied separately to such increased value.

The Assured warrants that on all risks insured hereunder a separate amount shall be reported sufficient to cover the said duty, upon which the rate of premium shall be an agreed percentage of the merchandise rate.

The Assured will, in all cases, use reasonable efforts to obtain abatement or refund of duties paid or claimed in respect of goods lost, damage or destroyed. The Assured consents to permit the company or its representatives at the company's expense to file any claims in the name of the Assured with U.S. Customs which the company deems necessary for the recovery of duties reimbursed by the Company to the Assured. All recoveries based on such claims shall accrue to the benefit of the Company and shall be remitted to the company promptly upon receipt from Customs by the Assured. It is further agreed that the Assured shall, when the company so elects, surrender the merchandise to the customs authorities and recover duties thereon as provided by law, in which event the claim under this policy shall be only for a total loss of the merchandise so surrendered and expenses.

This insurance on duty and/or increased value shall terminate at the end of the import movement covered under this policy (including the Warehouse to Warehouse and/or Marine Extension Clauses incorporated therein), but nothing contained in these clauses shall alter or affect any coverage granted elsewhere in the policy during the storage or transit subsequent thereto.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

_____
Authorized Representative

ZYGO-00031

| Endorsement No. 3 | To be attached to and made part of Policy No. POC102950 |
|---|---|
| Assured    ZYGO CORPORATION | |
| Effective   5/1/1999 | |

## ANNUAL MARINE DEPOSIT PREMIUM

Effective May 1, 1999 an annual deposit premium of **$18,000**. Shall be payable for the period May 1, 1999 through May 1, 2000 and annually thereafter on the anniversary date. This annual deposit premium is payable in quarterly installments.

The Assured agrees to furnish this Assurer (within 30 days of the anniversary) with reports of gross sales for the policy year and the Assurer to calculate premium thereon at .023 per $100 of total gross sales. (Marine and War) Earned premium in excess of the deposit shall be due and payable to this Assurer immediately.

In the event of cancellation, the Assurer will report all gross sales up to and including the date of cancellation and pay additional premium as may be required.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

_____
Authorized Representative

| Endorsement No. 4 | To be attached to and made part of Policy No. POC102950 |
|---|---|

Assured     ZYGO CORPORATION

Effective    5/1/1999

## PROFIT SHARING AGREEMENT

It is understood and agreed effective May 1, 1999, and annually thereafter the Assured shall participate in profits, if any, if the gross marine premium exceeds $25,000. for each period and on the following basis:

1) Gross marine premium (excluding War & S.R. & C.C. and Warehouse premium) recorded by underwriters for the period under consideration.

2) Less 50% of the gross marine premium (for insurance company expenses) and,

3) Less all paid and outstanding losses recorded by the company in the period under consideration (such losses to be reduced by the amount of recoveries made, if any).

4) The balance remaining after No. 3 above is deemed to be the profit for the purpose of this agreement. The Assured shall participate in the profit 50/50 with the Assurance.

5) At the end of six months following the end of each profit sharing period a provisional adjustment amounting to one half of the Assured's estimated profit share (if any) shall be paid by these Assurers, with a subsequent final adjustment for the balance of the Assured's profit share shall be made twelve months after the end of each profit sharing period.

6) In the event of cancellation by the Assured, there shall be no profit sharing adjustment for the year in which the cancellation became effective; however, if the policy is cancelled by underwriters, then a profit sharing adjustment will be made up to the date of cancellation. No profit sharing adjustments shall be made for periods less than eight months.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

Authorized Representative

ZYGO-00033

| Endorsement No. 5 | To be attached to and made part of Policy No. POC102950 |
|---|---|
| Assured ZYGO CORPORATION | |
| Effective 5/1/1999 | |

## SPECIAL TERMS AND CONDITIONS

**DEMURRAGE CHARGES**

If the Assured is instructed by this Company to hold an intermodal container, and if the Assured is assessed a late penalty and/or demurrage charge for holding the intermodal container past the return date, this Company will pay the late penalties and/or demurrage charges. The amount this Company will pay shall be the charges assessed from the time this Company directs the Assured to hold the container until the time this Company informs the Assured that the container can be released.

**REPLACEMENT BY AIR**

It is agreed that where there is physical loss or damage which is the subject of a claim hereunder and it is necessary to forward replacements by air, Underwriters will pay the extra costs so involved, notwithstanding that the original consignment was not dispatched by air. Subject always to final settlement of claim for cargo and for costs not exceeding 10% of insured value.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

_____
Authorized Representative

ZYGO-00034

| Endorsement No. 6 | To be attached to and made part of Policy No. POC102950 |
|---|---|
| Assured    ZYGO CORPORATION | |
| Effective    5/1/1999 | |

## SALESPERSON'S SAMPLES

**PROPERTY COVERED**
Merchandise consisting principally of Salesperson's Samples in custody or control of the principals of the Insured when acting as salespeople, employees, or their traveling salespeople.

