UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

2002 AUG 19 P 4: 46

DISTRICT
NEW HAVEN, C...

| | |
|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>ZYGO CORPORATION,<br>Defendant.<br><br>ROYAL INSURANCE COMPANY OF AMERICA,<br>Third Party Plaintiff<br><br>v.<br><br>NAN YA TECHNOLOGY CORP.,<br>Third Party Defendant | Civil No. 3:01 CV 1317 (GLG)<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>August 15, 2002 |

## AFFIDAVIT OF LAWRENCE C. MARTIN

COUNTY OF MIDDLESEX )
                     : ss. Middlefield
TOWN OF MIDDLEFIELD )

I, Lawrence C. Martin, being duly sworn depose and say:

1. I am over the age of 18 and understand the obligations of an oath.

2. I am currently and have at all pertinent times been employed by Zygo Corporation ("Zygo") as Staff Assistant to the President. In that capacity, I have primary responsibility with respect to the dispute with Nan Ya relating to the three subject Atom Force Microscopes.

3. In or about December 1999, Zygo contracted with Nan Ya Technology Corporation ("Nan Ya") for the sale of an Atom Force Microscope ("the First AFM"). See Order Confirmation dated 01/05/00, Exhibit "1." The total purchase price of the first AFM was

$690,000. Id. The terms of sale were FOB Delray Beach, Florida, with an 80% payment due prior to shipment, by letter of credit, and the remaining 20% payment due when Nan Ya accepted the shipment in Taiwan. Id.

4. In or about January 2000, Nan Ya advised Zygo that the first AFM had arrived seriously damaged. Nan Ya refused to pay Zygo the remaining amount due on the First AFM.

5. Nan Ya insisted that Zygo ship a replacement AFM ("the Second AFM") immediately, because Nan Ya was in the middle of a project for which the AFM was urgently needed.

6. On or about January 31, 2000, Nan Ya provided a purchase order in the amount of $690,000 for the Second AFM. See Order Confirmation dated 01/31/00, Exhibit "2."

7. In or about early February 2000, Zygo shipped the Second AFM to Nan Ya. Due to Nan Ya's urgent need for the Second AFM, Zygo did not require Nan Ya to post a letter of credit before shipping the Second AFM. Rather, Zygo shipped the Second AFM on an open account basis, FOB US Airport.

8. In or about mid-February 2000, Nan Ya advised Zygo that the second AFM had arrived in a damaged and unusable condition, and refused to pay Zygo for the second AFM. Nan Ya also demanded that Zygo ship a third AFM.

9. Accordingly, in late February 2000, Zygo shipped a third AFM (the "Loaner AFM") to Nan Ya on a loaner basis until June 30, 2000. See Loan Contact, Exhibit "3."

10. Immediately following shipment of the Loaner AFM, Zygo commenced efforts to collect from Nan Ya the amounts due to it for the First and Second AFMs (collectively the "Damaged AFMs"). These efforts occurred via email, telephone and mail.

11. Despite repeated attempts to collect the amount due on the Damaged AFMs, Nan Ya steadfastly refused to make payment. Accordingly, on or about March 7, 2000, Zygo, through its insurance broker and agent, Mathog & Moniello ("M&M"), put its insurer, Royal Insurance Company of America ("Royal") on notice of its claim regarding the Second AFM.

12. After putting Royal on notice of its claim regarding the second AFM, Zygo continued its efforts to collect from Nan Ya the amounts due on the Damaged AFMs.

13. Nan Ya refused to return the Loaner AFM to Zygo on June 30, 2000 as previously agreed. Nan Ya continued to essentially hold the Loaner AFM hostage during the summer and early fall of 2000, during which Zygo continued to attempt to collect payment on the Damaged AFMs, as well as to secure the return of the Loaner AFM.

14. Nan Ya's refusal to return the Loaner AFM on June 30, 2000 created an additional financial hardship for Zygo, because Zygo had another customer that wanted to rent that AFM for more than $13,000 a month. I believed that Nan Ya was holding the Loaner AFM hostage to attempt to secure a favorable deal from Zygo.

15. In light of Nan Ya's refusal to pay for the First AFM, the Second AFM, or to return the Loaner AFM, Zygo continued its collection efforts and also pursued collecting for the Second AFM from its own insurer, Royal. Zygo's insurance policy included a "contingency clause" that provided that Royal would reimburse Zygo if a customer refused to pay. Under these circumstances, Royal also would cover collection costs of recouping the amounts due. See Insurance Policy, Exhibit "4."

16. Accordingly, Zygo expected that its insurer would pay the amount that its customer (Nan Ya) was refusing to pay, and take the steps necessary to collect that debt. That is my understanding of the clear purpose of the policy's "contingency clause."

