EXHIBIT 11



THE MATH. & MONIELLO COMPANIES, INC.

**MATHOG MONIELLO**

March 23, 2001

Mr. Joseph Daneman
Sr. Cargo Adjuster
Royal and SunAlliance
Wall Street Plaza
88 Pine Street, 28th Floor
New York, NY 10005

| Re: | Insured: | Zygo Corporation |
|---|---|---|
| | Consignee: | Nan Ya Technology Corporation |
| | Policy #: | POC - 102950 |
| | Your Ref: | 107008216 |

MAR 2 8 2001

Dear Mr. Daneman:

Matt Weidman, who has coordinated our involvement in the subject claim to this point in time, has asked me to review all available information and in turn communicate with you, particularly as related to the questions you have raised regarding coverage for the loss.

In your fax communication of March 8, 2000 to our Ms. Merati, you raise a question of coverage surrounding late notice. You make reference and I quote; "that the assured sent correspondence dated February 14, 2000 discussing the damage. Your fax to us dated March 7, 2000 is the first report of claim to us, which is late notice to us. This has prejudiced our investigation for this loss and consequently prejudiced the assured's claim against the Policy." Please note that the February 14th correspondence, to which you refer, is a Zygo internal communication and not a communication to us on that date. At that point in time, it was the assumption of Zygo, and a reasonable assumption, that Nan Ya Tech's carrier, Taiwan Fire and Marine would honor the claim direct with Nan Ya, but this didn't happen, which prompted Zygo to report the matter to us via a copy of their February 14th internal communication. Our Ms. Merati faxed the information to you on the same date that it was received by us, i.e., March 7, 2000. Your statement that your investigation was prejudiced appears to be without merit to the end that the damaged property was still available for inspection at that point in time, as well as the opportunity to investigate to determine all facts surrounding the loss. Additionally, hind sight tells me that had you gone direct to your assured upon receiving notice of the claim instead of trying to develop information through us, you could have easily avoided any inability to determine the facts due to delay.

Matt Weidman's correspondence to you of May 1, 2000 responded to your March 8, 2000 correspondence to Ms. Merati. This prompted your correspondence of May 12, 2000 to Matt Weidman in which you take the position that Zygo does not have an insurable interest. You also raise this issue in subsequent correspondence.

100 South Shore Dr. ▪ P.O. Box 120650 ▪ East Haven, CT 06512
Tel: 203 468-3400 ▪ Fax: 203 468-3494

CONNECTICUT ▪ NEW YORK ▪ VERMONT

Exhibit No. _Daneman 20_
_11/20/03_ Kac

FINK & CARNEY
CERTIFIED STENOTYPE REPORTERS
39 West 37th Street, 6th Floor NYC 10018    (212) 869-1500

RY    00103

THE MATH    & MONTELLO COMPANIES, INC.

Page 2
March 23, 2001

In Matt Weidman's May 1, 2000 correspondence to you, first paragraph, first sentence, he refers to Zygo having a distributor's contract with IBM. I don't find that you have requested this contract, but in my feeling that it could have significance to the claim, I have obtained a copy, which is enclosed. From your review, you will note that Zygo is required to purchase the property from IBM. Also enclosed is a copy of an invoice dated October 21, 1999 from IBM to Zygo describing Zygo's purchase of a Magnascope with serial #LSM 3050A, which is identically described in the enclosed copy of page 2 of Cathway Inspection Company's February 21, 2000 report of their inspection of the damaged property. In your January 4, 2001 correspondence to Matt Weidman, you comment that financial interest is not the same as insurable interest. I fail to fully understand your rationale, but certainly, having a financial interest, as did Zygo in this case, meets the test of insurable interest much more so than having no financial interest. In this same correspondence you cite a **part** of the Property Insured & Insurable Interest clause of the policy, but there is another part of this clause, which you did not cite and while I do not quote verbatim, it essentially states that the policy covers shipments of lawful goods and merchandise consigned to or shipped by others for account or control of the Assured or in which the **Assured has the risk of loss.** Certainly the assured had a risk of loss due to its financial interest in the property. You, likewise, did not cite the Contingency clause of the policy, with which I am sure you are familiar, thus I will not quote, but merely state that I have reviewed under paragraph 52 of the policy and feel it could well be applicable under the circumstances of this loss, should it be proven that coverage does not otherwise exist.

