# EXHIBIT 5

1

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - - - -x
ROYAL INSURANCE COMPANY OF AMERICA,    :

       Plaintiff,                      :

       -against-                       Civil No.
                               :3:01 CV 1317
ZYGO CORPORATION,                           (GLG)

       Defendant.
- - - - - - - - - - - - - - - - - - -x

       DEPOSITION of ALLAN P. ILIAS, taken by Defendant, at the offices of Messrs. Nicoletti, Hornig, Campise, Sweeney & Paige, Wall Street Plaza, 88 Pine Street, New York, New York 10005, on Tuesday, December 2, 2003, commencing at 10:40 o'clock a.m., before ANNETTE FORBES, a Certified Shorthand (Stenotype) Reporter and Notary Public within and for the State of New York.

146
Ilias

1
2           MR. GINOS: You want to do the
3      math here?
4      Q    Or 180. Along those lines?
5      A    Along those lines.
6      Q    So to come up with the contingency
7  rates, you would say .018, you multiply by .6?
8      A    .6, that's a reasonable assumption.
9      Q    Then you would multiply the rate
10 that you come up with by the value of the product
11 being shipped?
12     A    Correct.
13     Q    So, for example, the .018, that
14 figure, you multiply that by -- that's for every
15 hundred dollars, right?
16     A    Correct.
17     Q    Where does it say in Paragraph 52
18 that the shipment has to be declared prior to the
19 voyage?
20     A    It doesn't.
21     Q    If you would turn to Clause 1, what
22 does it mean where it says in consideration of
23 premiums at the agreed rates payable monthly or on
24 demand and funds currently in the United States on
25 all shipments coming within the scope of this

```
                                                           147
 1                         Ilias
 2    policy reported or not.
 3              What does the reported or not clause
 4    mean?
 5         A    Truthfully, I don't know.
 6              MR. BJORKMAN:  Let's mark this
 7         as Ilias 12.
 8              (Policy extension, Bates No.
 9         RY 00294 was marked as Ilias Exhibit
10         No. 12 for identification, as of this
11         date.)
12    BY MR. BJORKMAN:
13         Q    Can you identify what has been
14    marked as Exhibit 12?
15         A    Exhibit 12 is the policy extension
16    endorsement, spelled wrong.
17         Q    What does that indicate?
18         A    What do you mean?
19         Q    Extended for how long?
20         A    Extended appears to be from a
21    one-month period May 1, '01 to June 1, '01.
22         Q    The premium was for the month; is
23    that right?
24         A    That is correct.
25         Q    Do you recall any conversations with
```

148

1                              Ilias

2  Mr. Weidman concerning this extension?

3         A     Yes, I do.

4         Q     What do you recall about that?

5         A     I recall that sometime in March or
6  April I spoke with Mr. Weidman with respect to the
7  upcoming renewal and advised him that Royal and
8  SunAlliance no longer wished to be their carrier
9  due to their loss history.

10              Mr. Weidman said he completely
11 understood and requested, he would try to find an
12 ultimate carrier to be Zygo's ocean marine
13 carrier.

14              A month later, Mr. Weidman called
15 back, said he was unable to find anybody to take
16 Zygo and he requested a month extension to have a
17 little more time to find a new home for this
18 program.

19              I accepted and charged him a $20,000
20 premium for the month extension.

21        Q     How did you come up with that
22 figure?

23        A     I believe per my recollection, that
24 that figure was based on the renewal terms I
25 offered to him in April.

                                                              149
1                          Ilias
2         Q    What were those renewal terms?
3         A    Off the top of my head, I do not
4    know.
5         Q    Was Royal willing to renew the
6    policy?
7         A    Yes, we were.  Let me caveat that.
8              We first gave them a notice that we
9    wished to get off the program.  Then when he was
10   unable to find a new home for it, to my knowledge,
11   I gave him two choices -- I gave him a couple of
12   option programs and said that we would be happy to
13   stay in this program but subject to these terms
14   and conditions.
15        Q    Do you recall that you were going to
16   charge a premium of about $250,000 a year?
17        A    That sounds about right.
18        Q    Was the premium that you were going
19   to charge dependent on whether or not Zygo pursued
20   its claim for the microscope that had been shipped
21   to Taiwan?
22        A    Those are the two options I gave.
23   Mr. Weidman specifically requested one option
24   based upon the reserve and paid loss history and
25   one option with the claim withdrawn.

