UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA, Plaintiff, | ) ) ) ) | Civil No. 3:01 CV 1317 (JBA) |
| v. | ) ) ) | |
| ZYGO CORPORATION, Defendant. | ) ) ) ) | July 30, 2004 |

## DEFENDANT ZYGO CORPORATION'S LOCAL RULE 56(a)(2) STATEMENT

**I.     Zygo Corporation's Response to Royal Insurance Company of America's Statement of Undisputed Facts**

Pursuant to Local Rule of Civil Procedure 56(a)(2), defendant Zygo Corporation

("Zygo") responds to Plaintiff Royal Insurance Company of America's ("Royal") Local

Rule 56(a)1 Statement as follows:

1.     Admitted.

2.     Admitted.

3.     Admitted.

4.     Admitted.

5.     Admitted.

6.     Admitted.

7.     Admitted.

8.     Admitted.

9.     Admitted.

10.    Admitted.

11.    Admitted.

12.    Admitted.

13.    Admitted.

14.    Admitted.

15.    Admit that Kelvin Walch, an independent contractor familiar with AFMs, conducted a preliminary investigation of the Cargo and emailed a report to Zygo on February 11, 2000. *See* Deposition of Kelvin Walch (hereinafter "Walch Dep.") (excerpts attached as Ex. 4 to the Affidavit of Ian Bjorkman, dated July 30, 2004 ("Bjorkman Aff.")) at 90-91; Affidavit of Geoffrey Ginos in support of Royal Insurance Company of America's Motion for Summary Judgment (hereinafter "Ginos Aff.") Ex. D (containing Walch's e-mail as an attachment to Zygo's March 7, 2000 notice of claim).

16.    Admit that, at the time that the first and second AFMs arrived at Nan Ya, Kelvin Walch was an independent contractor familiar with AFMs whom Zygo hired to assist its customers with the installation and repair of AFMs. *See* Walch Dep. at 15-18.

17.    Denied, except to admit that Kelvin Walch testified that he was "not an expert packer," Walch Dep. at 170, that Mr. Walch's expertise "was in the operation of the AFM machine itself, because it was a very sensitive electronic piece of equipment," and that, to Mr. Martin's knowledge, Mr. Walch did not have expertise in the forensic analysis of damage to shipments, Deposition of Larry Martin (hereinafter "Martin Dep.") (excerpts attached as Ex. 2 to Bjorkman Aff.) at 102-03. Mr. Walch had "been involved with the delivery of quite a few of the machines," and had, at trade shows, "taken them out [of their packaging] and put them back." Walch Dep. at 204.

2

18. Admit that Mr. Walch testified that, during his initial inspection of the second damaged AFM, he "removed one, maybe two panels" and used his hands to feel for damage. Walch Dep. at 95-96.

19. Denied, except to admit that Mr. Walch testified that there were a number of reasons he limited his initial inspection of the Cargo, including a desire to preserve evidence. Walch Dep. at 98-99.

20. Denied, except to admit that Mr. Walch confirmed that it was obvious to him from even this cursory inspection that the machine had suffered severe damage and might not be repairable. Walch Dep. at 101-02.

21. Denied, except to admit that Mr. Walch wrote in a February 11, 2000 email to Zygo: "I feel that Our insurance and/or IBM *may* need to inspect the situation . . ." Ginos Aff. Ex. O (emphasis added).

22. Denied, except to admit that no Royal representative was present at the February 14, 2000 inspection. Walch Dep. at 149.

23. Denied, except to admit that Kelvin Walch and Wilbur Chang inspected the damaged Cargo on numerous occasions on behalf of Zygo for the purpose of ascertaining the extent of damages suffered by the AFM, Walch Dep. at 148-49, and admit that no cargo packaging expert, nor any other qualified inspector, employed by Royal inspected the AFM even though it had ample opportunity to do so after Zygo notified it of the loss. Deposition of Joseph Daneman (hereinafter "Daneman Dep.") (excerpts attached as Ex. 1 to Bjorkman Aff.) at 62-63.

