UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA, Plaintiff, | ) ) ) ) | Civil No. 3:01 CV 1317 (JBA) |
| v. | ) ) ) | |
| ZYGO CORPORATION, Defendant. | ) ) ) ) | August 13, 2004 |

**DEFENDANT ZYGO CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT**

Royal's Brief in Opposition to Zygo's Motion for Partial Summary Judgment ("Opposition") contains virtually no legal analysis and is simply a hodgepodge of irrelevant facts that are not material to this case. Completely ignoring the legal issues Zygo briefed in support of its Motion for Partial Summary Judgment ("Motion"), Royal instead recites extraneous facts about the case in the apparent hope of convincing the Court that somewhere within its voluminous submission is a fact issue to defeat summary judgment. Royal's effort is fruitless, however, as the *material* facts are plainly undisputed. The Opposition does not present any reason for this Court to deny Zygo's Motion.

**I.      There is No Genuine Issue as to Any Material Fact.**

It is beyond dispute that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). As to materiality, "[o]nly disputes over

facts that *might affect the outcome of the suit* under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248 (emphasis added). Further, a "genuine" dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id. See also Peralta v. Cendant Corp.*, 123 F. Supp. 2d 65, 75 (D. Conn. 2000) (Arterton, J.). "Thus the non-moving party may not rely on conclusory allegations or unsubstantiated speculation." *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 101 (2d Cir. 2001).

Despite Royal's best efforts to inundate the Court with detailed factual information that it claims is disputed, the Opposition wholly fails to establish any *genuine* issue of *material* fact.[1] There is no evidence that would permit the Court to find in Royal's favor, as the following discussion details:

### A. Zygo's Alleged "Settlement" With Nan Ya Cannot Preclude Summary Judgment.

Royal cannot avoid summary judgment by asserting, based on conclusory allegations and unsubstantiated speculation, that there is some factual dispute about whether Zygo released Nan Ya from payment for the damaged AFM. Royal has not submitted any admissible evidence upon which a reasonable factfinder could conclude that Zygo actually settled with Nan Ya. Opposition at 31-35. It is beyond dispute that a party opposing summary judgment must rely on evidence that will be admissible at trial; summary judgment cannot be defeated based on

---

[1] Further, as Exhibit A to this Reply Brief details, Royal did not respond to Zygo's Local Rule 56(a)(1) Statement of Undisputed Facts properly. Accordingly, this Court should find that Zygo's entire Rule 56(a)(1) Statement is admitted. *See* Ex. A to this Brief; *Soares v. Univ. of New Haven*, 154 F. Supp. 2d 365, 367-68 (D. Conn. 2001) (Arterton, J.). Moreover, Royal's Statement of Facts As To Which There Is A Genuine Issue To Be Tried does not preclude this Court from granting summary judgment. Many of Royal's purportedly "disputed issues" are not disputed at all (*see, e.g.*, paragraph 33, almost identical to paragraph 3 in Zygo's Rule 56(a)(1)

inadmissible hearsay. *See, e.g., H. Sand & Co., Inc. v. Air Temp Corp.*, 934 F.2d 450, 454-55 (2d Cir. 1991). Almost every document on which Royal relies to establish Zygo's alleged settlement with Nan Ya is inadmissible hearsay. *See* Affidavit of Geoffrey J. Ginos in Opposition to Zygo Corporation's Motion for Partial Summary Judgment, dated July 29, 2004 (hereinafter "Second Ginos Aff."), Exs. F-J (Nan Ya Affidavits); Exs. L, Q, S, V, X, Z (emails from Billy Wu); Ex. SS (translation of Chinese document created by Nan Ya); Ex. N (hearsay as to the Royal surveyor's conversation with Billy Wu); Ex. O (hearsay as to Royal surveyor's conversation with Billy Wu and Tim Smith). By Royal's own admission, no one from Nan Ya will testify at trial. Opposition at 36-37.[2] Nor will Billy Wu appear to testify in this matter. Accordingly, the Court must disregard all of this supposed "evidence" when considering Zygo's Motion.

When all the inadmissible evidence is stripped away, Royal is left with a handful of documents, none of which establishes that Zygo settled its claim with Nan Ya. *See* Second Ginos Aff., Ex. M (7/10/00 letter from Zygo's Larry Martin to Billy Wu, stating "Nan Ya will pay Zygo . . . the full amount of the second unit"), Ex. P (9/21/00 email from Larry Martin to Billy Wu, stating simply that, with respect to the second AFM, "we have filed a claim with our

---

Statement, which Royal admitted). Other paragraphs (concerning the "notice" and "packing" claims) are simply not material or genuinely disputed, as the following discussion details.

