# EXHIBIT A

**Exhibit A to Zygo's Reply Brief in Support of its Motion for Partial Summary Judgment:**

**Chart Re: Royal's Denials of Zygo's Statement of Undisputed Facts**

As the following chart details, Royal has not properly responded to Zygo's statement of undisputed facts. Local Rule 56(a)(3) provides that "each denial in an opponent's Local Rule 56(a)(2) Statement *must be followed by a specific citation* to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial." (emphasis added). Royal has failed to adhere to this Rule. In some instances, Royal has denied Zygo's statements with absolutely no citation. *See* chart, *infra*, ¶¶ 14, 15, 19, and 21. In other paragraphs, Royal supports its denial through citation to inadmissible evidence or evidence that does not actually support the denial of Zygo's assertion. *See* chart, *infra*, ¶¶ 9, 10. Royal also avoids certain statements entirely, "admitting" things that are not in Zygo's statement and avoiding the undisputed facts entirely. *See* chart, *infra*, ¶¶ 8, 18, 22, 23, 25, 30, 31. Because Royal has not properly denied Zygo's Statement of Undisputed Facts, this Court should deem each of Zygo's assertions to be admitted in full. *See, e.g., Rexach v. Univ. of Connecticut, Dept. of Dining Servs.*, 2004 WL 797579, at *1 n.3 (D. Conn. Mar. 31, 2004) (Kravitz, J.); *Coger v. Connecticut*, 309 F. Supp. 2d 274, 277-78 (D. Conn. 2004) (Burns, J.) (citing *Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir. 1984)); *Soares v. Univ. of New Haven*, 154 F. Supp. 2d 365, 368 (D. Conn. 2001) (Arterton, J.).

## Chart Re: Royal's Denials of Zygo's Statement of Undisputed Facts

Royal expressly admitted paragraphs 1-7, 11, 12, 16, 17, 24, 26, 28, and 29 of Zygo's Rule 56(a)1 Statement. This chart details those paragraphs that Royal attempted to deny in whole or part:

| Paragraph | Zygo's Assertion | Royal's Response |
|---|---|---|
| 8 | "Because Nan Ya still did not have a workable AFM for its business, Zygo then shipped a third AFM ("the loaner AFM") to Nan Ya in late February 2000 on a loaner basis. *See* Martin Aff., ¶ 9 & Ex. 3; Compl., ¶ 52. The loaner AFM was to be returned to Zygo by June 30, 2000. Martin Aff., ¶ 9 & Ex. 3." | "Admit only that in late February 2000 Zygo shipped a third AFM to Nan Ya on a loaner basis, which was to be returned to Zygo by June 30, 2000... Except as admitted, deny the remaining statements in paragraph 8."<br><br>No citation for this denial. Royal then "admits" additional detail about Nan Ya's business, its need for an AFM and its relationship with Zygo. None of this information contradicts the assertions in Zygo's paragraph 8.<br><br>Accordingly, this Court should deem paragraph 8 to be admitted in full. |
| 9 | "After being notified that the Second AFM had arrived damaged, Zygo personnel went to Taiwan to evaluate the potential cause and extent of the damage. *See e.g.,* Walch Dep. at 94-95. Zygo determined that the most likely cause of the damage was that the AFM had been dropped and not handled properly. *See* Walch Dep. at 42-45, 101-02, 108-09, 143-46, 201-12, 215-17; *see also* Bjorkman Aff. Exs. 2-4." | "Admit only that after being notified that the second AFM had arrived damaged, Zygo personnel went to Taiwan to evaluate the potential cause and extent of damages. Except as so admitted, deny the remaining statements in paragraph 9."<br><br>Citation to inadmissible emails from Billy Wu (Exs. L, GG, HH) and a mischaracterization of the Cathay Inspection Report (Exs. FF, TT), which is also inadmissible to prove the truth of the conclusions therein.<br><br>Self-serving, unsupported statement that "the adequacy of the packing is in dispute" does not create a genuinely disputed issue of fact. |

