UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO.:  Civil 3:01cv1317 (JBA) |
| ZYGO CORPORATION, | ) ) ) | |
| Defendant. | ) ) | |
| ---------------------------------------------------------- | ) | |
| ROYAL INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Third-Party Plaintiff, | ) ) | **JURY TRIAL DEMANDED** |
| v. | ) ) ) | |
| NAN YA TECHNOLOGY CORPORATION, | ) ) | DECEMBER 29, 2004 |
| Third-Party Defendant. | ) ) | |

**THIRD-PARTY DEFENDANT NAN YA TECHNOLOGY CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF
DENIAL OF NAN YA'S MOTION FOR SUMMARY JUDGMENT AND,
ALTERNATIVELY, FOR BIFURCATION OF CONTINGENT CLAIMS FOR WHICH
NAN YA HAS ASSERTED A JURY DEMAND**

**Introduction**

Third-Party Defendant Nan Ya respectfully requests that the Court reconsider the Order

of December 14, 2004 ("Order")[1] insofar as it denies Nan Ya's motion for summary judgment.

Alternatively, Nan Ya asks that the Court bifurcate Royal's claims against Nan Ya, which are

contingent and subject to a jury trial, from the trial of the claims between Royal and Zygo,

---

[1] A copy of the Order is attached as Exhibit 1.

which are not subject to a jury trial and which may obviate the need for any trial with regard to Nan Ya.

When this case was transferred from Judge Goettel in the summer of 2004, it was an advanced lawsuit with a long and tortuous procedural history.  Although Nan Ya had by that time been dismissed and was not present at court conferences in the continuing dispute between Royal and Zygo, the transcript of  the status conference of August 5, 2004 reveals that the Court logically turned to the two remaining parties to obtain their views about the proceedings which were approaching trial.  Royal's counsel took this occasion as an opportunity to present a barrage of arguments designed to encourage the Court to revisit and deny the summary judgment that Nan Ya had obtained almost two years earlier.  Royal, however, omitted and misstated numerous important facts in this presentation and misled the Court into committing several serious errors.  Although the Court devoted a significant amount of time and effort preparing a lengthy ruling on several pending motions, this motion for reconsideration respectfully requests that the Court re-evaluate the issues relating to Nan Ya that were decided based on information and arguments that it had not received by the time of Nan Ya's summary judgment filing.

Royal undoubtedly viewed the appointment of a judge new to this case as a ripe opportunity.  Without filing any motion to put Nan Ya on notice, Royal began to pitch the notion of the Court revisiting Judge Goettel's ruling by offering this possibility in the back of a brief that it filed on July 30, 2004 in opposition to Zygo's motion for summary judgment.  (Dkt. 152 at 36-38.)  From the outset of the August 5 status conference, it became apparent that Royal's central goal was to revive its "no-lose" strategy of pitting Zygo against Nan Ya, despite the absence of any claims between these parties.  It was that strategy, and not the case, that had gotten "off track" when Nan Ya received summary judgment.  Moreover, the status conference

presented a means for Royal to undo the consequences of several strategic miscalculations, including its failure to oppose Nan Ya's motion for summary judgment and its erroneous assumption that Zygo had standing to oppose this motion. To achieve these objectives, Royal proceeded without giving notice to Nan Ya and without being fully candid with the Court. For example, Royal failed to advise the Court either at the conference or afterwards that Nan Ya had requested a jury trial, even though the Court asked this question directly.[2] Moreover, Royal failed to present the real reasons that it wanted Nan Ya in the case – reasons that served Royal, not justice.

In the summer of 2004, Royal faced the plaintiff's version of the "exam dream": despite having received a long series of extensions to a discovery schedule that stretched nearly three years, Royal was not prepared to prove its claims. In particular, Royal needed evidence to support its allegation that Zygo had compromised its coverage by settling with Nan Ya. Instead of admitting to this failure, however, Royal alternatively blamed this situation on Zygo and Judge Goettel. Moreover, Royal compounded its non-disclosures with another maneuver: it chose to proceed in a manner designed to eliminate any opportunity for Nan Ya to respond. After inserting this pitch at the back of a brief directed at Zygo's motion for summary judgment, Royal's counsel pressed the Court early and often at the status conference to bring Nan Ya back into this case. Undoubtedly, Royal conceived of this strategy before the status conference, but it conveniently failed to advise Nan Ya or to file any motion requesting this extraordinary relief.

---

[2] Royal's counsel asserted that he did not know whether Nan Ya claimed a jury trial because he appeared in the case after Nan Ya had been dismissed. (Transcript 8/5/04 – Exhibit 2 at 21-22.)  Another member of his firm acting on behalf of Royal, however, had appeared when Nan Ya claimed a jury trial and had specifically written to Nan Ya contesting whether a right to a jury trial existed. A copy of Ms. Barzilai's letter is attached as Exhibit 3. Moreover, at no point in time after the status conference did Royal's counsel advise the Court that Nan Ya, in fact, had

*See* Fed. R. Civ. P. Rule 7(b) (1) ("An application to the court for an order shall be by motion . . .")  And without Nan Ya at the conference, Royal capitalized fully on this opportunity.

Royal's one-sided and incomplete presentation misdirected the Court into committing several errors:

(a)     by allowing Royal to proceed without notifying Nan Ya or complying with Rule 7(b), the Court denied Nan Ya the fundamental due process rights of notice and opportunity to respond and denied itself the benefits of a complete picture;

(b)     when re-examining Nan Ya's uncontested motion for summary judgment, the Court failed to accept as admitted Nan Ya's statement of uncontested facts, as required under Local Rule 56(a)(1) (formerly L.R. 9(c)).

(c)     instead of reviewing Nan Ya's motion for summary judgment based on the record presented and established at the time, the Court denied Nan Ya's motion based on later-produced evidence from Royal, which had forfeited any right to present evidence by failing to oppose Nan Ya's motion, and from Zygo, which lacked standing to oppose Nan Ya's motion; and

(d)      in attempting to solve the procedural problem in Judge Goettel's endorsement ruling, the Court created even greater procedural and fairness problems for Nan Ya by injecting it into a case on the eve of trial and without the benefit of having participated in discovery that continued for a period of  almost two years after Nan Ya's departure from this case.

---

claimed a jury trial -- even when Royal's counsel wrote to the Court after the conference to request again that Nan Ya be joined. A copy of Mr. Ginos' letter is attached as Exhibit 4

Accordingly, Nan Ya respectfully requests that the Court reconsider the Order insofar as it denied Nan Ya's motion for summary judgment or, alternatively, that the Court bifurcate the court trial of the Royal-Zygo claims from the contingent jury trial of the Royal-Nan Ya claim.

