UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO.: Civil 3:01cv1317 (JBA) ) |
| ZYGO CORPORATION, | ) ) |
| Defendant. | ) ) |
| ROYAL INSURANCE COMPANY OF AMERICA, | ) ) ) |
| Third-Party Plaintiff, | ) **JURY TRIAL DEMANDED** ) |
| v. | ) ) |
| NAN YA TECHNOLOGY CORPORATION, | ) ) DECEMBER 30, 2004 |
| Third-Party Defendant. | ) ) |

### THIRD-PARTY DEFENDANT NAN YA TECHNOLOGY CORPORATION'S CORRECTED MEMORANDUM IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF DENIAL OF NAN YA'S MOTION FOR SUMMARY JUDGMENT AND, ALTERNATIVELY, FOR BIFURCATION OF CONTINGENT CLAIMS FOR WHICH NAN YA HAS ASSERTED A JURY DEMAND

**Introduction**

Third-Party Defendant Nan Ya respectfully requests that the Court reconsider the Order of December 14, 2004 ("Order")[1] insofar as it denies Nan Ya's motion for summary judgment. Alternatively, Nan Ya asks that the Court bifurcate Royal's claims against Nan Ya, which are contingent and subject to a jury trial, from the trial of the claims between Royal and Zygo,

---

[1] A copy of the Order is attached as Exhibit 1.

which are not subject to a jury trial and which may obviate the need for any trial with regard to Nan Ya.

When this case was transferred from Judge Goettel in the summer of 2004, it was an advanced lawsuit with a long and tortuous procedural history. By that time, Nan Ya been dismissed for almost two years. The transcript of the status conference of August 5, 2004 reveals that the Court logically turned to the two remaining parties to obtain their views about the proceedings which were approaching trial. Royal's counsel took this occasion as an opportunity to present a barrage of arguments designed to encourage the Court to revisit and deny the summary judgment that Nan Ya had obtained in September 2002. Royal, however, omitted and misstated numerous important facts in this presentation and misled the Court into committing several serious errors. Although the Court devoted a significant amount of time and effort preparing a lengthy ruling on several pending motions, this motion for reconsideration respectfully requests that the Court re-evaluate the issues relating to Nan Ya because Nan Ya did not have an opportunity to be heard with respect to those issues and Royal's presentation was incomplete and misleading.

Royal undoubtedly viewed the appointment of a judge new to this case as a ripe opportunity. Without filing any motion to put Nan Ya on notice, Royal began to pitch the notion of the Court revisiting Judge Goettel's ruling by offering this possibility in the back of a brief that it filed on July 30, 2004 in opposition to Zygo's motion for summary judgment. (Dkt. 152 at 36-38.) From the outset of the August 5 status conference, it became apparent that Royal's central goal was to revive its "no-lose" strategy of pitting Zygo against Nan Ya, despite the absence of any claims between these parties. It was that strategy, and not the case, that had gotten "off track" when Nan Ya received summary judgment. Moreover, the status conference

presented a means for Royal to undo the consequences of several strategic miscalculations, including its failure to oppose Nan Ya's motion for summary judgment and its erroneous assumption that Zygo had standing to oppose this motion. To achieve these objectives, Royal proceeded without giving notice to Nan Ya and without being fully candid with the Court. For example, Royal failed to advise the Court either at the conference or afterwards that Nan Ya had requested a jury trial, even though the Court asked this question directly.[2] Moreover, Royal failed to present the real reasons that it wanted Nan Ya in the case -- reasons that served Royal, not justice.

