- Royal chose not to depose anyone from Nan Ya before the summary judgment;

- Royal wrongly assumed that Zygo had standing to oppose Nan Ya's motion for summary judgment and wrongly maintained that admiralty jurisdiction applied;

- Royal chose to straddle the line between the existence *vel non* of a settlement and pointedly refusing to adopt Zygo's papers in opposition to summary judgment or to dismiss its claims against Nan Ya;

- Royal chose not to request that the Court reserve consideration of summary judgment under Rule 56(f) until Royal could discover sufficient facts either to oppose the motion or to abandon its claim against Nan Ya; and

- Royal ignored the operation of Local Rule 9(c) (1),[13] which deemed Nan Ya's statement of undisputed facts admitted as to Royal for purposes of Nan Ya's motion.

Nan Ya respectfully submits that Royal's omissions materially mislead the Court to reach the wrong result when it re-evaluated Nan Ya's motion for summary judgment.

### E.   Post-Order Events Confirm Royal's Goal of Fixing Its Many Failures

On December 28, 2004, Royal's counsel sent a letter to the Court regarding the schedule for this case. (Letter from G. Ginos to Hon. J. B. Arterton (dated December 28, 2004) (a copy is attached as Exhibit 13.) As often is the case with Royal, this request for relief appears not in the proper form of a motion. Moreover, Royal's letter confirms its goal of using Nan Ya's joinder as a means to correct Royal's many failures to develop evidence in preparation for trial, including

---

[13] Local Rule 9(c)(1), which was in effect at the time Nan Ya moved for summary judgment provided:

> 1. There shall be annexed to a motion for summary judgment a document entitled "Local Rule 9(c)1 Statement," which sets forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried. **All material facts set forth in said statement will be deemed admitted unless controverted by the statement required to be served by the opposing party in accordance with Rule 9(c)2.**

D. Conn. Local R. 9(c)(1) (2000) (emphasis added).

evidence from non-parties. Although it has needed this discovery from the outset of this case, Royal unapologetically requests more time and opportunity for discovery:

> Royal will want to depose two and possibly three Nan Ya Witnesses with knowledge of (1) **the alleged settlement discussion that took place between Zygo Corporation ("Zygo") and Nan Ya with respect to the subject cargo shipment;** and (2) the only damage survey ever conducted with regard to that shipment, from which, Royal was effectively excluded by Zygo, which failed to give any advance notice thereof to Royal.
>
> Royal assumes that **Nan Ya may wish to depose one or two Zygo witnesses who were involved in those settlement discussions.** Royal also notes that Nan Ya may wish to obtain the testimony of several third-party witnesses residing in Taiwan that Nan Ya may be able to persuade to appear in these proceedings (Zygo's former agent in Taiwan, Billy Wu, and Nan Ya's underwriter representatives and cargo surveyors) with knowledge concerning said settlement discussions and survey and the adequacy of said shipment's packaging. If Nan Ya intends to offer the testimony of any of these third-party witnesses at trial, Royal will want to depose them beforehand, and we assume that Zygo will want to do so.

(*Id.*) (emphasis added).[14] Thus, having succeeded in persuading the Court to open the door, Royal now is prepared to reveal more of its agenda.[15]

Nan Ya respectfully requests that the Court reconsider the wisdom and propriety of the path Royal advocates.

---

[14] Royal offers no explanation for its suggestion that Nan Ya can produce individuals for depositions, a procedure that may be foreign to Taiwanese law. Moreover, Royal apparently believes that simply because Nan Ya is located in Taiwan it can persuade non-parties, including Zygo's former agent, to participate in depositions. Query the foundation for that belief.

[15] As will be discussed elsewhere, Nan Ya believes that Royal's request grossly underestimates the actual time that certainly Nan Ya would need to conduct discovery. Moreover, Royal blithely assumes that it and others will be able to take depositions of witnesses located in Taiwan, when the only appropriate procedure may be through the use of letters rogatory addressed through proper international channels – a procedure that is by no means quick.

