UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>ZYGO CORPORATION,<br><br>  Defendant.<br>------------------------------------------------<br>ROYAL INSURANCE COMPANY OF AMERICA,<br><br>  Third-Party Plaintiff,<br><br>  v.<br><br>NANYA TECHNOLOGY CORPORATION,<br><br>  Third-Party Defendant. | CASE NO.: Civil 3:01cv1317 (JBA)<br><br>**JURY TRIAL DEMANDED**<br><br>JANUARY 12, 2005 |

### MEMORANDUM OF LAW IN SUPPORT OF THIRD-PARTY DEFENDANT NANYA TECHNOLOGY CORPORATION'S MOTION TO STRIKE ROYAL'S VOUCHING IN NOTICE AND MOTION FOR AN ORDER CLARIFYING THE COURT'S BIFURCATION OF NON-JURY ISSUES FROM ISSUES FOR WHICH NANYA HAS <u>ASSERTED A JURY DEMAND</u>

By this motion, third party defendant Nanya Technology Corporation ("Nanya") seeks an expedited order: (1) striking Royal's substantively improper and untimely "vouching in" notice to Nanya of January 6, 2004; and (2) clarifying the Court's bifurcation of jury and non-jury issues to explicitly state that in any subsequent jury trial between Royal and Nanya, Nanya will not be collaterally estopped from litigating the issue of the release or any other issue between Nanya and Zygo. Nanya respectfully requests immediate court intervention, which is necessary to the parties in planning for both the non-jury trial and any subsequent jury trial given Royal's

last-minute efforts to avoid the Court's bifurcation ruling and its demand that Nanya prosecute the February 1, 2005 trial.

Immediately following the Court's January 3, 2005 bifurcation ruling, Royal sought to "vouch in" Nanya into the February 1 non-jury trial between Royal and Zygo; Royal also argued in its "vouching in" papers that Nanya would be collaterally estopped from litigating before the jury issues from the non-jury trial between Royal and Zygo. *See* (Ginos 1/6/05 Ltr. To Broadus).[1]

Royal's "vouching in" attempt should be struck for three independent reasons. First, "vouching in" is an arcane equitable procedure that presupposes unavailability of impleader under Rule 14 of the Federal Rules of Civil Procedure, here where Royal brought a third-party Complaint against Nanya on October 11, 2001. Second, there is no authority whatsoever for the proposition that a party can use the "vouching in" theory under any circumstances to circumvent a court order bifurcating jury and non-jury issues, as is the case here. Third, Royal's "vouching in" attempt is untimely and would severely prejudice Nanya for reasons already familiar to the Court: Royal has been aware of Nanya's defense regarding a Zygo/Nanya release since 2001, failed to do anything in three years to develop evidence on that issue, and now proposes forcing Nanya (which was not a party for more than two years) to suddenly take over an imminent bench trial on this issue where Nanya has demanded a jury trial.

Royal's arguments in its "vouching in" papers that Nanya would be collaterally estopped from litigating issues during any jury trial that arise during the non-jury Zygo/Royal trial are equally incorrect. The doctrine of collateral estoppel does not apply here, most importantly because Nanya is not in privity with Royal.

---

[1] A copy of Mr. Ginos' letter is attached hereto as Exhibit 1.

Royal's Vouching In Notice filed at this late date, just weeks before trial, is a thinly veiled attempt to save itself from its failure to take discovery and to properly prepare its case against Zygo in time for the looming trial date and seeks to shift to its opponent Nanya at the eleventh hour the burden and litigation costs and risks attendant to preparing and proving Royal's case.  Unsurprisingly, Royal provides no support for injecting Nanya as its last minute proxy to "take over" for Royal in proving its claims against Zygo at the February 1, 2005 trial.

