LEXSEE 1995 U.S. DIST. LEXIS 1091

**FARRELL LINES, INC., Plaintiff, - against - NALFLEET, BULL & ROBERTS, INC., Defendant.**

**94 Civ. 1951 (LMM)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

**1995 U.S. Dist. LEXIS 1091**

**January 31, 1995, Decided
February 2, 1995, FILED**

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff employer filed a diversity action against defendant manufacturer alleging that the manufacturer negligently labeled its product and breached express and implied warranties. The employer attempted to use the common law mechanism of vouching-in to bring the manufacturer into a state negligence action an employee had filed against the employer. The manufacturer filed a motion for summary judgment.

**OVERVIEW:** The employer sought recovery of money it paid in settlement of an employee's claim, as well as its fees and costs. The court found that the employer deprived the manufacturer of a meaningful opportunity to assume the defense, by commencing the state action, ignoring the availability of impleader, completing discovery, and only then, on the eve of trial, notifying the manufacturer of the employee's claim. The court found the employee's negligence claim against the employer was sufficiently different in character from the product liability claim against the manufacturer, and that the manufacturer was not answerable over to the employer for vouching-in purposes. The court found that, with impleader concededly available, the commencement of this action five years after the underlying action clearly constituted undue delay. The manufacturer had been unduly prejudiced by the employer's decision to settle the underlying claim, rather than litigate it.

**OUTCOME:** The court granted the manufacturer's motion for summary judgment and dismissed the complaint in its entirety.

**LexisNexis(R) Headnotes**

**COUNSEL:**

For FARRELL LINES INCORPORATED, plaintiff: Steven L. Barkan, Lilly Sullivan Purcell Barkan & Junge, p.c., New York, NY.

For NALFLEET, BULL & ROBERTS, INC., defendant: Saul Wilensky, Lester Schwab Katz & Dwyer, New York, NY.

**JUDGES:** [*1] LAWRENCE M. McKENNA, U.S.D.J.

**OPINIONBY:** LAWRENCE M. McKENNA

**OPINION:**

MEMORANDUM AND ORDER

McKENNA, D.J.

Plaintiff, Farrell Lines, Inc. ("Farrell"), commenced this action against Defendant, Nalfleet, Bull & Roberts, Inc. ("Nalfleet"), on March 21, 1994. Nalfleet has moved the Court for summary judgment, pursuant to Fed. R. Civ. P. 56. For the reasons stated below, Nalfleet's motion is granted.

I. Facts

Case 3:01-cv-01317-JBA    Document 176-4    Filed 01/12/2005    Page 2 of 10

Page 2
1995 U.S. Dist. LEXIS 1091, *

The facts, which are largely uncontested, are as follows. In August, 1987, Eli Weir ("Weir") was employed as a seaman aboard a ship owned by Farrell. Weir was ordered to wash a generator aboard the ship with a Nalfleet product named "Bromar Electri-Cleaner." After a few hours exposure to the cleaner, Weir experienced nausea and dizziness, but he continued using the product in a confined space for two days. Weir, who alleged chronic medical problems resulting from inhalation of the cleaner's fumes, commenced an admiralty action against Farrell in New York State Supreme Court in March, 1989, alleging that Farrell was negligent and had maintained its vessel in an unseaworthy condition.

Farrell did not implead Nalfleet into the state court action, nor did it remove the action to federal court, where Nalfleet [*2] could have been made a third-party defendant to an admiralty action. Instead, on August 13, 1991, three weeks before the scheduled (but subsequently adjourned) trial date of September 5, Farrell attempted to use the common law mechanism of "vouching-in" to bring Nalfleet into the state action. Farrell provided Nalfleet with a copy of the complaint and offered Nalfleet an opportunity to either participate in settlement negotiations or to assume responsibility for the further defense of the action. Nalfleet chose not to participate in the state action, which Farrell settled in November, 1992 for $475,000.

Farrell commenced the instant diversity action against Nalfleet in March, 1994, alleging that Nalfleet negligently labeled its product and breached express and implied warranties. Farrell seeks recovery of the money it paid in settlement of Weir's claim, as well as its fees and costs.

II. Vouching-in

The common law doctrine of vouching-in, codified in N.Y. U.C.C. Law § 2-607(5) (1993) (emphasis added), provides in relevant part:

> Where the buyer is sued for breach of a warranty or other obligation for which his seller is answerable over
>
> (a) he may give his seller written [*3] notice of the litigation. If the notice states that the seller may come in and defend and that if the seller does not do so he will be bound in any action against him by his buyer by any determination of fact common to the two litigations, then unless the seller after seasonable receipt of the notice does come in and defend he is so bound.

