# Exhibit A

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------X
ROYAL INSURANCE COMPANY OF AMERICA,  :  Case No.:
                                                                             :  3:01 CV 1317 (JBA)
                               Plaintiff,                                        :

       -against-                                                          :

ZYGO CORPORATION,                                            :

                             Defendant.                                     :
------------------------------------------------------------X
ROYAL INSURANCE COMPANY OF AMERICA,  :

                         Third-Party Plaintiff,                :

       -against-                                                          :

NAN YA TECHNOLOGY CORPORATION,       :

                        Third-Party Defendant.           :
------------------------------------------------------------X

**PLAINTIFF ROYAL INSURANCE COMPANY OF AMERICA'S
LIST OF WITNESSES AND WITNESS SUMMARY**

    1.    **Richard Dressler**, 8 Lord Brook, Cromwell, Connecticut

Mr. Dressler, Zygo's Vice President of Finance, will testify that he joined Zygo in 2001 and, therefore, was not involved in the placement of Zygo's cargo policy with Royal. Mr. Dressler is expected to testify that his responsibilities at Zygo include coordinating with its insurance brokers, upon whom he relies to determine what type of insurance Zygo has and requires, and who that coverage should be placed with. Further, Mr. Dressler's basis for believing that the Policy provides coverage is the summary of coverage prepared by Zygo's insurance brokers and his experience with Zygo's insurer after Royal. Additionally, Mr. Dressler is expected to testify about the extensions Royal provided to Zygo while Zygo sought to place its cargo insurance with a new insurer, Zygo's

1

decision to cancel the Policy with Royal, and the fact that canceling did not affect Royal's decision on the subject claim.

2.  **Joseph Daneman**, c/o St. Paul Travelers, 499 Thornall Street, Edison, New Jersey

Mr. Daneman was the claims adjuster for Royal's Major Case Unit and responsible for assessing and (if necessary) adjusting Zygo's claim in respect of the damaged Second AFM. Mr. Daneman will testify about Royal's claims handling procedures in general and, in particular, Royal's handling, investigation and rejection of said claim.

He is expected to testify about an insured's duty to declare and pay additional premiums in respect of shipments for which it wants additional coverage, such as the optional unpaid vendor coverage offered to Zygo under Clause 52, and Zygo's failure to do so in this case. Mr. Daneman will testify about Zygo's failure properly to survey the damaged First and Second AFMs; and Zygo's untimely notice of the damage suffered by them. Additionally, Mr. Daneman will testify as to Zygo's failure to preserve and protect these damaged AFMs or to provide Royal with a reasonable opportunity to survey this evidence notwithstanding Zygo's knowledge that Nan Ya was refusing to pay for them on the grounds that said damage was due to insufficient packaging for which Zygo was responsible under their sales contracts, and will testify concerning the resulting severe prejudice to Royal. Mr. Danamen will also testify about Zygo's belated assertions of the bases for its claimed coverage, Zygo's failure to cooperate in Royal's investigation of the subject claims, and Zygo's reported settlement with Nan Ya of their disputes with respect to both of these damaged AFMs.

2

3.     **Allan Ilias**, c/o Chubb Group of Insurance Companies, 55 Water Street, New York, New York

Mr. Ilias was the underwriter at Royal responsible for negotiating and issuing the Policy. Mr. Ilias will testify that Zygo's application for insurance indicated that Zygo insured 100% of its shipments and that he understood this to mean that Zygo had no contingent exposure. Mr. Ilias will also testify that he was assured by Zygo's broker that it had no contingent exposure, and that, when he asked Zygo's broker why Zygo was nonetheless requesting contingency coverage, he was told that this was because Zygo had had such coverage in its prior marine cargo policy with another insurer and that Zygo wanted it, as well as other enhancements and options, in its policy with Royal. Mr. Ilias will explain that, in accordance these aforesaid advices, he included contingency coverage in the Policy as optional additional coverage which would require a declaration by Zygo of its need for such coverage and the payment of an additional premium should Zygo ever opt for coverage under Clause 52. Mr. Ilias will further testify that the parties clearly indicated in the Policy where they intended to include additional coverages within the standard rate, such as in Clause 55. He will also testify as to what Zygo was required to do to obtain "unpaid vendor" coverage under Clause 52 and why Zygo is not entitled to such coverage in this case. Mr. Ilias will also explain the difference between "unpaid vendor" insurance and "credit" insurance and the meaning and effect of Clause 52's language. He will also testify that his interpretation of said clause at the time that he was negotiating the Policy was in accord with the general practice and understanding in the marine insurance industry with respect to such contingency cover.

Mr. Ilias will testify that, because of Zygo's loss history, the Policy was amended to require Zygo to report certain shipments to allow Royal to inspect the packaging of the shipment.

Mr. Ilias will also testify that Royal was willing to renew the Policy with certain amendments to the terms and conditions. Specifically, Mr. Ilias will explain that Royal was willing to renew the Policy if, inter alia, the contingency clause was removed and, because of Zygo's loss history, Zygo agreed to pay an increased premium. Mr. Ilias will testify that Zygo's withdrawal of its claim was not a condition for renewal of the Policy. Mr. Ilias will also testify that Royal granted Zygo several extensions of the Policy period while Zygo looked for replacement insurance.

