insurance policy procured by the agent.    See Rich Maid Kitchens, Inc. v. Pennsylvania Lumbermens Mut. Ins. Co., 641 F. Supp. 297, 309 (E.D. Pa. 1986), aff'd sub nom., Appeal of Rich Maid Kitchens, Inc., 833 F.2d 307 (3d Cir. 1987); Eagle Star & British Dominions v. Tadlock, 22 F. Supp. 545, 548 (S.D. Cal. 1938).

253.    If Clause 52 is ambiguous, the intent of the parties was that Zygo have available to it through that clause, the option of separately declaring a cargo for which it needed unpaid vendor coverage, providing Royal with the information that Royal needed to assess that risk and obtaining such coverage from Royal if Zygo agreed to pay and did pay any additional premium required by Royal therefor above and beyond the premium provided in the Policy for standard coverage, and complied with any other conditions set by Royal in respect of such coverage.

254.    Only after examining the parties' intentions and determining that an ambiguity cannot be resolved thereby, should a court consider applying the contra proferentem doctrine. See Israel v. State Farm Mutual Automobile Ins. Co., 259 Conn. 503, 509, 789 A.2d 974 (2002); Metropolitan Life Ins. Co. v. Aetna Casualty and Surety Co., 255 Conn. 295, 306, 765 A.2d 891, 897 (2001) (internal quotations and citation omitted); Teano v. Hartford Life Ins. Co., No. CV 980580409S, 2000 WL 966371, at *8 (Conn. Super. June 23, 2000); American Home Assurance Co. v. Abrams, 69 F. Supp. 2d 339, 348 (D. Conn. 1999); United Technologies Corp. v. American Home Assurance Co., 989 F. Supp. 128, 145 n. 19 (D. Conn. 1997) (Arterton, J.).

255.    The contra proferentem doctrine, however, is a rule of last resort. See U.S. Fire Ins. Co. v. General Reinsurance Corp., 949 F.2d 569, 573 (2d Cir. 1991); Ball v. Bradley, 34 Conn. 496 (1868); Teano v. Hartford Life Ins. Co., No. CV 980580409S, 2000 WL 966371, *7 (Conn. Super. June 23, 2000); United Technologies Corp. v. American Home Assurance Co.,

989 F. Supp. 128, 145 n. 19 (D. Conn. 1997) (Arterton, J.); see also 2 Couch on Insurance, § 22:16 (3d ed. 1995).

256.    It should not be applied until all other "aids to construction have been employed and have failed to resolve the ambiguity." United Technologies Corp. v. American Home Assurance Co., 989 F. Supp. 128, 145 n. 19 (D. Conn. 1997) (Arterton, J.); see also Ball v. Bradley, 34 Conn. 496 (1868); Cooper v. RLI Ins. Co., No. CV 9403617128, 1996 WL 367721, at *2-*6 (Conn. Super. June 3, 1996); Crowley v. The Banking Center, No. CV87 23 75 99S, 1994 WL 685023, at *3 (Conn. Super. Nov. 29, 1994).

257.    Even if the Court were to find that Clause 52 is ambiguous and that the ambiguity cannot be resolved on the basis of the extrinsic evidence introduced to show the parties' intent, the contra proferentem doctrine would nonetheless be inapplicable under the specific facts of this case.    One of the primary rationales behind the rule is that "insurance contracts are usually offered to the insured on a take-it-or-leave-it basis and as such are termed contracts of adhesion . . . ." 2 Couch on Insurance, § 22:24 (3d ed. 2004); see also Port Authority of New York and New Jersey v. Affiliated FM Ins. Co., 311 F.3d 226, 235 (3d Cir. 2002).    Such a justification is not applicable, however, when the policy is negotiated by sophisticated commercial parties.    See 2 Couch on Insurance, § 22:24 (3d ed. 1995); Port Authority of New York and New Jersey v. Affiliated FM Ins. Co., 311 F.3d 226, 235 (3d Cir. 2002).

258.    Thus, courts have been unwilling to apply the rule "in the commercial insurance field when the insured is not an innocent but a corporation of immense size, carrying insurance premiums in six figures, managed by sophisticated business men and represented by counsel on the same professional level as the counsel for insurers." Eagle Leasing Corp. v. Hartford Fire Ins. Co., 540 F.2d 1257, 1261 (5th Cir. 1976); see also U.S. Fire Ins. Co. v. General Reinsurance

Corp., 949 F.2d 569, 574 (2d Cir. 1991); First State Underwriters Agency of New England

Reinsurance Corp. v. Travelers Ins. Co., 803 F.2d 1308, 1314 n. 5 (3rd Cir. 1986); ITC

Investments, Inc. v. Employers Reinsurance Corp., No. CV98115128, 2000 WL 1996233, *3

(Conn. Super. Dec. 11, 2000); Linemaster Switch Corp. v. Aetna Life and Casualty Corp., No.

CV91-0396432S, 1995 WL 462270, *4-*5 (Conn. Super. Jul. 25, 1995); cf. Cooper v. RLI Ins.

Co., No. CV 9403617128, 1996 WL 367721, *6 n.1 (Conn. Super. June 3, 1996).

259.    This exception applies here. The Policy was indisputably not issued on a "take-it-

or-leave-it" basis.    Quite to the contrary, Zygo insisted that the Policy include specific

enhancements and endorsements in addition to Royal's standard terms. The Policy was the result

of arms-length negotiations between Royal and Zygo's long-term broker, Mathog & Moniello.