**AMOUNT INSURED AND LIMIT OF LIABILITY**
The amount insured hereunder is $300,000. With respect to samples in custody or control of any one salesperson, or employee.

**THIS SECTION INSURES AGAINST**
All risk of physical loss or damage from any external cause, except as hereinafter excluded.

**THIS SECTION DOES NOT INSURE AGAINST**
    (a)    Property while in private passenger automobiles is warranted free from claim for theft from an unattended vehicle if property is not in a completely locked compartment and out of sight and that must be the result of forcible entry;

    (b)    Loss or damage caused by wear and tear, gradual deterioration, insects, vermin or inherent vise, delay, loss of use or loss of market;

    (c)    Loss or damage caused by or arising from dishonesty of salespersons, their employees, or Insured's employees, or persons to whom the property may be entrusted;

    (d)    Loss or damage caused by or resulting from the perils of the War Risk exclusion as defined in the policy to which this section is attached;

**THIS SECTION DOES NOT COVER**
    (a)    Within the places of business of the Insured, or where their salespeople or employees have permanent salesrooms or permanent offices;

    (b)    Furs, or articles consisting principally of fur;

    (c)    Pearls, precious and semi precious stones, jewels, jewelry, watches, watch movements, gold, silver, platinum other precious metals or alloys thereof.

**VALUATION AND DEDUCTIBLE**
Valued per the Valuation Clause #13 in the Marine Section of this policy.

All other terms and conditions remaining unchanged.

                                                                                      ROYAL & SUNALLIANCE
                                                                                      AUTHORIZED REPRESENTATIVE
                                                                                      Authorized Representative

ZYGO-00035

890378

**WAR RISK OPEN POLICY**
American Institute (December 2, 1993)

Royal Insurance Company of America

EXECUTIVE OFFICES:
9300 Arrowpoint Blvd.
Charlotte, NC 28201

**MARINE DEPARTMENT**
Hereinafter Called the Company

Policy Number
POCW102950

THIS POLICY OF INSURANCE WITNESSETH, that in consideration of premiums as agreed to be paid, the Company does make insurance and cause ZYGO CORPORATION to be insured, lost or not lost, for account of whom it may concern, against War Risks only, in accordance with the terms and conditions hereinafter set forth.

To apply to shipments made on or after May 1, 1999.

The Company shall not be liable hereunder for more than $2,500,000 by any one vessel.

In cases where the total value(s) at risk on any one vessel exceed(s) the limit of liability as set forth in this Policy, the Assured agrees, nevertheless, to report to the Company full value(s) at risk and to pay premium thereon at the agreed rates. The Assured further agrees that acceptance of such reports and premium by the Company shall not serve to revoke or to overrule the limit of liability set forth in this Policy; however, subject to the limit of liability, the Company in accepting these reports does agree to pay partial losses covered by this Policy without reduction by reason of any coinsurance which otherwise may have existed in the absence of this special agreement.

Subject to the provisions of Clause 4 of this Policy, should there be an accumulation of interests exceeding the above limit of liability by reason of any interruption of transit beyond the control of the Assured or by reason of any casualty, and/or after the interests have been discharged from the incoming overseas Vessel at an intermediate port or place for on-carriage from that or any other port of place by another overseas Vessel, and/or on the oncarrying overseas Vessel, this Policy shall attach for the full amount at risk (but in no event for more than twice the Policy limit which would be applicable to any one Vessel) provided written notice be given to the Company as soon as known to the Assured.

This Policy shall cover only those shipments which are insured against marine risks under Policy No. POC102950 of this Company, it being agreed that the description of such shipments, the valuations thereof, the voyage, the designation of the overseas Vessel (which shall be construed to include aircraft if included under the marine policy) on which the goods are to be carried and the ports and/or places of loading and discharge, as reported under said Policy against marine risks, shall be deemed incorporated herein. Notwithstanding the foregoing, this policy shall not cover purely domestic shipments by air between points in the United States of America (excluding Alaska and Hawaii).

Any loss payable hereunder shall be payable in funds current in the United States to the order of Assured or order thirty days after full proofs of loss and proofs of interest have been filed with the Company.

1. (a) This insurance is only against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea, arrests, restraints, detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom; the imposition of martial law, military or usurped power, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes. Warranted not to abandon (on any ground other than physical damage to ship or cargo) until after condemnation of the property insured.