17. It was always Zygo's position that Nan Ya was responsible for the full payment of both Damaged AFMs. The sales contracts were FOB United States airports and Nan Ya clearly had the risk of loss.

18. My communications with Zygo's employee, Mr. Timothy Smith, employees of Lee Tech, and Zygo's insurer, Royal consistently demonstrated Zygo's position that Nan Ya was fully responsible for the cost of both Damaged AFMs. For example, in my July 4, 2000 email, I stated that Nan Ya must pay for the Second AFM. See Exhibit "5." That position was reiterated in my July 10, 2000 letter. See Exhibit "6."

19. I took the necessary steps to determine the salvage value of the two Damaged AFMs in order to fix the amount that was due and owing from Nan Ya.

20. In the continuing discussions with Nan Ya, I approved the concept that the average amount of the salvage value of both of the Damaged AFMs would be deducted from the amounts that were due from Nan Ya. After making a claim with our insurance company, I understood that the disposition of the Second AFM was no longer in Zygo's control. For example, on September 21, 2000 I indicated to Mr. Wu of Lee Tech that I understood that with regard to the First AFM Nan Ya agreed to pay the outstanding 20%, and that the disposition of the Second AFM was with our insurance company. See Exhibit "7."

21. In my September 21, 2000 letter to Mr. Wu I also indicated that Zygo had a willing customer and did not understand why Nan Ya would not return the Loaner AFM. See Exhibit "8."

22. Further on October 3, 6, 16 and 25, 2000 I sent additional communications that further demonstrates my understanding that the disposition of the Second AFM was in the hands of Zygo's insurer. See Exhibits "9," "10," "11" and "12," respectively. In my October 16, 2000

4

email to Mr. Wu I stated: "I guess I don't understand why they are insisting on keeping the [Loaner] machine other than to hold Zygo hostage to insure agreement. I hope that is not the case. I have a customer for this machine and not having it is costing me money." Exhibit "11."

23. On or about October 27, 2000 I again sent a letter to Mr. Wu indicating that Zygo filed an insurance claim for the Second AFM, "and this claim is in their hands." See Exhibit "13." Moreover, I agreed that Zygo would "agree to accept the salvage value of both machines and the average salvage value will apply equally to both machines." Id. The only reason to apply a salvage value to the Second AFM was because Nan Ya still owed Zygo for that purchase. There would be no reason to apply a salvage value to the Second AFM if Zygo intended to release Nan Ya from its liability to pay for it. Apparently, this letter was conveyed to Nan Ya's representative. See Graves Declaration, Exhibit "40."

24. I understand that in November 2000, after the salvage value of the two Damaged AFMs was determined, a meeting was held among representatives of Nan Ya, Nan Ya's insurer, and Zygo. Timothy Smith was Zygo's representative at that meeting. For the purposes of this meeting, Mr. Smith reported to me and I authorized Tim Smith to offset the amount that Nan Ya owed on the First AFM by the average salvage value of the two Damaged AFMs. I did not authorize Mr. Smith to compromise Zygo's claim for the amount due on the Second AFM.

25. I received reports that at the November meeting Nan Ya agreed to pay the balance due on the First AFM with a deduction for the average salvage value of the two Damaged AFMs. I was asked to write a letter confirming Zygo's agreement. Accordingly, On November 15, 2000 I sent a letter to Nan Ya confirming that Zygo agreed to offset the balance due on the First AFM by $28,925 provided that payment would be made by December 21, 2000. See Exhibit "14." I also understood that Nan Ya agreed to return the two Damaged AFMs and Loaner AFM. I

5

understood that this was the complete terms of any agreement between Nan Ya and Zygo, and that such an agreement was consistent with Zygo's position and the authority given to Mr. Smith.

26. I was never informed by Mr. Smith, or anyone else, that there was any agreement to release Nan Ya from liability for the Second AFM, or to in any way change the terms of the deal such that Nan Ya did not have to pay for the Second AFM. Indeed, any such agreement would have been beyond the scope of the authority given to Mr. Smith.

27. I understand that in this litigation Nan Ya is taking the position that at the November meeting there was a written agreement to the effect that Nan Ya was released from liability for payment for the Second AFM. I further understand that Nan Ya has produced a document, written in Chinese, and a translation that purports to be notes from the November meeting. I had never seen the document or was aware of its existence until it was produced in this litigation. The contents of that document were never approved by any Zygo representative with authority to compromise Zygo's claim for the Second AFM.