Finally, as related to coverage, we need clarification with regard to the comments in your letter of May 19, 2000 to Matt Weidman, that the consignee's insurance company has apparently declined liability for the claim due to insufficient and/or improper packaging and that you would in all likelihood also decline the claim for the same reasons. Under paragraph 12.A. of your policy, I find reference to approved export packaging, but I do not find that the policy gives any specific definition of "approved export packaging", therefore, it is not likely that liability could be successfully denied because of a packaging issue. If your comments by chance relate to improper packaging by a third party, thus the potential for third party liability, this is not grounds on which either you or Taiwan Fire and Marine could successfully deny liability, because your respective polices provide **first party** coverage, and in the case of your Policy, third party involvement is protected by paragraph 43, the Subrogation clause.

Having said all of the foregoing, we do disagree with your coverage position and recommend that you do proceed with your investigation through your Taipei office as indicated in your correspondence to Matt Weidman of January 4 and February 5, 2001, respectively.

Sincerely,

Carroll Sneed
Claims Examiner

cc:    Larry Martin
       Matt Weidman

# EXHIBIT 12



THE MATH. & MONIELLO COMPANIES, INC.

May 10, 2001

Via Facsimile 5/10/01

Mr. Joseph Daneman,
Senior Cargo Adjuster
Royal and SunAlliance
Wall Street Plaza
88 Pine Street, 28th Floor
New York, NY  10005

MAY 1 5 2001

Re:   Insured:        Zygo Corporation
      D/L:            February 2000
      Your Ref:       107008216

Dear Mr. Daneman:

Our Mr. Weidman has brought to my attention your May 7, 2001 communication to him, and after his discussion with the assured and me, it has been requested that I reply.

We fail to understand just what it is that you are searching for.  In your correspondence to me of May 2, 2001, you state, "as we near conclusion to our investigation," and you request additional information from the assured.  This was furnished to you via facsimile transmittal of May 3, 2001 from Mr. Weidman.  We, including the assured, thought you felt this information necessary to fully and finally document your file to support payment of the loss.  We believe that information (with information and documentation previously furnished) is more than sufficient to support a covered loss and allow loss payment.

Nevertheless, the assured is in the process of assembling and/or obtaining the additional information outlined in your May 7th communication.  In the interim, allow me to address your requests and comments not needing documentation, as well as those for which you feel documentation is necessary.  In numbered sequence, as you request or comment, as follows:

**Exhibit No.** _Daneman_ _25_
_11/20/03_ _lre_
**FINK & CARNEY**
**CERTIFIED STENOTYPE REPORTERS**
39 West 37th Street, 6th Floor NYC 10018   (212) 869-1500

100 South Shore Dr. ▪ P.O. Box 120650 ▪ East Haven, CT 06512
Tel: 203 468-3400 ▪ Fax: 203 468-3494

CONNECTICUT ▪ NEW YORK ▪ VERMONT

BY        00044

Mr. Joseph Daneman
May 10, 2001
Page 2

1. Confirm that Zygo Corporation (Zygo) is pursuing payment under the Royal policy, pursuant to Clause 52/Contingency.

   This, in our opinion, is an option of the Royal, not Zygo; and it would appear to be in the best interest of Royal to opt to pay the loss under this clause, thus preserving its right of recovery from the purchaser, as well as any responsible third parties.

2. Pursuant to Clause 52, Zygo agreed to use all reasonable means to collect the full amount due from the buyer, Nan Ya.

   While Zygo has made both oral and written requests of Nan Ya for payment, it is our opinion that Zygo has no obligation at this time to document that they have used all "reasonable means" to collect. We ask you to make a closer review of that paragraph under Clause 52 from which you extracted the words "reasonable means." Earlier in that paragraph is stated, "...and the Assured is unable to collect the purchase price from the buyer in **regular course**, this Company will advance the amount of such loss, pending collection from the buyer." The "reasonable means" obligation of Zygo to collect is not a requirement until after Royal has advanced the amount of the loss.

3. Please advise if Nan Ya paid Zygo for the third shipment.

   The answer is **no**. This was a loaner and has been returned to Zygo.

4. We again direct your attention to Clause 52, which obligated the assured to declare to the Royal the value of all shipments, which were to be insured under the "contingency" coverage and to pay additional premium.

   Zygo was under no obligation to report values on an interim basis. Please refer to Clause 1, which is actually the insuring agreement. Note the words "**reported or not**." Also, refer to Clause 9. The total value at risk did not exceed the limit of liability provided by the Policy.

Mr. Joseph Daneman
May 10, 2001
Page 3

5.  Please provide this office with any and all notices of claim which were filed by Zygo and/or Nan Ya against responsible third parties.