150

1                    Ilias
2                    MR. BJORKMAN:  Let's mark this
3     as 13.
4                    (Renewal specifications, Bates
5     No. RY 0360 was marked as Ilias
6     Exhibit No. 13 for identification, as
7     of this date.)
8                    MR. BJORKMAN:  And mark that
9     as 14.
10                   (Renewal specifications, Bates
11    No. RY 0361 was marked as Ilias
12    Exhibit No. 14 for identification, as
13    of this date.)
14    BY MR. BJORKMAN:
15         Q    I am showing what you has been
16    marked as Exhibits 13 and 14.
17              If you could identify those, please.
18         A    (Perusing documents.)  13 and 14
19    were the renewal options I provided to
20    Mr. Weidman.
21         Q    So Exhibit 13 shows, why don't you
22    describe what the premium would be under the
23    option in Exhibit 13?
24         A    Exhibit 13, the premium would be
25    $100,000.

1              Ilias

2       Q    What does the rate mean?
3       A    It looks to be 10 cents against
4  gross annual sales.
5       Q    Would that be a distinction where
6  it's a $100,000 deposit?
7       A    Minimum deposit, yes.
8       Q    The word 10 percent?
9       A    Ten cents.
10      Q    Ten cents.
11           Working in the same way as the
12 policy had been working, just with what larger
13 deposit?
14      A    That is correct.
15      Q    Option 2, which is in Exhibit 14,
16 just that is a $250,000 flat payment as a premium;
17 is that right?
18      A    That is correct.
19      Q    One of the specifications is that
20 the policy form would have the removal of the
21 contingent interest endorsement?
22      A    That is correct.
23      Q    Why was that?
24      A    The contingent interest endorsement
25 was an optional coverage that he provided after

```
                                                        152
 1                         Ilias
 2   them.  And having gone back and forth, I felt they
 3   were abusing the contingent interest endorsement,
 4   I decided to get rid of it.
 5           Q    Did you tell anyone that you are
 6   abusing the contingent interest endorsement?
 7           A    I recall speaking to someone in New
 8   York about what my renewal terms were going to be.
 9                I do not recall if I specifically
10   told them that they are abusing the contingent
11   interest endorsement, but I told them I would be
12   removing the contingent interest wording.
13           Q    Why did you tell Mathog & Moniello
14   that you thought Zygo was abusing the contingent
15   interest endorsement?
16           A    I did not tell Mathog & Moniello
17   that, that you were abusing the contingent
18   interest endorsement.
19           Q    How did you believe that they were
20   abusing the contingent interest endorsement?
21           A    That they were submitting these
22   losses under the contingent interest clause and
23   were looking for reimbursement for losses under
24   that clause, but per the stipulations in the
25   clause, they were utilizing, they were to advise
```

160

1           Ilias

2           No. RY 00355 was marked as Ilias

3           Exhibit No. 17 for identification, as

4           of this date.)

5   BY MR. BJORKMAN:

6           Q    Can you identify No. 17?

7           A    (Perusing document.)  This is an

8   E-mail from Matt Weidman to my attention advising

9   me that he had successfully replaced our line of

10  business with a competitor.

11          Q    When you got this E-mail, do you

12  recall talking to anyone at Royal about that?

13          A    I am sure I informed someone.

14  Perhaps Joe Daneman and perhaps Chris Tye, but I

15  cannot recollect anybody specific that I might

16  have notified.

17          Q    Are there any procedures that you

18  follow when an account decides not to renew?

19          A    No, not really.

20               The only procedures we do is close

21  up the file, ask for any outstanding reports, both

22  in the optional clauses and the annual sales, and

23  then we would send out cancellation notices on the

24  effective date that they have requested, it being

25  July 1, 2001.

# EXHIBIT 6

Case 3:01-cv-01317-JBA   Document 155-6   Filed 07/30/2004   Page 11 of 19



88 Pine Street, 28th Floor
Wall Street Plaza
New York, NY 10005
Tel. no. (212) 510-1770
Fax no. (212) 510-1780

---

### FAX TRANSMISSION
---

May 19, 2000

To: Richard Chung
Royal & SunAlliance
Taipei, Taiwan
Fax no. (886-2) 2719-7107

From: Joseph Daneman
Sr. Cargo Adjuster
Direct Phone: (212) 510-1768
Total Pages: 43

Re: Assured: Zygo Corp.
Consignee: Nan Ya Technology Corp.
Damaged SXM Machine
Our Ref. 1070008216

Dear Richard,

    Per enclosed documents, please arrange for a survey. The consignee has already commissioned a surveyor and filed a claim with their insurance company. However, we wish to commission a separate survey as the broker for the captioned assured has submitted the claim to us.
    Please advise the surveyor to thoroughly investigate the reason and cause for this damage.
    Please assign the surveyor on a non-waiver basis, without prejudice, and without any admission of liability.
    Should you have any questions or comments, please feel free to contact me. Thank you for your attention to this matter.