24. Denied. Admit that Nan Ya's independent cargo surveyors, Cathay Inspection Co., Ltd. ("Cathay"), concluded in a General Cargo Survey Report, dated

3

February 21, 2000, that "the prime cause of this damage is distinctly due to heavy shock/bump, rough handling of workers, throughout the flight voyage, transferring/warehousing into storage of Air Cargo Terminal of CKS Int'l Airport." *See* General Cargo Survey Report, attached as Ex. 16 to Bjorkman Aff. [Note that Ex. U to the Gino's Aff. is also a General Cargo Survey Report from Cathay, but it concerns the damage to the First AFM, which is not at issue in this case.]

25.    Denied, except to admit that Nan Ya's independent cargo surveyors, Cathay Inspection Co., Ltd., concluded in a General Cargo Survey Report, dated February 21, 2000, that "the prime cause of this damage is distinctly due to heavy shock/bump, rough handling of workers, throughout the flight voyage, transferring/warehousing into storage of Air Cargo terminal of CKS Int'l Airport." *See* Bjorkman Aff., Ex. 16.

26.    Denied. Mr. Wu was a senior executive at Lee-Tech who was employed as Zygo's sales agent, and was *not* familiar with technical details of AFMs. *See, e.g.,* Walch Dep. at 199-200 ("Billy Wu is very much the senior executive position in his company at Lee-Tech.... He's not a technical person in respect to the AFM at least."). In addition, evidence of Billy Wu's lay opinions regarding the adequacy of Veeco's and Zygo's packaging will be inadmissible at trial, and may not be used to support Royal's motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *Brown v. Society for Seaman's Children,* 194 F. Supp. 2d 182, 193 (E.D.N.Y. 2002) (concluding that testimony based on hearsay could not be used on summary judgment motion); *Pritchard v. The Southern Company Services,* 92 F.3d 1130, 1135 (5th Cir. 1996) (noting that inadmissible hearsay that will not be reducible to admissible form cannot be used on motion for summary

judgment). Mr. Wu's opinions regarding the packaging used by Zygo's competitor Veeco are inadmissible hearsay unsupported by other evidence.

27. Denied. Mr. Martin testified that a combination of Zygo and IBM employees were supervising packaging at the time that the second AFM was packaged, and did not testify regarding who actually rigged and packaged the AFMs. Martin Dep. at 245-46; Ginos Aff. Ex. C.

28. Denied. Royal's "evidence" for this statement is based on Mr. Walch's e-mail from February 11, 2004 (Ginos Aff., Ex. O) and Mr. Walch's testimony about the February 11, 2004 inspection. Mr. Walch's February 14, 2000 memo (Gino's Aff. Ex. D) does not state that it was obvious to him that an insurance claim may be lodged against the packing company or IBM.

29. Denied, except to admit that Zygo first sent notice of the damaged Cargo to Royal on March 7, 2000. Ginos Aff., Ex. D.

30. Denied, except to admit that Royal sent a letter dated March 8, 2000 to Zygo's broker Mathog & Moniello ("M&M"), asking for additional information regarding Zygo's claim. Ginos Aff. Ex. E.

31. Denied, except to admit that Mr. Daneman wrote a letter to M&M dated March 20, 2000. Ginos Aff. Ex. F.

32. Denied, except to admit that Mr. Daneman wrote another letter to M&M on April 19, 2000. Ginos Aff. Ex. G.

33. (a) Denied as to the first sentence. Admits that M&M forwarded contact information to Royal on May 1, 2000, and denies knowledge as to whether that was the first time that information was provided to Royal. *See* Ginos Aff. Ex. H.

(b) Denies knowledge as to the second sentence, except to admit that Mr. Daneman wrote a letter, dated May 12, 2000, to M&M, asserting that Royal would not be assigning a surveyor to review the claim. *See* Ginos Aff. Ex. L.

(c) Denied as to the third sentence, except to admit that Mr. Daneman sent M&M correspondence, dated May 19, 2000, purporting to arrange for a survey. *See* Ginos Aff. Ex. M.