[2] Royal asserts that the Court can consider the affidavits that Nan Ya submitted in support of its Motion for Summary Judgment in 2002 as evidence in the present Motion, citing *Amnesty America v. Town of West Hartford*, 361 F.3d 113, 131 (2d Cir. 2004). *Amnesty* does not change the basic rule that summary judgment can be defeated only with evidence that would be admissible at trial, however. There, the Court held that, where affidavits submitted in opposition to summary judgment were fourteen years old, "the district court was entitled to assume that the affiants would be available and competent to testify at trial." *Id.* at 131. Thus, the age of the affidavits alone did not impose additional requirements on the party attempting to use them. *Amnesty* is completely inapposite to the situation here, where Royal has admitted that the affiants from Nan Ya will not be available to testify at trial. Opposition at 36-37.

insurance company as you know"), Ex. R (10/6/00 email from Larry Martin to Billy Wu stating simply that "Zygo is pursuing collecting [the second AFM] from its insurance company"), Ex. T (10/16/00 email from Larry Martin to Billy Wu, stating simply "I have placed a claim with our insurance company for the second unit."), Ex. U (10/25/00 email from Larry Martin to Billy Wu stating simply "I agree that Zygo will and has filed a claim for the second unit shipped with its insurance company and this claim is now in their hands."), Ex. W (10/27/00 letter from Larry Martin to Billy Wu agreeing only that Zygo has "filed a claim for the second unit shipped with its insurance company and this claim is in their hands"), Ex. AA (6/26/00 emails between Zygo's Sylvain Muckenhirm, Tim Smith and Billy Wu regarding the loaner AFM). All told, the documents submitted by Royal do not come close to establishing a settlement with Nan Ya; the only fact proven is that Zygo submitted a claim to Royal to recover for the Second AFM. Royal completely ignores Mr. Martin's testimony explaining that he never authorized settlement of the Second AFM, and never once cites to Mr. Martin's November 15, 2000 letter that confirms an agreement only with regard to the First AFM and the loaner. *See* Affidavit of Lawrence Martin, dated August 15, 2002 (attached to the Affidavit of Erika L. Amarante, dated July 7, 2004) Ex. 14. Royal also does not cite to Mr. Welch's testimony, even though he attended the November 13, 2000 meeting.

Not only does Royal have no evidence of a settlement, but it does not even have a theory of when the settlement supposedly occurred or what constitutes the settlement documents or terms. Royal sets forth a selective chronology of events and hearsay emails that culminate in the November 13, 2000 meeting between Nan Ya and Zygo. Royal implies that Billy Wu cut a deal for Zygo, but Billy Wu did not even attend the November 13, 2000 meeting. Royal cannot seriously contend that the settlement occurred sometime before that date, based on negotiations

4

between Billy Wu and Nan Ya, when there is no testimony from either Billy Wu or Nan Ya.[3]
Royal completely ignores Zygo's consistent and repeated denials that it ever settled the claim
with Nan Ya. *See* Bjorkman Aff. Exs. 12, 22 (Daneman Dep. at 175-76), 25 (Martin Dep. at
198-99). A reasonable fact finder could not determine that there was a meeting of the minds as
to the terms of a settlement when Zygo vehemently denies settling the claim and there is no
release document or testimony from the people that allegedly negotiated the deal.

Moreover, Royal does not even try to address Zygo's legal arguments demonstrating that
the Court could not find a settlement on these facts. *See* Zygo's Memorandum of Law in
Support of Motion for Partial Summary Judgment (hereinafter "Zygo Br.") at 27-31. Royal
ignores this Court's recent, factually-similar decision in *Johnson v. Schmitz*, 237 F. Supp. 2d 183
(D. Conn. 2003) (discussed in Zygo's Br. at 29), and fails to cite a single case in support of its
position that the Court should deny summary judgment on Count IV. Royal's "conclusory
allegations [and] unsubstantiated speculation" cannot defeat Zygo's Motion for Summary
Judgment. *Byrnie*, 243 F.3d at 101.

### B.    Royal's "Other" Issues are Neither Material Nor Genuinely Disputed.

In its desperate attempt to avoid summary judgment, Royal tries to create factual issues
by asserting that: (1) Royal was prejudiced by Zygo's alleged late notice of the claims; and (2)
Zygo somehow forfeited its right to coverage by inadequately packing the Second AFM. Neither
issue appears anywhere in Royal's declination letter or any of the pleadings in this case. *See*
Bjorkman Aff. Ex. 16; Royal's Compl. dated July 13, 2000, Royal's Reply to Counterclaims

---

[3] Also, Royal's suggestion that the settlement occurred before November 13, 2000 is at odds
with its interrogatory responses adopting wholesale Nan Ya's position that the settlement
occurred on November 13, 2000. *See* Affidavit of Ian E. Bjorkman in Support of Zygo
Corporation's Motion for Partial Summary Judgment, dated July 7, 2004 (hereinafter "Bjorkman
Aff.") Ex. 21, at 8-11.

dated October 1, 2001. Instead, Royal manufactured these issues when it realized that its contract defenses could not withstand scrutiny. Royal's litigation-driven, newly-concocted theories are not material, as they do not "concern[ ] facts that can affect the outcome [of the case] under the applicable substantive law." *Peralta*, 123 F. Supp. 2d at 75. Accordingly, neither the "notice" nor the "packing" claims should give this Court any pause in granting Zygo's Motion for Summary Judgment.

1.  **Lack of notice.** While the exact parameters of this claim are difficult to discern, Royal apparently is claiming that the Contingency Clause is inapplicable because Zygo first notified Royal of the loss some three weeks after the damage. This issue is a complete red herring. Despite Royal's claims of "extreme prejudice" from the timing of Zygo's notice, *see* Opposition at 29, Mr. Daneman testified that the late notice neither prejudiced Royal's investigation nor provided a basis for denying coverage. *See* Bjorkman Aff. Ex. 22 (Daneman Dep. at 74) (admitting that the failure to survey the cargo played no role in the decision to deny coverage). Of course, Mr. Daneman's concession was sensible based on the undisputed facts that Royal had many months to investigate the claim, and that it easily could have conducted a survey, interviewed Zygo personnel, and/or contacted Nan Ya or its insurer. Instead, Royal did nothing for over a year. *See* Zygo Corporation's Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment (hereinafter "Zygo's Opposition") at 3-9. A reasonable fact finder simply could not find (even if Royal had pleaded the late notice as an issue in the case) that Royal was prejudiced by the timing of Zygo's notice of the claim. There is nothing genuine or material about Royal's alleged factual dispute on this issue.