2

| | | Accordingly, this Court should deem paragraph 9 to be admitted in full. |
|---|---|---|
| 10 | "Immediately after shipping the loaner AFM, Zygo made efforts to collect from Nan Ya the amounts due to it for the First and Second AFMs (The First AFM and Second AFM are referred to collectively as the "Damaged AFMs"). *See* Martin Aff., ¶10." | "Deny." Citation to Timothy Smith's testimony at pages 216-17, which does not contradict Zygo's assertion. Self-serving, unsupported statement that "whether Zygo attempted to collect from Nan Ya" is in dispute does not create a genuine issue of fact. Accordingly, this Court should deem paragraph 10 to be admitted in full. |
| 13 | "Nan Ya refused to return the loaner AFM to Zygo on June 30, 2000 as previously agreed and continued to hold the loaner AFM hostage during the summer and fall of 2000. Martin Aff., ¶13; Martin Dep. at 193-96. Moreover, Nan Ya continued to hold the loaner AFM hostage during the summer and fall of 2000. Martin Aff., ¶13. Accordingly, Zygo now found itself pursuing Nan Ya not only for payment for the Damaged AFMs, but also for return of the loaner AFM. *Id.* Moreover, Nan Ya's refusal to return the loaner AFM created an additional financial hardship for Zygo, because Zygo had a customer willing to lease the loaner AFM for about $13,000 per month." | "Admit only that Nan Ya refused to return the loaner AFM to Zygo on June 30, 2003, as per the terms of the loaner agreement, holding it hostage in order to pressure Zygo into agreeing to accept the loss of the second AFM as being on Zygo's account. Except as so admitted, deny the remaining statements and characterizations in paragraph 13." Citation to emails (Ex. AA), which do not contradict Zygo's assertions. Accordingly, this Court should deem paragraph 13 to be admitted in full. |
| 14 | "Zygo retained Kelvin Walch, who had an extensive background relating to AFMs, to evaluate the salvage value of the Damaged AFMs. Martin Aff. ¶19; Martin Dep. at 210; Walch Dep. at 252, 279-84. Mr. Walch determined that the average salvage value for each of the Damaged AFMs was $28,925. Walch Dep. at 279-84; Bjorkman Aff. Ex. 10. | "Admit that Mr. Walch opined that the average salvage value for each of the damaged AFMs was $28,925.00, and otherwise deny paragraph 14." No Citation. Zygo's paragraph 14 must be deemed admitted in full. |

3

| | | |
|---|---|---|
| 15 | "Lawrence Martin, Zygo's Staff Assistant to the President, approved the concept that the salvage values of both of the Damaged AFMs would be deducted from the amounts that were due from Nan Ya. Martin Aff., ¶20; Martin Dep. at 211-13." | "Deny inasmuch as Mr. Martin ultimately agreed that Zygo and Royal would bear the loss of the second damaged AFM."<br><br>No citation. Zygo's paragraph 15 should be deemed admitted in full. |
| 18 | "Mr. Smith was not authorized to compromise Zygo's claim with regard to the Second AFM. Martin Aff., ¶ 24; Smith Dep. at 173-79, 220-21." | "Deny inasmuch as more fully set forth below, a genuine issue of fact exists as to whether Zygo's agent, Billy Wu, in fact settled Zygo's disputed with Nan Ya prior to the November 13, 2000 meeting."<br><br>Citation to Smith Dep. 216-17. But this testimony concerning Billy Wu is irrelevant to whether Mr. Smith had authority to settle the claim, which is the only issue in Zygo's paragraph 18.<br><br>Royal has not cited anything that contradicts Zygo's assertion that Mr. Smith lacked authority to settle, and paragraph 18 must be deemed admitted in full. |
| 19 | "The meeting was conducted in Mandarin Chinese and English. Smith Dep. at 163-64; Walch Dep. at 256-67. Mr. Smith does not speak Mandarin and did not understand all that was said by the Nan Ya representatives. Although there was an informal translation, at no time did anyone attempt to provide Mr. Smith with a formal, word-for-word translation as the discussions were transpiring. Smith Dep. at 177-79." | "Admit that the meeting was conducted in both mandarin Chinese and English and otherwise deny paragraph 19."<br><br>No citation. Zygo's paragraph 19 must be deemed admitted in full. |
| 20 | "At the conclusion of the meeting, Mr. Smith was presented with a document written entirely in Mandarin that purported to summarize the points of the | "Admit that at the conclusion of the November 13, 2000, settlement meeting, Mr. Smith was presented with a document written in entirely |