## I.    **BACKGROUND**

### A.    **The Record As of Nan Ya's Motion for Summary Judgment**

Royal filed this suit on July 13, 2001. (Dkt #1.)  In October of 2001, Royal added Nan Ya as a third-party defendant. (Dkt. # 18.)  Nan Ya filed its answer, affirmative defenses, and **jury claim** on December 3, 2001. (Dkt. #27.)  Shortly thereafter, Laura Barzilai, Royal's New York counsel from the firm of Nicoletti Hornig Campise Sweeny & Paige responded to Nan Ya's filing by claiming incorrectly that no jury trial was available because this matter supposedly arose under admiralty jurisdiction. See Exhibit 3

After being joined in this suit, Nan Ya set about preparing its case for summary judgment; Royal did not.  Nan Ya directed extensive Requests for Admissions to Zygo in order to eliminate any potential dispute over the fact that Nan Ya and Zygo had reached a comprehensive settlement. (A copy of Zygo's responses are attached as Exhibit 5.)  Nan Ya filed these requests precisely to avoid the kind of post-settlement equivocation that apparently emerged in Zygo's later papers in its cross-motions for summary judgment with Royal.[3]  In June 2002, Nan Ya moved for summary judgment against Royal, producing substantial evidence to support its motion and filing a statement of undisputed material facts in accordance with then Local Rule 9(c). (Dkt. ## 59-62)  Royal filed no opposition papers, including no statement identifying facts in dispute as required by the Local Rules.

---

[3]A copy of Zygo's responses to Nan Ya's requests for admissions is attached as Exhibit 5.

Among other facts that Royal admitted by failing to file any opposition papers were the

following:

- Faced with the conflicting evidence regarding inadequate packaging versus improper handling, and given the practical difficulties in resolving such a question, the parties began negotiating a business solution. See Facts ¶ 6.

- After several months of negotiations, the parties signed a compromise agreement at a meeting in Taipei, Taiwan, on November 13, 2000. The agreement, written in Chinese, provided that Nan Ya's insurer – Taiwan Fire & Marine Insurance – would pay for one damaged microscope. It also provided that Nan Ya would have no liability regarding the second damaged microscope, which was to be returned to Zygo:

  > T9002 [the second device] will be dealt with by returning the goods and payment for the goods is not required.

  For absolute certainty, Nan Ya prepared three translations of the November 13 agreement – one by an internal paralegal and two by independent outside translation services. All three are consistent. See Facts ¶ 7.

- The agreement was signed by two Nan Na representatives and two Taiwan Fire & Marine employees. Timothy Smith, Asia Pacific Sales & Marketing Manager for Zygo, signed the agreement on behalf of Zygo. . . . A representative of Lee Tech, a Taiwanese company that acted as Zygo's agent in some aspects of this matter, signed as well. . . . The agreement was also signed by Kelvin Walch, a third party who determined the salvage values of the two damaged devices, and a representative of a third party surveying firm associated with Nan Ya. See Facts ¶ 8.

- Mr. Smith and the Lee Tech representative reported to Larry Martin, a Connecticut-based staff assistant to Zygo's President. See Facts ¶ 9.

- That evening (the early morning of November 13 in Connecticut), Lee Tech emailed Timothy Smith and Mr. Martin and stated that "It is glad that the problem of two damaged systems have been settled in today's meeting." See Facts ¶ 10.

- Mr. Martin responded by email to Lee Tech and Mr. Smith the same day by stating "I want to thank all of you for the effort put in to resolve this situation." See Facts ¶ 11.

- Zygo did not seek payment for the second device from Nan Ya or re-assert any other issues settled in the November 13 contract. See Facts ¶ 16.

In accordance with then Local Rule 9(c), Royal admitted all of these facts and Zygo had no right to attempt to contradict any of these facts. (Exhibit 1 at 18.)[4] Thus, as of Nan Ya's summary judgment, the undisputed facts were that the parties, through authorized representatives, had agreed on November 13, 2000 that no payment would be required from Nan Ya for the second device. Moreover, after November 13, 2000, Zygo never sought payment for this device from Nan Ya nor attempted to re-assert "any other issues settled in the November 13 contract."

The record is extraordinarily clear that Royal consciously and intentionally made several strategic choices that set the pat of this litigation. In a letter to Zygo's counsel, Mr. Nicoletti explained Royal's decisions: (a) not to oppose Nan Ya's motion, (b) not to adopt Zygo's opposition, and (c) not to pursue discovery until after the summary judgment proceedings and then only if the Court denied Nan Ya's motion:

> **[W]e are neither opposing Nan Ya's motion nor are we intervening in any attempt by Zygo to defeat Nan Ya's motion**. Simply stated, Royal does not have any direct information at this time to oppose Nan Ya's notice. **In fact, the information which is available to Royal would support Nan Ya's contention. If Nan Ya's motion is defeated on an issue of fact or otherwise, this office, on behalf of Royal, will aggressively pursue pre-trial discovery of both Nan Ya and Zygo to obtain the truth of the matter**, . . . .

(Letter from John Nicoletti to Ian Bjorkman at 2 (dated July 26, 2002) (emphasis and underscoring added).)[5] Although not mentioned in this letter, Royal also chose not to request

---

[4] As explicitly recognized by the Court in its December 14, 2004 Order, "Royal could have moved to adopt Zygo's opposition to Nan Ya's motion for summary judgment; but no such steps were taken." (Exhibit 1 at 18.) In addition, the Court noted that "this case does not fall under this Court's admiralty or maritime jurisdiction, so Royal cannot be said to have 'tendered' Nan Ya to Zygo under Fed. R. Civ. P. 14(c)" and "Zygo could have moved to intervene in Royal's suit against Nan Ya," (id. at 18), but did not do so.

[5] A copy of this letter is attached as Exhibit 6.

that the Court defer consideration of the summary judgment motion until after additional

discovery under Rule 56(f).

While refusing to admit to Zygo's accusation that Royal was, in effect, laying down in

the Nan Ya fight, Royal clearly viewed Nan Ya's motion for summary judgment:

> If Nan Ya is correct in its allegations that Zygo released Nan Ya from any obligation to
> pay for the second shipment that, in and of itself, would be sufficient to defeat Zygo's
> coverage under the Royal policy . . . .
> * * *
> [I]t is the opinion of the undersigned, as counsel for Royal, that Nan Ya's motion
> establishes that Royal had and has reasonable basis to deny the Zygo claim.
> Accordingly, and by this letter, we demand that Zygo withdraw any "bad faith" claim
> under penalty of Rule 11 of the Federal Rules of Civil Procedure.

(*Id*. at 2-3.)  Thus, Royal not only made a conscious choice to allow Nan Ya's motion for

summary judgment to proceed unopposed, it did so in anticipation of gaining strategic

advantage in its litigation with Zygo.

## B.    Nan Ya's Efforts to Correct the Procedural Error

On September 12, 2002, Judge Goettel granted summary judgment to Nan Ya – albeit

for the wrong reason and with an express refusal to accord it any collateral estoppel effect.

(Endorsement 9/12/02.)[6]  Thereafter, as this Court observed in the Order, "Nan Ya twice

moved for reconsideration, requesting a ruling on the merits, which was denied."  (Exhibit 1 at

9.)  In particular, Nan Ya asked Judge Goettel to consider whether, based on the undisputed

material facts in the record at the time of Nan Ya's motion, Nan Ya was entitled to summary

judgment as a matter of law.[7]  In a further effort to correct Judge Goettel's procedural error,

---

[6] A copy of the Endorsement is attached for the Court's convenience as Exhibit 7

[7] A copy of Nan Ya's request for reconsideration and/or clarification is attached hereto as
Exhibit 8.