In the summer of 2004, Royal faced the plaintiff's version of the "exam dream": despite having received a long series of extensions to a discovery schedule that stretched nearly three years, Royal was not prepared to prove its claims. In particular, Royal needed evidence to support its allegation that Zygo had compromised its coverage by settling with Nan Ya. Instead of admitting to this failure, however, Royal alternatively blamed this situation on Zygo and Judge Goettel. Moreover, Royal compounded its non-disclosures with another maneuver: it chose to proceed in a manner designed to eliminate any opportunity for Nan Ya to respond. After inserting this pitch at the back of a brief directed at Zygo's motion for summary judgment, Royal's counsel pressed the Court early and often at the status conference to bring Nan Ya back into this case. Undoubtedly, Royal conceived of this strategy before the status conference, but it

---

[2] Royal's counsel asserted that he did not know whether Nan Ya claimed a jury trial because he appeared in the case after Nan Ya had been dismissed. (Transcript 8/5/04 – Exhibit 2 at 21-22.) Another member of his firm acting on behalf of Royal, however, had appeared by the time Nan Ya claimed a jury trial and had specifically written to Nan Ya contesting whether a right to a jury trial existed. A copy of Ms. Barzilai's letter is attached as Exhibit 3. Moreover, at no point in time after the status conference did Royal's counsel advise the Court that Nan Ya, in fact, had claimed a jury trial -- even when Royal's counsel wrote to the Court after the conference to request again that Nan Ya be joined. A copy of Mr. Ginos' November 30, 2004 letter is attached as Exhibit 4.

conveniently failed to advise Nan Ya or to file any motion requesting this extraordinary relief. *See* Fed. R. Civ. P. Rule 7(b) (1) ("An application to the court for an order shall be by motion . . .") And without Nan Ya at the conference, Royal capitalized fully on this opportunity.

Royal's one-sided and incomplete presentation misdirected the Court into committing several errors:

(a) by allowing Royal to proceed without notifying Nan Ya or complying with Rule 7(b), the Court denied Nan Ya the fundamental due process rights of notice and opportunity to respond and denied itself the benefits of a complete picture;

(b) when re-examining Nan Ya's uncontested motion for summary judgment, the Court failed to accept as admitted Nan Ya's statement of uncontested facts, as required under Local Rule 56(a)(1) (formerly L.R. 9(c)).

(c) instead of reviewing Nan Ya's motion for summary judgment based on the record presented and established at the time, the Court denied Nan Ya's motion based on later-produced evidence from Royal, which had forfeited any right to present evidence by failing to oppose Nan Ya's motion, and from Zygo, which lacked standing to oppose Nan Ya's motion; and

(d) in attempting to solve the procedural problem in Judge Goettel's endorsement ruling, the Court created even greater procedural and fairness problems for Nan Ya by injecting it into a case on the eve of trial and without the benefit of having participated in discovery that continued for a period of almost two years after Nan Ya's departure from this case.

Accordingly, Nan Ya respectfully requests that the Court reconsider the Order insofar as it denied Nan Ya's motion for summary judgment or, alternatively, that the Court bifurcate the court trial of the Royal-Zygo claims from the contingent jury trial of the Royal-Nan Ya claim.

## I. BACKGROUND

### A. The Record As of Nan Ya's Motion for Summary Judgment

Royal filed this suit on July 13, 2001. (Dkt #1.) In October of 2001, Royal added Nan Ya as a third-party defendant. (Dkt. # 18.) Nan Ya filed its answer, affirmative defenses, and **jury claim** on December 3, 2001. (Dkt. #27.) Shortly thereafter, Laura Barzilai, Royal's New York counsel from the firm of Nicoletti Hornig Campise Sweeny & Paige responded to Nan Ya's filing by claiming incorrectly that no jury trial was available because this matter supposedly arose under admiralty jurisdiction. *See* Exhibit 3.

After being joined in this suit, Nan Ya set about preparing its case for summary judgment; Royal did not. Nan Ya directed extensive Requests for Admissions to Zygo in order to eliminate any potential dispute over the fact that Nan Ya and Zygo had reached a comprehensive settlement. (A copy of Zygo's responses are attached as Exhibit 5.) Nan Ya filed these requests precisely to avoid the kind of post-settlement equivocation that apparently emerged in Zygo's later papers in its cross-motions for summary judgment with Royal.[3] In June 2002, Nan Ya moved for summary judgment against Royal, producing substantial evidence to support its motion and filing a statement of undisputed material facts in accordance with then Local Rule 9(c). (Dkt. ## 59-62) Royal filed no opposition papers, including no statement identifying facts in dispute as required by the Local Rules.