-17-

**ARGUMENT**

**I. THE COURT SHOULD RECONSIDER AND GRANT NAN YA'S MOTION FOR SUMMARY JUDGMENT BASED ON THE UNDISPUTED MATERIAL FACTS IN THE RECORD AT THE TIME OF NAN YA'S MOTION**

**A.     The Court Should Reconsider Its Ruling to Accord Due Process to Nan Ya**

"Notice of issues to be resolved by the adversary process is a fundamental characteristic of fair procedure." *Lankford v. Idaho*, 500 U.S. 110, 126 (1991) (footnote omitted). Nan Ya received no notice that the Court was reconsidering its motion for summary judgment until, in early December, it received Attorney Ginos' letter shortly before the Court issued the Order. By failing to file a motion or alert Nan Ya of its intent to push for this result at the status conference, Royal effectively deprived Nan Ya of fair procedure. Unfortunately, in its desire to move this case along and to correct Judge Goettel's procedural error, the Court allowed Royal to proceed without providing Nan Ya notice or an opportunity to respond. Moreover, the Court also deprived itself of the opportunity to hear from *all* interested parties before issuing the Order. Accordingly, Nan Ya respectfully requests that the Court reconsider its ruling as to Nan Ya.

Royal clearly went to the status conference of August 5, 2004 with a specific goal in mind: convincing a Judge new to this case to bring Nan Ya back. The transcript of the status conference reveals that Royal's counsel raised this request repeatedly throughout the conference. Royal failed to notify Nan Ya that Royal intended to make this significant request. Royal neither advised Nan Ya's counsel in advance of the status conference, nor did Royal file a motion to request this supposedly vital relief with particularity as required by Fed. R. Civ. P. 7(b)(1). As a result, Royal entirely disregarded Nan Ya's rights to due process. *See, e.g., Reyes v. Barnhart*, 2002 U.S. Dist. LEXIS 25923 (W.D. Tex. Nov. 25, 2002) ("The purpose of the particularity requirement in Fed. R. Civ. P. 7(b)(1), made applicable to Rule 59 motions, is to afford notice

-18-

and opportunity to respond.") By early December, when Nan Ya first learned of Royal's efforts, it was too late: not only did Nan Ya lack the opportunity to file a response, the Court was apparently already in the process of preparing a 39-page decision.[16]

In reviewing Royal's letter of November 30, 2004, Nan Ya was quite surprised by the reference to the status conference and discussion of hauling Nan Ya back into this case as a defendant after a two year absence, just in time for a trial on the merits. See (Exhibit 4). Nan Ya obviously was not present at the conference and had to first obtain a copy of the transcript to learn what had transpired at the status conference. By that time, Royal had already succeeded in convincing the Court to relieve Royal of any adverse legal effects arising from Royal's own tactical decisions to ignore Nan Ya's summary judgment motion and not to pursue discovery. Unfortunately, the Court allowed Royal's gambit to succeed -- ruling when Nan Ya was just beginning to learn the extent of Royal's arguments and without affording Nan Ya any reasonable opportunity to respond. To the extent that process plays a role in the dispensation of justice, there was none here for Nan Ya.

The serious problems in what transpired are apparent when one considers what should have happened. In order to obtain relief from Judge Goettel's ruling, Royal should have filed a motion that set forth specifically what Royal wanted and the bases for its request. Rule 7(b)(1) provides in relevant part:

> An application to the court for an order shall be by motion, which, unless made during a hearing or trial, shall be made in writing, shall state with particularity the grounds therefore, and shall set forth the relief or order sought.

---

[16] Attached hereto as Exhibit 14 is an affidavit from Nan Ya's counsel, Charlsa D. Broadus, describing her telephone discussions with the law clerk in Judge Arterton's Chambers regarding Nan Ya's intention to respond to Mr. Ginos' November 30, 2004 letter.

[18] A copy of unreported decisions are attached hereto in alphabetical order for the Court's convenience (Exhibit 15).

-19-

Fed. R. Civ. P. 7(b)(1). In addition, Royal's motion would have been subject to the requirements and sanctions of Rule 11. Fed. R. Civ. P. 7(c), 11. Moreover, if Royal had followed these rules, it would also have been required to serve a copy of the motion on Nan Ya. Fed. R. Civ. P. 5(a) ("every written motion other than one which may be heard ex parte . . . shall be served upon each of the parties"). By burying its request at the end of a brief opposing Zygo's motion for partial summary judgment and by raising this issue in the status conference of August 5, 2004, Royal followed none of these procedures.