## BACKGROUND

Royal filed suit against Zygo on July 13, 2001, alleging, *inter alia*, that Zygo had impaired Royal's subrogation rights by releasing Nan Ya. (Dkt #1 ¶¶ 78-81.)  In October of 2001, Royal added Nanya as a third-party defendant. (Dkt. # 18.)  In its Third-Party Complaint, Royal asserted a <u>contingent</u> claim of subrogation against Nanya. (Dkt. # 18, ¶ 35.)  On December 3, 2001, Nanya filed its answer, affirmative defenses, and jury claim, asserting, *inter alia*, that Zygo had released Nanya of all claims. (Dkt. #27.)  Thus, the issues of release and settlement have been present in and central to this litigation since October, 2001, according to Royal's own Third-Party Complaint allegations.

Thereafter, Nanya conducted written discovery on the issue of settlement and release and moved for summary judgment on Royal's third-party claim.  On September 12, 2002, Judge Goettel granted summary judgment to Nanya due to Royal's failure to respond at all in any manner to Nanya's filing.  Subsequently, Royal sought and obtained from Judge Goettel a series of discovery extensions, which resulted in an overall discovery period of approximately three years.  During the preceding two years, Royal and Zygo have participated in extensive discovery.  Notably, however, Royal never deposed any representative of Nanya regarding the issue of the release.  Nanya, meanwhile, has not been an active party to the substantive claims involved in the Royal/Zygo case for well over two years.

At Royal's instigation in its July 30, 2004, Memorandum in opposition to Zygo's motion for summary judgment, (Dkt. 152), and its November 30, 2004 letter to the Court calling for reconsideration of Judge Goettel's dismissal of Nanya from this action,[2] the Court issued its Order of December 14, 2004, reconsidering and denying Nanya's previously granted motion for summary judgment.  This sudden turn of events precipitated Nanya's filing of a motion for reconsideration of the Court's Order of December 14, 2004, and, alternatively, for an order bifurcating the bench trial of the coverage dispute between Royal and Zygo from Royal's jury triable contingent subrogation claims against Nanya in the event that Zygo prevails in the first trial.  At the January 3, 2005 status conference in this matter, the Court denied Nanya's motion for reconsideration, but granted Nanya's motion for bifurcation.

Accordingly, the Court scheduled a bench trial on the dispute between Royal and its insured, Zygo, for February 1, 2005, following a lengthy discussion with counsel concerning the logistics of trying these issues separately and the Court's requirements for the January 18, 2005 pretrial submissions in advance of trial.  Tellingly, at no point during the status conference specifically addressing bifurcation and Zygo and Royal's trial readiness did Royal ever raise with the Court or with counsel the issue of vouching in or its theory that Nanya must now take its place in proving Royal's claims at the February 1, 2005 trial against Zygo.  Indeed, it is obvious that Royal concocted this theory only afterwards, in a last-ditch effort to circumvent the Court's bifurcation ruling.

---

[2]Royal apparently gave no consideration to the distinct possibility that its request to inject Nanya into the case on the eve of the Zygo/Royal trial would foreseeably prompt bifurcation of the non-jury and jury triable issues between the parties in the interest of fairness.  Bifurcation was necessary to avoid the prejudice that would otherwise undoubtedly flow from requiring Nanya to try a case with mere weeks' preparation, after having been absent from the litigation for two years and without having had an opportunity to conduct meaningful discovery.

On Friday, January 7, 2005, Nanya's counsel received in the mail Royal's Vouching In Notice dated January 6, 2005, demanding that Nanya "take over" for Royal and assume the prosecution of Royal's declaratory judgment action against Zygo to prove the existence of a release that Royal claimed (in October, 2001) had impaired its rights under the Zygo/Royal insurance policy.[3]  The Notice cites no case authority, and was accompanied by a letter from Royal's counsel, Geoffrey Ginos, putatively addressed to Nanya's counsel, Charlsa Broadus, but copied to the Court.  In its letter, Royal faults the Court's bifurcation order for "thwarting" and "frustrating completely" Royal's ability to offer evidence in this case to prove its claims.