The Second Circuit, while recognizing that vouching-in "remains a valid practice under certain circumstances," has declared it to be "a superfluous procedure where impleader is available." SCAC Transp. (USA), Inc. v. S.S. "Danaos", 845 F.2d 1157, 1162 (2d Cir. 1988). The Court observed that "impleader is of course superior to vouching because it forces the indemnitor to participate as a party and thus avoids delay that may result when an indemnitor declines to be vouched into an action." Id. Most scholars agree with the Second Circuit in this regard:

> Strong arguments can be made that preclusion by voucher should be unavailable whenever impleader is possible. . . . No problem of adequate representation can arise, and conflicting interests can be adjusted directly. . . . Vouching need be preserved only for cases [*4] in which lack of personal jurisdiction or other limitations make impleader unavailable.

18 Charles A. Wright et al., Federal Practice and Procedure § 4452 at 445-46 (1981).

This historical practice has even fallen into disfavor in New York, once third third-party actions were authorized by § 193(2) of the Civil Practice Act in 1922. See Hartford Accident & Indem. Co. v. First Nat'l Bank & Trust Co., 281 N.Y. 162, 169-70, 22 N.E.2d 324 (1939) (declining to apply the "perplexing and inexact" procedure of vouching-in where § 193(2) provided "a plain and sure track" for the complete settlement of the parties' claims); George Cohen Agency, Inc. v. Donald S. Perlman Agency, Inc., 51 N.Y.2d 358, 365, 434 N.Y.S.2d 189, 414 N.E.2d 689 (1980) (reviewing the evolution of third-party practice in New York from vouching-in to the current impleader statute, N.Y. Civ. Prac. L. & R. § 1007 (McKinney 1976), and concluding that impleader serves its intended purpose of avoiding "multiplicity and circuity of action, and [determining] the primary liability as well as the ultimate liability [*5] in one proceeding").

Farrell has not contested Nalfleet's assertion that it was amenable to jurisdiction in the underlying state action. While the Court does not decide the present motion solely on the ground that the attempted voucher was ineffectual given the availability of impleader, this factor carries substantial weight, particularly in light of the considerations discussed in the following two sections.

III. Meaningful Opportunity to Defend

Notice and an opportunity to defend are essential elements of vouching-in. The Second Circuit has observed that "notice in this context must mean at least a meaningful opportunity to assume the defense." Atlantic Richfield Co. v. Interstate Oil Transp. Co., 784 F.2d 106, 111 (2d Cir.), cert. denied, 479 U.S. 817, 93 L. Ed. 2d 31, 107 S. Ct. 75 (1986).

In United New York Sandy Hook Pilots Ass'n v. Rodermond Indus., 394 F.2d 65, 72 (3d Cir. 1968), an action factually similar to the one at bar, n1 the Third Circuit held that vouching-in was untimely where discovery was already complete, so it could not be contended that [*6] the purported indemnitors "could have had complete control of all relevant pretrial proceedings." The court observed that lack of timely notice was not cured by the vouched-in party's eventual opportunity to effect a favorable settlement or defend against the underlying claim. Id.

n1 United New York, an admiralty action, involved an electrician's inhalation of carbon tetrachloride cleaning fumes, and an attempt to vouch-in purported indemnitors after a first trial had taken place, but before the action was retried.

Farrell, which commenced the underlying action in March, 1989, did not provide notice to Nalfleet until August 13, 1991, three weeks before trial was scheduled, and three months after the Note of Issue, (App. J to Wilensky Reply Aff.), and Certificate of Readiness were filed and received by Farrell's attorney on May 3, 1991. The effect of filing these documents is to formally close discovery. See Grant v. Wainer, 179 A.D.2d 364, 577 N.Y.S.2d 839, 840 (A.D. 1st Dept. 1992) [*7] ("Pursuant to Uniform Rules for Trial Courts, a party who serves and files a note of issue and a certificate of readiness must indicate that discovery proceedings now known to be necessary have been completed; that there are no outstanding requests for discovery and; that there has been a reasonable opportunity to complete the proceedings.").

The Court finds that Farrell deprived Nalfleet of a "meaningful opportunity to assume the defense," 784 F.2d at 111, by commencing the state action, ignoring the availability of impleader, completing discovery, and only then, on the eve of trial, notifying Nalfleet of Weir's claim. Farrell obliquely suggests that its delay resulted from its failure to discover "the toxic nature of Nalfleet's product" until late in the game. (Pl.'s Sur-Reply Mem. at 7.) This argument rings hollow since, from its inception, Weir's claim was clearly grounded in the inhalation of Bromar Electri-Cleaner fumes.