4.     **Larry Martin**, 1189 Washington Street, Middletown, Connecticut.

Mr. Martin was/is the staff assistant to the President of Zygo. Mr. Martin is responsible for formulating Zygo's business plan and budget, as well as well as assisting the President on various issues, including the dispute between Zygo and Nan Ya over the damaged atomic force microscopes ("AFM"). Mr. Martin is expected to testify that he was Zygo's central contact with Zygo's broker, for the insurance issues regarding this claim, as well as for Zygo's employees and agents operating in Taiwan, in particular Kevin Walch, Tim Smith, and Billy Wu. It is expected that Mr. Martin will testify that he relied upon Zygo's broker, Matthew Weidman of Mathog & Moniello, and had not even read the Policy until after the claim.

Mr. Martin will also testify as to his understanding of the negotiations with Nan Ya and his belief that Nan Ya was holding Zygo hostage by retaining the third (and only operational) AFM. Mr. Martin will also explain that he never directly told Nan Ya that Zygo's insurer, Royal, would pursue a claim against Nan Ya for the second AFM. He neither assigned a surveyor nor expert to examine the damaged AFM and did not inform Royal of the settlement meetings Zygo had with Nan Ya.

5.	**Timothy A. Smith**, No. 41, Lane 146 Shing Yi Road, Peitou, Taipei, Taiwan.

Mr. Smith was Zygo's regional manager for Taiwan and was responsible for managing the region and overseeing the local agents. He will testify about his involvement with the dispute between Nan Ya and Zygo over the damaged Atomic Force Microscopes, including his attendance on behalf of Zygo at two meetings in Taiwan with Nan Ya (and its representatives). Mr. Smith will also testify about his interactions with Zygo's other agents, including Billy Wu and Stan Lay, and his belief that Billy Wu was negotiating with Nan Ya and ultimately made a deal with Nan Ya and Nan Ya agreed to pay Zygo for one of the AFMs and return the loaner. Further, Mr. Smith will testify as to the leverage Zygo and Nan Ya had over the other, including Zygo's refusal to provide training to Nan Ya and Nan Ya's pressing need for a working AFM for its semiconductor business.

6.	**Kelvin R. Walch**, 73 Stanwell Road, Ashford, Middlesex, England.

Mr. Walch was employed by Zygo as an application support manager (or service engineer) until shortly after the subject atomic force microscopes ("AFM") were packed, shipped, and damaged. Mr. Walch provides services for moving (packaging) atomic force microscopes, and installation, training, maintenance, and spare parts, but he is not an expert. Mr. Walch will testify that he personally made recommendations that the anchorage points for these types of shipments could have been more secure. Most importantly, Mr. Walch will testify that Zygo had him conduct a preliminary inspection of the second damaged AFM and that it was necessary to retain the AFM in its damaged condition as delivered so that all interested parties, including Royal, could have access to the evidence. In fact, Mr. Walch will testify that by no later than February 11, 2000, he recommended to Zygo that it advise Royal of the damage so that Royal could send a surveyor.

Then, without a representative from Royal present, Nan Ya's surveyors examined the second damaged AFM and it was left unprotected at the loading dock.

Mr. Walch will also testify as to his preparing the salvage valuations for the two machines and that he was asked at the November 13, 2000, meeting to average the salvage value of the two damaged AFMs because the parties had reached an agreement. Mr. Walch will testify that after the meeting, he was convinced that Nan Ya had agreed to settle both cases.

7.  **Matthew Weidman**, 91 Willow Road, Guilford, Connecticut

Mr. Weidman was the account executive at Zygo's insurance broker, Mathog & Moniello, responsible for the Zygo account. It is anticipated that Mr. Weidman will testify that he was responsible for preparing the insurance application that was sent to Royal and that he was also responsible for negotiating the terms and conditions of the Policy on behalf of Zygo. It is also anticipated that Mr. Weidman will testify that he understood the statement in Zygo's insurance application that Zygo insured 100% of the instruments it shipped to mean that Zygo was responsible for the insurance coverage on the shipments it made to its clients.

It is expected that Mr. Weidman will testify that he does not recall reviewing the Policy to ensure that the coverages Zygo wanted were being provided by the Policy and that he does not know whether anyone else at Mathog & Moniello reviewed the Policy at the time it was issued to determine whether it contained the coverage Zygo had requested. It is also expected that Mr. Weidman will testify that he does not recall reading Clause 52 prior to the Policy being issued or recall discussing contingency coverage with Zygo prior to the Policy being issued.

Similarly, Mr. Weidman is expected to testify that he does not recall any conversations with Richard Dressler of Zygo regarding the effect, if any, of non-renewing with Royal would have on

Zygo's claim under the Royal policy. He will also testify to Royal's extension of the Policy while Zygo sought a new insurer and Zygo's coverage with that new insurer in which a separate rate was set forth for contingency coverage.

Lastly, Mr. Weidman will testify as to his communications between Royal and Zygo regarding access to and surveying the damaged AFMs as well as the time of Zygo's theories of recovery under the Policy.