The contra proferentem should not be applied under such circumstances. See U.S. Fire Ins. Co.

v. General Reinsurance Corp., 949 F.2d 569, 574 (2d Cir. 1991); First State Underwriters

Agency of New England Reinsurance Corp. v. Travelers Ins. Co., 803 F.2d 1308, 1314 n. 5 (3rd

Cir. 1986); Eagle Leasing Corp. v. Hartford Fire Ins. Co., 540 F.2d 1257, 1261 (5th Cir. 1976);

ITC Investments, Inc. v. Employers Reinsurance Corp., No. CV98115128, 2000 WL 1996233,

*3 (Conn. Super. Dec. 11, 2000); Linemaster Switch Corp. v. Aetna Life and Casualty Corp.,

No. CV91-0396432S, 1995 WL 462270, *4-*5 (Conn. Super. Jul. 25, 1995); cf. Cooper v. RLI

Ins. Co., No. CV 9403617128, 1996 WL 367721, *6 n.1 (Conn. Super. June 3, 1996).

260.    Clause 1 of the Policy provides, in pertinent part, "In consideration of premiums

at the agreed rates . . . on all shipments coming within the scope of this Policy, reported or not,

does insure: ZYGO CORPORATION . . . ." (Ex. P-11 (Policy)).

261.    The term "reported or not" has been interpreted to mean that the insurer is entitled

to premiums on all shipments covered by the policy regardless of whether the shipment was

reported or not. Construing the term in an open marine cargo policy, one court has stated that "Although the assured is required to declare shipments coming within this policy's terms, it is the fact of shipment rather than the transmission of a report prior to shipment which activates coverage and places the insurers at risk so as to give rise to a corresponding obligation upon the assured to pay premiums." Matco Products, Inc. v. Boston Old Colony Ins. Co., 104 A.D.2d 793, 795, 480 N.Y.S.2d 134, 137 (2d Dept. 1984) (citations omitted).

262.    Spoliation of evidence is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." West v. Goodyear Tire and Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999). "It has long been the rule that spoliators should not benefit from their wrongdoing." West v. Goodyear Tire and Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (citation omitted).

263.    The purposes of the spoliation doctrine are: (1) to punish the spoliator and deter spoliation; (2) to place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) to restore the prejudiced party to the same position it would have been in absent the wrongful destruction of relevant evidence by the opposing party. See West v. Goodyear Tire and Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (citations omitted).

264.    The Court has authority to impose sanctions on a party who has destroyed or failed to preserve evidence. See Reilly v. Natwest Markets Group, Inc., 181 F.3d 253, 267 (2d Cir. 1999). First, "[i]t is well-settled that the Court has the inherent power to sanction a party that destroys relevant and discoverable evidence." Shaffer v. RWP Group, Inc., 169 F.R.D. 19, 24 (E.D.N.Y. 1996); see also West, 167 F.3d at 779 (citation omitted). Second, under Rule 37 of the Federal Rules of Civil Procedure, the Court may sanction a party where spoliation prevents that party from complying with its discovery obligations. See West v. Goodyear Tire and

Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999); Turner v. Hudson Transit Lines, Inc., 142 F.R.D.

68, 72 (S.D.N.Y. 1991), aff'd, 89 Civ. 4252, 1992 WL 51570 (S.D.N.Y. March 9, 1992).

265.    The sanctions available to the Court under these two sources of authority are

comparable. See Dillon v. Nissan Motor Co., 986 F.2d 263, 268 (9th Cir. 1993). Sanctions may

include: (1) dismissal of a claim; (2) a preclusion order; (3) an order deeming specific facts

admitted; (4) an adverse inference; and (5) monetary sanctions. See West v. Goodyear Tire and

Rubber Co., 167 F.3d 776, 779-780 (2d Cir. 1999); Pressy v. Patterson, 898 F.2d 1018, 1024 (5th

Cir. 1990); Turner, 142 F.R.D. at 78.

266.    "'In determining whether a court should exercise its authority to impose sanctions

for spoliation, a threshold question is whether a party had any obligation to preserve the

evidence.'" Shaffer, 169 F.R.D. at 24 (citation omitted).

267.    The duty to preserve is an affirmative one, independent of a request that the

evidence be retained. See Shamis v. Ambassador Factors Corp., 34 F. Supp. 2d 879, 889

(S.D.N.Y. 1999); Shaffer, 169 F.R.D. at 24; Rice v. U.S., 917 F. Supp. 17, 19 (D.D.C. 1996);

Skeete v. McKinsey & Co., Inc., 91 Civ. 8093, 1993 WL 256659 (S.D.N.Y. July 7, 1993);

Turner, 142 F.R.D. at 73.

268.    "A party is under an obligation to preserve the evidence when the party has notice

that the evidence is relevant to litigation or when it should have known that the evidence may be

relevant to future litigation." Pace v. National R.R. Passenger Corp., 291 F. Supp. 2d 93 (D.

Conn. 2003) (citations and internal quotations marks omitted).

269.    "[T]he obligation to preserve evidence . . . arises prior to the filing of a complaint

where a party is on notice that litigation is likely to be commenced" or is reasonably foreseeable,

and that the evidence is relevant to the litigation. Turner, 142 F.R.D. at 73 (citations omitted);

see also Shaffer, 169 F.R.D. at 24; Henkel Corp. v. Polyglass USA, Inc., 194 F.R.D. 454, 456 (E.D.N.Y. 2000).

270.    "This obligation [runs] first to counsel, who [has] the duty to advise his client of the type of information potentially relevant to the lawsuit and of the necessity of preventing its destruction.    Similarly, [a party's] corporate managers [are] responsible for conveying this information to the relevant employees.    [Accordingly], it is no defense . . . that particular employees were not on notice." Turner, 142 F.R.D. at 73 (internal citations omitted).