   (b) This insurance also covers, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under this Policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

2. Warranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments.

ZYGO-00036

3. This insurance does not cover any loss, damage or expense directly or indirectly arising from, contributed to, or caused by any of the following causes:

   (a) Commandeering, preemption, requisition or nationalization by the government (defacto or otherwise) of the country to or from which the goods are insured.

   (b) Seizure or destruction under quarantine, environmental or customs regulations.

   (c) Delay, deterioration and/or loss of market.

   (d) Nuclear Reaction, radiation or radioactive contamination, regardless of how it was caused.

4. (a) The insurance against the risks enumerated in Clause 1, except the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged referred to in (b) below, shall not attach to the interest hereby insured or to any part thereof.

   (i) prior to being on board an overseas Vessel (For the purpose of this Clause 4 an overseas Vessel shall be deemed to mean a Vessel carrying the interest from one port or place to another where such voyage involves a sea passage by that Vessel).

   (ii) after being discharged overside from an overseas Vessel at the intended port or place of discharge, or after the expiry of 15 days from midnight of the day of arrival of the overseas Vessel at the intended port of place of discharge, whichever shall first occur.

   (iii) after expiry of 15 days from midnight of the day of arrival of the overseas Vessel at an intermediate port or place to discharge the interest for on-carriage from that or any other port or place by another overseas Vessel, but shall reattach as the interest is loaded on the on-carrying overseas Vessel. During the said period of 15 days the insurance remains in force whether the interest is awaiting transit or in transit between the overseas Vessels.

   (iv) for the purposes of the Clause 4 arrival at the intended port or place of discharge shall be deemed to mean that time when the overseas Vessel first berths, anchors, moors or is secured in an area subject to regulation by the authorities of such port or place.

   (b) The insurance against the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged, attaches as the interest hereby insured is first loaded on a lighter, craft or vessel after leaving the warehouses at point of shipment in transit for the destination declared hereunder, and ceases to attach as the interest is finally landed from the vessel, craft or lighter prior to delivery to warehouse at such destination.

   (c) If the contract of affreightment is terminated at a port or place other than the destination named therein such port or place shall be deemed the intended port or place of discharge for the purpose of this Clause 4.

   (d) Shipments by mail, if covered by this Policy, are insured continuously from the time of leaving the sender's premises until delivered to the place of address.

   (e) Shipments by air (other than by air mail), if covered by this Policy are insured subject to the same terms and conditions as shipments by overseas Vessel.

   (f) It is a condition of this insurance that the Assured shall act with reasonable dispatch in all circumstances within their control.

   (g) If anything contained in the Policy shall be inconsistent with this Clause 4 it shall to the extent of such inconsistency be null and void.

5. This insurance shall not be vitiated by deviation, overcarriage, change of voyage, or by any error or unintentional omission in the description of interest, vessel or voyage, provided the same be communicated to the Company as soon as known to the Assured and an additional premium paid if required.

6. And in case of any loss or misfortune, it shall be lawful and necessary to and for the Assured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said goods, and merchandises, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or Company, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of an abandonment; and to the charges whereof, the said Company will contribute according to the rate and quantity of the sum hereby insured.

7. General Average and Salvage Charges payable according to United States laws and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

8. It is agreed that the reports of shipments made under the policy against marine risks mentioned above shall be deemed to be reports under this Policy also, and the Assured agrees to pay premiums on all shipments insured under the Policy at the war risk rates of the Company as fixed from time to time.

9. No claim shall be payable hereunder which arises from collision, contact with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather or fire unless caused directly (and independently of the nature of the voyage or service which the Vessel concerned or, in the case of a collision, any other Vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purpose of this paragraph "power" includes any authority maintaining naval, military or air forces in association with a power.

10. No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value if the expenditure had been incurred.

11. It is agreed that this Policy is a separate and wholly independent contract and is not subject to any terms or conditions of the Policy against marine risks above mentioned (whether physically attached thereto or not) except as such terms or conditions shall have been expressly incorporated herein by reference.

12. This insurance may be canceled by either party upon forty-eight hours written, telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any shipment on which this insurance has attached under the terms of Clause 4 hereof prior to the effective date of such notice. Shipments on which this insurance has not so attached but for which, prior to the effective date of such notice, bills of lading have been issued and (in the case of exports) Certificates or special policies have been issued and negotiated, shall be covered from the time of loading on the overseas Vessel, as provided in Clause 4 at the rates of the Company, provided that, prior to said effective date, such shipments were at the risk of the Assured and were covered under the said Policy against marine risks.