28. I have been shown a document that Nan Ya has submitted as a translation of the meeting notes. With regard to point four, Nan Ya did agree to return the Second AFM, and Zygo did not insist on payment at the same time from Nan Ya because the matter was in the hands of Zygo's insurer. There was no commercial reason that Zygo would accept the return of the Second AFM worth less than $30,000 in exchange for forgiving its approximately $650,000 claim against Nan Ya and the return of the Loaner AFM that Nan Ya had no right to retain.

29. In sum, I was asked to provide written confirmation of Zygo's agreement to the offset of $28,925 on the amount due on First AFM, and I did so. I was never asked to provide

6

any written confirmation of a purported deal that Nan Ya now claims in this litigation extinguished a debt in excess of $650,000.

*Lawrence C. Martin*
Lawrence C. Martin

Subscribed and sworn to before me this 15th day of August, 2002.

_____
Notary Public/Commissioner of the Superior Court

\15160\1\36470.3

# Martin Affidavit
# TAB 1

JAN 13 '00 05:57PM   From: Lee-Tech                                   P.3

ATN: Mr. Brian Monk?
**NAN YA TECHNOLOGY CORPORATION**
201 TUNG HWA N. ROAD, TAIPEI, TAIWAN, R.O.C

TEL: 886-2-27122211
FAX: 886-2-27178459
TELEX: 11246, 22260 TAIPEI
CABLE: "PLASTICORP" TAIPEI
PAGE: 1 OF 1
DATE: JAN. 05, 2000

# ORDER CONFIRMATION

ORDER NO: C 4C Q8001 00
TO Messrs:
ZYGO CORPORATION
P.O. BOX 448 MIDDLEFIELD,
CONNECTICUT 06455-0448 U.S.A.     FAX: 002-1-860-3478372

We, NAN YA TECHNOLOGY CORPORATION          (Buyer) hereby agree to buy and
ZYGO CORPORATION                            (Seller) agree to sell equipments
/materials specified below according to the GENERAL TERMS AND CONDITIONS stated on the reverse hereof.

| Item | Description | Unit | Quantity | Unit Price | Amount |
|---|---|---|---|---|---|
| 01 | ATOMIC FORCE MICROSCOPE (AFM) AS SPEC. | ST | 1 | 680000 00 | $680,000 |

DELIVERY TERMS : FOB US AIRPORT       TOTAL : USD   $680,000

PAYMENT TERMS : By a letter of credit in your favor.
  80% BY L/C AGAINST SHIPPING DOCUMENT.
  20% BY T/T AFTER ACCEPTANCE TEST.

Shipping Mark
NTC
4C Q8001 00

REMARKS :
1. Loading port : US AIRPORT.         Destination : CKS AIRPORT
2. Partial shipment IS NOT allowed.   Transit shipment IS NOT allowed.
3. Latest Shipping date : JAN.31,2000. However unless otherwise stipulated above for schedule of partial shipment, loading date shall not be earlier than JAN.21,2000.
4. The order no. shall be indicated in all of related documents and communications.
5. Beneficiary should dispatch a fax or telex to Buyer (ATTN: Purchasing Division) before 3 DAYS of the Confirmed Departure Date advising the Departure Date and Estimated Arrival Date of the cargo. Also, as soon as shipment is effected Seller shall send shipping documents either by FAX and by DHL courier to Buyer hereunder:
6. The order shall be deemed as acceptance after completion of Seller's signature on the bottom hereof and submittal of Seller's PROFORMA INVOICE with the signed page to Buyer.
7. Seller obligate to advise Buyer if specification described herewith need clarification.
8. Upon delivery, seller shall add the tag plate (The No. and Description listed in the "ORDER CONFIRMATION" to be included) to be adhered on each itemized cargo and then take pictures. Packing List shall also indicate the same under each delivered item and related pictures shall be attached on each packing list. The pictures indicating Tag Plate shall be deemed as parts of the necessary shipping documents.
9. Pls inform and provide us the detail Packing List in case of any tools or appliance is required for installation shall be shipped together with main equipment; so that the tools can be returned to your side after complete installation.
10. Shipment shall be effected by the Shipping Co. Forwarder: TO BE INSTRUCTED BEFORE SHPMT.
11. Seller has to pay a delay penalty on basis of 0.2% of the invoice value for each day delayed.

Seller: ZYGO CORPORATION                  Buyer: NAN YA TECHNOLOGY CORPORATION
                                                 PURCHASING DIV.