    Zygo has not yet filed a notice of claim against responsible third parties, but there has been no prejudice, as there is still ample time to give notice and pursue third-party recovery.

    Zygo has no knowledge of whether or not Nan Ya has filed a notice of claim against responsible third parties.

6.  Please provide any and all documents and/or correspondence, pursuant to which Zygo may have released Nan Ya from any obligation to pay for the second shipment.

    Zygo, to its knowledge, has not released Nan Ya from the obligation to pay for the second shipment, pursuant to any documents, correspondence or otherwise.

7.  Attention is directed to Clause 39 of the policy, which limits recovery on a machine consisting of several parts to only those parts which were actually damaged.

    Zygo believes that it has been sufficiently demonstrated and documented to Royal that the machine in question, while consisting of several parts, is highly sophisticated and sensitive to the extent that all parts must be in synchronization to properly function. The damaged part is the most sensitive and expensive and, due to its critical sensitivity, cannot be satisfactorily repaired to again properly synchronize with the other parts. Even a new part/assembly will not synchronize with the undamaged parts of this machine. Therefore, Zygo believes that Royal is liable for the insured value of the complete machine, as set forth under Clause 39.

In summary, with consideration to the present request of the Royal, it is the belief and contention of Zygo that they have fully cooperated with the Royal in every respect; that they have fully complied with all terms and conditions of the policy and that the Royal should make payment for the loss without further delay.

Sincerely,

Carroll D. Sneed
Claims Examiner

CDS/dat
cc:    Larry Martin
       Matthew Weidman

# EXHIBIT 13



# ROYAL & SUNALLIANCE

88 Pine Street, 28ᵗʰ Floor
Wall Street Plaza
New York, NY 10005
Tel. no. (212) 510-1770
Fax no. (212) 510-1780

## FAX TRANSMISSION

May 15, 2001                                    Total pages: 3

To  Carroll Sneed / Matt Weidman              From:  Joseph Daneman
    Mathog & Moniello Companies, Inc.                Sr. Cargo Adjuster
    East Haven, CT                             Direct Phone: (212) 510-1768
    Fax no. (203) 468-3494                     E-mail: Joseph_Daneman@rsausa.com

Re: Assured: Zygo Corporation
    Insurer: Royal Insurance Company of America
    D/L: February, 2000
    Carrier: Lynden/China Airlines
    Your Ref: Please Advise
    Our Ref: 1070008216

Gentlemen:

We write in furtherance of our letter of May 7ᵗʰ and in response to the Mathog & Moniello letter of May 10ᵗʰ, which was signed by Carroll D. Sneed, Claims Examiner.

Initially, we apologize if you misinterpreted our May 2ⁿᵈ letter, which focused upon Zygo's insurable interest. The information requested in the May 2ⁿᵈ letter was solely related to that part of our investigation, which has now been concluded.

Unfortunately, we must disagree with your "belief" that the information which you provided to this office "is more than sufficient to support a covered loss and allow loss payment." Please be advised that, if Zygo does not provide the information requested in our May 7ᵗʰ letter as restated in part and supplemented herein, this could lead to a forfeiture of coverage under Royal's policy for the subject loss.

After a complete review of the facts underlying this claim, it is our ultimate opinion that there is no coverage for this loss, but for a possible claim under Clause 52 which is entitled Contingency and which is in the nature of unpaid vendor insurance.

Assuming that Zygo is pursuing this claim under Clause 52, we note that Zygo (per Clause 52) has agreed to use all reasonable means to collect the full amount due from the buyer, Nan Ya Technology Corporation ("Nan Ya"). We must again demand that the insured provide us with a written outline of all efforts that it has made to collect the purchase price for the second shipment from Nan Ya, including but not limited to providing us with all written communications by and between the parties and/or written statements of any and all oral conversations by and between the parties with the identity of the persons who participated in these conversations and the date (if possible) of said oral communications. In addition, please provide us with all contemporaneous or subsequently made written notes of any oral conversation between the relevant parties, including the air carriers, etc. Only after receiving the above requested information will Royal be in position to finalize its investigation to determine whether or not Zygo has used "all reasonable means" to collect from Nan Ya the full amount due for the purchase of the second shipment.