Best regards,

*Joe Daneman*

---

Exhibit No. _Daneman_ _13_
_11/20/03_ _KCw_
**FINK & CARNEY**
CERTIFIED STENOTYPE REPORTERS
39 West 37th Street, 6th Floor NYC 10018    (212) 869-1500

RY    00222

MEMORY TRANSMISSION REPORT

```
                              TIME       : MAY-19-2000  10:15AM
                              TEL NUMBER1:
                              NAME       :


FILE NUMBER       :  220

DATE              :  MAY-19 09:14AM

TO                :  9011886227197107

DOCUMENT PAGES    :  041

START TIME        :  MAY-19 09:14AM

END TIME          :  MAY-19 10:14AM

SENT PAGES        :  041

STATUS            :  OK

FILE NUMBER   : 220           *** SUCCESSFUL TX NOTICE ***
```

**ROYAL & SUNALLIANCE**

88 Pine Street, 28th Floor
Wall Street Plaza
New York, NY 10005
Tel. no. (212) 510-1770
Fax no. (212) 510-1780

**FAX TRANSMISSION**

May 19, 2000

To: Richard Chung
    Royal & SunAlliance
    Taipei, Taiwan
    Fax no. (886-2) 2719-7107

From: Joseph Daneman
      Sr. Cargo Adjuster
Direct Phone: (212) 510-1768
Total Pages: 43

Re: Assured: Zygo Corp.
    Consignee: Nan Ya Technology Corp.
    Damaged SXM Machine
    Our Ref. 1070008216

Dear Richard,

Per enclosed documents, please arrange for a survey. The consignee has already commissioned a surveyor and filed a claim with their insurance company. However, we wish to commission a separate survey as the broker for the captioned assured has submitted the claim to us.

Please advise the surveyor to thoroughly investigate the reason and cause for this damage.

Please assign the surveyor on a non-waiver basis, without prejudice, and without any admission of liability.

Should you have any questions or comments, please feel free to contact me. Thank you for your attention to this matter.

Best regards,

*Joe Daneman*

RY        00223

# EXHIBIT 7



88 Pine Street, 28th Floor
Wall Street Plaza
New York, NY 10005
Tel. no. (212) 510-1770
Fax no. (212) 510-1780

## FAX TRANSMISSION

June 5, 2000

To: Richard Chung
    Royal & SunAlliance
    Taipei, Taiwan
    Fax no. (886-2) 2719-7107

From: Joseph Daneman
      Sr. Cargo Adjuster
      Direct Phone: (212) 510-1768
      Total Pages: 1

Re: Assured: Zygo Corp.
    Consignee: Nan Ya Technology Corp.
    Damaged SXM Machine
    Our Ref. 1070008216

Dear Richard,

    We refer to our fax dated May 19, 2000 requesting survey. Please advise us current status. Should you have any questions or comments, please feel free to contact me. Thank you for your attention to this matter.

Best regards,

*[signature: Joe Daneman]*

RY    00220

# EXHIBIT 8

JOSEPH DANEMAN   06/15/2000 03:30 PM

To: Richard Chung/Taipei/TW/RoyalSun@RoyalSunInt
cc:
Subject: Assured: Zygo Corp., Consignee: Nan Ya Technology Corp., Damaged SXM Machine, Our Ref. 1070008216

Hi Richard,

In reference to my fax to you dated May 19, 2000 requesting survey to be performed, and to my fax to you dated June 5 requesting status, I do not have any response from you.
Please advise me current status as soon as possible.

Thanks and best regards,
Joe

RY    00219

# EXHIBIT 9

**RICHARD CHUNG@ROYALSUNINT**
06/19/2000 05:25 AM

To: JOSEPH DANEMAN/NYOM/ROYAL-SSD@ROYAL-HQ
cc:
Subject: Re: Assured: Zygo Corp., Consignee: Nan Ya Technology Corp., Damaged SXM Machine, Our Ref. 1070008216

Dear Joseph,

Sorry for delay for replying your previous fax. We have appointed GAB Robins to try to contact the consignee and their agent to conduct the survey. But the damage cargo are not available to survey and according to shipper's statement, they haven't put forward a claim of the damaged cargo. Therefore, it seems that we have a embarrass position in this case. We have asked adjuster to issue the PLA, and will forward it to you upon receipt the above.

Regards,
Richard

Exhibit No. *Daneman 15*
*11/20/03 KQC*

FINK & CARNEY
CERTIFIED STENOTYPE REPORTERS
39 West 37th Street, 6th Floor NYC 10018   (212) 869-1500

RY      00218