34.    Denied, except to admit that Royal never inspected the AFMs. Daneman Dep. at 62-63. Zygo did cooperate in providing access to the AFM. *See, e.g.,* Bjorkman Aff., Exs. 11.

35.    Denied, except to admit that Mr. Walch testified that he asked Nan Ya personnel not to touch the crate or dispose of the timber packing case. Walch Dep. at 150, 217.

36.    Denied, except to admit that Mr. Walch testified that (1) he never had any discussions with anyone at Zygo regarding whether Zygo should retain custody of the second damaged AFM in order to ensure that it was preserved, and (2) he could not answer the question of whether Zygo had space where the AFM could have been kept and stored. Walch Dep. at 295-96.

37.    Denied, except to admit that Mr. Walch testified that (1) he asked Nan Ya personnel not to dispose of the timber packing cases, Walch Dep. at 217; and (2) even though the AFM appeared to be undisturbed when he visited Nan Ya's facility in November of 2000, he could not be completely certain that the AFM was undisturbed since he had last seen it in March of 2000, *id.* at 278-82, 294.

6

38.    Denied, except to admit that Mr. Walch testified that he could not say with certainty that the AFM was completely undisturbed since he had last seen it in March of 2000. Walch Dep. at 278-82, 294.

39.    Denied, except to admit that Mr. Walch testified that he did not know whether or not Zygo's insurance company was given an opportunity to inspect the second damaged AFM. Walch Dep. at 218-19.

40.    Denied, except to admit that Nan Ya refused to pay any portion of the $690,000 purchase price for the second AFM. Ginos Aff. Ex. A at ¶ 17. Royal's citation to the record does not support the proposition that the alleged inadequate packing was the reason Nan Ya refused to pay. Zygo's Answer at paragraphs 50 and 99 does not admit that the packing is the reason for nonpayment. Moreover, Nan Ya's allegation in its Twenty Second Affirmative Defense is not admissible against Zygo as a fact; it is merely an unproven allegation of a party.

41.    Admitted.

42.    Admitted.

43.    Denied, except to admit that the declination letter recited a number of Policy provisions without any explanation of their relevance or application to Zygo's claim. See Ginos Aff. Ex. V.

44.    Denied, except to admit that Zygo's CFO, Richard Dressler, emailed M&M on June 8, 2001, stating: "I have decided to take the Ocean Cargo coverage with St. Paul insurance. The deductibles are $15,000 compared to the $100,000 and $300,000 with Royal. Also, Royal will not include the contingency coverage that we had previously and which St. Paul will provide. . . The only downside with respect to this

change related to our pending claim with Royal. It now appears that that claim is going to be difficult and our continuing with Royal will probably not influence their decision on that claim one way or another." Ginos Aff. Exs. JJ, KK.

45.    Admit that the date on Royal's Complaint is July 13, 2001.

46.    Neither admitted nor denied, because the allegations in Royal's Complaint are not material undisputed facts, and the pleadings speak for themselves.

47.    Neither admitted nor denied because the allegations in Royal's Complaint are not material undisputed facts, and the pleadings speak for themselves.

48.    Admit that, on or about September 20, 2001, Zygo filed its Answer and Counterclaims and otherwise state that the contents of Zygo's Answer are not material undisputed facts, and the pleadings speak for themselves.

49.    Admit that, on or about September 20, 2001, Zygo filed its Answer and Counterclaims and otherwise state that the contents of Zygo's Answer are not material undisputed facts, and the pleadings speak for themselves.

50.    Denies that Royal has accurately quoted Zygo's counterclaims and otherwise states that the contents of Zygo's Answer are not material undisputed facts, and the pleadings speak for themselves.

51.    Admits that Zygo's third counterclaim alleges bad faith and otherwise states that the contents of Zygo's Answer are not material undisputed facts, and the pleadings speak for themselves.

52.    Neither admitted nor denied, because the contents of Zygo's Answer are not material undisputed facts, and the pleadings speak for themselves.