2.  **Inadequate Packing.** Royal also claims that it should not have to cover the loss because the packing of the Second AFM was somehow inadequate. Royal bases this claim

on a misreading of a survey report that Nan Ya commissioned,[4] and its own interpretation of

inadmissible hearsay emails from Billy Wu. *See* Second Ginos Aff., Exs. FF, GG, HH. Royal

cannot prove that the packing was inadequate because it never inspected the Cargo and has no

independent knowledge of the packing that was used. *See* Zygo's Opposition at 14-15. It would

be a complete waste of resources to hold a trial concerning the adequacy of the packing when

Royal did not cite the packing as a basis for declining coverage, did not plead this as an issue in

the case and has no admissible evidence that would permit this Court to conclude that the

packing was inadequate and a cause of the loss.

## II.    Zygo Is Entitled to Summary Judgment As A Matter of Law.

Putting aside Royal's claimed factual disputes, it is clear that this Court has all the

information it needs to decide the coverage issue raised in Zygo's Motion. Discovery is

complete. The parties have taken numerous depositions and exchanged many documents. The

summary judgment motion is fully briefed. Simply put, there is nothing more that the Court will

learn about the dispute in a bench trial than that which has been submitted on the papers.[5] There

is no reason to delay the inevitable and Zygo's summary judgment motion should be granted as

---

[4] Notably, Royal's misrepresentation of the report from Nan Ya's surveyors, which Zygo already addressed in Zygo's Opposition at page 15, has expanded. Now, not only does Royal claim that the report concluded that the damage was caused by inadequate packaging (which it did not, *see id.*), but it also claims that the report "opined that the damages were due to bad packaging *for which Zygo was responsible.*" Opposition at 28. That language appears nowhere in the Cathay Report. *See* Second Ginos Aff. Ex. FF. This is just one example of the astonishing liberties Royal has taken with the factual record in this case.

[5] Royal's accusation that Zygo's Motion is an "improper attempt to circumvent" Judge Goettel's ruling on Royal's Motion for Summary Judgment, Opposition at 10, is absurd. At the time of Judge Goettel's ruling, discovery was not complete. *See Royal Ins. Co. v. Zygo Corp.*, 2003 WL 21960734, at *9-10 (D. Conn. 2003) (hereinafter "*Royal II*"). The Judge denied summary judgment on that basis, highlighting for the parties what factual issues remained outstanding. Contrary to Royal's assertion, Judge Goettel never said that this dispute must go to trial, or that it could not be resolved on summary judgment motions once discovery had been completed.

to Royal's Third, Fourth and Fifth Causes of Action, and Zygo's First and Fourth Counterclaims.[6]

Even assuming that the Policy is ambiguous, it is clear that Zygo's interpretation of the Policy is the only plausible one. A court "may resolve ambiguity in contractual language as a matter of law if the evidence presented about the parties' intended meaning is so one-sided that no reasonable person could decide the contrary." *Compagnie Financiere v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 232 F.3d 153, 158 (2d Cir. 2000) (citations omitted). Further, "[a] court may also grant summary judgment regarding the interpretation of ambiguous language if the non-moving party fails to point to any relevant extrinsic evidence supporting that party's interpretation of the language." *Id.* (Citing *Mellon Bank v. United Bank Corp. of New York,* 31 F.3d 113, 116 ( 2d Cir. 1994).

Here, the evidence is so one-sided that this Court could not, as a matter of law, adopt Royal's interpretation of the Policy. Zygo submitted substantial evidence in support of its reading of the Policy – that contingency coverage was included in the rates agreed upon, and that contingency shipments were to be declared annually, with the annual reporting of sales. *See* Zygo Br. at 18-23. Zygo has demonstrated unequivocally that this interpretation of the Policy is consistent with commercial realities, Zygo's experience with other insurers, and common sense.[7]

*Id.*

---

Discovery is now complete, there are no disputed issues of fact, and there is no reason for this Court to postpone decision on Zygo's Motion.

[6] Royal has not opposed Zygo's motion for summary judgment as to Count V of Royal's Complaint.

[7] Zygo's interpretation of the Policy is supported by the commercial realities of the deal. First, Zygo indisputably would have paid a smaller premium if it had designated some of its shipments for contingency coverage. Second, Royal would have done nothing with the information about shipment other than charge a nominal premium. *See* Zygo Br. at 21-22. Royal does not even

In response, Royal has not pointed to *any* extrinsic evidence in support of its interpretation that Zygo was required to separately report and pay an additional premium to be covered under the Contingency Clause. Royal argues instead that its reading of Clause 52 is "reasonable," relying exclusively on selected portions of the testimony of its underwriter, Allan Ilias. Opposition at 25-26. Royal completely ignores other portions of Mr. Ilias' testimony, in which he admitted that: (1) the Contingency Clause does **not** say that in order for coverage to attach the shipment has to be declared prior to the voyage, Bjorkman Aff. Ex 23 (Ilias Dep. at 146); (2) he does not know what Clause 1 of the Policy ("reported or not") means, *id.* at 146-47; and (3) although the term "additional premium" is used in other clauses of the Policy to indicate when an extra premium is due, that term is not used in the Contingency Clause, *id.* at 62-63. Royal's recitation of excerpted portions of Mr. Ilias' self-serving testimony that the Contingency Clause does not provide coverage, while ignoring Mr. Ilias' numerous concessions that are inconsistent with his asserted interpretation, is simply not enough to defeat summary judgment. *See Israel v. State Farm Mut. Auto. Ins. Co.*, 259 Conn. 503, 509 (2002) (policy will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters).