4

| | | |
|---|---|---|
| | meeting. *See* Smith Dep. at 26. Because Mr. Smith does not read Mandarin, he was forced to rely upon a cursory verbal translation of the points contained in the document. Smith Dep. at 173-79." | Mandarin Chinese. Except as so admitted, deny the remaining statements and characterizations in paragraph 20."<br><br>Citation to Smith Dep. at 177-78, which actually supports (and certainly does not contradict) Zygo's assertion. This Court should deem Zygo's paragraph 20 admitted in full. |
| 21 | "Mr. Smith signed the document to indicate his attendance at the meeting. At no time was the document presented to Mr. Smith as any kind of legal document, agreement or release, nor did he believe it to be so. Smith Dep. at 173-79." | "Admit that Mr. Smith signed the documents and otherwise deny paragraph 21."<br><br>No citation. Paragraph 21 must be deemed admitted in full. |
| 22 | "The terms of the document were never reviewed or approved by Mr. Martin or any Zygo representative with authority to compromise Zygo's claim for the Second AFM. Martin Aff., ¶¶27-29." | "Denied. Paragraph 22 . . . calls for a legal conclusion as to the actual and/or apparent authority of Zygo's representative. In fact, Mr. Smith testified that he though Zygo's agent, Billy Wu, had settled the dispute with Nan Ya."<br><br>Citation to Smith Dep. at 216-17, which does not contradict Zygo's assertion. Royal has not cited to any evidence that Mr. Smith had authority to settle the claim. *See supra*, ¶ 18. Billy Wu's actions are irrelevant to the statement in paragraph 22 because he was not present at the November 13, 2000 meeting, nor is he alleged to have reviewed and approved the contents of the document created at that meeting.<br><br>Because Royal cites to nothing that contradicts Zygo's assertion, this Court should deem paragraph 22 admitted in full. |
| 23 | "At the November meeting Nan Ya agreed to the proposed formula for establishing | "Denied." Royal then launches into a detailed discussion of documents that |

5

| | | |
|---|---|---|
| | the amount due from Nan Ya for the First AFM, and further agreed to pay Zygo the remaining amount due on the First AFM using this formula. Martin Aff., ¶25. Nan Ya also agreed to return the Damaged AFMs as well as the loaner AFM to Zygo. *Id.*" | were generated and events that occurred ***before*** the November 13, 2000 meeting. None of the cited documents (Exs. U, V, and W) contravenes Zygo's assertions as to what transpired at the November meeting.<br><br>Accordingly, this Court should deem paragraph 23 admitted in full. |
| 25 | "Nan Ya never requested that Mr. Martin confirm in writing any purported agreement or compromise with respect to the Second AFM, and the November 15, 2000 letter makes no mention of the second AFM. Martin Aff., ¶29." | "Deny. See paragraph 23 supra."<br><br>All of the documents Royal cited in response to paragraph 23 were generated before the November 13, 2000 meeting, and none of them contradicts Zygo's assertion in paragraph 25.<br><br>Accordingly, this Court should deem paragraph 25 admitted in full. |
| 27 | "During 2000 and into mid-2001, Royal and Zygo, through its broker, M&M, communicated concerning the coverage of the Second AFM. Royal asserted various and changing reasons not to cover the loss. *See, e.g.,* Bjorkman Aff. Exs. 11-14." | "Admit only that during 2000 and into mid-2001, Royal and Zygo, through its broker Mathog & Moniello, communicated concerning the coverage for the Second AFM. Except as so admitted, deny the remaining statements and characterizations in paragraph 27."<br><br>Citation only to Bjorkman Aff Ex. 16 (declination letter), which does not contradict Zygo's assertion in paragraph 27.<br><br>Accordingly, this Court should deem paragraph 27 admitted in full. |
| 30 | "The Policy does not expressly provide that Zygo had to declare a shipment to Royal separately and in advance in order to obtain contingency coverage. Martin Aff. Ex. 4 ¶52; Deposition of Allan Ilias (hereinafter "Ilias Dep.") (Bjorkman Aff. | "Deny. The Policy expressly provides, in relevant part under Clause 52, 'The Assured agrees to declare to this Company the value of all shipments covered under the terms of this endorsement and to pay |

6

| | | |
|---|---|---|
| | Ex. 23) at 146." | premium thereon at rates to be agreed.'"<br><br>Royal completely evades Zygo's statement – admitted by Royal's own underwriter Mr. Ilias – that the Policy does not say shipments must be declared "separately and in advance." Royal cannot deny undisputed facts based solely on its litigation-minded *interpretation* of what the Policy means (as opposed to what its Rule 30(b)(6) witness admitted the clause actually says).<br><br>Accordingly, this Court should deem Zygo's paragraph 30 admitted in full. |
| 31 | "The Policy does not expressly provide that, in order to obtain contingency coverage, Zygo had to pay a premium in addition to the $0.023 per $100 gross sales rate that is set out in the Policy's Schedule of Rates. Martin Aff. Ex. 4 ¶ 52." | "Denied. See paragraph 30 supra."<br><br>The language Royal quoted in response to paragraph 30 does not say that Zygo had to pay an additional premium, and in no way contradicts Zygo's assertion in paragraph 31.<br><br>Accordingly, this Court should deem paragraph 31 admitted in full. |

\15160\1\46723.1

7