Nan Ya requested that the Court certify this issue to the Second Circuit on an interlocutory appeal.[8] All of Nan Ya's efforts to address the procedural error failed. (Exhibit 10)

Judge Goettel's ruling was disastrous to Royal entirely because of Royal's strategic miscalculations in failing to take discovery before the motion, failing to oppose the motion, and failing to recognize that Zygo lacked standing to oppose the motion. The ruling left Royal without Nan Ya to fight against Zygo and, more so, without the ability to use Nan Ya's victory against Zygo. Still hoping for the chance to knock Zygo out, Royal encouraged Judge Goettel to rule on the merits. In a September 18, 2002 letter to Judge Goettel, Royal insisted that the Court

> had before it all that it needed to decide Nan Ya's motion on the merits, with full collateral estoppel effect in the event that it saw fit to grant that motion…. By stating that the ruling was not on the merits and would have no collateral estoppel effect on this litigation, the Court may have opened the door to unnecessary additional judicial proceedings and the possibility of inequitable results therein…"

(Exhibit 11) (emphasis added). Although this appeal failed, Royal would later use this same artifice in August 2004, cloaking its own strategic objectives in the garb of judicial efficiency and fairness.

## C.    Royal and Zygo Proceed To Litigate Without Nan Ya

After Judge Goettel granted Nan Ya's motion for summary judgment, Royal compounded its strategic mistakes. Although it could have sought a Rule 54 certification of Judge Goettel's ruling, as Nan Ya did (dkt. # 88), Royal instead proceeded to file an appeal based on the erroneous assumption that admiralty jurisdiction applied.[9] In the meantime, Royal realized

---

[8] A copy of Nan Ya's motion for certification under Rule 59(b) of the Federal Rules of Civil Procedure is attached hereto as Exhibit 9.

[9] Zygo, for its part, opposed Nan Ya's motion for certification under Rule 54, arguing that Nan Ya was not harmed by Judge Goettel's ruling because "Nan Ya is essentially in the same position that it would have been had it not been sued until there was a determination of the

apparently for the first time that it might be useful to depose someone from Nan Ya in Taiwan –
particularly, if *Royal* were going to have to try to prove that Zygo had settled with Nan Ya.
Thus, *after* Nan Ya had obtained summary judgment, Royal filed a motion to conduct
depositions of Nan Ya during the pendency of Royal's ill-founded appeal. (Dkt. # 100.)   On the
same date that the Second Circuit dismissed the appeal, Judge Goettel denied Royal's motion.
(Dkt. 104; Endorsement Ruling 2/27/03.)

        Of course, even after the summary judgment, Royal could have sought discovery from
Nan Ya, and it had plenty of time to do so.[10]  Apart from having over a year of discovery before
the summary judgment, Royal had almost two years after.  In March 2003, Royal sought and
obtained a lengthy extension of the discovery schedule expressly for the purpose of deposing
Nan Ya.  (*See* dkt. ## 106-110).  Royal failed, however, to conduct discovery of Nan Ya.  In
June 2003, Royal requested and received another extension of discovery, this time for ninety
days.  (Dkt. # 124; Endorsement 6/5/03.)  In September 2003, over two years after it commenced
this suit, Royal again sought to extend the discovery period, this time for an additional 120 days.
(Dkt. 126.)  Judge Goettel again acquiesced.  (Endorsement 9/4/03.)  In December 2003, Royal
returned again and obtained yet another extension.  (Dkt. ## 128, 129.)  In March 2004, Royal
was back seeking and obtaining a two-month extension.  (Dkt. ##130, 131.)  In May 2004, Royal

---

coverage dispute between Royal and Zygo."  (Dkt. # 95 at 2.)  This argument ignored a critical
fact that Zygo itself later pressed at the status conference of August 2004:  Nan Ya had not only
been sued, it had incurred substantial expense preparing a motion for summary judgment to
which it believed it was entitled to a ruling on the merits. Moreover, unless the Court reconsiders
the Order, Nan Ya will be placed in a far worse position by having "won" summary judgment
that if it had "lost."

        [10] Nan Ya, a Taiwanese company, maintained  that any discovery would have to proceed,
if at all, in Taiwan and in accordance with treaties and conventions between the United States
and Taiwan, which allow for letters rogatory.  While insisting that it had the right to take
depositions, Royal did not pursue any means of discovery.

sent a letter requesting still another extension until June 11, 2004. (Dkt. 132.) Treating this letter as if it were a motion, Judge Goettel granted this final extension. (Dkt. 133.) With all of these numerous extensions, the Court had allowed Royal a discovery period of nearly three years. In all of this time, however, Royal failed to pursue discovery from Nan Ya to obtain the evidence it now claims that "justice" requires.

Although Nan Ya did not participate for obvious reasons, it is apparent that Royal did take significant discovery from Zygo – at least in the latter stages of the lengthy discovery schedule. For example, attached to the cross-motions for summary judgment are excerpts from depositions that Royal and Zygo took in 2003 and 2004, after Nan Ya was dismissed from this case. Indeed, three of the Zygo representatives whose testimony the Court referenced in the Order were all deposed in 2004: Timothy Smith, Lawrence Martin, and Kevin Walch. (Aff. of Erika L. Amarante (dated July 7, 2004), Exs. 24 (Smith Tr., dated 1/22/04), 25 (Martin Tr., dated 2/5/04), and 28 (Walch Tr., dated 6/7/04).)

**D.      The Events Leading Up to the Order**

On May 28, 2004, on the eve of dispositive motions, this case was transferred from Judge Goettel to Judge Arterton. With a new judge on the case and trial briefs due soon, Royal decided it was an opportune time to revive its initial and failed strategy of pitting Zygo and Nan Ya against each other while Royal sat on the sidelines. In late July, tacked onto the end of a brief opposing Zygo's motion for partial summary judgment, Royal suggested that the Court revisit Judge Goettel's ruling granting summary judgment to Nan Ya. (Royal Mem. in Opp. to Zygo's Mot. for Partial S.J. at 36-38 (Dkt. 152 filed July 30, 2004).) Royal did not file any motion requesting this relief, nor did it alert Nan Ya that it had made this suggestion.