---

[3] A copy of Zygo's responses to Nan Ya's requests for admissions is attached as Exhibit 5.

-5-

Among other facts that Royal admitted by failing to file any opposition papers were the following:

- Faced with the conflicting evidence regarding inadequate packaging versus improper handling, and given the practical difficulties in resolving such a question, the parties began negotiating a business solution. *See* Facts ¶ 6.

- After several months of negotiations, the parties signed a compromise agreement at a meeting in Taipei, Taiwan, on November 13, 2000. The agreement, written in Chinese, provided that Nan Ya's insurer – Taiwan Fire & Marine Insurance – would pay for one damaged microscope. It also provided that Nan Ya would have no liability regarding the second damaged microscope, which was to be returned to Zygo:

    > T9002 [the second device] will be dealt with by returning the goods and payment for the goods is not required.

    For absolute certainty, Nan Ya prepared three translations of the November 13 agreement – one by an internal paralegal and two by independent outside translation services. All three are consistent. *See* Facts ¶ 7.

- The agreement was signed by two Nan Na representatives and two Taiwan Fire & Marine employees. Timothy Smith, Asia Pacific Sales & Marketing Manager for Zygo, signed the agreement on behalf of Zygo. . . . A representative of Lee Tech, a Taiwanese company that acted as Zygo's agent in some aspects of this matter, signed as well. . . . The agreement was also signed by Kelvin Walch, a third party who determined the salvage values of the two damaged devices, and a representative of a third party surveying firm associated with Nan Ya. *See* Facts ¶ 8.

- Mr. Smith and the Lee Tech representative reported to Larry Martin, a Connecticut-based staff assistant to Zygo's President. *See* Facts ¶ 9.

- That evening (the early morning of November 13 in Connecticut), Lee Tech emailed Timothy Smith and Mr. Martin and stated that "It is glad that the problem of two damaged systems have been settled in today's meeting." *See* Facts ¶ 10.

- Mr. Martin responded by email to Lee Tech and Mr. Smith the same day by stating "I want to thank all of you for the effort put in to resolve this situation." *See* Facts ¶ 11.

- Zygo did not seek payment for the second device from Nan Ya or re-assert any other issues settled in the November 13 contract. *See* Facts ¶ 16.

In accordance with then Local Rule 9(c), Royal admitted all of these facts and Zygo had no right to attempt to contradict any of these facts. (Exhibit 1 at 18.)[4] Thus, as of Nan Ya's summary judgment, the undisputed facts were that the parties, through authorized representatives, had agreed on November 13, 2000 that no payment would be required from Nan Ya for the second device. Moreover, after November 13, 2000, Zygo never sought payment for this device from Nan Ya nor attempted to re-assert "any other issues settled in the November 13 contract."

The record is extraordinarily clear that Royal consciously and intentionally made several strategic choices that set the path of this litigation. In a letter to Zygo's counsel, Mr. Nicoletti explained Royal's decisions: (a) not to oppose Nan Ya's motion; (b) not to adopt Zygo's opposition; and (c) not to pursue discovery until after the summary judgment proceedings and then only if the Court denied Nan Ya's motion:

> **[W]e are neither opposing Nan Ya's motion nor are we intervening in any attempt by Zygo to defeat Nan Ya's motion.** Simply stated, Royal does not have any direct information at this time to oppose Nan Ya's notice. **In fact, the information which is available to Royal would support Nan Ya's contention. If Nan Ya's motion is defeated on an issue of fact or otherwise, this office, on behalf of Royal, will aggressively pursue pre-trial discovery of both Nan Ya and Zygo to obtain the truth of the matter, . . . .**

(Letter from John Nicoletti to Ian Bjorkman at 2 (dated July 26, 2002) (emphasis and underscoring added).)[5] Although not mentioned in this letter, Royal also chose not to request

---

[4] As explicitly recognized by the Court in its December 14, 2004 Order, "Royal could have moved to adopt Zygo's opposition to Nan Ya's motion for summary judgment; but no such steps were taken." (Exhibit 1 at 18.) In addition, the Court noted that "this case does not fall under this Court's admiralty or maritime jurisdiction, so Royal cannot be said to have 'tendered' Nan Ya to Zygo under Fed. R. Civ. P. 14(c)" and "Zygo could have moved to intervene in Royal's suit against Nan Ya," (*id.* at 18), but did not do so.