Timeliness was certainly one of the serious issues that Royal would have confronted in preparing any motion for relief from a ruling that the Court issued in September of 2002. The Local Rules limit motions for reconsideration to a period of ten days from the filing of the decision. Local Rule 7(c)(1). Judge Underhill recently identified some of the considerations regarding the timing of motions to reconsider:

> Motions for reconsideration under Local Rule 9(e) are essentially motions for amendment of judgment under Fed. R. Civ. P. 59(e). *See City of Hartford v. Chase*, 942 F.2d 130, 133 (2d Cir. 1991). When such motions are untimely, they are construed as motions for relief from judgment under Fed. R. Civ. P. 60(b). *See* Wright, Miller & Kane, *Federal Practice and Procedure* § 2817 & n. 16, at 184 (1995). Although a district court retains the "inherent power to decide when a departure from its Local Rules should be excused or overlooked," *see Somlyo v. J. Lu-Rob Enters.*, 932 F.2d 1043, 1048 (2d Cir. 1991), specific provisions of the Federal Rules of Civil Procedure may shed light on whether a district court has abused its discretion in departing from its local rules. *See Ass'n for Retarded Citizens of Conn., Inc. v. Thorne*, 68 F.3d 547, 553-54 (2d Cir. 1995) (finding no abuse of discretion where district court's consideration of untimely motion was "based on rationales for granting Rule 60(b) relief").

*Horsey v. Bysiewicz*, No. 3:99 CV 2250 (SRU), 2004 U.S. Dist. LEXIS 5559, at *4 (D. Conn. Mar. 24, 2004).[18] For example, a motion for reconsideration based on newly discovered evidence under Rule 60(b)(2) must be made within one year. *See* Fed. R. Civ. P. 60(b). Moreover, a party seeking relief by untimely motion bears the burden of establishing good cause

-20-

for the delay. *See, e.g., Kotlicky v. United States Fidelity & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987). By failing to file a motion at all, Royal apparently avoided any scrutiny into its failure to raise these arguments in a timely fashion and evaded any consideration of the clear prejudice to Nan Ya.

Of course, a party may seek leave to file an untimely motion to reconsider. *See, e.g., Leyda v. Alliedsignal, Inc.*, 322 F. 3d 199, 206-7 (2d Cir. 2003) (affirming the denial of a motion for leave to file an untimely motion to reconsider where Judge Hall had determined that the defendant was on notice of the issue it was attempting to raise but had failed to do so in a timely manner). Royal, however, chose to file nothing. In this way, Royal avoided both having to provide notice to Nan Ya and having to explain why Royal was acting so late and why it should not be held accountable for its earlier strategic decisions and failures to prepare for trial.

In filing a motion to reconsider, Royal also would have been subject to other significant limitations. Motions to reconsider generally do not allow a party to advance a new position or to introduce evidence that was available earlier. *See, e.g., Concordia College Corp. v. W.R. Grace & Co.*, 999 F.2d 326, 330 (8th Cir. 1993) (a motion for reconsideration cannot be used to raise arguments that could have been raised earlier or "to introduce new evidence that could have been adduced during pendency of the summary judgment motion."); *Martin v. Dupont Flooring Sys., Inc.*, No. 3:01 CV 2189 (SRU), 2004 U.S. Dist. LEXIS 9373 (D. Conn. May 25, 2004) ("The only permissible grounds on which to grant a motion for reconsideration are: (1) an intervening change in the law; (2) the availability of new evidence not previously available; or (3) the need to correct a clear error of law or prevent manifest injustice.") (citation omitted). Indeed, by attempting to change its position radically from not opposing Nan Ya's motion to arguing that summary judgment was inappropriate, and by invoking evidence used in the cross-motions for

-21-

summary judgment, Royal in fact went well beyond the prohibition on introducing new arguments in motions for reconsideration. *See, e.g., A Seaboard Stamford Investor Ass'n. v. Thinkdirectmarketing, Inc.*, No. 3:03cv1110 (PCD), 2004 U.S. Dist. LEXIS 1688 at *3 (D. Conn. Feb. 6, 2004) ("'A motion for reconsideration cannot be employed as a vehicle for asserting new arguments or for introducing new evidence that could have been adduced during the pendency' of the underlying motion.") (quoting *Lo Sacco v. Middletown*, 822 F. Supp. 870, 877 (D. Conn. 1993)).