## ARGUMENT

**I.     Royal's Vouching-In Notice Is Procedurally Invalid and Untimely.**

   **A.     There Is No Authority To Support Vouching-In .**

Vouching-in is the common law predecessor to Rule 14, the impleader statute.  *See* Fed. R. Civ. P. 14; *see also SCAC Transp. Inc. v. S.S. Danaos*, 845 F.2d 1157, 1162 (2d Cir. 1988)(quoting 18 Charles Wright & A. Miller, Federal Practice & Procedure § 4452 (2d ed. 1987).  Under this doctrine, a party to an action, generally referred to as "the noticing party," informs a nonparty, or the "vouchee," that it is liable to it with respect to the matter being sued upon, and affords the vouchee an opportunity to defend.  *See SCAC Transp. Inc.*, 845 F.2d at 1163; *see also* 59 Am. Jur. 2d Parties § 262 (2004).

Royal's January 6, 2005 letter offers nothing more than bare citations (without analysis) and self-serving rhetoric concerning the "time hallowed" nature of the vouching in-doctrine and its "continued viability" in the Second Circuit when asserting that it applies here.  Notably, however, Royal is silent on the explicit language of the Second Circuit's express holding that

---

[3] A copy of the Notice is attached hereto for the Court's convenience as Exhibit 2.

"[c]ommon-law vouching in **is a superfluous procedure where impleader is available**." *SCAC Transp. Inc.*, 845 F.2d at 1163 (citing 18 Charles Wright & A. Miller, *Federal Practice & Procedure* § 4452 at 445-46 (2d ed. 1987) (emphasis added). Second Circuit law is equally clear that "[v]ouching-in is used where the vouchee **cannot be impleaded because of defects in personal jurisdiction**." *Duferco*, 333 F. 3d at 386 (characterizing vouching-in as a procedural device used mainly in arbitration disputes) (emphasis added).

Essentially, Royal attempts to blame the Court's bifurcation ruling for its own failure to effectively utilize the third-party pleading practice that it invoked in October, 2001 or to take any discovery on issues related to the ever-present issues of release and settlement. Contrary to Royal's assertions, neither the Rule 14 impleader rule governing third-party practice nor the Court's bifurcation ruling has prevented Royal from obtaining evidence to support its allegations against Zygo. Rather, Royal finds itself in its current position of unreadiness due to its own inactivity in prosecuting its lawsuit.

Royal <u>successfully impleaded</u> Nanya into this action as a third-party defendant, after which Judge Goettel granted Nanya's motion for summary judgment in 2002 <u>because Royal failed to oppose it or to otherwise respond in any way to the filing of a potentially dispositive motion.</u> In addition, both during the period before the Court granted summary judgment to Nanya and afterwards, Royal could have deposed employees of Nanya and other persons in Taiwan by utilizing letters rogatory and following the procedures required by the Hague Convention, but opted not to. Indeed, Federal Rule of Civil Procedure 804(b)(1) would have permitted Royal to introduce the deposition testimony of such witnesses at trial against Zygo.[4]

---

[4] Curiously, Royal claims that Nanya is "uniquely capable of offering testimony and documentary evidence" in support of the issues of release, *see* (Ex. 1 at 2.), even though Royal has actually known for some time the identities of the central Nanya witnesses on this issue, especially after reading Nanya's 2002 motion for summary judgment, which was premised on the release and settlement with Zygo.

As this Court has already determined at the January 3, 2005, Royal did not take advantage of the opportunity to take discovery from Nanya employees on release and settlement issues that have always been present in this case.

In addition, the vouching-in doctrine in traditionally is limited to an indemnitor-indemnitee relationship. *See Duferco Int'l Steel Trading*, 333 F.3d at 386 (vouching-in is used where a party attempts to join a nonparty alleged indemnitor by notifying the nonparty of the pendency of an arbitration that might obligate the nonparty to indemnify the noticing party); *Universal American Barge Corp. v. J-Chem, Inc.*, 946 F. 2d 1131, 1138 (1991) ("Vouching helps to avoid duplicative litigation and the risk of inconsistent results **in adjudicating indemnification claims**") (emphasis added); *Federal Practice &* Procedure, § 4452 at 391 (2d Ed. 2002) ("Vouching practice has been extended, in an uncertain fashion, to a wide variety of relationships in which a **nonparty** has an **obligation to indemnify** a party for liability asserted against the party") (emphasis added). *See generally*, 59 Am. Jur. 2d Parties § 262 (2004) ("vouching-in" **presupposes** that the vouchee is liable over to the noticing party).