IV. Identity of Causes of Action

Vouching-in is "limited to cases where the voucher's right to relief-over rests on a cause of action identical with that asserted by plaintiff against the original defendant . . . and there is [*8] authority to the effect that it should be confined to these limits." Bouleris v. Cherry-Burrell Corp., 45 Misc. 2d 318, 256 N.Y.S.2d 537, 539 (Sup. Ct. 1964) (emphasis added) (citations omitted). In Lord & Taylor, Inc. v. Yale & Towne Mfg. Co., 230 N.Y. 132, 136, 129 N.E. 346 (1920) (emphasis added), the New York Court of Appeals observed:

> the rule is that if a party is obliged to defend against the act of another, against whom he has a remedy over, and defends solely and exclusively the act of such other party and is compelled to defend no misfeasance of his own he may notify such party of the pendency of the suit and may call upon him to defend it. . . . Defendant could not be called in to defend a misfeasance not charged to it.

In the case at bar, Farrell had been charged, at least in large part, with its own negligence, and not with supplying a defective product. The Bill of Particulars in the underlying action states, in relevant part, that the defendant was negligent in:

> ordering and/or directing the plaintiff to perform work on or about the aforesaid generator at a time [*9] when those persons knew or should have known that to do work then exposed the plaintiff to a dangerous . . . condition; in failing to provide the plaintiff with a safe place in which to be and work . . .; in failing to provide the plaintiff with safe, proper . . . goggles, masks . . .; in providing the plaintiff with a certain cleaning agent . . . which [was] not certified for use aboard vessels by the U.S. Coast Guard . . .; in failing to . . . allow the said generator to cool down prior to ordering . . . the plaintiff to work as directed. . . .

(Ex. E to Def.'s Mot. at 1-2.)

Farrell's argument that Weir mischaracterized a strict product liability claim as a negligence claim finds little support on the rather complete record now before the Court. Farrell admits that the Electri-Cleaner label bore, inter alia, the following notations:

> Warning: Harmful if inhaled. . . .

> First Aid: If inhaled, remove to uncontaminated area. Seek medical attention. . . .
> Handling And Storage: Avoid breathing vapor or mist. . . .
> Ingestion: Concentrated vapors will cause dizziness. Remove to fresh air or give oxygen. If breathing is difficult, see a doctor.

(Pl.'s Mem. at 3.) Seeking to [*10] be characterized as a mere indemnitee, rather than as a joint (active) tortfeasor, Farrell argues, unconvincingly, that these warnings were insufficient to put it on notice of the dangerous nature of the cleaner. Since it is undisputed that Farrell was at least aware that Weir was using the cleaner in a confined space for two days, n2 the Court, without purporting to establish Farrell's negligence, or to rule on the adequacy of the product's label, finds Weir's negligence claim against Farrell sufficiently different in character from the product liability claim against Nalfleet, that Nalfleet is not "answerable over" to Farrell for vouching-in purposes.

---

n2 The parties do, however, dispute whether Weir informed the vessel's personnel that he was feeling nauseous during the first day of his labors. (Def.'s 3(g) Statement P 12; Pl.'s Response to 3(g) P 12.)

---

V. Amendment of Complaint

In response to Nalfleet's attack on the vouching-in letter, Farrell states "if there is any question of the pleadings not specifying contribution [*11] or indemnity as the grounds for recovery, then the pleadings should be amended accordingly." (Pl.'s Mem. at 21.) Farrell did not, in fact, premise recovery on any basis other than vouching-in to the underlying action, (Compl. P 9), nor has it submitted a proposed amended complaint. While Fed. R. Civ. P. 15(a) specifies that "leave [to amend] shall be freely given when justice so requires," a plaintiff is not entitled to test his claim on the merits where there is "undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party . . . [or] futility of amendment." Foman v. Davis, 371 U.S. 178, 182, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962).

The Court finds several of these factors present and therefore declines to allow Farrell to amend its Complaint. First, with impleader concededly available, the commencement of this action 5 years after the underlying action clearly constitutes undue delay.

Second, Nalfleet has been unduly prejudiced by Farrell's decision to settle the underlying claim, rather than litigate it. It is a fundamental principle of vouching-in that, if the purported indemnitor fails to assume [*12] control of the defense, and the indemnitee is held liable in the underlying action, then matters determined in that action may not be relitigated in a subsequent action to enforce indemnification. 18 Charles A. Wright et al., Federal Practice and Procedure § 4452 at 440 (1981). Since Weir's claim was resolved by settlement, there are no resolved issues meriting preclusive effect in the current action. Therefore, Farrell's attempt to enforce contribution or indemnification would require that the action be tried, in its entirety, more than seven years after the underlying events had transpired, and without the presence of Eli Weir, who cannot be made a party to the current action. Prejudice to Nalfleet is clear, since it is likely to have to litigate such issues as Farrell's culpability and the reasonableness of the settlement.