271.    "Once a duty to preserve has been established, a court must then assess: (1) the relative fault of the litigant against whom sanctions are sought; (2) the degree of prejudice suffered by the movant due to the destruction or loss of the evidence at issue; and (3) the appropriate sanction." Indem. Ins. Co. of N. Am. v. Liebert Corp., 99 Civ. 6675 (DC), 1998 WL 363834, at *3 (S.D.N.Y. June 29, 1998) (citation omitted).

272.    In assessment of relative fault, culpability exists where there is "[1] willfulness, [2] bad faith, or [3] fault on the part of the sanctioned party." West, 167 F.3d at 779 (citation omitted).

273.    The first source of severe culpability - a willful failure to preserve evidence - has been characterized as "*any* intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown." Gates Rubber Band Co. v. Bando Chem. Indus., Ltd., 167 F.R.D. 90, 103 (D. Colo. 1996) (citation omitted) (emphasis added).

274.    The failure to preserve the second AFM was not the result of an "involuntary noncompliance," such as an accidental or inadvertent destruction of the evidence.    Gates, 167 F.R.D. at 103; In re Wechsler, 121 F. Supp. 2d 404, 419 (D. Del. 2000).

275.    As for the second source of severe culpability - bad faith - a party acts in bad faith if it fails to preserve evidence with a reckless or conscious disregard for its discovery obligations. See DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 136 (2d Cir. 1998); Donato v. Fitzgibbons, 172 F.R.D. 75, 82 n.7 (S.D.N.Y. 1997); Rice, 917 F. Supp. at 19.

276.    As for the third source of severe culpability, "*any* fault of the sanctioned party" may be sufficient to warrant dismissal, see Beers v. General Motors Corp., No. 97-CV-482 (NPM/DNH), 1999 WL 325378 (N.D.N.Y. May 17, 1999) (citation omitted) (emphasis in original), and "'[f]ault' in this context extends to at least gross negligence." Zies v. Dept. of Soc. Servs. of Human Resources Admin., 112 F.R.D. 223, 227 (E.D.N.Y. 1986) (citation omitted).

277.    A party is prejudiced when the destruction of evidence prevents the inspection and testing of that evidence and, as a result, frustrates a party's ability to prepare for trial or defend the case against it.  See Dillon, 986 F.2d at 265-66; Beers v. General Motors Corp., No. 97-CV-482 (NPM/DNH), 1999 WL 325378 (N.D.N.Y. May 17, 1999); Brancaccio v. Mitsubishi Motors Co., Inc., No. 90 CIV. 7852 (RWS), 1992 WL 189937 (S.D.N.Y. Jul 27, 1992).

278.    "While some showing that the destroyed evidence would have been relevant to the contested issue(s) is required, 'care should be taken' not to require too specific a level of proof." Shamis, 34 F. Supp. 2d at 889 (citation omitted).

279.    To demonstrate prejudice, Royal need not prove that an inspection of the second AFM would have shown the packaging to be insufficient; instead, Royal is only required to show that this unpreserved evidence "*may* have [proved] helpful to the defense . . . ." Dillon v. Nissan Motor Co., 986 F.2d 263, 268 (9th Cir. 1993) (emphasis added) (upholding preclusion order);

66

accord, Beers v. General Motors Corp., No. 97-CV-482 (NPM/DNH), 1999 WL 325378 (N.D.N.Y. May 17, 1999).

280.   In view of Zygo's willful, bad faith failure to preserve and protect the second AFM without permitting Royal any reasonable opportunity to inspect and survey it in reckless disregard of its obligations under the Policy, "[d]ismissal is appropriate." West, 167 F.3d at 779 (citation omitted). Moreover, the irreparable harm such destruction has done to Royal's ability to prepare for trial and defend the case against it, makes dismissal of Zygo's claims the only adequate remedy. See Beers v. General Motors Corp., No. 97-CV-482 (NPM/DNH), 1999 WL 325378 (N.D.N.Y. May 17, 1999); Thiele v. Oddy's Auto and Marine, Inc., 906 F. Supp. 158, 162-63 (S.D.N.Y. 1995); Brancaccio v. Mitsubishi Motors Co., Inc., No. 90 CIV. 7852 (RWS), 1992 WL 189937 (S.D.N.Y. Jul 27, 1992).

281.   In the alternative, if the Court decides not to dismiss Zygo's claims, it should issue a preclusion order.  An order precluding a spoliator from presenting evidence or witnesses is appropriate where the spoliator acted with bad faith or gross negligence. See Cine Forty-Second St. Theatre Corp. v. Allied Artist Picture Corp., 602 F.2d 1062, 1064 (2d Cir. 1979); Dillon, 986 F.2d at 268-69; Donato, 172 F.R.D. at 84.

282.   In the alternative, should the Court decide not to preclude Zygo from presenting evidence related to the packaging of the second AFM, it should issue an order deeming certain facts to be admitted. See Pressy, 898 F.2d at 1024. An order deeming certain facts admitted is appropriate where the spoliator acted negligently or recklessly. See id.

283.   In the alternative, the Court should draw an adverse inference from Zygo's failure to preserve the second AFM and from its failure to allow Royal to inspect the second AFM. See

Henkel, 194 F.R.D. at 457; Shamis, 34 F.2d at 890; Donato, 172 F.R.D. at 81; Shaffer, 169 F.R.D. at 28; Rice, 917 F. Supp. at 20-21.