In the event of loss which may give rise to a claim under the Policy, prompt notice shall be given to this Company.

ROYAL & SUNALLIANCE

_____
Authorized Representative

ZYGO-00038

ZYGO-00039

| Endorsement No. 1 | To be attached to and made part of Policy No. POCW102950 |
|---|---|

| Assured | ZYGO CORPORATION |
|---|---|

| Effective | 5/1/1999 |
|---|---|

## ANNUAL WAR RISK DEPOSIT PREMIUM

In consideration of the issuance of this War Risk Policy, a War Risk deposit premium of $2,000 shall be payable on the effective date of the policy and annually thereafter on the anniversary date.

The Assured agrees to furnish the Company with reports of shipments Annually as otherwise provided in this War Risk Policy and the Company to calculate premium thereon at rates current as of sailing date.

When the premium so earned exceeds the deposit premium charged, the additional premium shall be immediately due and payable to this Company.

In the event of cancellation, the Assured will report all shipments at risk up until and including the date of cancellation and pay additional premiums as may be required. In no event shall the earned premium be less than the amount shown above.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

Authorized Representative

ZYGO-00039

In witness whereof, this Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned below by a duly authorized representative of this Company.

*Joyce W. Wheeler*
Corporate Secretary

*Terry Broderick*
President

ROYAL & SUNALLIANCE

Countersigned By: _____
AUTHORIZED REPRESENTATIVE

ZYGO-00040

## OCEAN CARGO CLAIMS PROCEDURES

If you or your customer receive a shipment with loss or damage, it must be reported immediately. You must report an import loss to *Royal* as soon as the loss is known to you so proper claim investigation can begin. Your *export customer* must report any loss to the nearest claim settling facility as shown on the reverse side of the insurance certificate. If there is no local facility or agent, the claim must be reported to the nearest correspondent of the *American Institute of Marine Underwriters* or *Lloyd's Agent*.

In case of loss or damage the following actions *must be taken* to protect your claim.

- File a claim in writing with the carriers, port authority or other responsible party (ies) immediately. In the case of damage or loss on air shipments, written notice of loss must be filed within *seven (7) days*.

- Take proper *exceptions* on the *delivery receipt* when loss or damage is apparent at time of delivery.

- In the case of containered shipments, examine the container at the time of delivery. If the container appears to be damaged, or has holes, broken seals, or seals with different identification numbers from those which appear on the shipping documents, note the carrier's shipping documents accordingly.

    *Note: In all circumstances, the number of the container seal should be noted on the carrier's delivery receipt.*

Complete documentation must be gathered and submitted at the time the claim is to be considered. Required documents include, but are not limited to, the following.

- A copy of the *ocean bill of lading or air way bill* (house and master) covering the total shipment insured, as well as any applicable inland way bills of freight bills.

- A copy of the *commercial invoice(s)* covering the entire insured shipment.

- A copy of the *packing list* (if any).

- A copy of the *Duty Consumption entry*, if duty is insured. A *Refund of Duty Form 5931* may be required for losses involving non-delivery.

- In non-delivery cases, *confirmation of non-delivery* from the carrier, or a letter from the carrier stating that it has been unable to confirm delivery.

- Copies of *written claims* against all carriers, with responses if available.

- Copies of *written exceptions* taken at the time of delivery of the insured goods. Exceptions might consist of delivery receipts, customs examinations or other governmental documents.

- Written *statement of claim*.

- Bills for repair costs, reconditioning charges or other charges to be considered as part of the claim.

- On household goods and personal effects claims, a *valued inventory* is required to establish the dollar value of items shipped.

- The original and duplicate of the *insurance certificate*.

ZYGO-00041

89037B

## GENERAL AVERAGE

If a General Average is declared, delivery of cargo by the vessel is predicated on the cargo owner posting some form of security as evidence that the cargo owner's share of the ultimate G.A. assessment will be paid. The following will be required when a General Average is declared:

- Signature of the cargo owner to an *average agreement* or *bond.*

- Copy of the *original suppliers invoice.*

- The unlimited *General Average Guarantee* of the insurance company or a cash deposit equal to a stated percentage of the value of the shipment.

If time permits, the insurance company should be notified in order for it to supply a General Average Guarantee which will preclude the Assured from having to post the cash deposit. If it is necessary for the cash deposit to be paid, the amount thereof will (if the shipment is fully insured) be recoverable under the cargo policy upon presentation of the original *General Average Deposit receipt.*

In the case of tradable commodities which are subject to market fluctuation, the cargo owner may be required to complete a *Statement of Value* evidencing the net value of the shipment at time of discharge from the vessel.

ZYGO-00042