[signature] 1/13/2000                      [signature] John Chen

Name
Title

# Martin Affidavit
# TAB 2

```
                ............ TECHNOLOGY CORPORATION.              TEL:886-2-27122211
          201.TUNG HWA N.ROAD, TAIPEI.TAIWAN, R.O.C.              FAX:886-2-27178459
                                                                  TELEX:11248,22260 TAIPEI
                              ORDER CONFIRMATION                  CABLE:"PLASTICORP"TAIPEI
                              ==================                  PAGE:   / OF /
ORDER NO: C 4C  T9002 00                                          DATE:JAN.31,2000
TO Messrs:
  ZYGO CORPORATION.
  P.O.BOX 448 MIDDLEFIELD,         FAX:002-1-860-3478372
  CONNECTICUT 085455-0448 U.S.A.
  We NAN YA TECHNOLOGY CORPORATION         (Buyer) hereby agree to buy and
  ZYGO CORPORATION.                                 (Seller) agree to sell equipments
  /materials specified below according to the GENERAL TERMS AND CONDITIONS stated on the
  reverse hereof.
```

| Item | Description | Unit | Quantity | Unit Price | Amount |
|---|---|---|---|---|---|
| 01 | ATOMIC FORCE MICROSCOPE (AFM) AS SPEC. | ST | 1 | 690000 00 | $690,000 |

```
DELEVERY TERMS : FOB US AIRPORT                    TOTAL : USD    $690,000

PAYMENT TERMS : By T/T reimbursement net 010 days after B/L date..   Shipping Mark
    80% BY T/T AGAINST SHIPPING DOCUMENT.
    20% BY T/T AFTER ACCEPTANCE TEST.                                  N T C
REMARKS :
  1.Loading port : US AIRPORT              Destination : CKS AIRPORT   4C  T9002 00
  2.Partial shipment IS NOT allowed.   Transit shipment IS NOT allowed.
  3.Latest Shipping date : FEB.28,2000. However unless otherwise stipulated above for
    schedule of partial shipment, loading date shall not be earlier than FEB.18,2000
  4.The order no. shall be indicated in all of related documents and communications.
  5.Beneficiary should dispatch a fax or telex to Buyer(ATTN:Purchasing Division) BEFORE 3 DAYS
    of the Confirmed Departure Date advising the Departure Date and Estimated Arrival Date of
    the cargo. Also,as soon as shipment is effected,Seller shall send shipping documents either
    by FAX and by DHL courier to Buyer hereunder.
  6.The order shall be deemed as acceptance after completion of Seller's signature on the
    button hereof and submittal of Seller's PROFORMA INVOICE with the signed page to Buyer.
  7.Seller obligate to advise Buyer if specification described herewith need clarification.
  8.Upon delivery,seller shall add the tag plate (Tag No. and Description listed in the "ORDER
    CONFIRMATION" to be included) to be adhered on each itemized cargo and then take pictures.
    Packing list shall also indicate the same under each delivered item and related pictures shall
    be attached on each packing list. The pictures indicating Tag Plate shall be deemed as parts
    of the necessary shipping documents.
  9.Pls inform and provide us the detail packing list in case of any tools or appliance is required
    for installation shall be shipped together with main equipment so that the tools can be
    returned to your side after complete installation.
  10.Shipment shall be effected by the Shipping Co.Forwarder: TO BE INSTRUCTED BEFORE SHPMT.
     LYUEN AIRFREIGHT INC
  11.Seller has to pay a delay penalty on basis of 0.2% of the invoice value for each day
     delayed.

  Seller: ZYGO CORPORATION.                Buyer:NAN YA TECHNOLOGY CORPORATION
                                                 PURCHASING DIV.


  ------------------------------            ------John Chen------
                       Name
                       Title
```

Martin Affidavit
TAB 3

02-?-0: 9:59

ATTN: 盧唐懿
FM:
To: 廖軍 Sir.

03 396 22?5

## zygo

Laurel Brook Road
Middlefield, CT 06455
Telephone: (860) 347-8506

**TEMPORARY LOAN AGREEMENT**

Zygo Corporation agrees to loan:

Nan Ya Technology Corp., located at HWAYA Technology Park, 669 Fu Shing 3rd, Kueishan Taoyuan, Taiwan, , (Customer) the equipment listed below for a period not to exceed 06/30/2000.

Customer agrees not to make any alteration to the equipment or to move it to another location without proper written approval. Customer further agrees to return this equipment at the end of this Agreement in the same condition as when received. While Customer has possession of the equipment.

During the period of the loan, customer agrees to work jointly with ZYGO towards a resolution of the pending insurance claims.

This equipment must to follow NTC Free charge condition.

Customer Signature _____  Date 3/14

Zygo Representative _____  Date 14 MAR 00

RMA L&D Form    Printed: 03/08/2000

**NY 672**