Exhibit
No.  _Daneman  26_
     _11/20/03  Roe_

FINK & CARNEY
CERTIFIED STENOTYPE REPORTERS
39 West 37th Street, 6th Floor NYC 10018    (212) 869-1500

ZYGO 00550

05/15/01  11:45 FAX  1203   MATHOG & MONTELLO   ☒003
MAY-15-2001  11:34AM   FROM-   T-640  P.002/003  F-602



ROYAL & SUNALLIANCE

May 15, 2001
Page 2
RSA ref. 1070008216

Further, we respectfully disagree with your opinion that Zygo is not obligated to use "all reasonable means" to collect payment from its purchaser. Clause 52 is quite clear in this regard and we suggest that you review the clause in its entirety. As for your assertion that Zygo must only show an inability to collect a purchase price to trigger coverage under Clause 52, we again respectfully disagree and note that the inability to collect from the buyer is a condition precedent to trigger coverage under Clause 52, but in no way alleviates or eliminates Zygo's obligation to pursue all reasonable means to collect the payment from the buyer. We do not understand Zygo's reluctance to provide us with this information, because, according to your letter of May 10th, "Zygo has made both oral and written requests of Nan Ya for payment." If that be the case, please provide us with all such information and/or documents.

In the May 10th letter, you also represent that the third shipment, which was a loaner, was returned to Zygo. Please provide us with all information and documents relating to the return of the third shipment by Nan Ya to Zygo, including any and all airway bills, etc. In any event if Royal makes payment for this loss under Clause 52, the reasons why Nan Ya refused the third shipment may be of some importance to pursuing payment for the second shipment and therefore, we request all information which relates to the reasons why Nan Ya did not purchase the third shipment.

As for our request for information concerning the declaration of the first and second shipment, please be advised that Clause 52 provides coverage outside the scope of the standard open cargo policy coverages and requires both separate reporting and payment of additional premium. We again must direct your attention to the unambiguous language of Clause 52 which imposes the aforesaid requirements and obligations upon Zygo. Although you referenced Clause 1 and Clause 9 of the open cargo policy in your May10th letter, you conveniently omit any reference to Clause 3 of that same insurance contract. Pursuant to Clause 3, (which is entitled "Property Insured and Insurable Interest") there is a specific exclusion for insurance on shipments either sold or purchased by the assured subject to terms of sale (or purchase) whereby the assured is not obligated to furnish ocean marine insurance. As you advised in prior correspondence to this office, the second shipment was sold on FOB U.S. Airport terms which carried with it no obligation on the part of Zygo to furnish insurance on this shipment, pursuant to the terms of sale by and between Zygo and Nan Ya. It is our further understanding that Nan Ya made no request to Zygo to insure either the first or second shipment under the Royal policy and in fact, Nan Ya had a separate cargo policy with a foreign insurer.

By virtue of the foregoing, the Royal policy did not automatically attach to these two shipments whether reported or not, but did require separate reporting and payment of additional premium per the terms of Clause 52 under which Zygo is now making claim.

We acknowledge your advice that Zygo has not filed a notice of claim with any responsible third-party and further advice that it has no knowledge of any such filing by Nan Ya.

We further acknowledge Zygo's representation that it has not released Nan Ya from any obligations to pay for the second shipment.

ZYGO 00551



Lastly, any payment by Royal for this loss will be in accordance with the terms of the insurance contract, including but not limited to Clause 39. Accordingly, your or Zygo's beliefs on whether or not the machine can be repaired is insufficient to require Royal to make full payment for the cost of the machine. Royal demands the right to inspect the machine at issue and to independently determine whether or not it can be repaired. In connection therewith, Royal reserves that option to have the machine returned to the Untied States (i.e. all four crates) for purposes of inspection and repair. At this time, please provide us with the necessary information concerning the present whereabouts of the four crates of machinery which are said to contain the second Atom Force Microscope. We understand that one of the crates may have been unpacked in Taiwan for the purposes of inspection. We, therefore, request the location of the unpacked (damaged) component part of the machine if different from the other three crates and confirmation that all parts of the machine still remain under the direct control of Zygo or Zygo's bailee.

Please be cautioned that in connection with the payment of any claim under Clause 52, it will be important for the machine to be made available for delivery to Nan Ya as part of any action to collect under the sales contract between Zygo and Nan Ya. Accordingly and independently from any right of Royal to inspect and repair the machine, it is extremely important that Zygo has taken the appropriate actions to secure the safety of the machine even in its damaged state as part of any action brought against Nan Ya to compel payment for said machine under the sales agreement.

Please revert soonest with regard to the present whereabouts of the component parts of the machine and to the extent that any component part may now be missing, please so advise.