8

53.     Neither admitted nor denied, because the contents of Royal's Third Party Complaint are not material undisputed facts, and the pleadings speak for themselves, except to admit that Royal served and filed its Third-Party Complaint against Nan Ya on or about October 8, 2001.

54.     Neither admitted nor denied, because the contents of Nan Ya's Answer to the Third Party Complaint are not material undisputed facts, and the pleadings speak for themselves, except to admit that Nan Ya served and filed its response to Royal's Third-Party Complaint on or about February 6, 2002 (not February 6, 2001).

55.     Neither admitted nor denied, because the contents of Nan Ya's Motion for Summary Judgment are not material undisputed facts, and the pleadings speak for themselves, except to admit that Nan Ya moved for summary judgment on or about June 13, 2002.

56.     Denied, except to admit that Zygo's counsel received the July 26, 2002 letter from Royal's counsel (Ginos Aff., Ex. BB), which admitted that Royal did no investigation concerning the alleged settlement before pleading the issue in its Complaint or after receiving Nan Ya's summary judgment motion.

57.     Denied, except to admit that (1) Royal's July 26, 2002 letter to Zygo's counsel demanded that Zygo withdraw it counterclaim for bad faith denial of insurance coverage, (2) Royal's counsel made the same request in a telephone conversation with Zygo's counsel on July 7, 2004, and (3) Zygo has not withdrawn its counterclaim. Bjorkman Aff. ¶ 4.

58.     Neither admitted nor denied, because the contents of Zygo's Opposition to Nan Ya's Motion for Summary Judgment are not material undisputed facts, and the

pleadings speak for themselves, except admits that Zygo opposed Nan Ya's Motion for Summary Judgment, filed on or about August 19, 2002. Ginos Aff. Ex. AA.

59.    Admits that Royal filed no separate opposition to Nan Ya's motion for Summary Judgment, and denies any direct knowledge or information as to Royal's actual reasons for failing to oppose Nan Ya's motion. Exhibit BB to the Ginos Affidavit is a self-serving letter written by Royal's counsel that is inadmissible hearsay that Royal cannot introduce as support for the alleged reasons that Royal did not oppose Nan Ya's summary judgment motion.

60.    Admitted.

61.    Admitted.

62.    Admits that Nan Ya moved for Rule 54 certification of Judge Goettel's order, but denies knowledge of Nan Ya's reasons for requesting certification to appeal other than information contained in pleadings.

63.    Admitted.

64.    Neither admitted nor denied, because the contents of Royal's Motion for Summary Judgment are not material undisputed facts, and the pleadings speak for themselves, except to admit that Royal filed a Motion for Summary Judgment on or about April 4, 2003. *See* Ginos Aff. Ex. GG.

65.    Neither admitted nor denied, because the contents of Zygo's Opposition to Royal's Motion for Summary Judgment are not material undisputed facts, and the pleadings speak for themselves, except to admit that Zygo opposed Royal's Motion for Summary Judgment on or about May 5, 2003. *See* Ginos Aff. Ex. HH.

66.    Denied, except to admit that Judge Goettel denied Royal's Motion for Summary Judgment in an August 15, 2003 opinion. *See* Ginos Aff. Ex. II.

67.    Denied, except to admit that Zygo's counsel spoke with Royal's counsel via telephone on July 6 and 7, 2004, and that Royal's counsel asked on July 7, 2004, that Zygo withdraw its bad faith counterclaim. *See* Bjorkman Aff., ¶4.

68.    Denied, except to admit that Zygo's counsel spoke with Royal's counsel via telephone on July 6 and 7, 2004, that Royal's counsel asked on July 7, 2004 that Zygo to withdraw its bad faith counterclaim, and that during the July 7, 2004 conversation, Royal's counsel purported to cite examples of Royal's defenses to coverage and give his interpretation of the Connecticut law of bad faith. *See* Bjorkman Aff. ¶ 4.