In yet another attempt to divert the Court's attention from the crux of this case, Royal spends an inordinate amount of time focusing on Mr. Ilias' supposed belief when he wrote the Policy that Zygo did not need Contingency coverage, and on Zygo's alleged failure to review the Policy once it issued. But Mr. Ilias' unilateral belief contradicted the undisputed fact that Zygo *expressly requested* the very coverage that Mr. Ilias claims it did not need. *See* Opposition at 3-

---

touch on these facts in its Opposition to try to explain how and why its interpretation of the Policy would work in the real world.

4. Royal then misconstrues Matthew Weidman's testimony that he did not know if anyone read the Policy into an unequivocal statement that Zygo failed to read it. *See* Opposition at 5-9; Second Ginos Aff. Ex. MM (Weidman Dep. at 75). More importantly, whether and when Zygo read the Policy is irrelevant, because the Contingency Clause indisputably does not say that Zygo has to pay an additional premium and declare shipments in advance and separately. *See* Bjorkman Aff. Ex. 23 (Ilias Dep. at 146). Presumably, Mr. Ilias read the Policy carefully and still does not know what they very first clause ("reported or not") means.

Recognizing that the evidence does not support its interpretation, Royal's argument relies almost exclusively on the claim that the rule of Contra Proferentem cannot be applied to a commercial insurance policy negotiated between sophisticated parties.[8]    But that is not an accurate statement of Connecticut law. Royal cites three unreported Superior Court decisions (all issued by the same Judge) in support of its position, but none of these cases actually holds that Contra Proferentem does not apply to commercial relationships. *See ITC Investments, Inc. v. Employers Reinsurance Corp.*, 2000 WL 1996233, at * 3 (Conn. Super. Dec. 11, 2000) (Corradino, J.) (stating only that the rule should not be "woodenly applied"); *Cooper v. RLI Ins. Co.*, 1996 WL 367721, at *6 n.1 (Conn. Super. June 3, 1996) (Corradino, J.) (urging courts "to abandon the ambiguity rule in such a context"); *Linemaster Switch Corp. v. Aetna Life and Cas. Corp.*, 1995 WL 462270, at *4 (Conn. Super. July 25, 1995) (Corradino, J.) (stating only that the rule should not be "woodenly applied"). Further, Royal does not mention that the Connecticut Supreme Court has considered, and rejected, this very argument. *See Imperial Cas. and Indemnity Co. v. State*, 246 Conn. 313, 329 n. 7 (1998) (distinguishing *Linemaster*, rejecting plaintiff's claim that Contra Proferentem was intended only to benefit unsophisticated

10

consumers, and finding "no reason to deviate from the general rule that ambiguity in an insurance policy is to be interpreted against the drafter").

Royal also asserts, in effect, that because Contra Profeterenm is a rule of last resort, it cannot be used to resolve ambiguity on summary judgment. *See* Opposition at 24. But, courts can and do grant summary judgment using Contra Proferentem to resolve ambiguity in an insurance contract. *See, e.g., Lefrak Org., Inc. v. Chubb Custom Ins. Co.*, 942 F. Supp. 949 (S.D.N.Y. 1996); *Uniroyal, Inc. v. Home Ins. Co.*, 707 F. Supp. 1368, 1376 (E.D.N.Y. 1988). Although Contra Proferentem may be a rule of last resort, that simply means that the Court must look at all the extrinsic evidence first in an attempt to discern the parties' intent. While Zygo has established that its interpretation comports with the practical realities, its experience with insurance coverage generally, and common sense, Royal has not presented *any* extrinsic evidence to support its interpretation of the Policy; instead relying solely on the self-interested assertions of its underwriter. Thus, the Court does not need to reach the Contra Proferentem doctrine to grant Zygo's Motion – based on the evidence, there is no way the Court could determine that Royal's interpretation of the Policy is correct. Certainly, the fact that the rule would be applied (even as a last resort) strongly militates against going through the exercise of a bench trial during which these same facts will be addressed and any remaining ambiguity would have to be construed against Royal.

### III.    The Court Should Not Reconsider Judge Goettel's Ruling Granting Nan Ya's Motion for Summary Judgment.

In an incredible display of nerve, Royal claims that Zygo "engineered" the granting of Nan Ya's motion for summary judgment. Opposition at 35. In truth, Royal engineered the

---

[8] Royal has completely abandoned some of the theories that it advanced in its motion for summary judgment last year. *See Royal II,* at *4-6; Zygo Br. at 15-17, 23-24.