On August 5, 2004, the Court convened a status conference.  Royal's counsel seized this opportunity to suggest early and often that the only sensible way to correct Judge Goettel's procedural error was to return Nan Ya to this case.  (*See, e.g.*, Transcript at 4 (claiming that the case "got off track" because Nan Ya was dismissed); 5 ("we're hobbling along without one of the critical parties" and suggesting that a recent decision from the Second Circuit compelled this result); 6 ("it seems to us that an initial point would be to look at" rejoining Nan Ya, which "seems to me the prudent thing . .   so that the trial can go forward with Nan Ya involved as it should have been from the start"); 7 ("I think that's a major stumbling block" and stating that "it requires some kind of corrective action now to prevent judicial and economy [sic] and inconsistent results.")  **Royal conveniently never informed the Court that, in the year before Nan Ya was dismissed and in the twenty-one month discovery period after, Royal had failed to prepare to try its case against Zygo and, thus, was not ready to proceed to trial without Nan Ya.  Nor did Royal advise the Court that Royal had intentionally chosen to allow Nan Ya's summary judgment motion to proceed unopposed and that Royal neither adopted Zygo's opposition papers nor sought to defer the motion under Rule 56(f).**

Instead of admitting to its own errors, including its failure to gather evidence from Nan Ya in the over three years that the case was pending, Royal first blamed Judge Goettel and suggested that this was the last opportunity for the <u>Court</u> to correct a wrong implicitly done to Royal:

> So, you know, this train got derailed two years ago and this is the last clear chance to get this evidence that's critical to our defense back in the case, to bring in a party that's critical to the case.

(Exhibit 2 at 18.)  Royal then tried to blame Zygo as well:

> [I]sn't it interesting that . . . Zygo doesn't file a claim [against Nan Ya] saying you owe us $690,000 . . .[?]  . . . Instead, they invited Nan Ya to get out of the case, and I think this is a situation that really, really needs to get corrected because it's very unfair . . .

(Exhibit 2. at 18-19.)[11]   Royal then pointed to judicial economy – rather than its own need for evidence that it failed to gather – as a purported basis for hauling Nan Ya back into this case after two years:

> [V]ery importantly, we're just going to be back here a year or two from now and that would be a complete waste of judicial resources and the resources [of] the parties.

(Exhibit 2 at 19.)

Royal capped off this misleading presentation by failing to apprise the Court that Nan Ya had requested a jury trial and by minimizing the enormous imposition on Nan Ya of being brought in at this late stage of the litigation.  First, Royal pointedly ignored Nan Ya's right to a jury trial, an obvious impediment to Royal's pitch:

> THE COURT:  My docket sheet is captioned that both parties have demanded a jury, but that's incorrect?

> Mr. Ginos:  Well, it's either incorrect or **both parties** have changed their mind.

(Tr. at 21.)  When the Court later thought to ask specifically about Nan Ya, Royal's counsel claimed ignorance:

> THE COURT:  Had Nan Ya claimed a jury trial?

> Mr. Bjorkman:  That's a good question, your Honor.

> Jeff, do  you remember?  They may have.

> Mr. Ginos:  They were dismissed when I got into the case.

---

[11] Royal's representation that Zygo invited Nan Ya's motion is as ironic as it is inaccurate, given that Zygo opposed the motion, and Royal did not, and in light of Royal's obvious recognition that a Nan Ya victory would benefit Royal.

(Exhibit 2. at 28.)  The response that Royal's counsel, Mr. Ginos, offered is somewhat surprising because another member of his firm specifically responded to Nan Ya's claim of a jury trial by contesting that right.  See Exhibit 3.  Moreover, Mr. Ginos never bothered to correct the record on this score, even when he sent a letter on November 30, 2004 to further encourage the Court to join Nan Ya as a party.  See Exhibit 4

Royal also minimized the obvious imposition on Nan Ya of being joined in a case that was over three years old – even though Nan Ya had been out of the case for two years discovery was closed, and although the case was headed for trial.  Once again, Royal's counsel was less than forthright in this regard.  For example, Mr. Ginos suggested that Zygo would not have to incur the costs of depositions in Taiwan because Nan Ya could simply fly its witnesses to California.

> With C. Tait Graves, Nan Ya's counsel on the west coast, we could probably work something out where their witnesses came here and maybe their costs were covered by us.

(Tr. at 29.)  Implying that this would be an acceptable arrangement for all involved, Mr. Ginos failed to inform the Court that he had raised this suggestion repeatedly with Nan Ya's counsel in the past and was repeatedly rebuffed.  (See, e.g., 1/6/03 Pl/Third-Party Pl's Mot. to Take Dep. of Third-Party Def. Nan Ya Technology Corp. Pending Appeal) (dkt number); (dkt number).[12]

Moreover, Royal grossly understated the prejudice to Nan Ya of Royal's extraordinary request:

> Mr. Ginos:  I should mention, your Honor, all of the notices of deposition I think went to Nan Ya's counsel because we anticipated that they'd be back in the case one way or another . . . .  There were quite a few depos that I don't believe would be of any interest to them, and I suspect that the number of depositions of Nanya's people would be maybe two and their wanting redepose or bring back somebody would probably be two or three.

---

[12] Nan Ya's Opposition to Royal's Motion is attached as Exhibit 12

(Exhibit 2. at 30.)  Royal's suggestion ignores entirely the reality that Nan Ya, which had been dismissed from this case for approximately two years, had no reason to participate in the intervening discovery.  More importantly, Royal has no right to limit Nan Ya's ability to conduct discovery, particularly when Royal sought and received multiple extensions of time of to conduct whatever discovery it wanted amounting to well over a year.

In sum, although Nan Ya bears no responsibility for the course of events in this case, Royal does.  Royal consciously chose not to seek discovery from Nan Ya before the summary judgment motion.  Royal then failed to oppose summary judgment, including Nan Ya's statement of undisputed facts, and it failed to request that the Court defer consideration of the motion under Rule 56(f).  After the summary judgment, Royal failed to obtain any discovery from Nan Ya despite having nearly two years.  Moreover, in its eagerness to pitch Nan Ya as the only solution for a case gone astray, Royal omitted several things from its presentation to the Court at the status conference of August 2004:

- Royal desperately needed Nan Ya as a party because Royal had failed to take any depositions of Nan Ya and could not compel witnesses to come from Taiwan to participate in a trial with Zygo;

- Although it sought this extraordinary relief, Royal had not filed any motion as required by Fed. R. Civ. P. Rule 7(b), which would have afforded Nan Ya notice and opportunity to respond; nor had Royal advised Nan Ya that Royal intended to press the Court vigorously at the status conference to reverse Nan Ya's summary judgment and require it to join this case on the eve of trial;

- Not only had Nan Ya requested a jury trial, but Royal's counsel had written to Nan Ya's counsel insisting that Nan Ya had no right to claim a jury because this case supposedly arose under admiralty jurisdiction; and

- Although Judge Goettel made a procedural error, most of the problems with this case arose from Royal's many, strategic miscalculations:

  - Royal apparently chose to stop investigating the existence of a settlement once it received an admission from a representative of Zygo.

-15-

- Royal chose not to depose anyone from Nan Ya before the summary judgment;

- Royal wrongly assumed that Zygo had standing to oppose Nan Ya's motion for summary judgment and wrongly maintained that admiralty jurisdiction applied;

- Royal chose to straddle the line between the existence vel non of a settlement and pointedly refusing to adopt Zygo's papers in opposition to summary judgment or to dismiss its claims against Nan Ya;

- Royal chose not to request that the Court reserve consideration of summary judgment under Rule 56(f) until Royal could discover sufficient facts either to oppose the motion or to abandon its claim against Nan Ya; and

- Royal ignored the operation of Local Rule 9(c) (1),[13] which deemed Nan Ya's statement of undisputed facts admitted as to Royal for purposes of Nan Ya's motion.