[5] A copy of this letter is attached as Exhibit 6.

-7-

that the Court defer consideration of the summary judgment motion until after additional discovery under Rule 56(f).

While refusing to admit to Zygo's accusation that Royal was, in effect, laying down in the Nan Ya fight, Royal clearly viewed Nan Ya's motion for summary judgment as being beneficial to Royal:

> If Nan Ya is correct in its allegations that Zygo released Nan Ya from any obligation to pay for the second shipment that, in and of itself, would be sufficient to defeat Zygo's coverage under the Royal policy....
>
> * * *
>
> [I]t is the opinion of the undersigned, as counsel for Royal, that Nan Ya's motion establishes that Royal had and has reasonable basis to deny the Zygo claim. Accordingly, and by this letter, we demand that Zygo withdraw any "bad faith" claim under penalty of Rule 11 of the Federal Rules of Civil Procedure.

(*Id.* at 2-3.) Thus, Royal not only made a conscious choice to allow Nan Ya's motion for summary judgment to proceed unopposed, it did so in anticipation of gaining strategic advantage in its litigation with Zygo.

### B.   Nan Ya's Efforts to Correct the Procedural Error

On September 12, 2002, Judge Goettel granted summary judgment to Nan Ya – albeit for the wrong reason and with an express refusal to accord it any collateral estoppel effect. (Endorsement 9/12/02.)[6] Thereafter, as this Court observed in the Order, "Nan Ya twice moved for reconsideration, requesting a ruling on the merits, which was denied." (Exhibit 1 at 9.) In particular, Nan Ya asked Judge Goettel to consider whether, based on the undisputed material facts in the record at the time of Nan Ya's motion, Nan Ya was entitled to summary judgment as a matter of law.[7] In a further effort to correct Judge Goettel's procedural error,

---

[6] A copy of the Endorsement is attached for the Court's convenience as Exhibit 7

[7] A copy of Nan Ya's request for reconsideration and/or clarification is attached hereto as Exhibit 8.

-8-

Nan Ya requested that the Court certify this issue to the Second Circuit on an interlocutory appeal.[8] All of Nan Ya's efforts to address the procedural error failed. (Exhibit 10)

Judge Goettel's ruling was disastrous to Royal because of Royal's strategic miscalculations in failing to take discovery before the motion, failing to oppose the motion, and failing to recognize that Zygo lacked standing to oppose the motion. The ruling left Royal without Nan Ya to fight against Zygo and, more so, without the ability to use Nan Ya's victory against Zygo. Still hoping for the chance to knock Zygo out, Royal encouraged Judge Goettel to rule on the merits. In a September 18, 2002 letter to Judge Goettel, Royal insisted that the Court

> had before it all that it needed to decide Nan Ya's motion on the merits, with full collateral estoppel effect in the event that it saw fit to grant that motion.... By stating that the ruling was not on the merits and would have no collateral estoppel effect on this litigation, the Court may have opened the door to unnecessary additional judicial proceedings and the possibility of inequitable results therein..."

(Exhibit 11) (emphasis added). Although this request failed, Royal would later use this same artifice in August 2004, cloaking its own strategic objectives in the garb of judicial efficiency and fairness.