Moreover, Royal not only took an entirely different position in its motion for reconsideration, it also relied on evidence that Zygo – a party that lacked standing – produced over two years ago. Furthermore, although the additional evidence from depositions that Royal took of Zygo employees in 2004 certainly was available to Royal during the first year of this suit, Royal simply failed to take these depositions during the first year of this suit. *See, e.g., Johnson v. Askin Capital Mgmt., L.P.*, 202 F.R.D. 112, 114 (S.D.N.Y. 2001) (discussing the onerous standards that apply to requests for relief based on newly discovered evidence, including the requirement that the movant establish that the evidence could not have been discovered by due diligence). Under these procedures and standards, Royal could not have been able to justify either its change its position or its effort to introduce evidence it had from Zygo and that it obtained in discovery it should have conducted earlier.

Whatever the timing or merits of Royal's request, Nan Ya was entitled at a minimum to receive fair notice and opportunity to respond. *Mathews v. Eldridge*, 424 U.S. 319, 348-349 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of serious loss [be given] notice of the case against him and opportunity to meet it.'") (quoting *Joint Anti-Fascist Comm. v. McGrath*, 341 U.S. 123, 171-172 (Frankfurter, J., concurring). Accordingly,

-22-

fairness and due process require that the Court reconsider its Order to allow Nan Ya the opportunity to respond to Royal's request.

### B. The Court Failed To Accept As Proven Nan Ya's Statements Of Uncontested Facts and Improperly Considered Evidence Later Submitted By Royal And Zygo

Having tried to correct Judge Goettel's procedural error in several ways, Nan Ya appreciates the Court's express desire to "correct a clear error of law." (Order, Exhibit 1 at 16-17.) Aside from the due process concerns discussed above, however, Nan Ya takes issue with the Court's failure to weigh Nan Ya's statement of undisputed facts and its reliance on evidence submitted by Royal and Zygo in the context of their cross-motions for summary judgment.

The Court conflated its reconsideration of Nan Ya's motion for summary judgment with its consideration of the cross-motions between Zygo and Royal. The Order expressly drew its factual background from three sources: "Royal and Zygo's Local Rule 56(a)(1)-(2) statements [docs. ## 139, 145] as supported by accompanying evidence, and evidence submitted by Nan Ya in support of its motion for summary judgment." (Ex. 1 at 2.) Noticeably absent from this list is Nan Ya's statement of undisputed facts, dated June 13, 2002. (Ex. 2). Given that Royal did not oppose Nan Ya's motion for summary judgment, it admitted the facts identified in Nan Ya's statement of undisputed facts. L. Civ. R. 56(a)(1) (formerly Rule 9(c)) for the District of Connecticut). Thus, what Judge Goettel should have done initially and what this Court should have done in re-evaluating Nan Ya's motion for summary judgment was to decide whether, with the facts in the Rule 9(c) statement admitted, Nan Ya was entitled to judgment as a matter of law.

In *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 244-47 (2d Cir. 2004), the Second Circuit made clear that courts may not use local rules to treat a non-movant's failure to oppose summary judgment as an automatic default warranting an award of summary judgment. *See id.* at 244 ("in determining whether the moving party has met [the] burden of

-23-

showing the absence of a genuine issue for trial, the district court may not rely **solely** on the statement of undisputed facts contained in the moving party's Rule 56.1 statement. It must be satisfied that the citation to evidence in the record supports the assertion.") (emphasis added). At the same time, however, **the Second Circuit has never held that local rules have no force and effect in deeming admitted uncontroverted facts**. Indeed, to do so, the Second Circuit would have to overrule *Dusanenko v. Maloney*, 726 F.2d 82, 84 (2d Cir. 1984), which affirmed the grant of summary judgment based on the non-moving party's failure to contradict assertions made in a statement of undisputed facts in accordance with then Local Rule 3(g) of the Southern District of New York. To the contrary, the Second Circuit confirmed in *Vt. Teddy Bear* that, under local rules like Local Rule 9(c), the non-movant's "failure to respond may allow the district court to accept the movant's factual assertions as true. . ." *Vt. Teddy Bear Co. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