Here, it is plain that the relationship between Nanya and Royal is not an indemnitor-indemnitee relationship; Royal has not asserted a claim for indemnification against Nanya. Rather, Royal has asserted a contingent subrogation claim against Nanya. *See Great American Ins. Comp. v. United States*, 575 F. 2d 1031, 1034 (2d Cir. 1978) (discussing difference between common law claim for indemnity and an insurer's subrogation claim against a third party allegedly responsible for its insured's damages). Thus, the relationship between Royal and Nanya is strictly adversarial and involves a classic third-party plaintiff/third-party defendant relationship governed by Federal Rule 14.

Finally, Royal presents no authority suggesting that a party can circumvent a court order bifurcating jury and non-jury issues through the "vouching in" theory, because there is no such authority. Here, under Royal's "vouching in" approach, Nanya would lose its right to a jury trial, as it would be forced to take over Royal's own non-jury case beforehand. This was not what the Court contemplated in its January 3 bifurcation ruling, and Royal should not be permitted to use a bizarre and inapplicable theory to perform an end run around that order.

### B. In Any Event, Royal's Vouching In Notice Is Untimely.

A proper notice of vouching must at the very least provide "a meaningful opportunity to assume the defense." *Atlantic Richfield Co. v. Interstate Oil Transp. Co.*, 784 F. 2d 106, 111 (2d Cir. 1986), *cert. denied*, 479 U.S. 817 (1986). Courts have routinely held that notice of vouching served within weeks of trial is untimely. *See United New York Sandy Hooks Pilots Ass'n v. Rodermond Indus.*, 394 F. 2d 65, 72 (3d Cir. 1968); *Farrell Line, Inc. v. Nafleet, Bull & Roberts, Inc.*, 1995 U.S. Dist. LEXIS 1091 (S.D.N.Y. February 2, 1995) (holding that a vouching-in notice served three weeks before trial was scheduled was untimely).[5]

Here, Royal first impleaded Nanya as a third-party in 2001 and the Court granted Nanya's motion for summary judgment as to Royal's claims in 2002. Royal and Zygo then conducted extensive discovery over the next two years relating to their claims and defenses.[6] At no time during the course of a discovery period (which was extended by an additional year at Royal's requests) did Royal ever claim that Nanya should assume the prosecution of Royal's declaratory judgment action against Zygo. In addition, Royal did not raise this issue with the Court or with counsel at the January 3, 2005 status conference at which the February 1, 2005

---

[5] Copies of unreported cases are attached hereto in alphabetical order as Exhibit 3.

[6] Although Nanya was served with copies of the deposition notices, Nanya understandably did not participate in any discovery because the Court had dismissed it from the case.

Royal/Zygo trial date and the January 17, 2005 date for pretrial submissions was established by the Court.

Instead, in this case that has been pending for almost three years, Royal chose to wait until the eve of trial to file its notice of vouching in demanding that Nanya take over the prosecution of Royal's claim against Zygo, with pretrial submissions due eleven days later and with trial scheduled to begin approximately three weeks later. At this late date, it would be manifestly unjust to require Nanya to assume the prosecution of Royal's claims with a trial starting in less than a month. In addition, if Nanya were forced to take over Royal's case, Nanya would be at the mercy of Royal's discovery, here where the Court has already ruled that Royal did not timely avail itself of the opportunity to take discovery on the release and settlement issues involving Nanya and Zygo.

Given that Nanya is far from confident that Royal has adequately prepared its case against Zygo, Nanya would be severely prejudiced by having to take over from Royal at the eleventh hour the prosecution of an action that involves a number of issues, including the issue of release. Royal's tender of its prosecution to Nanya is absurd and is plainly intended to force its adversary Nanya to shoulder alone the costs and burdens of litigating (and the potential risk of losing) the claim against Zygo due to Royal's inadequate trial preparation.