Third, Farrell has forcefully argued that by vouching Nalfleet in, it may recover the full amount it paid in settlement by establishing only its own potential liability to Weir, and the reasonableness of the settlement, rather than its actual liability. Nalfleet, in addition to contesting this conclusion, suggests that this tactical consideration was [*13] Farrell's motive for employing the vouching-in mechanism. In the absence of any other proffered explanation for failing to use impleader, the Court finds this argument of "bad faith" a reasonable one, and one that further counsels against allowing Farrell to amend its Complaint.

VI. Conclusion

The Court grants Nalfleet's motion for summary judgment and dismisses the Complaint in its entirety.

Dated: January 31, 1995

New York, New York

SO ORDERED.

LAWRENCE M. McKENNA

U.S.D.J.

LEXSEE 2002 U.S. DIST. LEXIS 17358

GUARDIAN INSURANCE CO., Defendant/ Appellant, v. MUSA HUSSEIN, Plaintiff/ Appellee.

Civ. App. No. 2000-216

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF THE VIRGIN ISLANDS, DIVISION OF ST. THOMAS AND ST. JOHN, APPELLATE DIVISION

2002 U.S. Dist. LEXIS 17358

August 9, 2002, Considered
September 4, 2002, Decided
September 4, 2002, Filed

**PRIOR HISTORY:** [*1] On Appeal from the Territorial Court of the Virgin Islands. Re: Terr. Ct. Civ. No. 263/1999.

**DISPOSITION:** Order of Territorial Court granting Hussein's motion to dismiss REVERSED and REMANDED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** The Territorial Court of the Virgin Islands ruled that, in appellant insurer's subrogation claim against appellant tortfeasor, the insurer failed to state a claim against the tortfeasor because the insurer's insured executed a general release in favor of the tortfeasor before receiving any payment from the insurer. The insurer appealed.

**OVERVIEW:** The tortfeasor was involved in an automobile accident with the insured and entered into an agreement to provide her with a rental vehicle and pay her deductible of $ 500 under her policy with the insurer. The insured executed a general release in favor of the tortfeasor and then collected the amount of damage to her vehicle less the deductible from the insurer. The lower court found that the general release barred the insurer's subrogation action. The appellate court disagreed, as the facts alleged in the complaint showed that the tortfeasor obtained the release of liability from the insured without the participation of the insurer and with knowledge of the insurer's subrogation interest or with information that should have given him knowledge of the insurer's interest. Thus, the court held that whether the tortfeasor knew of the insurer's contingent subrogation interest, which accrued at the time of the loss, was a question of fact raised by the complaint, and even if the tortfeasor's knowledge could not be proven at trial, a settlement for an amount expressly intended to cover only those damages not covered by insurance would not affect the subrogation rights of the insured.

**OUTCOME:** The order of the lower court granting the tortfeasor's motion to dismiss was reversed, and the matter was remanded.

**LexisNexis(R) Headnotes**

**COUNSEL:** For Appellant: Karin A. Bentz, Esq., St. Thomas U.S.V.I.

For Appellee: Archie Jennings, Esq., St. Thomas U.S.V.I.

**JUDGES:** BEFORE: RAYMOND L. FINCH, Chief Judge, District Court of the Virgin Islands;, THOMAS K. MOORE, Judge of the District Court of the Virgin Islands; and, PATRICIA D. STEELE, Territorial Court Judge, Division of St. Croix, Sitting by Designation.

**OPINION:** PER CURIAM.

In this subrogation action, the Territorial Court ruled that Guardian Insurance Co. ["Guardian" or "appellant"] failed to state a claim against Musa Hussein ["Hussein" or appellee"] because Guardian's insured executed a

general release in favor of Hussein before receiving any payment from Guardian. For the reasons that follow, the Court will reverse the judgment of the Territorial Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Taking the facts alleged in the complaint as true, n1 on November 19, 1997, Hussein was involved in an automobile accident with Felicina Matthias Lima ["Lima"]. As a result of the accident, [*2] Lima's vehicle sustained $ 5,184.00 in damages, and Hussein was cited by police for negligent driving. At the time, Lima's automobile was covered by a collision insurance policy issued by Guardian. On December 10, 1997, Hussein entered into an agreement with Lima by which he would provide Lima with a rental vehicle and pay Lima's $ 500.00 deductible under her policy with Guardian "plus any additional out of pocket expense which may arise from the depreciation of parts by the insurance adjuster." In exchange, Lima agreed to file a claim against her policy with Guardian and further agreed not to file any suit against Hussein for the damage to the vehicle covered by the policy. (*See* App. at 14 ("Written Agreement").) Lima also executed a general release by which she "released and discharged ... for myself, my heirs, executive administrators and assignees, acquit and forever discharge [Hussein] from all and all [sic] actions[,] causes of actions, claims of demand, costs, loss of services, expenses, compensation, consequential damages or any other thing whatsoever on account of, or in any way growing out of, any and all known and unknown personal injuries and property damage resulting [*3] or to result from" the accident. (App. at 15 ("Release of All Claims").)