284.    No finding of bad faith is necessary to impose such a sanction. See Shaffer, 169 F.R.D. at 26. The Second Circuit endorsed this view in Reilly, holding that "a finding of bad faith or intentional misconduct is not a sine qua non to sanctioning a spoliator with an adverse inference instruction." 181 F.3d at 267-68 (citation omitted).

285.    The culpable state of mind element required to impose an adverse inference "is satisfied if the evidence was destroyed knowingly, even if without intent to [breach a duty to preserve it], or negligently." Pace v. National R.R. Passenger Corp., 291 F. Supp. 2d 93 (D. Conn. 2003) (citations and internal quotations marks omitted).

286.    Zygo failed to preserve and protect said evidence and disposed of said evidence without Royal's informed consent and without permitting Royal any reasonable opportunity to inspect and survey it, Zygo's aforesaid conduct was culpable, in bad faith or, at minimum, grossly negligent, is highly prejudicial to Royal's defenses herein and to Royal's rights in subrogation against Nan Ya in the event that coverage is found to exist, and constitutes such breaches of the Policy and/or of Zygo's obligations under the law, including, the law governing spoliation of evidence, such as to now require:

        a.     dismissal of Zygo's claims herein; or

        b.     that Zygo be precluded from offering any evidence at trial relating to the nature, extent and/or cause(s) of the damage suffered by the first and second damaged AFMs; or

        c.     that the following facts be deemed admitted by Zygo, or that, alternatively, that inferences adverse to Zygo be drawn by the Court with respect thereto;

1.     that Zygo's packaging of the first and second damaged AFMs was insufficient and not up to industry standards;

2.     that the damages suffered by the first and second damaged AFMs was due solely to the aforesaid insufficiency of said packaging; and

3.     that Zygo's failure properly to safeguard and preserve said evidence greatly impaired Royal's defenses in this action and Royal's rights in subrogation against Nan Ya should coverage be found to exist.

287.    Under the law in this Circuit governing the spoliation of evidence, Zygo is now estopped from offering any evidence at trial that the subject cargo was so badly damaged as to constitute a constructive loss, due to:

a.     Zygo's failure to permit Royal to survey the first and second damaged AFMs, despite Zygo's knowledge that

(1)    Zygo's own agent in Taiwan, Billy Wu, had inspected them and concluded that their packaging was insufficient;

(2)    Nan Ya, Nan Ya's underwriters and Nan Ya's surveyors had inspected them and maintained, based upon their own survey, that the damages in question were due to insufficient packaging; and

(3)    Nan Ya was asserting that said insufficient packaging relieved it of any obligation to pay for these AFMs under Nan Ya's sales contract with Zygo;

b.     Zygo's failure to assert any alleged basis on which it claimed that it had an insurable interest under the Policy until approximately two weeks *after* the First and Second AFMs had been disposed of;

69

c.     Zygo's failure to contradict, prior to said evidence's disposal, Royal's reasonable belief, based on Zygo's agent's representations, which Zygo was aware of, that the disputes between Zygo and Nan Ya relating to the second damaged AFM had been amicably resolved; and

d.     Zygo's subsequent disposal of the first and second damaged AFMs without Royal's informed consent.

288.    "It is from the very nature of a contract of insurance as a contract of indemnity that the insurer, upon paying to the insured the amount of a loss, total or partial, becomes, without any formal assignment or any express stipulation to that effect in the policy, subrogated in a corresponding amount to the insured's right of action against the person responsible for the loss." Hartford Acc. and Indem. Co. v. Chung, 37 Conn. Supp. 587, 590-91, 429 A.2d 158, 160-61 (Conn. Super. App. 1981).

289.    Under Connecticut law, "subrogation is the right of the insurer to be put in the position of its insured so that it may pursue recovery from third parties who are legally responsible to the insured for a loss paid by the insurer." Albany Ins. Co. v. United Alarm Service, Inc., 194 F. Supp. 2d 87, 93 (D. Conn. 2002).

290.    "Any act or omission on the part of the indemnitee in breach of his duty under the contract of indemnity that increases the indemnitor's risk or liability or otherwise injures his rights and remedies *discharges* the indemnitor from his liability under the indemnity contract, at least to extent of the injury so occasioned." 42 C.J.S. Indemnity § 60 ("Discharge") (1991) (emphasis added; citations omitted); see also U.S. Fidelity & Guaranty Co. v. Putfark, 158 So. 9, 10 (La. 1934); Hiern v. St. Paul-Mercury Indem. Co., 262 F.2d 526, 528-29 (5th Cir. 1959); American Casualty Co. of Reading, PA v. Idaho First Nat. Bank, 328 F.2d 138, 142-45 (9th Cir.

70

1964); General Ins. Co. of Am. v. Fleeger, 389 F.2d 159, 161 n.3 (5th Cir. 1968); Unisys Corp. v. Legal Counsel, Inc., 768 F. Supp. 6, 8 (D.D.C. 1991), aff'd, 15 F.3d 1160 (D.C. Cir. 1994); Am. Export Isbrandten Lines, Inc. v. U.S., 390 F. Supp. 63, 68-70 (S.D.N.Y. 1975) ("a party seeking indemnity is under an obligation to take reasonable measures in the course of that litigation to protect the interests of the party from whom it seeks indemnification").

291.   "When an insured settles with or releases a third party from liability for a loss that the third party has caused, the insurer's subrogation right against such party may be destroyed." Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 106 (2d Cir. 1992) (citations omitted).