We write this letter on a without prejudice basis and with a full reservation of rights with regard to all available defenses under the policy or at law, including but not limited to the defense of late notice, impairment of recovery/subrogation and/or the assured's failure to make timely declarations for coverage under Clause 52. Nothing set forth herein or any action taken to date shall be deemed to be an admission of liability, waiver of any defenses which arise under the policy terms and conditions and/or at law or estoppel of Royal from asserting its rights under the policy and at law.

If you have any questions with regard to the matters addressed herein, please do not hesitate to contact the undersigned.

Very truly yours,

Royal & SunAlliance

Joseph Daneman
Senior Cargo Adjuster

ZYGO 00552

EXHIBIT 14



THE MATH⟨ ⟩ & MONIELLO COMPANIES, INC.

June 14, 2001

Mr. Joseph Daneman
Sr. Cargo Adjuster
Royal and SunAlliance
Wall Street Plaza
88 Pine Street, 28th Floor
New York, NY 10005

JUN 1 5 2001

Re:    Insured:      Zygo Corporation
       D/L:          February 2000
       Your Ref:     107008216

Dear Mr. Daneman:

My apology for the delay in replying to your letter of May 15, 2001. However, our efforts have been in coordination with the assured to produce the additional information and documentation, which you request.

To clarify with regard to whether or not Zygo is pursuing the claim under policy Clause 52 (Contingency). Subject to Royal producing substantial evidence that the loss is not otherwise covered, Zygo will opt to pursue payment under Clause 52.

You have raised a question of value reporting as this pertains to Clause 52. It is our opinion and interpretation that the policy is not of the "reporting form" type. Instead, values are subject to year-end audit, based on the Assured's gross sales for purpose of determining any additional premium due or return premium.

Enclosed you will find a June 1, 2001 letter from Lawrence Martin of the assured to Matt Weidman, with various attachments intended to satisfy the requests in your letters of May 7 and May 15, 2001. While you will find all of this self-explanatory, allow me to comment on a few of the documents as they pertain to some of your questions.

You requested information on the present location of the damaged property for the purpose of inspection. The property was salvaged, but the assured is presently trying to determine if it is still available for inspection. However, I call your attention to the attached, September 21, 2000 communication from Larry Martin to Billy Wu, his Taipai contact, which identifies your Taipai representative, Richard Chug. Then note the attached communication of September 22, 2000 from Billy Wu to Larry Martin, which reflects that your Mr. Chung declined the opportunity to inspect the property.

Exhibit
No. _Daneman 27_
_11/20/03_ _kac_

**FINK & CARNEY**
CERTIFIED STENOTYPE REPORTERS
39 West 37th Street, 6th Floor NYC 10018    (212) 869-1500

100 South Shore Dr. ▪ P.O. Box 120650 ▪ East Haven, CT 06512
Tel: 203 468-3400 ▪ Fax: 203 468-3494

CONNECTICUT ▪ NEW YORK ▪ VERMONT

BY        00054

Page 2
Daneman/Mathog/Weidman/Sneed
Letter of June 14, 2001

You state that it will be important for the machine to be made available for delivery to Nan Ya as part of any action to collect under the sales contract between Zygo and Nan Ya. We believe that documentation previously directed to you, namely:

1. The inspection reports of Cathay Inspection Co., LTD (The independent marine survey firm who wrote the initial damage assessment report of February 21, 2000 and the supplement of November 17, 2000) indicated a total constructive loss.

2. The inspection report of Ash-Sem. Services Limited indicating the extent of the damage leaving a salvage value of $28,925.00.

These two reports are enclosed for your ease of reference. Therefore, it seems evident that anything to which Nan Ya would be entitled is the salvage value of $28,925.00.

You have requested documentation, which the assured has under search, on the return of the third shipment ("The Loaner") by Nan Ya to Zygo, but we don't understand your concern that Nan Ya's reason for not purchasing the third shipment may be of some importance to pursuing payment for the second shipment, and we request that you be more specific in this regard, while the assured searches to produce the shipping documents. Also, if you feel that we are overlooking anything necessary to support loss payment, please so advise.

Thank you.

Sincerely,                         Sincerely,                         Sincerely,

Alan Mathog, CIC, ARM, CPCU        Matthew D. Weidman, CIC            Carroll D. Sneed
Managing Principal                 Account Executive                 Claims Examiner

cc:    Larry Martin

**zygo®**

Zygo Corporation and Subsidiaries

Laurel Brook Road
P.O. Box 448
Middlefield, Connecticut
06455-0448

Voice: 860 347-8506
 Fax: 860 347-8372
http://www.zygo.com

June 1, 2001

Matt Weidman
Mathog & Moniello Companies, Inc.
100 South Shore Drive
P.O. Box 120650
East Haven, CT 06512

Dear Matt:

After reviewing the letter of May 15, 2001 from Royal Insurance Company of America, I am putting together the chronology of events surrounding the shipment of the second Nan Ya unit in question. Particularly I will focus on why the second system was shipped and the attempts made on our part to collect the outstanding receivable.