69.    Denied, except to admit that Zygo's counsel spoke with Royal's counsel via telephone on July 6 and 7, 2004, and that on July 7, 2004, Royal's counsel asked Zygo to withdraw its bad faith counterclaim and threatened to seek Rule 11 sanctions against Zygo. *See* Bjorkman Aff., ¶ 4

70.    Denied, except to admit that Zygo did not withdraw its counterclaim of bad faith denial of insurance coverage.

## II.    Zygo Corporation's Statement of Genuine Issues of Material Fact in Dispute

1.    The timing of Zygo's short notification to Royal of its potential claim concerning the Second AFM did not prejudice Royal's subsequent investigation of the claim, where all the information relevant to the claim was made available to Royal and it nonetheless failed to conduct any independent investigation of the claim. *See, e.g.,* Daneman Dep. at 40 (admitting that Zygo's notice to Royal on March 7, 2000, "wasn't a primary reason of declination of coverage"), 46-48 (admitting that he never contacted

individuals with expertise on the AFM-related dispute despite having unfettered access to them); Walch Dep. at 283-85 (stating that no one from Royal ever contacted him regarding the AFM, even though he was the first person to have inspected it), 279, 282-84 (noting that the damaged AFM was still available for inspection in Nan Ya's offices in November of 2000 and that he did not notice that any parts had been removed when he examined the AFM at that time); Ginos Aff. Ex. V (failing to mention, in letter of July 16, 2001 declining coverage, delay or lack of cooperation as the cause for declining coverage); Ginos Aff. Ex. Q (failing to allege in Complaint that late notice or lack of cooperation served as a legal basis for invalidating Zygo's coverage under the policy).

      2.     Royal's investigation of Zygo's claim was neither adequate nor reasonable, where – rather than do any independent investigation into the facts surrounding Zygo's claim – it left the claim open for 16 months, relied on the unsubstantiated statements of third parties and then filed suit before declining coverage in order to "let the judge decide." *See* Daneman Dep. at 164, 186 (admitting that he "wanted to investigate through litigation"), 191-92 (noting that Royal incorporated Nan Ya's pleadings into its own interrogatories and that he didn't know whether Nan Ya's assertions, which Royal adopted, were true but that it was "a real possibility.... I believe that it created a dispute of positions between Nan Ya and Zygo, and that I was willing to let the litigation go forth and let the judge decide which was the correct position.").

      3.     Royal's decision to decline coverage was also motivated by Zygo's decision to take its insurance business elsewhere following Royal's effort to increase Zygo's rates, change the terms of its policy with Zygo, and otherwise create a hostile environment for Zygo following the submission of its claim. *See, e.g.,* Deposition of

Allan Ilias (hereinafter "Ilias Dep.") (excerpts attached as Ex. 5 to Bjorkman Aff.) at 149

(asserting underwriter's claim that Zygo's single claim under the contingency coverage

provision of the policy constituted "abusing" the endorsement); Daneman Dep. at 165

(admitting that he is unsure whether or not he would have instituted a lawsuit against

Zygo if Zygo was a current Royal customer).

By:

Ian E. Bjorkman (ct 11648)
Erika L. Amarante (ct 22393)
Wiggin and Dana LLP
P.O. Box 1832
New Haven, CT  06508-1832
Tel. 203-498-4496
Fax: 203-782-2889
ibjorkman@wiggin.com
Its Attorneys

## CERTIFICATE OF SERVICE

This is to certify that on this 30th day of July 2004, a copy of the foregoing

Statement of Undisputed Facts has been mailed, postage prepaid, to the following:

Robert K. Marzik, Esq.
Law Offices of Robert K. Marzik, P.C.
1512 Main Street
Stratford, CT  06615

John A.V. Nicoletti, Esq.
Geoffrey J. Ginos, Esq.
Nicoletti, Hornig, Campise, Sweeney & Paige
Wall Street Plaza
88 Pine Street, 7th Floor
New York, NY  10005-1801

Daniel L. FitzMaurice, Esq.
Charles D. Broadus, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT  06103

C. Tait Graves, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA  94304-1050

_____
Erika L. Amarante

478996.1

14