situation itself – by adding Nan Ya as a defendant and then completely ignoring Nan Ya's Motion for Summary Judgment, Royal tried to orchestrate a preclusive ruling against Zygo's interests.   To protect its rights in the face of this gamesmanship, Zygo opposed Nan Ya's Motion, dropping a footnote in its brief to the effect that Zygo would not oppose Nan Ya's Motion if it knew that any ruling would not have preclusive effect for the rest of the case. *See* Zygo's Memorandum of Law in Opposition to Nan Ya's Motion for Summary Judgment, dated August 19, 2000, at n.1. Certainly, Zygo did not pull the wool over the eyes of a very experienced federal Judge who was later besieged by motions asking him to reconsider his ruling in light of *Amaker v. Foley*, 274 F.3d 677 (2d Cir. 2001) (holding that court cannot grant summary judgment based solely on *pro se* litigant's failure to file papers in opposition).   Judge Goettel was fully aware of *Amaker*, and he decided that it did not apply here, especially given the terms of the Local Rules and other Second Circuit authority. *See Royal Ins. Co. v. Zygo Corp.,* 212 F.R.D. 444, 447 (D. Conn. 2003) (hereinafter "*Royal I*") (discussing Local Rule 9(a), which provided that "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion"). Judge Goettel also noted that Royal "made a conscious decision" not to oppose Nan Ya's motion. *Id.* at 446.  Royal did not even ask the Court for additional time to conduct discovery in order to learn the bona fides of its own claim.  This is leaps and bounds from the facts in the cases Royal cites – both *Amaker* and *Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241 (2d Cir. 2004), concerned *pro se* plaintiffs that inadvertently missed the deadline for responding to a motion.  Judge Goettel found *Amaker* inapplicable to this case, and ruled that Royal must be sanctioned – by the granting of Nan Ya's Motion – for filing a Third Party Complaint with no factual basis and then failing to oppose a Motion for Summary Judgment.

There is no reason for this Court to disturb Judge Goettel's ruling years later. Instead, Royal can exercise its right to appeal at the end of the case. Bringing Nan Ya back into the case at this point would greatly prejudice Zygo, by further delaying adjudication of its coverage dispute with Nan Ya. This case already has been pending for three years, thanks to the many detours and positional changes Royal has adopted throughout the litigation. For example:

- Royal sued Zygo claiming that it had settled with Nan Ya even though it did not do any factual investigation of the claim. *See* Zygo Br. at 27-31; Zygo's Opposition at 11-12, 21-24.

- After suing Nan Ya, Royal's counsel took the position that it could not oppose Nan Ya's motion for summary judgment without risking Rule 11 sanctions. He also wrote that if the motion was denied Royal's counsel would "aggressively pursue pre-trial discovery of both Nan Ya and Zygo to obtain the truth of the matter . . . ." Affidavit of Geoffrey Ginos in Support of Royal Insurance Company of America's Motion for Summary Judgment, dated July 7, 2004 (hereinafter "First Ginos Aff.") Ex. CC.

- Royal did not submit anything in response to Nan Ya's summary judgment motion. Royal did not even ask the Court for additional time to "aggressively pursue pre-trial discovery" in order to learn the bona fides of its own claim.

- After summary judgment was granted Royal's counsel again informed the Court that "if Royal had opposed Nan Ya's motion without any supporting evidence, it arguably ran the risk of committing a Rule 11 violation . . . ." First Ginos Aff. Ex DD. One must ask, why Royal first brought the case at all – or why it simply did not seek to withdraw its complaint against Nan Ya without prejudice – if it had no facts to support it.

- Incredibly, a week later, Royal's counsel again wrote to the Court stating that "[i]n hindsight it is evident from the Court's ruling that Royal's counsel should have written a brief letter to your Honor confirming that it *joined* in Zygo's opposition . . . . First Ginos Aff. Ex. EE (emphasis added).[9]  Thus, after claiming

---

[9] Judge Goettel wrote that "[h]ad Royal wanted to adopt Zygo's opposition to the motion, it could have done so. But, it did not. Nan Ya's motion was unopposed by the only party who had asserted a claim against Nan Ya and the Court ruled on it accordingly." *Royal I,* at 447. It is very difficult to understand how Royal could have adopted Zygo's opposition to Nan Ya's motion when it had already adopted *Nan Ya's* version of events in its own sworn interrogatory responses. *See* Bjorkman Aff. Ex. 21 at 8-11. It is also difficult to understand how adopting its adversary's version of events was consistent with its Rule 11 obligations.

that it had no facts by which it could oppose Nan Ya's motion, consistent with its Rule 11 obligations, it took the position that it should have done just that!

- Royal then took the position in a motion for reargument that, by its third-party complaint, it "tendered" Nan Ya to Zygo under Federal Rule of Civil Procedure 14(c). Of course, it had not taken this position while the summary judgment motion was pending. Also, Rule 14(c) applies only in admiralty cases.

- In order to seek immediate appeal to the Second Circuit, Royal took the position that the case is based on admiralty jurisdiction. However, the facts involve the shipment of a product by air from Florida to Taiwan. The Second Circuit dismissed the appeal holding in a summary order that there was no admiralty jurisdiction. *See Royal Ins. Co. v. Zygo Corp.*, Order Dismissing Appeal With prejudice, dated February 13, 2003 (Bjorkman Aff. Ex. 1). This holding also disposed of Royal's Rule 14(c) argument. *Royal I*, at 445-47.

- Royal then moved for summary judgment claiming that there was no contingency coverage because of the FOB clause. *See Royal II,* at 4-6. After discovery, Zygo proved that not only was this argument wrong, but there was no factual basis to even support it. Zygo Br. at 15-17. In its Opposition to Zygo's Motion, Royal does not try to resurrect this argument or rebut Zygo's position. This is one of many failed trial balloons that Royal floated during the course of this case only to see it burst when the theory was actually analyzed.