Nan Ya respectfully submits that Royal's omissions materially mislead the Court to reach the wrong result when it re-evaluated Nan Ya's motion for summary judgment.

**E.     Post-Order Events Confirm Royal's Goal of Fixing Its Many Failures**

On December 28, 2004, Royal's counsel sent a letter to the Court regarding the schedule for this case. (Letter from G. Ginos to Hon. J. B. Arterton (dated December 28, 2004) (a copy is attached as Exhibit 13.) As often is the case with Royal, this request for relief appears not in the proper form of motion. Moreover, Royal's letter confirms its goal of using Nan Ya's joinder as a means to correct Royal's many failures to develop evidence in preparation for trial, including

---

[13] Local Rule 9(c)(1), which was in effect at the time Nan Ya moved for summary judgment provided:

> 1. There shall be annexed to a motion for summary judgment a document entitled "Local Rule 9(c)1 Statement," which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried. **All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 9(c)2.**

D. Conn. Local R. 9(c)(1) (2000) (emphasis added).

evidence from non-parties.  Although it has needed this discovery from the outset of this case,

Royal unapologetically requests more time and opportunity for discovery:

> Royal will want to depose two and possibly three Nan Ya Witnesses with knowledge of (1) **the alleged settlement discussion that took place between Zygo Corporation ("Zygo") and Nan Ya with respect to the subject cargo shipment;** and (2) the only damage survey ever conducted with regard to that shipment, from which, Royal was effectively excluded by Zygo, which failed to give any advance notice thereof to Royal.
>
> Royal assumes that **Nan Ya may wish to depose one or two Zygo witnesses who were involved in those settlement discussions**.  Royal also notes that Nan Ya may wish to obtain the testimony of several third-party witnesses residing in Taiwan that Nan Ya may be able to persuade to appear in these proceedings (Zygo's former agent in Taiwan, Billy Wu, and Nan Ya's underwriter representatives and cargo surveyors) with knowledge concerning said settlement discussions and survey and the adequacy of said shipment's packaging.  If Nan Ya intends to offer the testimony of any of these third-party witnesses at trial, Royal will want to depose them beforehand, and we assume that Zygo will want to do so.

(*Id.*)[14]  Thus, having succeeded in persuading the Court to open the door, Royal now is prepared

to reveal more of its agenda.[15]

Nan Ya respectfully requests that the Court reconsider the wisdom and propriety of the

path Royal advocates.

---

[14] Royal offers no explanation for its suggestion that Nan Ya can produce individuals for depositions, a procedure that may be foreign to Taiwanese law.  Moreover, Royal apparently believes that simply because Nan Ya is located in Taiwan it can persuade non-parties, including Zygo's former agent, to participate in depositions.  Query the foundation for that belief.

[15] As will be discussed elsewhere, Nan Ya believes that Royal's request grossly underestimates the actual time that certainly Nan Ya would need to conduct discovery. Moreover, Royal blithely assumes that it and others will be able to take depositions of witnesses located in Taiwan, when the only appropriate procedure may be through the use of letters rogatory addressed through proper international channels – a procedure that is by no means quick.

**ARGUMENT**

**I.    THE COURT SHOULD RECONSIDER AND GRANT NAN YA'S MOTION FOR SUMMARY JUDGMENT BASED ON THE UNDISPUTED MATERIAL FACTS IN THE RECORD AT THE TIME OF NAN YA'S MOTION**

**A.    The Court Should Reconsider Its Ruling to Accord Due Process to Nan Ya**

"Notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure." *Lankford v. Idaho*, 500 U.S. 110, 126 (1991) (footnote omitted).  Nan Ya received no notice that the Court was reconsidering its motion for summary judgment until, in early December, it received Attorney Ginos' letter shortly before the Court issued the Order.  By failing to file a motion or alert Nan Ya of its intent to push for this result at the status conference, Royal effectively deprived Nan Ya of fair procedure.  Unfortunately, in its desire to move this case along and to correct Judge Goettel's procedural error, the Court allowed Royal to proceed without providing Nan Ya notice or an opportunity to respond.  Moreover, the Court also deprived itself of the opportunity to hear from *all* interested parties before issuing the Order.  Accordingly, Nan Ya respectfully requests that the Court reconsider its ruling as to Nan Ya.

Royal clearly went to status conference of August 5, 2004 with a specific goal in mind: convincing a Judge new to this case to bring Nan Ya back.  The transcript of the status conference reveals that Royal's counsel raised this request repeatedly throughout the conference.  Royal failed to notify Nan Ya that Royal intended to make this significant request.  Royal neither advised Nan Ya's counsel in advance of the status conference, nor did Royal file a motion to request this supposedly vital relief with particularity as required by Fed. R. Civ. P. 7(b)(1).  As a result, Royal entirely disregarded Nan Ya's rights to due process.  *See, e.g., Reyes v. Barnhart*, 2002 U.S. Dist. LEXIS 25923 (W.D. Tex. Nov. 25, 2002) ("The purpose of the particularity requirement in Fed. R. Civ. P. 7(b)(1), made applicable to Rule 59 motions, is to afford notice

and opportunity to respond.")  By early December, when Nan Ya first learned of Royal's efforts, it was too late:  not only did Nan Ya lack the opportunity to file a response, the Court was apparently already in the process of preparing a 39-page decision.[16]

In reviewing Royal's letter of November 30, 2004, Nan Ya was quite surprised by the reference to the status conference and discussion of hauling Nan Ya back into this case as a defendant after a two year absence, just in time for a trial on the merits.[17]  Nan Ya obviously was not present at the conference and had to first obtain a copy of the transcript to learn what had transpired at the status conference.  By that time, Royal had already succeeded in convincing the Court to relieve Royal of any adverse legal effects arising from Royal's own tactical decisions to ignore Nan Ya's summary judgment motion and not to pursue discovery.  Unfortunately, the Court allowed Royal's gambit to succeed – ruling when Nan Ya was just beginning to learn the extent of Royal's arguments and without affording Nan Ya any reasonable opportunity to respond.  To the extent that process plays a role in the dispensation of justice, there was none here for Nan Ya.

The serious problems in what transpired are apparent when one considers what should have happened.  In order to obtain relief from Judge Goettel's ruling, Royal should have filed a motion that set forth specifically what Royal wanted and the bases for its request.  Rule 7(b)(1) provides in relevant part:

> An application to the court for an order shall be by motion, which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefore, and shall set forth the relief or order sought.

---

[16] Attached hereto as Exhibit 14 is an affidavit from Nan Ya's counsel, Charlsa D. Broadus, describing her telephone discussions with the law clerk in Judge Arterton's Chambers regarding Nan Ya's intention to respond to Mr. Ginos' November 30, 2004 letter.

[17] A copy of Mr. Ginos' letter is attached hereto as Exhibit 4.