### C. Royal and Zygo Proceed To Litigate Without Nan Ya

After Judge Goettel granted Nan Ya's motion for summary judgment, Royal compounded its strategic mistakes. Although it could have sought a Rule 54 certification of Judge Goettel's ruling, as Nan Ya did (Dkt. # 88), Royal instead proceeded to file an appeal based on the erroneous assumption that admiralty jurisdiction applied.[9] In the meantime, Royal realized

---

[8] A copy of Nan Ya's motion for certification under Rule 59(b) of the Federal Rules of Civil Procedure is attached hereto as Exhibit 9.

[9] Zygo, for its part, opposed Nan Ya's motion for certification under Rule 54, arguing that Nan Ya was not harmed by Judge Goettel's ruling because "Nan Ya is essentially in the same position that it would have been had it not been sued until there was a determination of the

apparently for the first time that it might be useful to depose someone from Nan Ya in Taiwan – particularly, if *Royal* were going to have to try to prove that Zygo had settled with Nan Ya. Thus, after Nan Ya had obtained summary judgment, Royal filed a motion to conduct depositions of Nan Ya during the pendency of Royal's ill-founded appeal. (Dkt. # 100.) On the same date that the Second Circuit dismissed the appeal, Judge Goettel denied Royal's motion. (Dkt. 104; Endorsement Ruling 2/27/03.)

Of course, even after the summary judgment, Royal could have sought discovery from Nan Ya, and it had plenty of time to do so.[10] Apart from having over a year of discovery before the summary judgment, Royal had almost two years after. In March 2003, Royal sought and obtained a lengthy extension of the discovery schedule expressly for the purpose of deposing Nan Ya. (*See* Dkt. ## 106-110). Royal failed, however, to conduct discovery of Nan Ya. In June 2003, Royal requested and received another extension of discovery, this time for ninety days. (Dkt. # 124; Endorsement 6/5/03.) In September 2003, over two years after it commenced this suit, Royal again sought to extend the discovery period, this time for an additional 120 days. (Dkt. 126.) Judge Goettel again acquiesced. (Endorsement 9/4/03.) In December 2003, Royal returned again and obtained yet another extension. (Dkt. ## 128, 129.) In March 2004, Royal was back seeking and obtaining a two-month extension. (Dkt. ##130, 131.) In May 2004, Royal

---

coverage dispute between Royal and Zygo." (Dkt. # 95 at 2.) This argument ignored a critical fact that Zygo itself later pressed at the status conference of August 2004: Nan Ya had not only been sued, it had incurred substantial expense preparing a motion for summary judgment to which it believed it was entitled to a ruling on the merits. Moreover, unless the Court reconsiders the Order, Nan Ya will be placed in a far worse position by having "won" summary judgment two years ago than if it had "lost."

[10] Nan Ya, a Taiwanese company, maintained that any discovery would have to proceed, if at all, in Taiwan and in accordance with treaties and conventions between the United States and Taiwan, which allow for letters rogatory. While insisting that it had the right to take depositions, Royal did not pursue *any* means of discovery.

-10-

sent a letter requesting still another extension until June 11, 2004. (Dkt. 132.) Treating this letter as if it were a motion, Judge Goettel granted this final extension. (Dkt. 133.) With all of these numerous extensions, the Court had allowed Royal a discovery period of nearly three years. In all of this time, however, Royal failed to pursue discovery from Nan Ya to obtain the evidence it now claims that "justice" requires.

Although Nan Ya did not participate for obvious reasons, it is apparent that Royal did take significant discovery from Zygo – at least in the latter stages of the lengthy discovery schedule. For example, attached to the cross-motions for summary judgment are excerpts from depositions that Royal and Zygo took in 2003 and 2004, after Nan Ya was dismissed from this case. Indeed, three of the Zygo representatives whose testimony the Court referenced in the Order were all deposed in 2004: Timothy Smith, Lawrence Martin, and Kevin Walch. (Aff. of Erika L. Amarante (dated July 7, 2004), Exs. 24 (Smith Tr., dated 1/22/04), 25 (Martin Tr., dated 2/5/04), and 28 (Walch Tr., dated 6/7/04).)