The only instances in which the Second Circuit has held that a court may not rely on uncontradicted statements of undisputed facts have occurred when the movant failed to provide *any* evidentiary support for facts asserted. *See Giannullo v. City of N.Y.*, 322 F.3d 139, 143 & n.3 (2d Cir. 2003) (a court may not deem admitted an uncontroverted statement of fact that is based on a "wholly unsupportive record citation"); *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001) ("a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record.") Where, as here, the moving party has met its burden of production by supplying some evidence that supports its assertions of fact, the assertions are deemed admitted as stated if the nonmovant fails to file an opposing statement in accordance with the local rules. *See, e.g., Cashman v. Ricigliano*, 2004 U.S. Dist. LEXIS 17027, at *3 (D. Conn. Aug. 25, 2004) (Kravitz, J.) (deeming admitted facts in statement of undisputed

-24-

facts because the nonmovant failed to comply with local rule requiring a statement of disputed facts); *SEC v. Cavanagh*, 2004 U.S. Dist. LEXIS 13372, at *39 (S.D.N.Y. July 15, 2004) ("If the opposing party fails to controvert a properly supported fact in the moving party's Rule 56.1 statement, that fact will be deemed admitted.") (footnote omitted); *SEC v. Global Telecom Servs. L.L.C.*, 325 F. Supp. 2d 94, 109 & n.2 (D. Conn. 2004 (Dorsey, J.) (same). Indeed, as the Second Circuit made clear in *Vt. Teddy Bear*, a party that fails to oppose summary judgment under local rules like Rule 9(c) chooses "the risky and imprudent path of relying solely on [the moving party's] failure to meet its burden of production." *Vt. Teddy Bear*, 373 F.3d at 247.

In this case, however, the Court entirely disregarded Nan Ya's statement of undisputed facts and Royal's deemed admissions under Local Rule 9(c)(1). The Order never mentions Nan Ya's statement. Nor did the Court, upon information and belief, check Nan Ya's statement to determine only whether the evidence Nan Ya cited provide some support for the facts asserted and, thus, a basis for Royal's admissions. *See Giannullo*, 322 F.3d at 143 n.5. Rather, the Order proceeds to evaluate Nan Ya's evidence under a much higher standard – namely, whether it unambiguously supports only the inference set forth in Nan Ya's local rule statement. *See* Order, Exhibit 1 at 20-25. In other words, not only did the Court allow Royal to obtain reconsideration without filing any form of motion, it overcorrected Judge Goettel's error of declaring an automatic default by absolving Royal of any deemed admissions under Local Rule 9(c).

Moreover, even though Royal intentionally forfeited any right to oppose Nan Ya's motion for summary judgment and Zygo lacked standing to do so, the Order evaluates Nan Ya's supporting evidence in the context of other evidence that Royal and Zygo submitted in their cross-motions for summary judgment. *See* Order, Exhibit 1 at 20-25. The facts upon which the Court improperly relied when issuing its ruling with regard to Nan Ya include:

-25-

- Deposition testimony by Smith stating that: (1) although he signed the minutes of the November 13, 2000 meeting, he did not know their contents because he does not know Chinese; (2) when he asked for a quick translation, a Lee Tech representative told him there was "no substance" to the minutes; (3) he signed the minutes only to confirm his attendance; and (4) that he left the meeting "feeling that there had been no agreements." (Order, Exhibit 1 at 6, 12.)

- Deposition testimony by Walch that he was at the November 13 meeting to discuss his appraisal, not "commercial" matters but that he came away from the meeting absolutely totally convinced that Nan Ya were agreeing to "settle the payment on both tools." (*Id.* at 13.)

- Statements by Zygo that Walch's statement that Nan Ya would "settle payment" on both microscopes means that Walch believed that Nan Ya would pay Zygo in full for both AFMs. (*Id.* at 13.)

- Statements by Larry Martin in his affidavit that he "was never informed by Mr. Smith, or anyone else, that there was any agreement to release Nan Ya from liability for the second AFM, or to in any way change the terms of the deal such that Nan Ya did not have to pay for the second AFM" and that "any such agreement would have been beyond the scope of the authority given to Mr. Smith." (*Id.* at 14.)

- Deposition testimony by Larry Martin that he believed the "primary purpose" of the meeting "was to assess the salvage value and to resolve the…payment balance on the second machine." (*Id.* at 14.)