## II.    Collateral Estoppel Does Not Apply To Bar Nanya From Trying Its Affirmative Defenses Before A Jury.

Having failed to take appropriate discovery or to properly prepare for trial on the issues of release and settlement that have been present in this case for three years, in its January 6, 2005 letter, Royal summarily concludes that if is loses to Zygo, "Nanya will be bound by the findings of the Court with respect of said defenses in the First Trial," (Ex. 1 at 2), and threatens that unless Nanya agrees to take Royal's place at trial, Nanya will be liable to Royal "for any and all

sums which it may reasonably pay in settlement of the disputes between Royal and Zygo to the extent that such payment relates to the purchase price of the subject AFM (and any interest thereon) that Nanya has refused to pay to Zygo in breach of the subject sales contract between them." (Ex. 1 at 3.)

To the contrary, collateral estoppel does not bar Nanya from relitigating the enforceability of the release in an action between Royal and Nanya. For collateral estoppel to apply, four elements must be satisfied: (1) the issues raised in both proceedings must be identical; (2) the relevant issues must have been actually litigated and decided in the prior proceeding; (3) the party to be estopped (or its privity) must have had a full and fair opportunity to litigate the issues in that prior proceeding; and (4) resolution of the issues must have been necessary to support a valid and final judgment on the merits. *Edberg v. CPI-The Alternative Supplier, Inc.*, 156 F. Supp. 2d 190, 195 (D. Conn., 2001). Even assuming that Royal could satisfy elements 1, 2, and 4 (which Nanya does not concede) regarding enforceability of the release and whether the damages to the second AFM were caused by improper or insufficient packaging for which Zygo is responsible, it is plainly evident that Royal cannot satisfy the third element because: (1) there is no privity between Royal and Nanya, especially here where Nanya has not had a full and fair opportunity to undo and correct the adverse effects of Royal's inaction and strategic miscalculations over the past three years in failing to take discovery to develop facts showing Zygo's settlement and release of its claims against Nanya for the equipment at issue; and (2) where Royal's interests in proving a release directly conflict with Nanya's interests in proving this issue.

**A.      The Relationship Between Royal and Nanya Does Not Create Privity.**

Collateral estoppel is inapplicable here because there is no privity between Royal and Nanya. Privity is a broad concept which requires the court to examine the surrounding circumstances to determine whether claim preclusion is justified. *Russell v. SunAmerica Securities, Inc.*, 962 F.2d 1169, 1173 (5th Cir. 1992). It is nothing more than a "legal conclusion that the relationship between the one who is a party on the record and the non-party is sufficiently close to afford application of the principle of preclusion." *Id.* "While the concept of privity lacks precise definition, it has been held that 'a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity.'" *Hartford Accident & Indem. Co. v. Columbia Cas. Co.*, 98 F. Supp. 2d 251, 256 (D. Conn. 2000) (quoting *Aetna Casualty & Surety Co. v. Jones*, 220 Conn. 285, 596 A.2d 414 (1991)).

Here, the relationship between Royal and Nanya does not fall within any of the broad categories of relationships that courts have found support a finding of privity:

> Federal courts have deemed several types of relationships "sufficiently close" to justify preclusion. First, a non-party who has succeeded to a party's interest in property is bound by any prior judgments against the party. *Golden State Bottling Co. v. NLRB*, 414 U.S. 168, 179, 94 S. Ct. 414, 38 L. Ed. 2d 388 (1973); *United States v. New York Terminal Warehouse Co.*, 233 F.2d 238, 241 (5 Cir. 1956). Second, a non-party who controlled the original suit will be bound by the resulting judgment. *Dudley v. Smith*, 504 F.2d 979 (5 Cir. 1974) (president and sole shareholder controls his corporation); *Kreager v. General Electric Co.*, 497 F.2d 468, *cert. denied*, 419 U.S. 861, 95 S. Ct. 111, 42 L. Ed. 2d 95-96; *reh'ing denied*, 419 U.S. 1041, 95 S. Ct. 530, 42 L. Ed. 2d 319 (2 Cir. 1974)(president and sole shareholder controls his corporation); *Astron Industrial Associates, Inc. v. Chrysler Motors Corp.*, 5 Cir. 1968, 405 F.2d 958 (parent corporation controls subsidiary). Third, federal courts will bind a non-party whose interests were represented adequately by a party in the original suit. *Heckman v. United States*, 224 U.S. 413, 445-46, 32 S. Ct. 424, 434-35, 56 L. Ed. 820 (1912) (United States represents interests of American Indians); *Kerrison v. Stewart*, 93 U.S. 155, 160, 23 L. Ed. 843, 845 (1876) (trustee represents interests of beneficiaries); *Aerojet-General Corp. v. Askew*, 511 F.2d 710 (5 Cir. 1975) (state represents interests of a home-rule county); *Berman v. Denver Tramway Corp.*, 197 F.2d 946 (10 Cir. 1952) (local government represents interests of the public). *See* Moore, *Moore's Federal Practice*, § 132.04[1][b][iv] (3d ed. 2004) (discussing the three categories of relationship to which issue preclusion may apply).