  n1 Amazingly, although this is an appeal from a Rule 12(b)(6) dismissal, the appellant did not include a copy of the complaint in the appendix nor does it directly refer in its brief to the allegations contained in the complaint. Because a Rule 12(b)(6) motion tests the sufficiency if the complaint, there can be no question that the appellant failed to include in the appendix "a relevant portion of the record" as required by Rule 24(a) of the Virgin Islands Rules of Appellate Procedure. *See* V.I. R. App. P. 24(a). The Appellate Division requested the Territorial Court file, and the facts stated in this memorandum are taken from the complaint and the exhibits attached to it. *See* VIRAP 10(a).

On December 24, 1997, Guardian issued a check to Lima in the amount of $ 4,684.00, which represented the damages to her vehicle less the $ 500.00 deductible under the policy. At the time, Guardian had no knowledge of the release executed by Lima. [*4] On January 7, 1998, Lima signed a proof of loss form with Guardian claiming the $ 4,684.00 loss. The proof of loss form contains a subrogation clause, which provides in relevant part:

> The Insured hereby covenants that no release has been or will be given to or settlement or compromise made with any third party who may be liable in damages to the Insured and the Insured in consideration of the payment made under this policy hereby subrogates the said Company to all rights and causes of action the said Insured has against any person ...

(App. at 17.) On March 18, 1999, Guardian formally notified Hussein of its subrogation right. In response, Hussein advised Guardian that he had paid Lima's deductible and rental car costs and that Lima had executed a full release.

On May 12, 1999, Guardian filed this subrogation action against Hussein, attaching as exhibits the proof of loss claim signed by Lima, a copy of the check issued to Lima, the agreement between Lima and Hussein, and the general release in favor of Hussein. Hussein moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, asserting that the release executed by Lima operated to [*5] bar Guardian from seeking any reimbursement from him. n2 On August 30, 2000, the trial judge dismissed Guardian's complaint, ruling that the release eliminated any claims Lima may have against Hussein as a result of the accident, which in turn eliminated any claims that Guardian, as Lima's subrogee, against Hussein. (*See* App. at 10.) In dictum, the court noted that Guardian was not without a remedy, as it could sue Lima under a theory of fraud or breach of contract for the return of the amounts paid to her in violation of the terms of the policy. Guardian filed this timely appeal.

  n2 Hussein's motion to dismiss is not included in the Territorial Court's file. The file does contain a proposed memorandum and order, which appears to have been submitted by Hussein. The proposed memorandum, taken in context with the opposition and Hussein's reply, forms the basis for our description of Hussein's argument below.

## DISCUSSION

**A. Jurisdiction and Standard of Review**

Case 3:01-cv-01317-JBA    Document 176-4    Filed 01/12/2005    Page 7 of 10

Page 3
2002 U.S. Dist. LEXIS 17358, *

This Court has appellate jurisdiction to review [*6] judgments and orders of the Territorial Court in all civil cases. *See* V.I. Code Ann. tit. 4, § 33; Revised Organic Act of 1954 § 23A. n3 The Appellate Division exercises plenary review over the Territorial Court's dismissal of a complaint under Rule 12(b)(6). *See* 4 V.I.C. § 33. The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *see Bostic v. AT&T of the Virgin Islands,* 166 F. Supp. 2d 350, 354 (D.V.I. 2001); Fed. R. Civ. P. 12(b)(6). To make this determination, the Court accepts as true all well-pleaded factual allegations, drawing all fair and reasonable inferences in the plaintiff's favor. *See Bostic,* 166 F. Supp. 2d at 354. Attachments to the complaint are considered part of the complaint. Fed. R. Civ. P. 10(c). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 40 L. Ed. 2d 90, 94 S. Ct. 1683, 71 Ohio Op. 2d 474 (1974). [*7]

n3 48 U.S.C. § 1613a. The complete Revised Organic Act of 1954 is found at 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2002), reprinted in V.I. CODE ANN. 73-177, Historical Documents, Organic Acts, and U.S. Constitution (1995 & Supp. 2002) (preceding V.I. CODE ANN. tit. 1).

### B. The Doctrine of Equitable Subrogation

Although as a general matter, the doctrine of equitable subrogation is the law of the Virgin Islands, n4 the effect of a release executed by the insured on the insurer's subrogation rights is a matter of first impression in this jurisdiction. In order to resolve the issue presented by this case, the Court will briefly review the relevant principles of equitable subrogation in the context of insurance law.

n4 *See Prime Hospitality Corp. v. General Star Indem. Co.,* 41 V.I. 284, 291 n.10 (D.V.I. April 29, 1999) (available at 1999 U.S. Dist. LEXIS 6725, at *14 n.10).