292.   "Where a release of liability given by the insured to a third party destroys the insurer's right to subrogation, such a release bars the insured's right of action on the policy . . . ." Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 106 (2d Cir. 1992) (citations omitted); see also Continental Ins. Co. v. Connecticut Nat. Gas Corp., 5 Conn. App. 53, 497 A.2d 54 (Conn. App. 1985); Amica Mut. Ins. Co. v. Barton, 1 Conn. App. 569, 575, 474 A.2d 104, 108 (Conn. App. 1984); Vesta Ins. Co. v. Amoco Production Co., 986 F.2d 981, 987 (5th Cir. 1993).

293.   The burden rests on the insured to show that in effecting a settlement and executing a release, he did not prejudice the subrogation rights of the insurer. See Gibbs v. Hawaiian Eugenia Corp., 966 F.2d 101, 106 (2d Cir. 1992) (citations omitted).

294.   Clause 43 prohibited Zygo from impairing Royal's subrogated rights Nan Ya, in respect of claims covered by the Policy.

295.   Zygo was obligated under Clause 43 to survey the subject damages thereto in order properly to ascertain the cause of the damage thereto for the purpose of refuting Nan Ya's defense against Zygo that said damage was due to improper and insufficient packaging for which Zygo was responsible under the Purchase Order Sales Contract between them for the subject

71

cargo, and whether, in the event that coverage is found to exist under Clause 52, and since Zygo breached said obligation, Zygo's claims herein must be denied.

296.    In the event that coverage is found to exist under Clause 52, Zygo breached Clause 43 and impaired Royal's subrogation rights against Nan Ya, so that Zygo's claims herein must be dismissed, since:

a.    Zygo released Nan Ya from any liability in respect of the second damaged AFM;

b.    Zygo failed to permit Royal to survey the second damaged AFM, despite Zygo's knowledge that:

(1)    Zygo's own agent in Taiwan, Billy Wu, had inspected the first and second damaged AFMs and concluded that their packaging was insufficient;

(2)    Nan Ya, Nan Ya's underwriters and Nan Ya's surveyors had inspected the first and second damaged AFMs and maintained, based upon their own survey, that the damages in question were due to insufficient packaging; and that

(3)    Nan Ya was asserting that said insufficient packaging relieved it of any obligation to pay for the second AFM under Nan Ya's sales contract with Zygo;

c.    Zygo failed to assert any alleged basis on which it claimed that it had an insurable interest under the Policy until approximately two weeks *after* the First and Second AFMs had been disposed of;

d.    Zygo failed to contradict, prior to said evidence's disposal, Royal's reasonable belief, based on Zygo's agent's representations, which Zygo was aware of,

72

that the disputes between Zygo and Nan Ya relating to the second damaged AFM had been amicably resolved;

      e.    Zygo subsequently disposed of the first and second damaged AFMs without Royal's informed consent.

297.    The insured bears the burden of proving a constructive total loss. Calmar SS. Corp. v. Scott, 209 F.2d 852, 853 (2d Cir. 1954)(Hand, J.); Kingfisher, Inc. v. Boston Old Colony Ins. Co., 489 F. Supp. 27, 29 (D. Mass. 1980).

298.    In order to recover, the insured must show a loss, by competent proof, which comes within the terms of the policy, including a constructive total loss. Indemnity Marine Assurance Co. v. Cadiente, 188 F.2d 741, 743 (9th Cir. 1951).

299.    At common law, in the absence of contrary policy provision, repair and recovery costs in excess of 50% of stated value constituted a constructive total loss. . . . And the burden of such proof, which is on the insured, is to show, as the policy requires, the actual and other necessary costs to be in fact, not just probably as contended by plaintiff, above the insured value . . . . Compania Maritima Astra, S.A. v. P.M. Archdale, 134 N.Y.S. 2d 20, 25 (N.Y. Sup. Ct. 1954).

300.    The degree of proof of the actual and other necessary costs to be of a "highly probable degree" above the insured value. Compania Maritima Astra, S.A. v. P.M. Archdale, 134 N.Y.S. 2d 20, 25 (N.Y. Sup. Ct. 1954)(citing Orient Mut. Ins. Co. v. Adams, 123 U.S. 67, 76, 8 S. Ct. 68, 72 (1887); Bradlie v. Maryland Ins. Co., 37 U.S. 378, 397(1838)).

301.    Zygo has the burden of proof with respect to its claim herein that the second damaged AFM was so badly damaged as to constitute a constructive loss.

73

302. "There are two essential elements to an estoppel: the party must do or say something which is intended or calculated to induce another to believe in the existence of certain facts and to act upon that belief; and the other party, influenced thereby, must actually change his position or do something to his injury which he otherwise would not have done. Estoppel rests on the misleading conduct of one party to the prejudice of the other. In the absence of prejudice, estoppel does not exist." Brzezinek v. Covenant Ins. Co., 74 Conn. App. 1, 8, 810 A.2d 306, 311 (Conn. App. 2002), cert. denied, 262 Conn. 946, 815 A.2d 674 (Conn. 2003).

303. Zygo failed to contradict, prior to its disposal of the first and second damaged AFMs, Royal's reasonable belief, based on Zygo's agent's representations, which Zygo was aware of, that the disputes relating to these AFMs had been amicably resolved by Zygo and Nan Ya, and Zygo did not assert the unpaid vendor claim that is the subject of this action, until approximately six months after these AFMs had been disposed of, and therefore, Zygo is estopped as a matter of law from asserting in these proceedings that it obtained Royal's informed consent to that disposal or that no such settlement occurred.