Nan Ya initially indicated that they intended to purchase two SXM machines from Zygo. They gave us an order for the first machine in December of 1999 for $690 thousand. The terms under which this machine was sold FOB, Delray Beach, Florida with payment to be 80% on LC and the balance on acceptance at the customer sight. This shipment was made in January and became the first damaged unit. Because of the LC, Zygo collected 80% on shipment and was owed the 20% balance from Nan Ya. Nan Ya at that time insisted that Zygo provide a second machine immediately to replace the damaged unit as they were in the middle of setting up their fab line and urgently needed the replacement. Zygo agreed to send one that was in stock but not until Nan Ya provided a purchase order. Nan Ya did provide that purchase order on January 31, 2000 in the amount of $690 thousand. Due to the urgency of the situation, Zygo agreed to send the equipment on an open account basis as opposed to requiring a Letter of Credit. The terms of payment were that Nan Ya would pay 80% against the shipping documents and 20% after acceptance. In addition, the buyer specified the shipping forwarder as Lynden Air Freight.

As we all know, this second unit was also destroyed in shipment and as a result Nan Ya did not meet its 80% payment commitment. Once we were notified of the second incident we sent Zygo personnel into Nan Ya to evaluate the extent of the damage and the potential cause. Nan Ya contended that the problem was in the packing however, after examination by Zygo personnel it was clear that the main cause of the damage was that the unit had been dropped and potentially not handled properly. This is documented in a written report by Mr. Kelvin Walsh, who at the time was employed by Zygo. His evaluation is attached to this letter along with other correspondence pertinent to the claim. Subsequent to the loss of the second unit Nan Ya, who was a valued customer of Zygo's, was upset and insisted on the shipment of yet another unit as we were impacting their production capability. In order to maintain a satisfactory business relationship with the customer, Zygo agreed to send a third unit however this time as a loaner until such time as disposition of the first two units could be resolved. This unit was also sent after receipt of a purchase order from Nan Ya.

Immediately following the shipment of the third unit, Zygo began efforts to resolve the dispute over responsibility. It was our position that the equipment was sent FOB Delray Beach, Florida and that Nan Ya and their insurance company were responsible for it during transport. We also felt strongly about this position as the customer, Nan Ya, specified Lynden Air Freight as the carrier. Their position, and that of their insurance company was, and continued to be that the problem was in the packaging of the equipment and that it was our responsibility. After many phone calls and attempts on the part of our personnel and the resources of our agent Lee Tech in Taiwan we were getting nowhere in our efforts to

**zygo®**

• Page 2

Zygo Corporation and Subsidiaries

Laurel Brook Road
P.O. Box 448
Middlefield, Connecticut
06455-0448

Voice: 860 347-8506
Fax: 860 347-8372
http://www.zygo.com

collect on either the remaining value of the first unit nor on the second unit. Many of the emails related to these discussions and negotiations have been forwarded to yourself and presumably forwarded to Royal. We made offers to evaluate and repair the machines however, preliminary assessments indicated that if that were even possible, it would be extremely expensive as all of the expensive and critical parts of the machine were in the crates which were destroyed. It was also at this time that Zygo canceled its agreement with IBM to market and distribute this equipment. IBM at the same time sold the product line to Veeco, a competitor of Zygo.

Finally, after several attempts to resolve the issue, our agent, who had a good relationship with the customer, was able to get the customer to agree to compensate Zygo for the remaining 20% of the first unit once their insurance company paid them for the first unit. Their insurance company agreed to pay for the first unit. Both parties continued to claim no responsibility for the second unit and would not discuss it further. For our part Zygo agreed, on the insistence of Nan Ya, to have an appraisal done of the repair or salvage value of both of the damaged machines at our expense and this was done. I believe that you are in possession of that appraisal. This has been documented in an email from Billy Wu of Lee Tech to myself which, I believe you are also in possession of. Also agreed was that we would be allowed to remove both of the damaged machines and the loaner since, at this point, Nan Ya had no interest in them.