As this chronology details, it has been Royal – not Zygo – that has sought to lead courts to error in support of its unprincipled decision to deny coverage. It has been a long and expensive trip for Zygo through multiple summary judgment motions and a detour to the Second Circuit, with Royal's positions ever-changing. Zygo should not be dragged through another round of expensive discovery, briefing and trial, when it has demonstrated after three years of litigation that Royal cannot justify its denial of coverage, its failure to investigate the claim, or its failure to even oppose its adversary's summary judgment motion. This dispute should now be resolved in favor of Zygo. The Royal/Nan Ya dispute can be fought another day without affecting Zygo's coffers.[10]

---

[10] The Policy itself demonstrates that this Court does not need to decide liability between Royal and Nan Ya at this juncture. The Contingency Clause, paragraph 52, expressly states that Royal is supposed to "advance" the amount of a loss to Zygo and then pursue Nan Ya at its expense.

14

## CONCLUSION

For the reasons set forth in this Reply Brief and the additional reasons in Zygo's opening

Brief, this Court should grant Zygo's Motion for Partial Summary Judgment.

DEFENDANT
ZYGO CORPORATION

By: _____

Ian E. Bjorkman (ct 11648)
Erika L. Amarante (ct 22393)
Wiggin and Dana LLP
P.O. Box 1832
New Haven, CT  06508-1832
Tel. 203-498-4496
Fax: 203-782-2889
ibjorkman@wiggin.com
Its Attorneys

---

Consistent with the clause itself, this Court can resolve the dispute as between Royal and Zygo
and leave Royal to pursue recovery from Nan Ya.

## CERTIFICATE OF SERVICE

This is to certify that on this 13th day of August 2004, a copy of the foregoing has been mailed, postage prepaid, to the following:

Robert K. Marzik, Esq.
Law Offices of Robert K. Marzik, P.C.
1512 Main Street
Stratford, CT  06615

John A.V. Nicoletti, Esq.
Geoffrey J. Ginos, Esq.
Nicoletti, Hornig, Campise, Sweeney & Paige
Wall Street Plaza
88 Pine Street, 7th Floor
New York, NY  10005-1801

Daniel L. FitzMaurice, Esq.
Charlsa D. Broadus, Esq.
Day, Berry & Howard
CityPlace I
Hartford, CT  06103

C. Tait Graves, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA  94304-1050

_____
Ian E. Bjorkman

\15160\1\46687.7

**Exhibit A to Zygo's Reply Brief in Support of its Motion for Partial Summary Judgment:**

**Chart Re: Royal's Denials of Zygo's Statement of Undisputed Facts**

As the following chart details, Royal has not properly responded to Zygo's statement of undisputed facts. Local Rule 56(a)(3) provides that "each denial in an opponent's Local Rule 56(a)(2) Statement ***must be followed by a specific citation*** to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." (emphasis added). Royal has failed to adhere to this Rule. In some instances, Royal has denied Zygo's statements with absolutely no citation. *See* chart, *infra*, ¶¶ 14, 15, 19, and 21. In other paragraphs, Royal supports its denial through citation to inadmissible evidence or evidence that does not actually support the denial of Zygo's assertion. *See* chart, *infra*, ¶¶ 9, 10. Royal also avoids certain statements entirely, "admitting" things that are not in Zygo's statement and avoiding the undisputed facts entirely. *See* chart, *infra*, ¶¶ 8, 18, 22, 23, 25, 30, 31. Because Royal has not properly denied Zygo's Statement of Undisputed Facts, this Court should deem each of Zygo's assertions to be admitted in full. *See, e.g., Rexach v. Univ. of Connecticut, Dept. of Dining Servs.*, 2004 WL 797579, at *1 n.3 (D. Conn. Mar. 31, 2004) (Kravitz, J.); *Coger v. Connecticut*, 309 F. Supp. 2d 274, 277-78 (D. Conn. 2004) (Burns, J.) (citing *Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir. 1984)); *Soares v. Univ. of New Haven*, 154 F. Supp. 2d 365, 368 (D. Conn. 2001) (Arterton, J.).

**Chart Re: Royal's Denials of Zygo's Statement of Undisputed Facts**

Royal expressly admitted paragraphs 1-7, 11, 12, 16, 17, 24, 26, 28, and 29 of Zygo's

Rule 56(a)1 Statement. This chart details those paragraphs that Royal attempted to deny in

whole or part:

| Paragraph | Zygo's Assertion | Royal's Response |
|---|---|---|
| 8 | "Because Nan Ya still did not have a workable AFM for its business, Zygo then shipped a third AFM ("the loaner AFM") to Nan Ya in late February 2000 on a loaner basis. *See* Martin Aff., ¶ 9 & Ex. 3; Compl., ¶ 52. The loaner AFM was to be returned to Zygo by June 30, 2000. Martin Aff., ¶ 9 & Ex. 3." | "Admit only that in late February 2000 Zygo shipped a third AFM to Nan Ya on a loaner basis, which was to be returned to Zygo by June 30, 2000. . . Except as admitted, deny the remaining statements in paragraph 8."<br><br>No citation for this denial. Royal then "admits" additional detail about Nan Ya's business, its need for an AFM and its relationship with Zygo. None of this information contradicts the assertions in Zygo's paragraph 8.<br><br>Accordingly, this Court should deem paragraph 8 to be admitted in full. |
| 9 | "After being notified that the Second AFM had arrived damaged, Zygo personnel went to Taiwan to evaluate the potential cause and extent of the damage. *See e.g.,* Walch Dep. at 94-95. Zygo determined that the most likely cause of the damage was that the AFM had been dropped and not handled properly. *See* Walch Dep. at 42-45, 101-02, 108-09, 143-46, 201-12, 215-17; *see also* Bjorkman Aff. Exs. 2-4." | "Admit only that after being notified that the second AFM had arrived damaged, Zygo personnel went to Taiwan to evaluate the potential cause and extent of damages. Except as so admitted, deny the remaining statements in paragraph 9."<br><br>Citation to inadmissible emails from Billy Wu (Exs. L, GG, HH) and a mischaracterization of the Cathay Inspection Report (Exs. FF, TT), which is also inadmissible to prove the truth of the conclusions therein.<br><br>Self-serving, unsupported statement that "the adequacy of the packing is in dispute" does not create a genuinely disputed issue of fact. |

| | | Accordingly, this Court should deem paragraph 9 to be admitted in full. |
|---|---|---|
| 10 | "Immediately after shipping the loaner AFM, Zygo made efforts to collect from Nan Ya the amounts due to it for the First and Second AFMs (The First AFM and Second AFM are referred to collectively as the "Damaged AFMs"). *See* Martin Aff., ¶10." | "Deny."<br><br>Citation to Timothy Smith's testimony at pages 216-17, which does not contradict Zygo's assertion.<br><br>Self-serving, unsupported statement that "whether Zygo attempted to collect from Nan Ya" is in dispute does not create a genuine issue of fact. Accordingly, this Court should deem paragraph 10 to be admitted in full. |
| 13 | "Nan Ya refused to return the loaner AFM to Zygo on June 30, 2000 as previously agreed and continued to hold the loaner AFM hostage during the summer and fall of 2000. Martin Aff., ¶13; Martin Dep. at 193-96. Moreover, Nan Ya continued to hold the loaner AFM hostage during the summer and fall of 2000. Martin Aff., ¶13. Accordingly, Zygo now found itself pursuing Nan Ya not only for payment for the Damaged AFMs, but also for return of the loaner AFM. *Id.* Moreover, Nan Ya's refusal to return the loaner AFM created an additional financial hardship for Zygo, because Zygo had a customer willing to lease the loaner AFM for about $13,000 per month." | "Admit only that Nan Ya refused to return the loaner AFM to Zygo on June 30, 2003, as per the terms of the loaner agreement, holding it hostage in order to pressure Zygo into agreeing to accept the loss of the second AFM as being on Zygo's account. Except as so admitted, deny the remaining statements and characterizations in paragraph 13."<br><br>Citation to emails (Ex. AA), which do not contradict Zygo's assertions. Accordingly, this Court should deem paragraph 13 to be admitted in full. |
| 14 | "Zygo retained Kelvin Walch, who had an extensive background relating to AFMs, to evaluate the salvage value of the Damaged AFMs. Martin Aff. ¶19; Martin Dep. at 210; Walch Dep. at 252, 279-84. Mr. Walch determined that the average salvage value for each of the Damaged AFMs was $28,925. Walch Dep. at 279-84; Bjorkman Aff. Ex. 10. | "Admit that Mr. Walch opined that the average salvage value for each of the damaged AFMs was $28,925.00, and otherwise deny paragraph 14."<br><br>No Citation. Zygo's paragraph 14 must be deemed admitted in full. |

| 15 | "Lawrence Martin, Zygo's Staff Assistant to the President, approved the concept that the salvage values of both of the Damaged AFMs would be deducted from the amounts that were due from Nan Ya. Martin Aff., ¶20; Martin Dep. at 211-13." | "Deny inasmuch as Mr. Martin ultimately agreed that Zygo and Royal would bear the loss of the second damaged AFM."<br><br>No citation. Zygo's paragraph 15 should be deemed admitted in full. |
|----|----|----|
| 18 | "Mr. Smith was not authorized to compromise Zygo's claim with regard to the Second AFM.  Martin Aff., ¶ 24; Smith Dep. at 173-79, 220-21." | "Deny inasmuch as more fully set forth below, a genuine issue of fact exists as to whether Zygo's agent, Billy Wu, in fact settled Zygo's disputed with Nan Ya prior to the November 13, 2000 meeting."<br><br>Citation to Smith Dep. 216-17.  But this testimony concerning Billy Wu is irrelevant to whether Mr. Smith had authority to settle the claim, which is the only issue in Zygo's paragraph 18.<br><br>Royal has not cited anything that contradicts Zygo's assertion that Mr. Smith lacked authority to settle, and paragraph 18 must be deemed admitted in full. |
| 19 | "The meeting was conducted in Mandarin Chinese and English. Smith Dep. at 163-64; Walch Dep. at 256-67.  Mr. Smith does not speak Mandarin and did not understand all that was said by the Nan Ya representatives.  Although there was an informal translation, at no time did anyone attempt to provide Mr. Smith with a formal, word-for-word translation as the discussions were transpiring.  Smith Dep. at 177-79." | "Admit that the meeting was conducted in both mandarin Chinese and English and otherwise deny paragraph 19."<br><br>No citation. Zygo's paragraph 19 must be deemed admitted in full. |
| 20 | "At the conclusion of the meeting, Mr. Smith was presented with a document written entirely in Mandarin that purported to summarize the points of the | "Admit that at the conclusion of the November 13, 2000, settlement meeting, Mr. Smith was presented with a document written in entirely |