Fed. R. Civ. P. 7(b)(1).  In addition, Royal's motion would have been subject to the requirements

and sanctions of Rule 11.  Fed. R. Civ. P. 7(c), 11.  Moreover, if Royal had followed these rules,

it would also have been required to serve a copy of the motion on Nan Ya.  Fed. R. Civ. P. 5(a)

("every written motion other than one which may be heard ex parte . . . shall be served upon each

of the parties").  By burying its request at the end of a brief opposing Zygo's motion for partial

summary judgment and by raising this issue in the status conference of August 5, 2004, Royal

followed none of these procedures.

Timeliness was certainly one of the serious issues that Royal would have confronted in

preparing any motion for relief from a ruling that the Court issued in September of 2002.  The

Local Rules limit motions for reconsideration to a period of ten days from the filing of the

decision.  Local Rule 7(c)(1).  Judge Underhill recently identified some of the considerations

regarding the timing of motions to reconsider:

> Motions for reconsideration under Local Rule 9(e) are essentially motions for
> amendment of judgment under Fed. R. Civ. P. 59(e).  *See City of Hartford v. Chase*, 942
> F.2d 130, 133 (2d Cir. 1991).  When such motions are untimely, they are construed as
> motions for relief from judgment under Fed. R. Civ. P. 60(b). *See* Wright, Miller & Kane,
> *Federal Practice and Procedure* § 2817 & n. 16, at 184 (1995).  Although a district court
> retains the "inherent power to decide when a departure from its Local Rules should be
> excused or overlooked," *see Somlyo v. J. Lu-Rob Enters.*, 932 F.2d 1043, 1048 (2d Cir.
> 1991), specific provisions of the Federal Rules of Civil Procedure may shed light on
> whether a district court has abused its discretion in departing from its local rules.  *See
> Ass'n for Retarded Citizens of Conn., Inc. v. Thorne,* 68 F.3d 547, 553-54 (2d Cir. 1995)
> (finding no abuse of discretion where district court's consideration of untimely motion
> was "based on rationales for granting Rule 60(b) relief").

*Horsey v. Bysiewicz*, No. 3:99 CV 2250 (SRU), 2004 U.S. Dist. LEXIS 5559 (D. Conn. Mar. 24,

2004). [18]  For example, a motion for reconsideration based on newly discovered evidence under

Rule 60(b)(2) must be made within one year.  *See* Fed. R. Civ. P. 60(b).  Moreover, a party

---

[18] A copy of unreported decisions are attached hereto in alphabetical order for the Court's
convenience (Exhibit 15).

seeking relief by untimely motion bears the burden of establishing good cause for the delay. *See, e.g., Kotlicky v. United States Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987). By failing to file a motion at all, Royal apparently avoided any scrutiny into its failure to raise these arguments in a timely fashion and evaded any consideration of the clear prejudice to Nan Ya.

Of course, a party may seek leave to file an untimely motion to reconsider. *See, e.g., Leyda v. Alliedsignal, Inc.*, 322 F. 3d 199, 206-7 (2d Cir. 2003) (affirming the denial of a motion for leave to file an untimely motion to reconsider where Judge Hall had determined that the defendant was on notice of the issue it was attempting to raise but had failed to do so in a timely manner). Royal, however, chose to file nothing. In this way, Royal avoided both having to provide notice to Nan Ya and having to explain why Royal was acting so late and why it should not be held accountable for its earlier strategic decisions and failures to prepare for trial.

In filing a motion to reconsider, Royal also would have been subject to other significant limitations. Motions to reconsider generally do not allow a party to advance a new position or to introduce evidence that was available earlier. *See, e.g., Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir. 1993) (a motion for reconsideration cannot be used to raise arguments that could have been raised earlier or "to introduce new evidence that could have been adduced during pendency of the summary judgment motion."); *Martin v. Dupont Flooring Sys., Inc.*, No. 3:01 CV 2189 (SRU), 2004 U.S. Dist. LEXIS 9373 (D. Conn. May 25, 2004) ("The only permissible grounds on which to grant a motion for reconsideration are: (1) an intervening change in the law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice.") (citation omitted). Indeed, by attempting to change its position radically from not opposing Nan Ya's motion to arguing that summary judgment was inappropriate, and by invoking evidence used in the cross-motions for

summary judgment, Royal in fact went well beyond the prohibition on introducing new arguments in motions for reconsideration. *See, e.g., A Seaboard Stamford Investor Assoc. v. Thinkdirectmarketing, Inc*., No. 3:03cv1110 (PCD), 2004 U.S. Dist. LEXIS 1688 at *3 (D. Conn. Feb. 6, 2004) ("'A motion for reconsideration cannot be employed as a vehicle for asserting new arguments or for introducing new evidence that could have been adduced during the pendency' of the underlying motion.") (quoting *Lo Sacco v. Middletown*, 822 F. Supp. 870, 877 (D. Conn. 1993)).

Moreover, Royal not only took an entirely different position in its motion for reconsideration, it also relied on evidence that Zygo – a party that lacked standing – produced over two years ago. Furthermore, although the additional evidence from depositions that Royal took of Zygo employees in 2004 certainly was available to Royal during the first year of this suit, Royal simply failed to take these depositions during the first year of this suit. *See, e.g., Johnson v. Askin Capital Mgmt., L.P.*, 202 F.R.D. 112, 114 (S.D.N.Y. 2001) (discussing the onerous standards that apply to requests for relief based on newly discovered evidence, including the requirement that the movant establish that the evidence could not have been discovered by due diligence). Under these procedures and standards, Royal could not have been able to justify either its change its position or its effort to introduce evidence it had from Zygo and that it obtained in discovery it should have conducted earlier.

Whatever the timing or merits of Royal's request, Nan Ya was entitled at a minimum to receive fair notice and opportunity to respond. *Mathews v. Eldridge*, 424 U.S. 319, 348-349 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'") (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-172 (Frankfurter, J., concurring). Accordingly,

-22-

fairness and due process require that the Court reconsider its Order to allow Nan Ya the

opportunity to respond to Royal's request.

      B.      **The Court Failed To Accept As Proven Nan Ya's Statements Of Uncontested Facts and Improperly Considered Evidence Later Submitted By Royal And Zygo**

Having tried to correct Judge Goettel's procedural error in several ways, Nan Ya

appreciates the Court's express desire to "correct a clear error of law." (Order Exhibit 1 at 16-

17.) Aside from the due process concerns, discussed above, however, Nan Ya takes issue with

the Court's failure to weigh Nan Ya's statement of undisputed facts and its reliance on evidence

submitted by Royal and Zygo in the context of their cross-motions for summary judgment.

      The Court conflated its reconsideration of Nan Ya's motion for summary judgment with

its consideration of the cross-motions between Zygo and Royal. The Order expressly drew its

factual background from three sources: "Royal and Zygo's Local Rule 56(a)(1)-(2) statements

[docs. ## 139, 145] as supported by accompanying evidence, and evidence submitted by Nan Ya

in support of its motion for summary judgment." (Ex. 1 at 2.) Noticeably absent from this list is

Nan Ya's statement of undisputed facts (dated June 13, 2002). (Ex. 2). Given that Royal did not

oppose Nan Ya's motion for summary judgment, it admitted the facts identified in Nan Ya's

statement and supplemental statement of undisputed facts. L. Civ. R. 56(a)(1) (formerly Rule

9(c)) for the District of Connecticut). Thus, what Judge Goettel should have done initially, and

the what this Court should have done in re-evaluating Nan Ya's motion for summary judgment

was to evaluate whether, with the facts in these statements being admitted, Nan Ya was entitled

to judgment as a matter of law.