### D.     The Events Leading Up to the Order

On May 28, 2004, on the eve of dispositive motions, this case was transferred from Judge Goettel to Judge Arterton. With a new judge on the case and trial briefs due soon, Royal decided it was an opportune time to revive its initial and failed strategy of pitting Zygo and Nan Ya against each other while Royal sat on the sidelines. In late July, tacked onto the end of a brief opposing Zygo's motion for partial summary judgment, Royal suggested that the Court revisit Judge Goettel's ruling granting summary judgment to Nan Ya. (Royal Mem. in Opp. to Zygo's Mot. for Partial S.J. at 36-38 (Dkt. 152 filed July 30, 2004).) Royal did not file any motion requesting this relief, nor did it alert Nan Ya that it had made this suggestion.

On August 5, 2004, the Court convened a status conference. Royal's counsel seized this opportunity to suggest early and often that the only sensible way to correct Judge Goettel's procedural error was to return Nan Ya to this case. (*See, e.g.*, Transcript at 4 (claiming that the case "got off track" because Nan Ya was dismissed); 5 ("we're hobbling along without one of the critical parties" and suggesting that a recent decision from the Second Circuit compelled this result); 6 ("it seems to us that an initial point would be to look at" rejoining Nan Ya, which "seems to me the prudent thing . . so that the trial can go forward with Nan Ya involved as it should have been from the start"); 7 ("I think that's a major stumbling block" and stating that "it requires some kind of corrective action now to prevent judicial and economy [sic] and inconsistent results.") **Royal conveniently never informed the Court that, in the year before Nan Ya was dismissed and in the twenty-one month discovery period after, Royal had failed to prepare to try its case against Zygo and, thus, was not ready to proceed to trial without Nan Ya. Nor did Royal advise the Court that Royal had intentionally chosen to allow Nan Ya's summary judgment motion to proceed unopposed and that Royal neither adopted Zygo's opposition papers nor sought to defer the motion under Rule 56(f).**

Instead of admitting to its own errors, including its failure to gather evidence from Nan Ya in the over three years that the case was pending, Royal first blamed Judge Goettel and suggested that this was the last opportunity for the <u>Court</u> to correct a wrong implicitly done to Royal:

> So, you know, this train got derailed two years ago and this is the last clear chance to get this evidence that's critical to our defense back in the case, to bring in a party that's critical to the case.

(Exhibit 2 at 18.) Royal then tried to blame Zygo as well:

> [I]sn't it interesting that . . . Zygo doesn't file a claim [against Nan Ya] saying you owe us $690,000 . . .[?] . . . Instead, they invited Nan Ya to get out of the case, and I think this is a situation that really, really needs to get corrected because it's very unfair . . .

(Exhibit 2. at 18-19.)[11] Royal then pointed to judicial economy – rather than its own need for evidence that it failed to gather – as a purported basis for hauling Nan Ya back into this case after two years:

> [V]ery importantly, we're just going to be back here a year or two from now and that would be a complete waste of judicial resources and the resources [of] the parties.

(Exhibit 2 at 19.)

Royal capped off this misleading presentation by failing to apprise the Court that Nan Ya had requested a jury trial and by minimizing the enormous imposition on Nan Ya of being brought in at this late stage of the litigation. First, Royal pointedly ignored Nan Ya's right to a jury trial, which was an obvious impediment to Royal's pitch:

> THE COURT: My docket sheet is captioned that both parties have demanded a jury, but that's incorrect?
>
> Mr. Ginos: Well, it's either incorrect or **both parties** have changed their mind.

(Tr. at 21.) When the Court later thought to ask specifically about Nan Ya, Royal's counsel claimed ignorance:

> THE COURT: Had Nan Ya claimed a jury trial?
>
> Mr. Bjorkman: That's a good question, your Honor.
>
> > Jeff, do you remember? They may have.
>
> Mr. Ginos: They were dismissed when I got into the case.

---

[11] Royal's representation that Zygo invited Nan Ya's motion is as ironic as it is inaccurate, given that Zygo opposed the motion, and Royal did not, and in light of Royal's obvious recognition that a Nan Ya victory would benefit Royal.