- Deposition testimony by Smith that the purpose of the November 13, 2000 meeting was to resolve the salvage value of the AFMs only, and that other payment issues were to be resolved at a later date by further negotiation. (*Id.* at 20.)

Although the record at the time Nan Ya filed its unopposed motion for summary judgment included none of this evidence, the Court reconsidered Nan Ya's motion in the context of this inadmissible material. For example, the Order recognized that Nan Ya's evidence would support an inference that the purpose of the meeting of November 13, 2000 was to resolve all issues concerning payment for the second AFM, but the Order then proceeded to note that there are other possible inferences as "Smith testified." (Order, Exhibit 1 at 19-20.) Similarly, while recognizing that the meeting minutes supply evidence of a settlement agreement, the Order found ambiguity in whether the minutes were intended to serve as a contractual compromise. (*Compare* Statement of Undisputed Facts, ¶ 7 (stating that the parties signed a compromise

-26-

agreement) with Order, Exhibit 1 at 20 (noting that the words "contract," "agreement," or "modification" do not appear in the minutes). Likewise, although Nan Ya's Statement of Undisputed Facts asserted that Zygo's representatives assented to the settlement by signing it and sending confirmatory messages (Statement of Undisputed Facts, ¶¶ 8-11), the Order points to questions of credibility that arise when comparing these facts to deposition testimony adduced in the cross-motions for summary judgment between Royal and Zygo. (Order, Exhibit 1 at 22.) Lastly, the Order speculates – with no evidentiary support – that Zygo's Mr. Smith may not have acted with authority and that "Nan Ya [may have] slipped the language about 'no payment' into the meeting minutes, in Mandarin, without Smith's knowledge." (Order, Exhibit 1 at 24-25.) Once again, the Order clearly holds Nan Ya to a standard higher than providing some evidentiary support for the Statement of Undisputed Facts, ignores Royal's admissions, and relies on inadmissible evidence presented by Royal and Zygo in later motions.

Given that Nan Ya produced evidence to support its statement of undisputed facts – even assuming that evidence was susceptible to other possible interpretations – Royal admitted all of the facts set forth in Nan Ya's statement. *See, e.g., Vermont Teddy Bear*, 373 F.3d at 246 (the failure to respond may allow the district court to accept the movant's factual assertions as true"). Accordingly, on reconsideration, the Court should have granted Nan Ya's motion for summary judgment because, when on those admitted facts are considered, Nan Ya was entitled to judgment as a matter of law.

Based on the record presented at the time of Nan Ya's motion, including Royal's admissions under Local Rule 9(c), Judge Goettel's procedural error was harmless: he properly granted summary judgment although for the wrong reason. Fed. R. Civ. P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does

-27-

not affect the substantial rights of the parties.") Accordingly, Nan Ya respectfully requests that the Court reconsider Nan Ya's motion and affirm the award based on the merits as between Royal and Nan Ya.[19]

## II. ALTERNATIVELY, THE COURT SHOULD BIFURCATE AND TRY FIRST THE CLAIMS BETWEEN ROYAL AND ZYGO AND THEN, ONLY IF NECESSARY, PROCEED TO A JURY TRIAL OF ROYAL'S CLAIMS AGAINST NAN YA

This case effectively ended for Nan Ya in September of 2002 when the Court granted it summary judgment. Since that time, Royal and Zygo have had the opportunity to engage in extensive discovery and to prepare for trial. Nan Ya, by contrast, has not. In sharp contrast to Royal and Zygo who have actively litigated this case for the past two and half years, Nan Ya suddenly learned from the Court's Order in mid-December that it now faces a January 17, 2005 deadline for filing a trial memorandum. To say that these dramatic changes have prejudiced Nan Ya, a company based in Taiwan, is to engage in gross understatement.

It is manifestly unjust to require Nan Ya to participate as a defendant in a looming trial. For example in *Schaab v. Owens-Corning Fiberglas Corp.*, No. 88-9180, 1990 U.S. Dist. LEXIS 6083 (E.D. Pa. May 16, 1990) the Court initially gave the defendant leave to add third-party defendants. On further reflection, however, the Court granted the third-party defendants' motion to dismiss based on prudential considerations. The third-party defendants argued persuasively, among other things, that the third party complaint was initiated within three months of the scheduled trial date "and the resulting prejudice to the third party defendants of having to hastily prepare their defenses." *Id.* at *2, n.3.