*Southwest Airlines Co. v. Texas International Airlines, Inc.*, 546 F.2d 84, 95-96 (5th Cir. 1977).

Prior to Royal's filing of its contingent subrogation claim, Nanya and Royal were strangers to one another, with no relationship whatsoever and they share no common interest with respect to the issue of release and settlement. The only existing 'relationship' between Nanya and Royal is that of plaintiff versus third-party defendant, arising solely from Royal's filing of a lawsuit against Nanya asserting that Royal **may** be entitled to a monetary payment from Nanya, provided Royal is found liable to its insured, Zygo, under the Zygo/Royal policy.

In the first trial, Royal must prove that Zygo released Nanya and, in that event, Royal incurs no liability, makes no payments to its insured and the case will conclude. If, however, Royal can not manage to prove release, it will be liable to Zygo as its insured and will then seek to recoup from Nanya the money Royal pays to satisfy Zygo's judgment. Royal can only recover from Nanya by claiming and proving in the second trial the polar opposite of what it must claim in the first trial, i.e. that Nanya never obtained a valid and enforceable release and settlement from Zygo. Far from being in privity, Royal and Nanya are direct adversaries, each with a different financial stake and diametrically opposed legal positions with respect to proving the existence of a release at each separate trial.

### B.     Royal Has A Different Incentive Than Nan Ya For Proving Release.

For issue preclusion to apply, the party in the first action had to have the same incentive to fully and vigorously litigate the issue as the party in the second action would have. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 332 (1979). "The *Parklane* requirement that the defendant in the first action have incentive in that action to litigate the lawsuit fully and vigorously also mandates conflict-free representation of issues sought to be precluded." *Universal American Barge Corp. v. J-Chem, Inc.,* 946 F. 2d 1131, 1140 (5th Cir. 1991).

Instead, Royal attempts to set itself up in a "Heads I win; but if Tails, I still win (just against someone else)" scenario; Royal intends to use offensively its own failure of proof in the first bench trial as a conclusive bar precluding Nanya from proving affirmative defenses against Royal in the second trial before a jury. Given that it is to Royal's direct advantage as against Nanya to have the Court determine in the first trial that there was no release and settlement, Nanya can not be precluded from proving its affirmative defenses against Royal premised on failure by its opponent Royal to prevail at the first trial. Indeed, as to Nanya, Royal has every financial incentive **not** to prevail against Zygo on the release and settlement issue. Where such a conflict exists, courts have refused to apply collateral estoppel. *See, e.g., Hoxworth v. Blinder*, 74 F. 3d 205, 208 (10th Cir. 1996) (investors who had a judgment against the principal of an insolvent company were not in privity with the bankruptcy trustee because they had polar interests in reaching the principal's assets--the trustee sought to recover them for the estate, while the investors sought to reach them to satisfy their own judgment).

Collateral estoppel can not be applied to hamstring Nanya in proving its defenses at a jury trial, to protect Royal from the risks of loss normally attendant to litigation, and to create a "win-win" for Royal that relieves it of any adverse consequences flowing from its lack of thorough trial preparation.