[*8]

The doctrine of subrogation refers to "the right of the insurer to be put in the position of the insured in order to pursue recovery from third parties legally responsible to the insured for a loss paid by the insurer."

16 COUCH ON INSURANCE 3D § 222:5 (1995) ["COUCH"] (gathering cases). On paying a loss, an insurer's right to subrogation attaches by operation of law. *Gibbs v. Hawaiian Eugenia Corp.,* 966 F.2d 101, 106 (2d Cir. 1992); 16 COUCH § 222:5. Although the right to bring a subrogation action does not vest until the insurer has paid the insured under the policy, a "contingent subrogation right" in favor of the insurer arises at the time the loss occurs. *Hermeling v. Minnesota Fire & Cas. Co.,* 548 N.W.2d 270, 273 (Minn. 1996) ("The right of subrogation remains inchoate until such time as the subrogee makes a payment. The cause of action in subrogation therefore accrues prior to payment, but is not ripe for adjudication until payment is made by the subrogee.").

The general rule is that if an insured releases a tortfeasor from liability through a compromise and settlement after having received payment from the insurer, and the tortfeasor [*9] had no knowledge of that payment or of the insurer's subrogation claim, the settlement will extinguish the subrogation rights of the insurer. *See, e.g., Mitchell v. Holmes,* 9 Cal. App. 2d 461, 50 P.2d 473, 474 (Cal. Ct. App. 1935); *Bahn v. Shalev,* 125 A.2d 678, 680 (D.C. 1956); *Pittsburgh, C., C. & St. L. Ry. v. Home Ins. Co.,* 183 Ind. 355, 108 N.E. 525, 531 (Ind. 1915); *Cleaveland v. Chesapeake and Potomac Tel. Co.,* 225 Md. 47, 169 A.2d 446, 448 (Md. Ct. App. 1961); *Wolverine Ins. Co. v. Klomparens,* 273 Mich. 493, 263 N.W. 724, 725 (Mich. 1935); *Travelers Indem. Co. v. Vaccari,* 310 Minn. 97, 245 N.W.2d 844, 847-48 (Minn. 1976); *General Exch. Ins. Corp. v. Young,* 357 Mo. 1099, 212 S.W.2d 396, 401 (Mo. 1948); *Omaha & Republican Valley Ry. v. Granite State Fire Ins. Co.,* 53 Neb. 514, 73 N.W. 950, 951-52 (Neb. 1898); *Davenport v. State Farm Mut. Auto Ins. Co.,* 81 Nev. 361, 404 P.2d 10, 13 (Nev. 1965); *Ocean Accident & Guar. Corp. v. Hooker Electro-Chem. Co.,* 240 N.Y. 37, 147 N.E. 351, 355 (N.Y. 1925); *Aetna Cas & Sur. Co. v. Associates Trans., Inc.,* 1973 OK 62, 512 P.2d 137, 142 (Okla. 1973); [*10] *United Pac. Ins. Co. v. Schetky Equip. Co.,* 217 Ore. 422, 342 P.2d 766, 772 (Or. 1959); *Hospital Serv. Corp. v. Pennsylvania Ins. Co.,* 101 R.I. 708, 227 A.2d 105, 112 (R.I. 1967); *Leader Nat'l Ins. Co. v. Torres,* 113 Wn.2d 366, 779 P.2d 722, 724 (Wash. 1989); *see also* 16 COUCH § 224:99. The basic premise is that once the insured has settled and released her claims against a tortfeasor, she no longer owns any claim or potential claim to which the insurer may be subrogated. If, on the other hand, the tortfeasor had either actual or constructive knowledge of the subrogation interests of insurer, then a subrogation action against the tortfeasor will not be barred by a release executed without the consent or participation of the insurer. *See Bill Gray Enters. v. Gourley,* 248 F.3d 206, 222 (3d Cir. 2001) (discussing insurance subrogation law

Case 3:01-cv-01317-JBA   Document 176-4   Filed 01/12/2005   Page 8 of 10

Page 4
2002 U.S. Dist. LEXIS 17358, *

in general); *see also, e.g., Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d at 107. We now adopt these general rules of insurance subrogation law as the law of the Virgin Islands.

### C. The Trial Court Erred in Dismissing Guardian's Complaint

Guardian argues here, [*11] as it did before the trial court, that the facts alleged in the complaint, taken as true, show that Hussein obtained the release of liability from Lima without the participation of the insurer and with knowledge of the insurer's subrogation interest or with information that should give him knowledge of the insurer's interest. As a result, dismissal for failure to state a claim under Rule 12(b)(6) is not proper.