304. An implied covenant of good faith and fair dealing has been applied by Connecticut courts "in a variety of contractual relationships, including . . . insurance contracts." Buckman v. People Express, Inc., 530 A.2d 596, 205 Conn. 166, 170-71 (Conn. 1987) (citations and internal quotation marks omitted).

305. "To constitute a breach of that covenant, the acts by which a defendant allegedly impedes the plaintiff's right to receive benefits that he or she reasonably expected to receive under the contract must have been taken in bad faith." Alexandru v. Strong, 837 A.2d 875, 81 Conn. App. 62, 80-81 (Conn. 2004) (citations and internal quotation marks omitted); see also Craig v. Colonial Penn Ins. Co., 335 F. Supp. 2d 296, 303-04 (D. Conn. 2004).

306.    "'Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. Bad faith means more than mere negligence; it involves a dishonest purpose.'" Craig v. Colonial Penn Ins. Co., 335 F. Supp. 2d 296, 304 (D. Conn. 2004) (quoting Habetz v. Condon, 618 A.2d 501, 224 Conn. 231, 237-38 (Conn. 1992)).

307.    The Connecticut Supreme Court has defined "bad faith" as:

> Good faith and fair dealing mean an attitude or state of mind denoting honesty of purpose, freedom from intention to defraud and generally speaking means faithful to one's duty or obligation . . . an honest intention not to take an unconscientious [sic] advantage of another. . . . The court also instructed the jury that [b]ad faith is defined as the opposite of good faith, generally implying a design to mislead or to deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest mistake as to one's rights or duties. . . . The court further instructed the jury that *bad faith is not simply bad judgment or negligence, but rather it implies the conscious doing of a wrong because of dishonest purpose or moral obliquity . . . it contemplates a state of mind affirmatively operating with furtive design or ill will.*

Buckman v. People Express, Inc., 530 A.2d 596, 599-600, 205 Conn. 166, 171 (Conn. 1987) (internal quotation marks omitted) (emphasis added).

308.    A "plaintiff has to show that it is entitled to recover under the policy before the insurer can be shown to have acted in bad faith." Bergen v. The Standard Fire Ins. Co., No. CV 93044099S, 1997 WL 809957, at *15, 21 Conn. L. Rptr. 154 (Conn. Super. Dec. 31, 1997) (citations omitted).

309.    When an insurer "fails to deal fairly and in good faith with its insured by refusing, without proper cause, to compensate its insured for a loss covered by the policy, such conduct may give rise to a cause of action in tort for breach of an implied covenant of good faith and fair

dealing." See Grand Sheet Metal Products Co. v. Protection Mutual Ins. Co., 375 A.2d 428, 429, 34

Conn. Supp. 46, 48 (Conn. Sup. Ct. 1977); see also Buckman v. People Express, Inc., 530 A.2d 596,

599, 205 Conn. 166, 170 (Conn. 1987) (Connecticut courts "recognize[] an independent cause of

action in tort arising from an insurer's common law duty of good faith."); Craig v. Colonial Penn

Ins. Co., 335 F. Supp. 2d 296, 303 (D. Conn. 2004).

310.    "[T]here are two elements to the tort [of bad faith]--whether the insurer had a

reasonable basis to withhold payment and, if not, whether the insurer knew or recklessly

disregarded the fact that it had no reasonable basis to withhold payment." Bergen v. The Standard

Fire Ins. Co., No. CV 93044099S, 1997 WL 809957, at *16, 21 Conn. L. Rptr. 154 (Conn. Super.

Dec. 31, 1997) (citations omitted); see also Hunte v. Amica Mutual Ins. Co., 792 A.2d 132, 140, 68

Conn. App. 534, 544-45 (Conn. App. Ct. 2002) ("For the plaintiff to recover for bad faith she had to

allege and prove that the defendant engaged in conduct 'design[ed] to mislead or to deceive . . . or a

neglect or refusal to fulfill some duty or some contractual obligation not prompted by an honest

mistake as to one's right or duties . . . .'").

311.    Whether it is a claim for "procedural" or "substantive" bad faith, "'[t]o prove a claim

for bad faith under Connecticut law, the [plaintiff is] required to prove that the defendants engaged

in conduct design[ed] to mislead or deceive . . . or a neglect or refusal to fulfill some duty or some

contractual obligation not prompted by honest mistake as to one's rights or duties . . . .'" Chapman

v. Norfolk & Dedham Mut. Fire Ins. Co., 665 A.2d 112, 30 Conn. App. 306, 320 (Conn. App. 1995)

(quoting Buckman v. People Express, Inc., 530 A.2d 596, 599-600, 205 Conn. 166, 171 (Conn.

1987)); see also Ginaetti v. Greater Bridgeport Individual Practice Ass'n., No. CV020396581, 2004

WL 1326453, *1 (Conn. Super. May 28, 2004).

312.    The "examination of good faith and fair dealing in the settling of an insurance claim requires a case-by-case analysis." Verrastro v. Middlesex Ins. Co., 540 A.2d 693, 699, 207 Conn. 179, 190 (Conn. 1988) (citation omitted).

313.    An insurer has "a right to fairly dispute a claim made under the policy." Bergen v. The Standard Fire Ins. Co., No. CV 93044099S, 1997 WL 809957, at *15, 21 Conn. L. Rptr. 154 (Conn. Super. Dec. 31, 1997) (citations omitted). It "may challenge claims that are fairly debatable. Thus, if a realistic question of liability exists, an insurer may withhold payment while it determines whether there is a reasonable basis for the claim or amount demanded." Bergen v. The Standard Fire Ins. Co., No. CV 93044099S, 1997 WL 809957, at *16, 21 Conn. L. Rptr. 154 (Conn. Super. Dec. 31, 1997) (citations omitted); see also R.E.O., Inc. v. The Travelers Companies, No. CV 950372522S, 1998 WL 285836, at *13 (Conn. Super. May 20, 1998) (It is "incumbent upon the insureds to show the absence of a reasonable basis for denying or delaying payment of the benefits of the policy.").