While this was all transpiring I realized that the only option Zygo had was to file a claim with our insurance company. As you know this is what we did and here we are today, over a year later. I have put Brandon Transfer and Storage, Lynden Air Freight, and Nan Ya on notice that we have an outstanding claim for this loss. Copies of these letters are also attached for you records.

Sincerely,

*Lawrence C. Martin*

Lawrence C. Martin
Staff Assistant to the President

EXHIBIT 15

# The St Paul

## Ocean Marine

### SCHEDULE OF RATES

The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.

| Attached to and Forming Part of Policy No. | *Effective Date of Endorsement | *Issued To |
|---|---|---|
| 390JM2915 | November 1, 2001 | Zygo Corporation |

Per regular line iron or steel steamers and/or motor vessels operating in their regular trade which are not over 20 years of age nor less than 1,000 tons net register and which are classed A-1 American Record or 100-A-1 Lloyd's Register or Equivalent, but excluding vessels built (A) during World War II, or (B) for service on the Great Lakes only and operating in ocean service, or (C) for Military or Naval Service.

Per vessel excluded or not provided for by the above wording, but covered by the terms of this Policy, rates to be agreed.

COVERING ON:
Shipments of electro-optical measuring instruments and components automated parts, handling equipment in approved export packing, as per Clause No. 7, Conditions of Coverage, of this Policy.

At/From: Points and/or places in world

To: Points and/or places in world

Rates per $100 Insured
Vessel /Air
$.3225

Inland Transit
$.0375

Warehouse
Domestic      $.025/Month
Foreign       $.05/Month
Unnamed       $.05/Month

Contingent
50% of primary rate

On-deck Bill of Lading shipments: On Application

Duty: One-third Marine Rate on imports to the United States and Canada

Other shipments covered by this Policy: Rates to be named at time of shipment.

War, Strikes, Riots and Civil Commotions: Included above, except for shipments to or from areas that are "on application".

EXHIBIT
PENGAD 800-631-6989
Weidman 3
Au 3 | 1 | 04

WEB07997

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

### ENDORSEMENT NO.14

The following spaces preceded by an asterisk (*) need not be completed if this endorsement and the policy have the same inception date.

| Attached to and Forming Part of Policy No. | *Effective Date of Endorsement | *Issued To |
|---|---|---|
| 390JM2915 | May 1, 2003 | Zygo Corporation |

## MINIMUM & DEPOSIT PREMIUM ENDORSEMENT

A minimum premium of $50,000. is charged under this policy for the period covering May 1, 2003 – May 1, 2004. Premium is to be adjusted annually at a rate of .0784% of gross sales. If the total premium exceeds the deposit, the additional premium shall become due and payable upon the furnishing of such report.

ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED

ST. PAUL FIRE AND MARINE INSURANCE CO.

## SCHEDULE OF RATES

### ATTACHED TO AND FORMING PART OF POLICY NO.390JM2915

### OF THE ST. PAUL FIRE AND MARINE INSURANCE COMPANY

### EFFECTIVE WITH RESPECT TO SHIPMENTS ON AND AFTER May 1, 2003

ISSUED TO:    **Zygo Corporation**

Per regular line iron or steel and/or motor vessels operating in their regular trade which are not over steamers 20 years of age nor less than 1,000 tons net register and which are classed A-1 American Record or 100-A-1 Lloyds Register or equivalent, but excluding vessels built (A) during World War II, or (B) for service on the Great Lakes only and operating in ocean service, or (C) for Military or Naval Service.

Per vessels excluded or not provided for by the above wording but covered by the terms of the policy, rates to be agreed.

COVERING ON:
**Shipments of electro-optical measuring instruments and components automated parts, handling equipment in approved export packing, as per Clause No.7, Conditions of Coverage, of this policy.**

At/From:    **Points and/or places in world**

To:    **Points and/or places in world**

Rates per $100 Insured
Vessel/Air
.0784%

On-deck Bill of Lading shipments:  On Application

Duty:  One-third Marine Rate on imports to the United States and Canada.

Other shipments covered by this Policy:  Rates to be named at time of shipment.

War, Strikes, Riots and Civil Commotions: Included above, except for shipments to or from areas that are "on application".

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

ST. PAUL FIRE AND MARINE INSURANCE CO.