| | | |
|---|---|---|
| | meeting. *See* Smith Dep. at 26. Because Mr. Smith does not read Mandarin, he was forced to rely upon a cursory verbal translation of the points contained in the document. Smith Dep. at 173-79." | Mandarin Chinese. Except as so admitted, deny the remaining statements and characterizations in paragraph 20."<br><br>Citation to Smith Dep. at 177-78, which actually supports (and certainly does not contradict) Zygo's assertion. This Court should deem Zygo's paragraph 20 admitted in full. |
| 21 | "Mr. Smith signed the document to indicate his attendance at the meeting. At no time was the document presented to Mr. Smith as any kind of legal document, agreement or release, nor did he believe it to be so. Smith Dep. at 173-79." | "Admit that Mr. Smith signed the documents and otherwise deny paragraph 21."<br><br>No citation. Paragraph 21 must be deemed admitted in full. |
| 22 | "The terms of the document were never reviewed or approved by Mr. Martin or any Zygo representative with authority to compromise Zygo's claim for the Second AFM. Martin Aff., ¶¶27-29." | "Denied. Paragraph 22 . . . calls for a legal conclusion as to the actual and/or apparent authority of Zygo's representative. In fact, Mr. Smith testified that he though Zygo's agent, Billy Wu, had settled the dispute with Nan Ya."<br><br>Citation to Smith Dep. at 216-17, which does not contradict Zygo's assertion. Royal has not cited to any evidence that Mr. Smith had authority to settle the claim. *See supra,* ¶ 18. Billy Wu's actions are irrelevant to the statement in paragraph 22 because he was not present at the November 13, 2000 meeting, nor is he alleged to have reviewed and approved the contents of the document created at that meeting.<br><br>Because Royal cites to nothing that contradicts Zygo's assertion, this Court should deem paragraph 22 admitted in full. |
| 23 | "At the November meeting Nan Ya agreed to the proposed formula for establishing | "Denied." Royal then launches into a detailed discussion of documents that |

| | | |
|---|---|---|
| | the amount due from Nan Ya for the First AFM, and further agreed to pay Zygo the remaining amount due on the First AFM using this formula. Martin Aff., ¶25. Nan Ya also agreed to return the Damaged AFMs as well as the loaner AFM to Zygo. *Id.*" | were generated and events that occurred *before* the November 13, 2000 meeting. None of the cited documents (Exs. U, V, and W) contravenes Zygo's assertions as to what transpired at the November meeting.<br><br>Accordingly, this Court should deem paragraph 23 admitted in full. |
| 25 | "Nan Ya never requested that Mr. Martin confirm in writing any purported agreement or compromise with respect to the Second AFM, and the November 15, 2000 letter makes no mention of the second AFM. Martin Aff., ¶29." | "Deny. See paragraph 23 supra."<br><br>All of the documents Royal cited in response to paragraph 23 were generated before the November 13, 2000 meeting, and none of them contradicts Zygo's assertion in paragraph 25.<br><br>Accordingly, this Court should deem paragraph 25 admitted in full. |
| 27 | "During 2000 and into mid-2001, Royal and Zygo, through its broker, M&M, communicated concerning the coverage of the Second AFM. Royal asserted various and changing reasons not to cover the loss. *See, e.g.,* Bjorkman Aff. Exs. 11-14." | "Admit only that during 2000 and into mid-2001, Royal and Zygo, through its broker Mathog & Moniello, communicated concerning the coverage for the Second AFM. Except as so admitted, deny the remaining statements and characterizations in paragraph 27."<br><br>Citation only to Bjorkman Aff Ex. 16 (declination letter), which does not contradict Zygo's assertion in paragraph 27.<br><br>Accordingly, this Court should deem paragraph 27 admitted in full. |
| 30 | "The Policy does not expressly provide that Zygo had to declare a shipment to Royal separately and in advance in order to obtain contingency coverage. Martin Aff. Ex. 4 ¶52; Deposition of Allan Ilias (hereinafter "Ilias Dep.") (Bjorkman Aff. | "Deny. The Policy expressly provides, in relevant part under Clause 52, 'The Assured agrees to declare to this Company the value of all shipments covered under the terms of this endorsement and to pay |

| | | |
|---|---|---|
| | Ex. 23) at 146." | premium thereon at rates to be agreed.'" |
| | | Royal completely evades Zygo's statement – admitted by Royal's own underwriter Mr. Ilias – that the Policy does not say shipments must be declared "separately and in advance." Royal cannot deny undisputed facts based solely on its litigation-minded *interpretation* of what the Policy means (as opposed to what its Rule 30(b)(6) witness admitted the clause actually says). |
| | | Accordingly, this Court should deem Zygo's paragraph 30 admitted in full. |
| 31 | "The Policy does not expressly provide that, in order to obtain contingency coverage, Zygo had to pay a premium in addition to the $0.023 per $100 gross sales rate that is set out in the Policy's Schedule of Rates.  Martin Aff. Ex. 4 ¶ 52." | "Denied.  See paragraph 30 supra." <br><br> The language Royal quoted in response to paragraph 30 does not say that Zygo had to pay an additional premium, and in no way contradicts Zygo's assertion in paragraph 31. <br><br> Accordingly, this Court should deem paragraph 31 admitted in full. |

\15160\1\46723.1