      In *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244-47 (2d Cir. 2004),

the Second Circuit made clear that courts may not use local rules to treat a non-movant's failure

to oppose summary judgment as an automatic default warranting an award of summary judgment. *See id.* at 244 ("in determining whether the moving party has met [the] burden of showing the absence of a genuine issue for trial, the district court may not rely **solely** on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion.") (emphasis added). At the same time, however, **the Second Circuit has never held that local rules have no force and effect in deeming admitted uncontroverted facts**. Indeed, to do so, the Second Circuit would have to overrule *Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir. 1984), which affirmed the grant of summary judgment based on the non-moving party's failure to contradict assertions made in a statement of undisputed facts in accordance with then Local Rule 3(g) of the Southern District of New York. To the contrary, the Second Circuit confirmed in *Vt. Teddy Bear* that, under local rules like Local Rule 9(c), the non-movant's "failure to respond may allow the district court to accept the movant's factual assertions as true. . ." *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244-47 (2d Cir. 2004) at 246.

The only instances in which the Second Circuit has held that a court may not rely on uncontradicted statements of undisputed facts have occurred when the movant failed to provide *any* evidentiary support for facts asserted. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 & n. 3 (2d Cir. 2003) (a court may not deem admitted an uncontroverted statement of fact that is based on a "wholly unsupportive record citation"); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) ("a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.") Where, as here, the moving party has met its burden of production by supplying some evidence that supports its assertions of fact, the assertions are deemed admitted as stated if the nonmovant fails to file an opposing statement in

accordance with the local rules.  *See, e.g.*, *Cashman v. Ricigliano*, 2004 U.S. Dist. LEXIS 17027 at *3 (D. Conn. Aug. 25, 2004) (Kravitz, J.) (deeming admitted facts in statement of undisputed facts because the nonmovant failed to comply with local rule requiring a statement of disputed facts); *SEC v. Cavanagh*, 2004 U.S. Dist. LEXIS 13372 at *39 (S.D.N.Y. July 15, 2004) ("If the opposing party fails to controvert a properly supported fact in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (footnote omitted); *SEC v. Global Telecom Servs. L.L.C.*, 325 F. Supp. 2d 94, 109 & n. 2 (D. Conn. 2004) (Dorsey, J.) (same).  Indeed, as the Second Circuit made clear in *Vt. Teddy Bear*, a party that fails to oppose summary judgment under local rules like Rule 9(c) chooses "the risky and imprudent path of relying solely on [the moving party's] failure to meet its burden of production."  *Vt. Teddy Bear*, 373 F.3d at 247.

        In this case, however, the Court entirely disregarded Nan Ya's statement of undisputed facts and Royal's deemed admissions under Local Rule 9(c)(1).  The Order never mentions Nan Ya's statement.  Nor did the Court check Nan Ya's statement to determine whether the evidence Nan Ya cited provide some support for the facts asserted and, thus, a basis for Royal's admissions.  *See Giannullo*, 322 F.3d at 143 n.5.  Rather, the Order proceeds to evaluate Nan Ya's evidence under a much higher standard – namely, whether it unambiguously supports only the inference set forth in Nan Ya's local rule statement.  *See* Order Exhibit 1 at 20-25.  In other words, not only did the Court allow Royal to obtain reconsideration without filing any form of motion, it overcorrected Judge Goettel's error of an automatic default by absolving Royal of any deemed admissions under Local Rule 9(c).

        Moreover, even though Royal intentionally forfeited any right to oppose Nan Ya's motion for summary judgment and Zygo lacked standing to do so, the Order evaluates Nan Ya's supporting evidence in the context of other evidence that Royal and Zygo submitted in their

cross-motions for summary judgment.  *See* Order Exhibit 1 at 20-25. The facts upon which the

Court improperly relied when issuing its ruling with regard to Nan Ya include:

- Deposition testimony by Smith stating that: (1) although he signed the minutes of the November 13, 2000 meeting, he did not know their contents because he does not know Chinese; (2) when he asked for a quick translation, a Lee Tech representative told him there was "no substance" to the minutes; (3) he signed the minutes only to confirm his attendance; and (4) that he left the meeting "feeling that there had been no agreements."  (Order Exhibit 1 at 6, 12.)

- Deposition testimony by Walch that he was at the November 13 meeting to discuss his appraisal, not "commercial" matters but that he came away from the meeting absolutely totally convinced that Nan Ya were agreeing to "settle the payment on both tools."  (*Id*. at 13.)

- Statements by Zygo that Walch's statement that Nan Ya would "settle payment" on both microscopes means that Walch believed that Nan Ya would pay Zygo in full for both AFMs.  (*Id*. at 13.)

- Statements by Larry Martin in his affidavit that he "was never informed by Mr. Smith, or anyone else, that there was any agreement to release Nan Ya from liability for the second AFM, or to in any way change the terms of the deal such that Nan Ya did not have to pay for the second AFM" and that "any such agreement would have been beyond the scope of the authority given to Mr. Smith."  (*Id*. at 14.)

- Deposition testimony by Larry Martin that he believed the "primary purpose" of the meeting "was to assess the salvage value and to resolve the…payment balance on the second machine."  (*Id*. at 14.)

- Deposition testimony by Smith that the purpose of the November 13, 2000 meeting was to resolve the salvage value of the AFMs only, and that other payment issues were to be resolved at a later date by further negotiation.  (*Id*. at 20.)

Although the record at the time Nan Ya filed its unopposed motion for summary

judgment included none of this evidence, the Court reconsidered Nan Ya's motion in the context

of this inadmissible material.  For example, the Order recognized that Nan Ya's evidence would

support an inference that the purpose of the meeting of November 13, 2000 was to resolve all

issues concerning payment for the second AFM, but the Order then proceeded to note that there

are other possible inferences as "Smith testified."  (Order Exhibit 1 at 19-20.)  Similarly, while

recognizing that the meeting minutes supply evidence of a settlement agreement, the Order found

-26-

ambiguity in whether the minutes were intended to serve as a contractual compromise. (*Compare* Statement of Undisputed Facts, ¶ 7 (stating that the parties signed a compromise agreement) with Order Exhibit 1 at 20 (noting that the words "contract", "agreement" or "modification" do not appear in the minutes). Likewise, although Nan Ya's Statement of Undisputed Facts asserted that Zygo's representatives assented to the settlement by signing it and sending confirmatory messages (Statement of Undisputed Facts, ¶¶ 8-11), the Order points to questions of credibility that arise when comparing these facts to deposition testimony adduced in the cross-motions for summary judgment between Royal and Zygo. (Order Exhibit 1 at 22.) Lastly, the Order speculates – with no evidentiary support – that Zygo's Mr. Smith may not have acted with authority and that "Nan Ya [may have] slipped the language about 'no payment' into the meeting minutes, in Mandarin, without Smith's knowledge." (Order Exhibit 1 at 24-25.) Once again, the Order clearly holds Nan Ya to a standard higher than providing some evidentiary support for the Statement of Undisputed Facts, ignores Royal's admissions, and relies on inadmissible evidence presented by Royal and Zygo in later motions.