-13-

(Exhibit 2. at 28.) The response that Royal's counsel, Mr. Ginos, offered is somewhat surprising because another member of his firm had specifically responded to Nan Ya's claim of a jury trial by contesting that right. *See* Exhibit 3. Moreover, Mr. Ginos never bothered to correct the record on this score, even when he sent a letter on November 30, 2004 to further encourage the Court to join Nan Ya as a party. *See* Exhibit 4

Royal also minimized the obvious imposition on Nan Ya of being joined in a case that was over three years old – even though Nan Ya had been out of the case for two years, discovery was closed, and the case was headed for trial. Once again, Royal's counsel was less than forthright in this regard. For example, Mr. Ginos suggested that Zygo would not have to incur the costs of depositions in Taiwan because Nan Ya could simply fly its witnesses to California.

> With C. Tait Graves, Nan Ya's counsel on the west coast, we could probably work something out where their witnesses came here and maybe their costs were covered by us.

(Tr. at 29.) Implying that this would be an acceptable arrangement for all involved, Mr. Ginos failed to inform the Court that he had raised this suggestion repeatedly with Nan Ya's counsel in the past and was repeatedly rebuffed. (*See, e.g.*, 1/6/03 Pl./Third-Party Pl.'s Mot. to Take Deps. of Third-Party Def. Nan Ya Technology Corp. Pending Appeal) (Dkt. # 100); Nan Ya Technology Corp.'s Opp'n To Pl.'s Mot. To Take Deps. Pending Appeal.)[12]

Moreover, Royal grossly understated the prejudice to Nan Ya of Royal's extraordinary request:

> Mr. Ginos: I should mention, your Honor, all of the notices of deposition I think went to Nan Ya's counsel because we anticipated that they'd be back in the case one way or another .... There were quite a few depos that I don't believe would be of any interest to them, and I suspect that the number of depositions of Nanya's people would be maybe two and their wanting redepose or bring back somebody would probably be two or three.

---

[12] Nan Ya's Opposition to Royal's Motion is attached as Exhibit 12.

-14-

(Exhibit 2 at 30.) Royal's suggestion ignores entirely the reality that Nan Ya, which had been dismissed from this case for approximately two years, had no reason to participate in the intervening discovery. More importantly, Royal has no right to limit Nan Ya's ability to conduct discovery, particularly when Royal sought and received multiple extensions of time to conduct whatever discovery it wanted, which such extensions amounting to well over a year.

In sum, although Nan Ya bears no responsibility for the course of events in this case, Royal does. Royal consciously chose not to seek discovery from Nan Ya before the summary judgment motion. Royal then failed to oppose summary judgment, including Nan Ya's statement of undisputed facts, and it failed to request that the Court defer consideration of the motion under Rule 56(f). After the summary judgment, Royal failed to obtain any discovery from Nan Ya despite having nearly two years. Moreover, in its eagerness to pitch Nan Ya as the only solution for a case gone astray, Royal omitted several things from its presentation to the Court at the status conference of August 2004:

- Royal desperately needed Nan Ya as a party because Royal had failed to take any depositions of Nan Ya and could not compel witnesses to come from Taiwan to participate in a trial with Zygo;

- Although it sought this extraordinary relief, Royal had not filed any motion as required by Fed. R. Civ. P. Rule 7(b), which would have afforded Nan Ya notice and opportunity to respond; nor had Royal advised Nan Ya that Royal intended to press the Court vigorously at the status conference to reverse Nan Ya's summary judgment and require it to join this case on the eve of trial;

- Not only had Nan Ya requested a jury trial, but Royal's counsel had written to Nan Ya's counsel insisting that Nan Ya had no right to claim a jury because this case supposedly arose under admiralty jurisdiction; and

- Although Judge Goettel made a procedural error, most of the problems with this case arose from Royal's many, strategic miscalculations:

    - Royal apparently chose to stop investigating the existence of a settlement once it received an admission from a representative of Zygo;