---

[19] Presumably Royal cannot use Nan Ya's summary judgment against Zygo because of Royal's conduct and because Zygo lacked standing to oppose this motion. That, however, is not an issue of concern to Nan Ya.

In this case, the prejudice to Nan Ya is patent. Nan Ya, indeed, would have been far better off if it had lost summary judgment over two years ago. Moreover, Nan Ya would need a substantial amount of time simply to obtain and review all of the information generated in discovery by Royal and Zygo,[20] much less to prepare to respond to it -- assuming, as it appears to be implicit in the Court's scheduling, that Nan Ya would have no rights to conduct discovery for itself. Of course, if it is to be brought back into this case, Nan Ya should have a fair opportunity to conduct discovery of Royal and Zygo. Indeed, even Royal, which showed almost no regard for Nan Ya's rights and interests, suggested at the status conference that Nan Ya would want to depose some witnesses. Royal was not so concerned, however, as to bring this issue to the Court's attention by filing a motion before the close of discovery.

Not only is this turn of events unfair to Nan Ya, it is also entirely unnecessary and inefficient. Royal's contingent claim against Nan Ya is not even ripe because Royal has failed to pay a penny to Zygo and denies that it has any obligation to do so. Royal's claim that judicial efficiency compels the inequitable result that severely and unduly prejudices Nan Ya is mistaken. Rather, Royal's need for evidence it failed to obtain despite a discovery period of three years is the real impetus for its motion.

Lastly, Royal and Zygo have not claimed a jury trial, but Nan Ya has. It would be far more efficient to have the Court conduct a brief trial on the merits of the Royal-Zygo dispute. Indeed, the court trial may obviate the need to empanel a jury with regard to Royal's claims against Nan Ya and would, assuming the Court were to deny Nan Ya's motion for summary judgment, allow Nan Ya a fair opportunity to conduct discovery and prepare for trial.

---

[20] In addition to the voluminous pleadings that the Court inherited with this case, there are presumably many other discovery documents that are not part of the record, including

-29-

III. **CONCLUSION**

For all of the foregoing reasons, Nan Ya is entitled to summary judgment against Royal. Alternatively, the Court should proceed to try the Royal-Zygo claims, bifurcating the jury trial of Royal's contingent claim against Nan Ya.

                              NAN YA TECHNOLOGY CORPORATION

By: *[signature: Charlsa D. Broadus]*
                    Daniel L. FitzMaurice (ct#05331)
                    Charlsa D. Broadus (ct#22153)
                    DAY, BERRY & HOWARD LLP
                    CityPlace I, 185 Asylum Street
                    Hartford, CT  06103-3499
                    (860) 275-0100 (phone)
                    (860) 275-0343 (fax)
                    dlfitzmaurice@dbh.com
                    cdbroadus@dbh.com

                    Tait Graves, Esq. (*pro hac vice* 23302)
                    WILSON SONSINI GOODRICH &
                        ROSATI
                    One Market, Spear Tower
                    Suite 3300
                    San Francisco, CA  94105-1126
                    (415) 947-2000 (phone)
                    (415) 947-2099 (fax)
                    tgraves@wsgr.com

                    Its Attorneys

---

complete transcripts of all depositions and documents produced in discovery. Nan Ya has not received these documents, much less digested them to prepare for trial.

-30-

## CERTIFICATION

**THIS IS TO CERTIFY** that a true and correct copy of the foregoing document has been served by overnight mail, this 30th day of December, 2004, to the following counsel of record:

Robert K Marzik, Esq.
LAW OFFICES OF ROBERT K. MARZIK, P.C.
1512 Main Street
Stratford, Connecticut 06615

Geoffrey J. Ginos, Esq.
NICOLETTI HORNIG CAMPISE & SWEENEY
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801

Ian E. Bjorkman, Esq.
WIGGIN & DANA
Attorneys for Zygo Corporation
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832

**THIS IS TO CERTIFY** that true and correct courtesy copies of the foregoing document has been forwarded by hand delivery, this 29th day of December, 2004 to:

The Honorable Janet Bond Arterton
United States District Court
141 Church Street
New Haven, Connecticut 06510

The Honorable Joan G. Margolis
United States District Court
141 Church Street
New Haven, Connecticut 06510

_____
Charlsa D. Broadus