### C. Nanya Has Preserved Its Right To Have A Jury Resolve Issues Related To Its Affirmative Defenses.

Here where Nanya has preserved its right to a jury trial, it cannot be bound and precluded from proving its affirmative defenses of, *inter alia*, release and settlement based on the Court's finding at bench trial that Royal failed to prove the existence of a release. *See Axelrod v. Philips Academy*, 74 F. Supp.2d 106, (D. Mass. 1999) (plaintiff was not precluded from relitigating liability under its legal causes of action where the court had already ruled against the plaintiff

under his equitable action for a permanent injunction because the circumstances of the case militated in favor of trying the equitable claims first to the court). Clearly, Nanya's right to a jury trial on these issues and defenses trumps the discretionary doctrine of collateral estoppel. *Cf. PenneCom B.V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (noting that "collateral estoppel is an equitable doctrine - not a matter of absolute right").

### III.     Bifurcation Remains Both Practical and Necessary.

Royal and Zygo's coverage dispute involves a number of discrete and severable issues having no bearing on the claims and defenses that would be involved in a subsequent jury trial on Royal's contingent subrogation claim, assuming any such need for a second trial. A jury would be confused and distracted by these additional issues that it would not be called upon to resolve and, in fact, could not even reach the issue on Royal's contingent subrogation claim (including the issue of the release) unless and until the first court resolved in Zygo's favor other issues involving coverage.[7] Indeed, as the Court has recognized when bifurcating this case, Royal's contingent subrogation claim will not ripen until it actually pays Zygo on its insurance claim; if the court were to instead decide that there was no coverage under the policy (for whatever reason), then there would be no need to conduct a jury trial at all on the contingent subrogation claims.. *See Guardian Ins. Co. v. Hussein*, 2002 U.S. Dist. LEXIS 17358, *8 (D.V.I. 2002) ("On paying a loss, an insurer's right to subrogation attaches by operation of law") (citing *Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d Cir. 1992); 16 COUCH § 222:5. Given that Royal and Zygo have not claimed a jury trial, whereas Nanya has, it would be far more efficient for the Court to first conduct a brief trial on the merits of the Royal-Zygo dispute, thereby potentially obviating the need to empanel a jury assuming Royal prevails.

---

[7] In addition, Zygo has alleged a bad faith claim only as against Royal.

## CONCLUSION

For all of the foregoing reasons, Nanya requests an expedited order from the Court striking Royal's Vouching In Notice and ordering that no issues decided in the action between Royal and Zygo shall have any binding or preclusive effect in any subsequent trial between Royal and Nanya.

NAN YA TECHNOLOGY CORPORATION

By: _____
Daniel L. FitzMaurice (ct#05331)
Charlsa D. Broadus (ct#22153)
DAY, BERRY & HOWARD LLP
CityPlace I, 185 Asylum Street
Hartford, CT  06103-3499
(860) 275-0100 (phone)
(860) 275-0343 (fax)
dlfitzmaurice@dbh.com
cdbroadus@dbh.com

Tait Graves, Esq. (*pro hac vice* 23302)
WILSON SONSINI GOODRICH & ROSATI
One Market, Spear Tower
Suite 3300
San Francisco, CA  94105-1126
(415) 947-2000 (phone)
(415) 947-2099 (fax)
tgraves@wsgr.com

Its Attorneys

## **CERTIFICATION**

**THIS IS TO CERTIFY** that a true and correct copy of the foregoing document has been served by facsimile, electronic mail and overnight mail, this 12th day of January, 2005, to the following counsel of record:

Robert K Marzik, Esq.
LAW OFFICES OF ROBERT K. MARZIK, P.C.
1512 Main Street
Stratford, Connecticut 06615

Geoffrey J. Ginos, Esq.
NICOLETTI HORNIG CAMPISE & SWEENEY
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801

Ian E. Bjorkman, Esq.
WIGGIN & DANA
Attorneys for Zygo Corporation
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832

**THIS IS TO CERTIFY** that true and correct courtesy copies of the foregoing document has been forwarded by hand delivery, this 12th day of January, 2005 to:

The Honorable Janet Bond Arterton
United States District Court
141 Church Street
New Haven, Connecticut 06510

The Honorable Joan G. Margolis
United States District Court
141 Church Street
New Haven, Connecticut 06510

                                                                               Charlsa D. Broadus