In opposition, Hussein reiterates that Guardian should be suing Lima for having obtained payment on the claim in violation of the terms of the policy, not him. He again presses the general proposition that an insured's release of her claims before any payment is made by the insurer necessarily extinguishes the insurer's subrogation rights because those rights could not have accrued before payment was made, and thus he could not have known about them. n5

> n5 He also argues, quite irrelevantly for purposes of Rule 12(b)(6), that he had no knowledge of the contents of the contractual agreement between Lima and Guardian as contained in the policy, therefore he could not have known of Guardian's subrogation interest. Notably, he does not argue that the $ 500.00 payment was intended to be a full settlement of the damages caused by his negligence, and acknowledges that he agreed to pay Lima's deductible and out-of-pocket expenses in exchange for her promise to file her claim with her insurance and never sue him for the damage.

[*12]

There is some authority for the proposition that when the insured settles before payment, the insurer is barred from bringing a subrogation action against the tortfeasor regardless of the tortfeasor's knowledge of the interest of the insurer. *See, e.g., March v. Mountain States Mut. Cas. Co.*, 101 N.M. 689, 687 P.2d 1040, 1043 (1984). This is a minority rule, however, whose application appears to be limited to suits by the insured against the insurer. Under this rule, the insured's claim for payment under a policy is barred because the insured impaired the insurer's subrogation rights in violation of the terms of the policy. *See, e.g., id.; see also St. Louis Fed. Sav. & Loan Assoc. v. Fidelity & Dep. Co.*, 654 F. Supp. 314 (E.D. Mo. 1987) (barring insured's claim against the insurer for payment under bonds because insured impaired insurer's subrogation rights); *Weinberg v. Transamerica Ins. Co.*, 62 N.Y.2d 379, 465 N.E.2d 819, 821, 477 N.Y.S.2d 99 (N.Y. 1984) (ruling that the burden was on the insured to prove "by express provision in the release executed to the third party or by necessary implication arising from the circumstances [*13] of the execution of the release" that its release did not prejudice the subrogation rights of the insurer."). Under such circumstances, this rule appropriately protects the insurer from being required to pay the insured for a third party's wrongdoing without having the natural and/ or contractual benefit of its subrogation rights. *See* 16 COUCH § 224:115 ("This alternative view merely places the ultimate burden or consequence of the release on the releasing party, by making the insured forfeit the claim under the policy).

These latter cases illustrate the equitable nature of the doctrine of subrogation, with the effect of an insured's impairment of subrogation rights depending in large part on the particular perspective at issue and the relative equities involved. *See generally* 16 COUCH § 222:8. As a basic principle of subrogation, insurers who have paid losses are the "natural beneficiaries" of the doctrine of subrogation. *Id.* § 222:9. As a matter of equity, neither the insured nor the tortfeasor should benefit by knowingly impairing the subrogation rights of the insurer. *See id.* § 224:99 ("An insured's signing of a release without the insurer's participation and [*14] assent should not operate to destroy the insurer's right of subrogation."). As between the insurer, who has done nothing to impair its rights, and the insured, who has already received payment for damages from the tortfeasor but in the process impaired the insurer's rights in violation of the terms of the policy, the equities fall in favor of the insurer. n6 Likewise, as between the tortfeasor, who caused the damages and has paid nothing for them, and the insurer, who has paid for the damages, the equities should also fall in favor of the insurer. *See, e.g., Bill Gray Enters. v. Gourley*, 248 F.3d at 222 ("Although a third party may generally assert any defense it has against the subrogor to the subrogee, this right does not exist when there is evidence of fraud between the subrogor and the third party that is intended to defeat the subrogee's rights."); *Wendy's Int'l, Inc. v. Karsko*, 94 F.3d 1010, 1014 (6th Cir. 1996) ("The [subrogation] doctrine was created to prevent wrongdoers from shirking their liability by settling with a subrogor, thereby successfully avoiding obligations to a subrogee."). In any event, it is generally understood that, whether [*15] before or after payment is made, "no act of the insured releasing the wrongdoer from liability can defeat the rights of the insurer when such release is

Case 3:01-cv-01317-JBA   Document 176-4   Filed 01/12/2005   Page 9 of 10

Page 5
2002 U.S. Dist. LEXIS 17358, *

given without the knowledge or consent of the insurer and when the wrongdoer has full knowledge of the insurer's right of subrogation under the insurance contract." 44 AM. JUR. *Insurance* § 1810 ("Generally; settlements before payment of insurance."); *see also* 16 COUCH § 224:114 ("A general release of a tortfeasor, prior to payment by the victim's insurer, does not bar a subrogation action against a tortfeasor by the insurer where the tortfeasor or his or her insurance carrier had knowledge of the insurer-subrogee's interest prior to the release.").

n6 Conceivably, the balance of equities may tip in favor of the insured if the settlement with the tortfeasor was precipitated some form of unreasonable conduct or delay on the part of the insurer. But Hussein has not cited, and we could not find, any body of cases that would allow the tortfeasor to escape virtually all liability for damages without some facts to indicate that the insurer unreasonably contributed to the impairment in some manner.