314.    Although an insurer may not deny a claim on the basis of unsupported determinations resulting from its arbitrary failure or refusal to properly perform the claims examination function, "evidence of a mere coverage dispute or mere negligence in an investigation will not demonstrate a breach of good faith and fair dealing . . . ." Uberti v. Lincoln Nat. Life Ins. Co., 144 F. Supp. 2d 90, 104 (D. Conn. Mar 28, 2001); see also Martin v. American Equity Ins. Co., 185 F. Supp. 2d 162, 165 (D. Conn. 2002) (dismissing bad faith claim where plaintiff never specified how or in what manner insurer's denial of coverage or its refusal to provide her with a defense was "unreasonable, outrageous, malicious and done in bad faith."); R.E.O., Inc. v. The Travelers Companies, No. CV 950372522S, 1998 WL 285836, at *13 (Conn. Super. May 20, 1998) (denying summary judgment against insurer on the issue of bad faith because the plaintiffs did not

show a dishonest purpose); <u>Agency Rent-A-Car v. ITT Hartford Accident and Indemnity Co.</u>, No. CV 930530573S, 1997 WL 684916, at *12, 20 Conn. L. Rptr. 673 (Conn. Super. Oct. 23, 1997) ("In order to make [a claim of breach of the covenant of good faith and fair dealing] the plaintiff must allege that the defendant did more than simply deny the plaintiff's claim for benefits.").

315.    "[W]hen a good faith legal controversy exists, . . . the insurer's withholding of the policy proceeds cannot be found to be in bad faith, even if the insurer's position is ultimately found to be erroneous." <u>McCauley Enterprises, Inc. v. New Hampshire Ins. Co.</u>, 716 F. Supp. 718, 723 (D. Conn. 1989) (citation omitted); <u>see also</u> <u>McCarthy v. Travelers Indemnity Co.</u>, No. CV 970345443S, 2000 WL 372801, at *9 (Conn. Super. Mar. 29, 2000) ("[I]t is clear that the mere failure of an insurance company to pay a questionable claim is not enough to establish an action under a theory of bad faith. In order to establish bad faith there must be evidence that the [insurer] acted with a dishonest purpose, moral obliquity, furtive design or ill will."); <u>Janicki v. Massachusetts Casualty Ins. Co.</u>, No. 530774, 1996 WL 694590, at *3 (Conn. Super. Nov. 15, 1996) ("In alleging a breach of the covenant of good faith and fair dealing, courts have stressed that such a claim must be alleged in terms of wanton and malicious injury, evil motive and violence, for punitive damages may be awarded only for outrageous conduct, that is, for acts done with a bad motive or with reckless indifference to the interests of others.").

316.    A plaintiff's contractual bad faith claim "is separate and distinct from the plaintiff's statutory claims." <u>Buckman v. People Express, Inc.</u>, 530 A.2d 596, 599, 205 Conn. 166, 170 (Conn. 1987) (citations omitted).

317.    Two Connecticut statutes can pertain to insurer bad faith but are inapplicable unless the insurer's misconduct is part of its general business practice.

318.    Connecticut's Unfair Insurance Practices Act ("CUIPA") makes clear that its intended aegis is unfair practices committed or performed "with such frequency as to indicate a general business practice." C.G.S.A. § 38a-816 ¶ (6).

319.    Connecticut's Unfair Trade Practices Act ("CUTPA") provides "(a) No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." C.G.S.A. § 42-110b.

320.    "[C]laims of unfair settlement practices under CUIPA require a showing of more than a single act of insurance misconduct." Mead v. Burns, 509 A.2d 11, 16, 199 Conn. 651, 659 (Conn. 1986).

321.    A plaintiff may not sue under CUTPA "where the alleged misconduct is related to the insurance industry and no violation of CUIPA is alleged." Webster v. U.S. Fidelity & Guaranty Co., No. CV 92 0051784 S, 1993 WL 182194, at *3, 9 Conn. L. Rptr. 147 (Conn. Super. May 21, 1993) (citing Mead v. Burns, 509 A.2d 11, 199 Conn. 651 (Conn. 1986)).

322.    Zygo's bad faith claim against Royal fails because Zygo has not shown that it is entitled to recover under the Policy. See Bergen v. The Standard Fire Ins. Co., No. CV 93044099S, 1997 WL 809957, at *15, 21 Conn. L. Rptr. 154 (Conn. Super. Dec. 31, 1997).

323.    Even if Zygo were entitled to recover under the Policy, there was a realistic question of liability under the Policy such that Royal could withhold payment to Zygo while it determined whether there was a reasonable basis for Zygo's claim or the amount demanded.

324.    Royal had a reasonable basis to withhold payment under the Policy. Therefore, Zygo's bad faith claim against Royal is insufficient as a matter of law. See Bergen v. The Standard Fire Ins. Co., No. CV 93044099S, 1997 WL 809957, at *16, 21 Conn. L. Rptr. 154 (Conn. Super. Dec. 31, 1997).