# EXHIBIT 16

JUL-16-2001 11:36AM   FROM-                                        T-087   P.001/003   F-759

# ROYAL & SUNALLIANCE

www.royalsunalliance-usa.com

**Ocean Marine Division**
Wall Street Plaza
28th Floor
88 Pine Street
New York NY 10005

**Phone**
212 510-1770
Fax - Underwriting
212 510-1785
Fax - Claims
212 510-1780

## TRANSMISSION VIA TELEFAX TO (860) 347-8372

July 16, 2001

Zygo Corporation
Laurel Brook Road
P.O. Box 448
Middlefield, CT  06455-0448

Attn: Lawrence C. Martin
   Staff Assistant to the President

Re: Assured: Zygo Corporation
   Policy no. POC-102950
   Royal Insurance Company of America
   Order Confirmation no. C 4C T9002 00 dated January 31, 2000
   Our Ref. 1070008216

Dear Sirs:

We refer to the claim submitted against the shipment covered by the captioned Order Confirmation, for sale of an atomic force microscope from Zygo Corporation to Nan Ya Technology. According to the Order Confirmation, delivery terms are FOB US Airport.

Also, no declaration with the value of this shipment was submitted to Royal & SunAlliance for coverage under the terms of the contingency clause.

To recover under the Policy, the insured has the burden of establishing loss or damage during the policy period and within the policy terms and conditions.

According to the Property Insured & Insurable Interest Clause,

> *This Policy covers, for account of whom it may concern, shipments of lawful goods and merchandise consisting principally of:*
>
> *New electro-optical measuring components, parts and related equipment in approved export packing*
>
> *Under or on deck, consigned to or shipped by others for account or control of the Assured or in which the Assured has the risk of loss, but excluding shipments either sold or purchased by the Assured subject to terms of sale (or purchase) whereby the Assured is not obligated to furnish Ocean Marine insurance. Notwithstanding the foregoing, this Policy also covers all shipments of lawful goods and merchandise for the account of others from whom the Assured has received written instructions to insure provided such instructions are received prior to any known or reported loss, damage, or accident and prior to sailing of the vessel.*



Exhibit No. [handwritten]

FINK & CARNEY
CERTIFIED STENOTYPE REPORTERS   (212) 869-1500
39 West 37th Street, 6th Floor NYC 10018

ZYGO 00538



According to the Contingency Clause,

*It is agreed that on all shipments sold by the Assured on cost and freight or other terms whereby the Assured is not required to furnish ocean marine insurance, this Policy is extended (subject to all its terms and conditions) to cover only the interest of the Assured as an unpaid vendor from the time shipments become at the risk of the customer under the terms of sale until payment of draft but in no event beyond the time when this Company's risk would normally cease under the terms of this Policy.*

*It is further understood and agreed that in no event shall this insurance inure to the benefit of the buyer or his underwriter but in the event of a loss occurring which would be collectible hereunder but for such terms of sale and the Assured is unable to collect the purchase price from the buyer in regular course, this Company will advance the amount of such loss pending collection from the buyer. The Assured hereby agrees to use all reasonable means to collect the full amount due from the buyer and reimburse this Company, the latter sharing the expense of such collection in proportion to its interest herein.*

*The Assured agrees to declare to this Company the value of all shipments covered under the terms of this endorsement and to pay premium thereon at rates to be agreed.*

Moreover, we reserve the right to investigate further into the sales agreements and all subsequent communications, including requesting all pertinent documentation, regarding payment of the invoice corresponding to the captioned Order Confirmation.  Pursuant to such, according to the Subrogation and Impairment of Recovery Clause,

*It is a condition of this insurance that upon payment of any loss the Company shall be subrogated to all rights and claims against third parties arising out of such loss. It is a further condition of this insurance that if the Assured or his or their assigns have entered or shall enter into any special agreement whereby any carrier or bailee is released from its common law or statutory liability for any loss, or have or shall have waived, compromised, settled or otherwise impaired any right of claim against a third party to which the Company would be subrogated upon payment of a loss without prior agreement of the Company and endorsement hereon, the Company shall be free from liability with respect to such loss, but its right to retain or recover the premium shall not be affected.*

In view of the foregoing circumstances, we regret to advise that we have no alternative other than to decline liability on behalf of the Company for the captioned claim.

ZYGO 00539



 

 

 

The foregoing declination of liability is not intended to be all-inclusive and all other rights and defenses available under the terms and conditions of the Policy, whether expressed or implied, or mentioned herein or not, are hereby reserved to the Company without specific enumeration. If there are any other facts which have not been brought to my attention, please feel free to do so.

Sincerely yours,

Royal Insurance Company of America

Joseph Daneman
Ocean Marine Loss Dept.

Copy: Attn: Carroll Sneed
       Mathog & Moniello
       East Haven, CT
       Fax no. (203) 468-3494

ZYGO 00540