Given that Nan Ya produced evidence to support its statement of undisputed facts – even assuming that evidence was susceptible to other possible interpretations – Royal admitted all of the facts set forth in Nan Ya's statement. *See, e.g., Vermont Teddy Bear*, 373 F.3d at 246 (the failure to respond may allow the district court to accept the movant's factual assertions as true"). Accordingly, on reconsideration, the Court should have granted Nan Ya's motion for summary judgment because, when on those admitted facts are considered, Nan Ya was entitled to judgment as a matter of law.

Based on the record presented at the time of Nan Ya's motion, including Royal's admissions under Local Rule 9(c), Judge Goettel's procedural error was harmless: he properly

granted summary judgment although for the wrong reason. Fed. R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.") Accordingly, Nan Ya respectfully requests that the Court reconsider Nan Ya's motion and affirm the award based on the merits as between Royal and Nan Ya.[19]

## II.    ALTERNATIVELY, THE COURT SHOULD BIFURCATE AND TRY FIRST THE CLAIMS BETWEEN ROYAL AND ZYGO AND THEN, ONLY IF NECESSARY, PROCEED TO A JURY TRIAL OF ROYAL'S CLAIMS AGAINST NAN YA

This case effectively ended for Nan Ya in September of 2002 when the Court granted it summary judgment. Since that time, Royal and Zygo have had the opportunity to engage in extensive discovery and to prepare for trial. Nan Ya, by contrast, has not. In sharp contrast to Royal and Zygo who have actively litigated this case for the past two and half years, Nan Ya suddenly received the Court's Order in mid-December and now faces a January 17, 2005 deadline for filing trial memoranda. To say that these dramatic changes have prejudiced Nan Ya, a company based in Taiwan, is to engage in gross understatement.

It is manifestly unjust to require Nan Ya to participate as a defendant in a looming trial. For example in *Schaab v. Owens-Corning Fiberglas Corp.*, No. 88-9180, 1990 U.S. Dist. LEXIS 6083 (E.D. Pa. May 16, 1990) the Court initially gave the defendant leave to add third-party defendants. On further consideration, however, the Court granted the third-party defendants' motion to dismiss based on prudential considerations, the Court noted, among other things, that the third party complaint was initiated within three months of the scheduled trial

---

[19] Presumably Royal cannot use Nan Ya's summary judgment against Zygo because of Royal's conduct and because Zygo lacked standing to oppose this motion. That, however, is not an issue of concern to Nan Ya.

date "and the resulting prejudice to the third party defendants of having to hastily prepare their defenses." Id. at 2 fn. 3.  In this case, the prejudice to Nan Ya is patent, Nan Ya, indeed, would have been far better off if it had lost summary judgment over two years ago.  Moreover, Nan Ya would need a substantial amount of time simply to obtain and review all of the information generated in discovery by Royal and Zygo,[20] much less to prepare to respond to it – assuming, as it appears to be implicit in the Court's scheduling, that Nan Ya would have no rights to conduct discovery for itself.  Of course, if it is to be brought back into this case, Nan Ya should have a fair opportunity to conduct discovery of Royal and Zygo.  Indeed, even Royal, which showed almost no regard for Nan Ya's rights and interests, suggested at the status conference that Nan Ya would want to depose some witnesses.  Of course, Royal was not so concerned as to bring this issue to the Court's attention before the close of discovery.

Not only is this turn of events unfair to Nan Ya, it is also entirely unnecessary and inefficient.  Royal's contingent claim against Nan Ya is not even ripe because Royal has failed to pay a penny to Zygo and denies that it has any obligation to do so.  Royal's claim that judicial efficiency compels the inequitable result that severely and unduly prejudices Nan Ya is mistaken.  Rather, Royal's need for evidence it failed to obtain despite a discovery period of three years is the real impetus for its motion.

Lastly, Royal and Zygo have not claimed a jury trial, but Nan Ya has.  It would be far more efficient to have the Court conduct a brief trial on the merits of the Royal-Zygo dispute.  Indeed, the court trial may obviate the need to empanel a jury with regard to Royal's claims

---

[20] In addition to the voluminous pleadings that the Court inherited with this case, there are presumably many other discovery documents that are not part of the record, including complete transcripts of all depositions and documents produced in discovery.  Nan Ya has not received these documents, much less digested them to prepare for trial.

-29-

against Nan Ya and would, assuming the Court were to deny Nan Ya's motion for summary judgment, allow Nan Ya a fair opportunity to conduct discovery and prepare for trial.

## III.    <u>CONCLUSION</u>

For all of the foregoing reasons, Nan Ya is entitled to summary judgment against Royal. Alternatively, the Court should proceed to try the Royal-Zygo claims, bifurcating the jury trial of Royal's contingent claim against Nan Ya.

NAN YA TECHNOLOGY CORPORATION


By: _____
　　　Daniel L. FitzMaurice (ct#05331)
　　　Charlsa D. Broadus (ct#22153)
　　　DAY, BERRY & HOWARD LLP
　　　CityPlace I, 185 Asylum Street
　　　Hartford, CT  06103-3499
　　　(860) 275-0100 (phone)
　　　(860) 275-0343 (fax)
　　　dlfitzmaurice@dbh.com
　　　cdbroadus@dbh.com


　　　Tait Graves, Esq. (*pro hac vice* 23302)
　　　WILSON SONSINI GOODRICH &
　　　　ROSATI
　　　650 Page Mill Road
　　　Palo Alto, CA  94304
　　　(650) 493-9300 (phone)
　　　(650)565-5100 (fax)
　　　tgraves@wsgr.com

　　　Its Attorneys

## CERTIFICATION

**THIS IS TO CERTIFY** that a true and correct copy of the foregoing document has been served by U.S. Mail, postage prepaid, this 29th day of December, 2004, to the following counsel of record:

Robert K Marzik, Esq.
LAW OFFICES OF ROBERT K. MARZIK, P.C.
1512 Main Street
Stratford, Connecticut 06615

Geoffrey J. Ginos
NICOLETTI HORNIG CAMPISE & SWEENEY
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801

Ian E. Bjorkman, Esq.
WIGGIN & DANA
Attorneys for Zygo Corporation
One Century Tower
P.O. Box 1832
New Haven, CT  06508-1832

**THIS IS TO CERTIFY** that true and correct courtesy copies of the foregoing document has been forwarded by hand delivery, this 29th day of December, 2004 to:

The Honorable Janet Bond Arterton
United States District Court
141 Church Street
New Haven, Connecticut  06510

The Honorable Joan G. Margolis
United States District Court
141 Church Street
New Haven, Connecticut  06510

_____
Charlsa D. Broadus

-31-