[*16]

Although by no means intended to capture the several aspects of the doctrine of equitable subrogation involved in any given case, these general principles inform the Court's approach to a case such as this one, where the insurer is seeking reimbursement from a tortfeasor who has allegedly intentionally "settled" with the insured for property damage in an amount equal to whatever damages are not covered by insurance in an effort to avoid a known subrogation right in the insured. At the outset, it must be kept in mind that this case does not implicate any concerns that the insured might doubly recover, or that a tortfeasor will be required to double pay for damages that had already been the subject of a settlement intended to cover all damage to the property.

As already stated, at the very least a contingent subrogation right arises at the time of the loss, contingent of course on payment by the insurer. Whether Hussein knew of Guardian's contingent subrogation interest, which accrued at the time of the loss, is a question of fact sufficiently raised by the allegations in the complaint. Moreover, even if Hussein's knowledge of Guardian's subrogation rights could not be proved at trial, [*17] there is ample authority for the proposition that a settlement for an amount expressly intended to cover only those damages not covered by insurance, such as the alleged settlement here, will not affect the subrogation rights of the insured. *See* 16 COUCH § 224:114 ("Where a settlement between an insured and a tortfeasor was not complete and was not intended to be for the full damage inflicted, but only for the part or portion of the damages not covered by insurance, such a settlement has been held not to defeat the right to reimbursement of the insurer."); *see also Security Storage & Van Co. v. General Ins. Co.*, 310 S.W.2d 729, 731 (Tex. Civ. App. 1958) (postsettlement payment became subrogated to the unsettled portion of the insured's claim against the tortfeasor); *Brown v. Vermont Mut. Fire Ins. Co.*, 83 Vt. 161, 74 A. 1061, 1061 (1910) (insurer's subrogation rights not impaired by insured who had executed a partial settlement expressly leaving those amounts covered by insurance policy); *see also, e.g., Camden Fire Ins. Ass'n v. Prezioso*, 93 N.J. Eq. 318, 116 A. 694 (N.J. Ch. 1922) (subrogation action not barred where tortfeasor [*18] settled with knowledge of insurance and for less than the full amount of injury or damage). Notably, Hussein cites no authority for his position that, as between a tortfeasor who has only paid damages not covered by insurance and the insurer who has paid the insured for all claimed damages, he can escape liability.

## CONCLUSION

In sum, this Court adopts the generally accepted principles of equitable insurance subrogation law and holds that when a tortfeasor had either actual or constructive knowledge of the subrogation interests of insurer, a subrogation action against the tortfeasor will not be barred by a release executed without the consent or participation of the insurer. Taking all the facts alleged in the complaint in this case as true and drawing all fair and reasonable inferences in favor of Guardian, the Court should conclude that Guardian has stated a claim for subrogation. The complaint sufficiently alleges that, at the time of the accident, Guardian had a subrogation interest in any claim that Lima might have against Hussein for damage to her vehicle. The express terms of the agreement between Lima and Hussein, which is attached to the complaint, acknowledges the [*19] existence of an insurance policy covering the vehicle. As alleged in the complaint, Hussein paid Lima an amount equal only to her $ 500.00 and any amounts not covered by her insurance. Also by the terms of the agreement, Lima promised to file a claim for payment with Guardian, upon which payment a subrogation right would arise by operation of law, unless waived by Guardian. As alleged in the complaint, "the Hussein agreement acknowledged that Guardian would subrogate the claim of the Insured ... [and] stated that counsel knew that the Insured was placing a claim for damages with Guardian." (*See* Compl. at 2.) Drawing all fair and reasonable inferences in favor of Guardian, the Court should conclude that Guardian has sufficiently alleged that Hussein had actual or constructive knowledge of Guardian's subrogation rights, and that by agreeing to

accept payment for only her deductible and out-of-pocket expenses, Lima did not impair Guardian's right to bring a subrogation against Hussein. Whether Hussein had such knowledge is a question of fact to be resolved at a latter stage of the proceedings.

**DATED** this 4TH day of September, 2002.

**ORDER OF THE COURT**

**AND NOW,** [*20] this 4th day of September, 2002, having considered the parties' submissions and arguments, and for the reasons set forth in the Court's accompanying Opinion of even date, it is hereby

**ORDERED** that the order of the Territorial Court granting Hussein's motion to dismiss is **REVERSED** and **REMANDED** for further proceedings consistent with this Opinion.