325.    Even if Royal did not have a reasonable basis to withhold payment under the Policy, Zygo's bad faith claim nonetheless fails because Zygo has not shown that Royal knew or recklessly disregarded the fact that it had no reasonable basis to withhold payment.  See Bergen v. The Standard Fire Ins. Co., No. CV 93044099S, 1997 WL 809957, at *16, 21 Conn. L. Rptr. 154 (Conn. Super. Dec. 31, 1997).

326.    Zygo has failed to prove either of the elements necessary to succeed on its bad faith claim.  It has not shown that Royal lacked a reasonable basis for denying its claim and that Royal knew this to be the case.  Accordingly, Royal did not breach its contractual duty of good faith and fair dealing owed to Zygo.

327.    Furthermore, Royal did not act in bad faith in handling and investigating Zygo's claim.  The record indicates that Zygo hindered Royal's ability to process the claim properly.  See Verrastro v. Middlesex Ins. Co., 540 A.2d 693, 699, 207 Conn. 179, 189-90 (Conn. 1988).

328.    Zygo's procedural bad faith claim is also insufficient as a matter of law because it has not presented evidence of Royal's purposeful undertaking of minimal activity.  See United Tech. Corp. v. American Home Assurance Co., 118 F. Supp. 2d 181, 185 (D. Conn. 2000).

329.    Zygo has not made a claim under CUIPA.  "Courts have repeatedly held that no private right of action exists under CUIPA."  DeRossi v. National Loss Management, 328 F. Supp. 2d 283 (D. Conn. 2004).  Moreover, the provisions of that act are inapplicable to the claims that Zygo has asserted because Zygo has not pled or shown that Royal engaged in multiple acts of insurance misconduct.  See Mead v. Burns, 509 A.2d 11, 16, 199 Conn. 651, 659 (Conn. 1986).

330.    Zygo has no claim under CUTPA because it has not alleged a violation of CUIPA.  See Webster v. U.S. Fidelity & Guaranty Co., No. CV 92 0051784 S, 1993 WL 182194, at *3, 9

Conn. L. Rptr.  147 (Conn. Super. May 21, 1993) (citing Mead v. Burns, 509 A.2d 11, 199 Conn. 651 (Conn. 1986)).

331.    To provide a short and plain statement of the claim showing that the pleader is entitled to relief, as is required to satisfy the pleading requirements of Rule 8(a) of the Federal Rules of Civil Procedure, a complaint must simply give fair notice of what the claim is and the grounds upon which it rests.  See Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); see also Gmurzynska v. Hutton, 355 F.3d 206, 208-09 (2d Cir. 2004).   The pleader is not, however, required to set forth in detail the facts upon which the claim is based.  See Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

332.    "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (citations omitted); see also Firemen's Ins. Co. of Newark, N.J. v. Show, 110 F.Supp. 523, 529-530 (D. Mont. 1953).  "The . . . simplified pleading system . . . was adopted to focus litigation on the merits of a claim."  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (citing Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

333.    "Other provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard.  Rule 8(e)(1) states that '[n]o technical forms of pleading or motions are required . . . .'"  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 513-14, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) (citations omitted).  "Reflecting the underlying spirit of the Federal Rules that cases should be decided upon their merits, rather than upon technical deficiencies in the pleadings, Rule 8(f) [of the Federal Rules of Civil Procedure also provides that] '[a]ll pleadings shall be so construed as to do substantial justice.'"  Lomartira v. Am. Automobile Ins. Co.,

245 F.Supp. 124, 129 (D. Conn. 1965), aff'd, 371 F.2d 550 (2d Cir. 1967); see also Firemen's Ins. Co. of Newark, N.J. v. Show, 110 F.Supp. 523, 529-530 (D. Mont. 1953).

Dated:    New York, New York
          January 18, 2005

NICOLETTI HORNIG CAMPISE SWEENEY & PAIGE
Attorneys for Plaintiff/Third Party Plaintiff
Royal Insurance Company of America

By: _____
    GEOFFREY J. GINOS, ESQ. (ct. 19578)
    Wall Street Plaza
    88 Pine Street, 7th Floor
    New York, New York 10005-1801
    (212) 220-3830
    (FILE NO.: 21000055 JAVN/GJG)

LAW OFFICES OF ROBERT K. MARZIK, P.C.
1512 Main Street
Stratford, Connecticut 06615

**TO:**

Ian E. Bjorkman, Esq.
Wiggin & Dana
One Century Tower
New Haven, Connecticut 06508
Tel:  (203) 498-4496

Tait Graves, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, California 94304-1050
Tel:  (650) 565-3574

Daniel L. FitzMaurice, Esq.
& Charlsa D. Broadus, Esq.
Day, Berry & Howard LLP
City Place I
Hartford, Connecticut 06103-3499
Tel:  (860) 275-0100

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing filing, "**PLAINTIFF ROYAL INSURANCE COMPANY OF AMERICA'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**," was sent *via* first class mail, postage prepaid this 18th day of January, 2005 to:

Honorable Janet Bond Arterton
United States District Judge,
United States District Court
for the District of Connecticut
141 Church Street
New Haven, Connecticut 06510

Ian E. Bjorkman, Esq.
Wiggin & Dana
One Century Tower
New Haven, Connecticut 06508

Charlsa D. Broadus, Esq.
Day, Berry & Howard LLP
City Place I
Hartford, Connecticut 06103-3499

Tait Graves, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, California 94304-1050

Robert K. Marzik, Esq.
Law Office of Robert K. Marzik, P.C.
1512 Main Street
Stratford, Connecticut 06615

GEOFFREY J. GINOS (CT 19578)

X:\Public Word Files\21\55\Legal\Proposed Findings of Fact and Conclusions of Law.1.18.05.wmf.s.mm.doc

84