# Exhibit K

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) | Civil No. 3:01 CV 1317 (JBA) |
| | ) | |
| v. | ) | |
| | ) | |
| ZYGO CORPORATION, | ) | |
| Defendant. | ) | |
| | ) | January 18, 2005 |

## DEFENDANT ZYGO CORPORATION'S OBJECTIONS TO
## PLAINTIFF'S PROPOSED EXHIBIT LIST

| Plaintiff's Exhibit No. | Description |
|---|---|
| 1. | Third-Party Defendant Nan Ya's Statement of Undisputed Facts in Support of its Motion for Summary Judgment<br><br>**OBJECTION: Inadmissible hearsay. Nan Ya's factual allegations cannot be admitted against Zygo for their truth.** |
| 2. | Zygo's Response to Nan Ya's Statement of Undisputed Facts (including Affidavit of Smith, dated 8/15/2002; Affidavit of Martin, dated 8/15/2002, with Exhibits 1 – 14 thereto) [Smith #30]<br><br>**OBJECTION: Hearsay, Relevance. Certain statements in Zygo's Rule 56 submission may be admissible as parry admissions. However, this document also contains statements that are not admissible or that pertain to irrelevant issues. A showing of admissibility ought to be made on a statement-by-statement basis.** |
| 3. | Royal's Statement of Undisputed Facts in Support of its (First) Motion for Summary Judgment<br><br>**OBJECTION: Inadmissible hearsay. Royal's factual allegations cannot be admitted against Zygo for their truth.** |
| 4. | Zygo's Response to Royal's Statement of Undisputed Facts in Support of its (First) Motion for Summary Judgment |

| | |
|---|---|
| | **OBJECTION: Hearsay, Relevance. Certain statements in Zygo's Rule 56 submission may be admissible as parry admissions. However, this document also contains statements that are not admissible or that pertain to irrelevant issues. A showing of admissibility ought to be made on a statement-by-statement basis.** |
| 5. | Royal's Statement of Undisputed Facts in Support of its (Second) Motion for Summary Judgment (on Bad Faith) <br><br> **OBJECTION: Inadmissible hearsay. Royal's factual allegations cannot be admitted against Zygo for their truth.** |
| 6. | Zygo's Response to Royal's Statement of Undisputed Facts in Support of its (Second) Motion for Summary Judgment (on Bad Faith) <br><br> **OBJECTION: Hearsay, Relevance. Certain statements in Zygo's Rule 56 submission may be admissible as parry admissions. However, this document also contains statements that are not admissible or that pertain to irrelevant issues. A showing of admissibility ought to be made on a statement-by-statement basis.** |
| 7. | Zygo's Statement of Undisputed Facts in Support of its Motion for Summary Judgment |
| 8. | Royal's Zygo's Statement of Undisputed Facts in Support of its Motion for Summary Judgment <br><br> **OBJECTION: Inadmissible hearsay. Royal's factual allegations cannot be admitted against Zygo for their truth.** |
| 9. | Royal's Claim File [RY 00001 to RY00287] <br><br> **OBJECTION: The entire 287 page file is not admissible as an Exhibit. Taken as a whole the file contains inadmissible hearsay. Certain other documents are inadmissible because they lack proper foundation. Other documents should be excluded on relevancy grounds. Royal should be required to make an admissibility showing on a document-by-document basis.** |
| 10. | Royal's Underwriting File [RY 00288 to 00739] <br><br> **OBJECTION: The entire 451 page file is not admissible as an Exhibit. Taken as a whole the file contains inadmissible hearsay. Certain other documents are inadmissible because they lack proper foundation. Other documents should be excluded on relevancy grounds. Royal should be required to make an admissibility showing on a document-by-document basis.** |
| 11. | The Marine Open Cargo Policy [Daneman #02] |

| 12. | Re-Notice of Deposition of Royal Insurance Company of American pursuant to Rule 30(b)(6) [Daneman #01] |
|---|---|
| 13. | Letter from Daneman to Sneed, dated 7/16/2001, regarding Royal's declination of liability [Daneman #03 & Martin #54] |
| 14. | Letter from Daneman to Zygo, dated 7/16/2001, regarding Royal's declination of coverage based upon multiple insuring provisions and further to prior correspondence discussing the grounds for said declination [Daneman #04] |
| 15. | Claim Progress Notes regarding two shipments and damage to AFMs [Daneman #05] |
| 16. | Letter from Daneman to Merati, dated 3/8/2000, regarding inquiry by Royal following first notice of damage by Zygo [Daneman #06] |
| 17. | Class Instruction Sheet, dated 3/22/2000, regarding reserve and remarks pertaining to damaged AFM [Daneman #07] |
| 18. | Memo from Weidman to Daneman, dated 5/1/2000, regarding chronology of events and contact information for Zygo product line manager and sales manager [Daneman #08 & Walch #11] |
| 19. | Letter from Daneman to Weidman, dated 5/12/2000, regarding Royal's decision not to assign a surveyor [Daneman #09] |
| 20. | E-mail from Smith to Mistretta, dated 5/1/2000, regarding reducing the reserve because the insured has no insurable interest as a result of the shipment being insured by the consignee [Daneman #10] |
| 21. | Letter from Daneman to Weidman, dated 5/19/2000, regarding Royal's assignment of a surveyor to investigate the Second AFM, noting that Zygo did not have an insurable interest because it was an FOB shipment and that Nan Ya had filed a claim with its insurer and was alleging insufficient and/or improper packaging [Daneman #11 & Martin #23] |
| 22. | Letter from Ilias to Carroll, dated 5/18/2000, regarding Zygo's attempt to find coverage under the FOB/FAS clause, and Ilias's suggestion to assign a surveyor [Daneman #12] |
| 23. | Letter from Daneman to Chung, dated 5/19/2000, arranging for a survey of the damaged AFM [Daneman #13] |

| 24. | Letter from Daneman to Weidman, dated 6/19/2000, regarding Royal's surveyor's report that the cargo was not available for survey and the consignee had not put forward a claim for the damaged cargo, and requesting contact information in order to locate the AFM [Daneman #14]<br><br>**OBJECTION: Inadmissible hearsay to the extent that the document is being offered to prove the truth of the assertions that (i) the cargo was not available to survey; and (ii) the "shipper" has not put forth a claim for the damaged cargo. *See* Zygo's Memorandum of Law in Support of its Objections to Various Hearsay Evidence ("Zygo Brief").** |
|---|---|
| 25. | E-mail from Chung to Daneman, dated 6/19/2000, relating to Royal's appointment of GAB Robins to conduct a survey, but noting that the cargo was unavailable for such a survey and also that there is no claim being asserted by Zygo for the damaged cargo [Daneman #15]<br><br>**OBJECTION: Inadmissible hearsay to the extent that the document is being offered to prove the truth of the assertions that (i) the cargo was not available to survey; and (ii) the "shipper" has not put forth a claim for the damaged cargo. *See also* Zygo Brief.** |
| 26. | Letter from Daneman to Weidman, dated 11/10/2000, referring to the report from Royal's Taiwan office/surveyor that Billy Wu and Tim Smith had no answer regarding the damaged AFM and that the loss was probably caused by insufficient packaging, and that Nan Ya's insurer and Lee-Tech had apparently agreed to settle the claim; so that Royal was closing the file with no payment [Daneman #16]<br><br>**OBJECTION: Inadmissible hearsay to the extent the document is introduced to prove the truth of the assertion that: (i) Royal's office/surveyor have communicated with Billy Wu and Tim Smith; (ii) Wu and Smith have "no positive answer and don't know the situation;" (iii) Nan Ya even made a "statement" to Royal; (iv) the loss was due to insufficient packaging; (v) the existence of a settlement agreement by Taiwan Marine; (vi) the existcen of a settlement agreement by Lee-Tech; and (vii) the insured does not have any insurable interest. *See also* Zygo Brief.**<br><br>Zygo asserts that this document is admissible to show Royal's bad faith in adjusting this claim insofar as it reflects Mr. Daneman purporting to accept at face value a brief report he received months earlier and failing to convey that information to Zygo. This document also demonstrates Royal's actual failure to investigate and properly adjust Zygo's claim. But Royal cannot use this document as evidence of the truth of the matters asserted within it. |
| 27. | E-mail from Daneman to Chung, dated 8/2/2000 and Chung's response to Daneman's email, dated 8/25/2000, regarding Royal's communication with Billy Wu and Tim Smith, that the loss was probably caused by insufficient packaging, and Zygo's agent (Lee-Tech) and Nan Ya's insurer had agreed to settle the claim [Daneman #17]<br><br>**OBJECTION: The 8/25/2000 email is inadmissible hearsay to the extent the document is introduced to prove the truth of the assertion that: (i) Royal's office/surveyor have communicated with Billy Wu and Tim Smith; (ii) Wu and Smith** |

have no positive answer and don't know the situation; (iii) Nan Ya even made a "statement" to Royal; (iv) the loss was due to insufficient packaging; (v) the existence of a settlement agreement by Taiwan Marine; (vi) the existence of a settlement agreement by Lee-Tech; and (vii) the insured does not have any insurable interest. *See also* Zygo Brief.

The 8/25/2000 e-mail from Chung also lacks foundation.

Zygo asserts that this document is admissible with respect to its bad faith claim.

| | |
|---|---|
| 28. | Letter from Weidman to Daneman, dated 12/12/2000, regarding appraisals for Nan Ya's two shipments of AFMs [Daneman #18] |
| 29. | Letter from Daneman to Chung, dated 2/5/2001, regarding Royal's New York office's request to Royal Taiwan to contact Nan Ya's insurance carrier and ask if settlement is possible for the Second AFM on the same basis as the First AFM was settled [Daneman #19] |
| 30. | Letter from Sneed to Daneman, dated 3/23/2001, regarding Zygo's assertions of coverage and first mention of Policy Clause 52, Contingency Clause [Daneman #20] |
| 31. | Letter from Sneed to Daneman, dated 4/5/2001, regarding lack of response to Mr. Sneed's letter of 3/23/2001 [Daneman #21] |
| 32. | Letter from Daneman to Sneed, dated 5/2/2001, containing Royal's request for confirmation that subject shipment was FOB, that Zygo was not paid, and an affidavit of non-payment [Daneman #22] |
| 33. | Letter from Daneman to Weidman, dated 5/7/2001, containing Royal's request that Zygo confirm whether it is pursuing payment under Policy Clause 52, the Contingency Clause, and requesting an outline regarding Zygo's attempts to collect the amount due, Zygo's declaration and payment of additional premium, Zygo's notice to potential third-parties, the potential release, as well as Royal's request for access to the four crates used to ship the AFM [Daneman #23] |
| 34. | E-mail from Ilias to Tye, dated 5/9/2001, regarding loss history, renewal premium quote, and large loss report [Daneman #24] |
| 35. | Letter from Sneed to Daneman, dated 5/10/2001, containing Zygo's response to Royal's letter of 5/7/2001, stating that payment under Policy Clause 52 is Royal's option and that Zygo had no duty to declare [Daneman #25] |
| 36. | Letter from Daneman to Sneed, dated 5/15/2001, regarding lack of coverage under Policy Clause 52 including, inter alia, Zygo's attempt to collect the purchase price, Zygo's failure to declare and Royal's right to protect the machine [Daneman #26] |

| | |
|---|---|
| 37. | Letter from Martin to Daneman, dated 6/14/2001, regarding Zygo's first confirmation that it was pursuing a claim under Policy Clause 52, reporting under the policy, chronology of events, and opportunity to inspect the AFM [Daneman #27] |
| 38. | Unpaid Vendors Insurance Endorsement to TriMex Int'l policy, dated 4/20/2000 [Daneman #28]<br><br>**OBJECTION: Relevance.** |
| 39. | E-mail from Muckenhirn to Wu, dated 2/16/2000, regarding proposal to ship third AFM, packaging issues on prior shipments, and meeting between the parties [Daneman #29] |
| 40. | E-mail from Martin to Wu, dated 9/21/2000, regarding contact information for Royal's surveyor in Taiwan [Daneman #30] |
| 41. | E-mail from Lee-Tech (Billy Wu) to Martin, dated 9/22/2000, regarding Lee-Tech's proposal to solve the dispute by each party sharing in the total loss [Daneman #31]<br><br>**OBJECTION: Inadmissible hearsay to the extent that the document is introduced to prove Nan Ya's actual intentions concerning payment for the two damaged AFMs. Document is admissible to show notice to Zygo. However, Mr. Wu's statements reflect inadmissible hearsay covering Nan Ya's actual intent regarding payment for the Second AFM. *See* Zygo Brief.** |
| 42. | E-mail from Martin to Daneman, dated 8/9/2000, regarding earlier emails about survey and cause of damage to AFM [Daneman #32]<br><br>**OBJECTION: Inadmissible hearsay to the extent that the document is offered to prove the truth of the statements from Mr. Chen to Mr. Smith that (i) Mr. Wu had been uncooperative with Royal and (ii) that Mr. Wu reached an agreement with Nan Ya. *See* Zygo Brief.** |
| 43. | Royal's Response to Zygo's First Set of Interrogatories, dated 5/31/2002 [Daneman #33]<br><br>**OBJECTION: Inadmissible hearsay. Royal cannot introduce its own interrogatory responses for the truth of the matters asserted therein. Zygo contends that it can introduce certain interrogatory responses as Royal's admissions.** |
| 44. | Letter from Daneman to Weidman, dated 7/13/2000, regarding Zygo's failure to respond to Royal's correspondence dated 6/19/2000 [Daneman #34] |
| 45. | Letter from Martin to Wu, dated 7/10/2000, regarding Zygo's proposal to Nan Ya for the damaged AFMs [Daneman #35] |

46. E-mail from Monti to Smith, dated 8/9/2000, regarding Billy Wu being uncooperative with Royal's surveyor and indicating they had reached an agreement with Nan Ya [Daneman #36]

   **OBJECTION: Inadmissible hearsay to the extent that the document is offered to prove the truth of the statements from Mr. Chen to Mr. Smith that (i) Mr. Wu had been uncooperative with Royal and (ii) that Mr. Wu reached an agreement with Nan Ya. *See* Zygo Brief.**

47. Cathay Inspection Co. survey report for Second AFM providing opinion that a cause of damage was insufficient packaging [Daneman #37]

   **OBJECTION: Lack of foundation and authenticity. Inadmissible hearsay to the extent that the document is offered to prove the facts asserted therein. Zygo acknowledges that the document was provided to it and Royal and that it is admissible to prove notice to both parties that a company known as Cathay Inspection Company found that the prime cause of the damage to both AFMs was that they were dropped.**

48. St. Paul Marine Open Cargo Policy for Zygo (effective July 1, 2001) [Dressler #01]

49. St. Paul Marine Open Cargo Premium Statement (for 7/1/01 to 7/1/02), identifying ocean contingent shipments [Dressler #02]

50. Endorsement No. 13 to the St. Paul-Zygo Marine Open Cargo Policy, revising the contingent rate for ocean and inland risks [Dressler #03]

51. Schedule of Rates to the St. Paul-Zygo Marine Open Cargo Policy, providing a separate contingent rate [Dressler #04]

52. Zygo Deliveries Summary Report - By Region [Dressler #05]

   **OBJECTION: Foundation and relevance. Mr. Dressler testified at his deposition that he did not recall having seen this document before, he did not know what it was, and he did not recognize the handwriting on it. Dressler Dep. at 31-32.**

53. Summary of Zygo's Ocean Cargo Coverage with St. Paul, including specific limits for contingency coverage [Dressler #06]

54. E-mail from Weidman to Dressler, dated 6/8/2001, confirming that whether or not Zygo transferred its marine insurance coverage to St. Paul would not influence Royal's decision on the subject claim [Dressler #07 & Weidman #10]

55. Zygo's Application for marine cargo insurance, stating that Zygo insures 100% of its shipments and describing the packaging of those shipments [Dressler #08]

| | |
|---|---|
| 56. | Zygo's Application for Marine Insurance, indicating Zygo insures 100% of its shipments and describing the  packaging of those shipments, and Mr. Ilias's notes relating to the nature of the risks being covered and his pricing of the premiums he proposes to charge for said coverages [Ilias #01] |
| 57. | Letter from Ilias to Zdanis, dated 4/21/1999, regarding quote for marine insurance at 0.24% rate [Ilias #02] |
| 58. | Letter from Ilias to Zdanis, dated 4/22/1999, regarding (revised) quote for marine insurance at 0.23% rate [Ilias #03] |
| 59. | Letter from Ilias to Zdanis, dated 4/23/1999, regarding ("Revised II") quote for marine insurance at .023% rate and $2.5 million for unnamed warehouse locations [Ilias #04] |
| 60. | E-mail from McCabe to Ilias, dated 4/26/99, regarding verbal acceptance of marine insurance quote [Ilias #05] |
| 61. | Royal's Code Sheet, dated 5/7/1999, used to generate the policy number for the Royal-Zygo marine insurance Policy [Ilias #06] |
| 62. | Letter from Ilias to Weidman, dated 3/6/2000, proposing May 1, 2000, renewal terms with a rate increase from 0.23 to 0.25 [Ilias #07] |
| 63. | Ocean Marine Cargo Large Loss Report for the second damaged AFM, dated April 28, 2000, setting reserve at $700,000 indemnity and $5,000 expense [Ilias #08] |
| 64. | Royal's filing with the War Risk Exchange for the renewal of the Zygo-Royal marine insurance Policy (effective May 1, 2000) [Ilias #09] |
| 65. | Letter from Ilias to Weidman, dated 7/24/2000, advising that Zygo had to advise Royal 72 hours in advance of all shipments from Zygo/IBM's Florida facility, and handwritten notes that Royal would be canceling the Policy [Ilias #10] |
| 66. | Endorsement No. 10 to the Policy (effective 11/1/2000) deleting Sections III & IV and Clause 54 [Ilias #11] |
| 67. | Endorsement No. 14 (effective May 1, 2001) extending coverage under the Policy until June 1, 2001 [Ilias #12] |
| 68. | One of two options presented by Mr. Ilias to Mr. Weidman, captioned Zygo Corporation Renewal Specifications 5/1/01 - 5/1/02 Policy Term [Ilias #13] |

| 69. | One of two options presented by Mr. Ilias to Mr. Weidman, captioned Zygo Corporation Renewal Specifications 5/1/01 - 5/1/02 Policy Term [Ilias #14] |
| --- | --- |
| 70. | Endorsement No. 16 Contingency Endorsement (effective May 1, 2001), deleting Clause 52, Contingency Clause, from the Policy [Ilias #15] |
| 71. | Endorsement No. 17 (effective June 1, 2001) extending coverage under the Policy until July 1, 2001 [Ilias #16] |
| 72. | E-mail from Weidman to Ilias, dated 6/29/2001, stating that Zygo was not extending the Royal-Zygo Policy effective 7/1/2001 [Ilias #17] |
| 73. | The Marine Open Cargo Policy [Martin #01]<br>**OBJECTION:  Duplicative.  This Exhibit is identical to Exhibit 11.** |
| 74. | Packing List from Zygo to Nan Ya, dated 1/20/2000 for the First AFM [Martin #02] |
| 75. | Order Confirmation, consisting of two pages, from Nan Ya to Zygo, dated 1/31/2000 for the Second AFM [Martin #03]<br>**OBJECTION:   Foundation and authenticity.   There is no foundation for the proposition that the second page of this exhibit was ever provided to Zygo.  The documents in Exhibit 75 were part of *Nan Ya's* document production, not Zygo's.** |
| 76. | Order Confirmation from Nan Ya to Zygo, dated 1/31/2000 for the Second AFM [Martin #04] |
| 77. | Correspondence from Wu to Monti, dated 1/13/2000, regarding Mr. Wu's commission for Nan Ya's purchase of the AFM [Martin #05] |
| 78. | E-mail from Muckenhirn to Robinson, dated 1/28/2000, regarding shipment of Second AFM and damage to First AFM [Martin #06] |
| 79. | Correspondence from Wu to Monti, dated 2/1/2000, regarding purchase order for Second AFM and enclosing second purchase order [Martin #07] |
| 80. | Correspondence from Wu to Zaneli, dated 2/1/2000, regarding request for performance bond on Second AFM and request to carefully pack Second AFM [Martin #08] |
| 81. | E-mail from Zanelli to Wu, regarding performance bond for Second AFM and commission, and Zygo's attempts to ensure the shipment arrives undamaged [Martin #09] |

82. E-mail from Sadlowski to Zanelli, dated 2/2/2000, reporting that three out of Zygo's last four large AFM shipments had been damaged and that the lead crate builder packaging Zygo's AFMs for shipment had quit and two other crate builders were quitting [Martin #10]

OBJECTION: Relevance, foundation and hearsay. To the extent that this document is offered for the purpose of supporting Royal's "packaging" defense, it should be excluded because that issue is not property in this case. *See* Zygo's Motion in Limine Concerning Royal's Purported "Packaging" Claim ("Zygo's Packaging Motion"). Moreover, this document is not probative of any issue relating to the actual packaging of the second AFM. It is also prejudicial to the extent that the term "large shipments" is undefined. There is no evidence that this statement is true, or that the other "shipments" refer to other AFM shipments. Indeed, Kelvin Walch testified that to his knowledge the shipments referenced to in this e-mail do not relate to other AFMs.

83. Memo from Walch to Muckenhirn, dated 2/11/2000, reporting on damage to Second AFM and advising that representatives of Zygo's insurance company and/or of IBM's may need to inspect the damaged AFM [Martin #11]

84. Memo from Walch to Muckenhirn, dated 2/14/2000, regarding inspection of the Second AFM by Nan Ya and its underwriters and surveyors and their allegations that the damage it had suffered was due to inadequate packaging [Martin #12]

85. Correspondence from Wu to Monti, dated 2/15/2000, regarding Nan Ya's disbelief as to the manner in which the Second AFM had been packaged, Nan Ya's insurer's refusal to pay for bad packaging, and shipment of a Third AFM [Martin #13]

OBJECTION: Hearsay, relevance, and foundation. Zygo objects to this document to the extent that it is offered to prove the fact that (i) Nan Ya's insurance actually would not pay because of the poor packing and (ii) the packages were "poor." Mr. Wu's opinion concerning the packaging is irrelevant to any issue in this case. There is no foundation to accept that Mr. Wu has any expertise relating to the packing of the AFM. Further, his personal assessment of the packaging was beyond the scope of his agency. Therefore, his statement is not admissible as a party admission. Indeed, there is no corroborative evidence that Mr. Wu even saw the package by February 15, 2000. Further, the fact that the AFM's package is "different" is irrelevant insofar as the KMS is a completely different machine. Mr. Wu's "conclusion" that the package was "poor" because it was different than KMS is irrelevant. *See* Zygo Brief.

Zygo also objects to the second page of Exhibit 85 based on a lack of foundation and relevance. The identity of the author of the handwritten notes is not known.

86. Correspondence from Wu to Muckenhirn, dated 2/16/2000, regarding Nan Ya's allegation of poor packaging and refusals to pay because of packaging, and that Nan Ya would not be compensated by its insurer for the subject damages [Martin #14]

OBJECTION: Hearsay. To the extent that Royal is offering the document to prove the truth of Nan Ya's position with respect to payment of the second AFM. It is

inadmissible hearsay. Zygo has no objections to the document being admitted for the purpose of demonstrating notice to Zygo. But, Mr. Wu's recitation of Nan Ya's position is not probative of Nan Ya's or its insurer actual state of mind covering payment. *See* Zygo Brief.

| 87. | E-mail from Muckenhirn to Wu, dated 2/15/2000, regarding shipment of third tool and disputing the inadequacy of packaging [Martin #15] |
|---|---|

| 88. | E-mail from Graf to Zanelli, dated 2/16/2000, regarding list of contact individuals for inspection of damaged AFM [Martin #16]<br><br>**OBJECTION: Foundation, inadmissible hearsay. It appears that the author of this e-mail is a representative of Lynden Transport. The statements in this e-mail are classic hearsay and cannot be used to prove the truth of the matters referenced in the document.** |
|---|---|

| 89. | E-mail from Muckenhirn to Wu, dated 2/16/2000, regarding shipment of Third AFM, rejection of packaging issue, and proposing that Zygo was willing to compromise payment on Second AFM for shipment of a Third AFM [Martin #17]<br><br>**OBJECTION: Duplicative. This Exhibit is identical to Exhibits 39 & 131.** |
|---|---|

| 90. | Cathay Survey Report, dated 2/21/2000, regarding its surveyor's inspection of the Second AFM, opining that a cause of the subject damage was insufficient packaging [Martin #18]<br><br>**OBJECTION: Duplicative. This Exhibit is identical to Exhibit 47.** *See also* **objections to Exhibit 47.** |
|---|---|

| 91. | Supplementary Cathay Survey Report, dated 11/7/2000, regarding Supplemental Report on Salvage Value for Second AFM; memo from Walch to Martin, dated 11/9/2000, regarding salvage report for Second AFM [Martin #19]<br><br>**OBJECTION: Lack of foundation and authenticity. Inadmissible hearsay to the extent that the document is offered to prove the facts asserted therein. Zygo acknowledges that the document was provided to it and Royal and that it is admissible to prove notice to both parties that a company known as Cathay Inspection Company determined the sakvage value to be reasonable.** |
|---|---|

| 92. | E-mail from Smith to Muckenhirn, dated 3/1/1999 (*sic*), regarding Zygo's proposal to ship a used AFM, Nan Ya to assist Zygo with resolution of insurance for First and Second AFM, and upon resolution to ship new a AFM to Nan Ya [Martin #20] |
|---|---|

| 93. | Letter from Daneman to DePino, dated 3/8/2000, regarding Royal's First Notice of Damage to Second AFM with handwritten notes [Martin #21] |
|---|---|

94. Temporary Loan Agreement, dated 3/14/2000, regarding Third AFM to Nan Ya [Martin #22]

95. Letter from Daneman to Weidman, dated 6/19/2000, regarding Royal's surveyor's report that the damaged AFM was unavailable to survey and the fact that no claim had been put forward by Zygo in respect of said damaged cargo [Martin #24]

   **OBJECTION: Duplicative. This Exhibit is identical to Exhibit 24.** *See also* **objection to Exhibit 24.**

96. Memo from McGoldrick to Davis, dated 6/28/2000, regarding cooperative agreement between Surface Interface and Zygo [Martin #25]

   **OBJECTION: Relevance. The fourth page of the document (Zygo 516) is irrelevant. Larry Martin testified (Dep. at 170-171) that these are his notes, but they were not created at the same time as the first three pages of this exhibit.**

97. Memo from Martin to Zygo's files, dated 7/14/2000, regarding termination of the agreement between Zygo and IBM [Martin #26]

98. Letter from Daneman to Weidman, dated 7/21/2000, regarding the fact that Royal's surveyor did not receive the relevant information needed in respect of the damaged AFM from Muckenhirn or Lee-Tech [Martin #27]

   **OBJECTION: Hearsay. To the extent that the document is offered for the truth of the statements that (i) "the surveyor is not able to investigate the damaged cargo"; (ii) "due to the lack of documentation, the surveyor is unable to proceed further with his investigation," these statements are inadmissible hearsay.** *See* **Zygo Brief.**

99. Correspondence from Weidman to Martin, dated 7/24/2000, regarding Royal's requirement that it be notified of any shipments leaving Zygo's IBM's plant in Florida [Martin #28]

100. Correspondence from Martin to Weidman, dated 7/25/2000, regarding destruction of an AFM shipped to Surface Interface in California [Martin #29]

101. E-mail from Martin to Muckenhirn, dated 9/6/2000, clearing for disposal the damaged AFM shipped to Surface Interface and outstanding paper work for Surface Interface claim [Martin #30]

   **OBJECTION: Relevance. The e-mail does not relate to the Nan Ya shipments.**

102. E-mail from Martin to Wu, dated 9/21/2000, inquiring as to the possible repair and/or disposition of the two damaged AFMs and how the loaner AFM is to be handled [Martin #31]

103. E-mail from Lee-Tech (Wu) to Martin, dated 9/22/2000, regarding proposal that Zygo and Nan Ya share in the cost of the two machines [Martin #32]

   **OBJECTION: Duplicative. This Exhibit is identical to Exhibit 41. *See also* objection to Exhibit 41.**

104. E-mail from Martin to Weidman, dated 10/3/2000 and E-mail from Wu to Martin, dated 9/22/2000, regarding Wu's proposal that Nan Ya and Zygo share in the loss of the two machines and Nan Ya return the loner after the problem is solved [Martin #33]

   **OBJECTION: Zygo objects to these e-mails to the extent they are offered to prove Nan Ya's intent regarding the second AFM. The document is admissible as notice to Zygo of Nan Ya's negotiating position. However, Mr. Wu's statements reflect inadmissible hearsay covering Nan Ya's actual intent regarding payment for the Second AFM. *See* Zygo Brief.**

105. E-mail from Wu to Martin, dated 10/4/2000, regarding arranging for salvage value on both units and the parties' respective insurance companies sharing in half the loss of the two damaged AFMs, and also asking who can represent Zygo at the meeting [Martin #34]

   **OBJECTION: Inadmissible hearsay to the extent that the document is introduced to prove Nan Ya's actual intentions concerning payment for the two damaged AFMs. Document is admissible to show notice to Zygo. However, Mr. Wu's statements reflect inadmissible hearsay covering Nan Ya's actual intent regarding payment for the Second AFM. *See* Zygo Brief.**

106. E-mail from Martin to Weidman, dated 10/6/2000, regarding arranging for Kelvin Walch to survey the two damaged AFMs [Martin #35]

107. E-mail from Wu to Martin, dated 10/5/2000, regarding Nan Ya arranging for salvage survey for value of the AFM and Mr. Walch's availability [Martin #36]

108. Letter from Martin to Wu, dated 11/15/2000, confirming Zygo would agree to off-set the amount outstanding on the First AFM with average salvage value for the First and Second AFM [Martin #37]

109. Memo from Walch to Martin, dated 10/26/2000, regarding salvage values for damaged AFMs [Martin #38]

110. Memo from Walch to Martin, dated 11/9/2000, Walch's salvage survey report on the First AFM [Martin #39]

111. Memo from Walch to Martin, dated 11/14/2000, regarding Walch's survey salvage report for damaged AFM shipped to Service Interface [Martin #40]

| 112. | Correspondence from Lee-Tech to Martin, dated 11/20/2000, forwarding shipment invoice for AFMs 1, 2, and 3 [Martin #41] |

| 113. | Letter from Weidman to Daneman, dated 12/12/2000, forwarding appraisal for two AFMs shipped to Nan Ya [Martin #42]<br><br>**OBJECTION: Duplicative. This Exhibit is identical to Exhibit 28.** |

| 114. | E-mail from Martin to Weidman, dated 1/11/2001, regarding payment for balance owed by Nan Ya [Martin #43] |

| 115. | Letter from Daneman to Weidman, dated 1/4/2001, regarding Royal's position as to FOB/FAS shipments, insurable interest, approximate cause, and damage, and request for survey [Martin #44]<br><br>**OBJECTION: Zygo objects to the extent that this document is being offered to prove the truth of the assertion that "the surveyor assigned by our Taipei office did not receive any cooperation or recommendation in trying to arrange for survey of damages."** |

| 116. | E-mail from Weidman to Martin, dated 3/16/2001, regarding Mr. Weidman's request for additional documentation from Zygo [Martin #45] |

| 117. | Letter from Sneed to Daneman, dated 3/23/2001, regarding Zygo's position as to coverage under the Policy, including its first mention ever to Royal of Policy Clause 52, Contingency Coverage [Martin #46]<br><br>**OBJECTION: Duplicative. This Exhibit is identical to Exhibits 30 & 159.** |

| 118. | Correspondence from Weidman to Martin, dated 5/8/2001, forwarding letter from Daneman to Weidman, dated 5/7/2001, regarding Royal's request for Zygo to confirm it is pursuing payment under Policy Clause 52, Contingency, requesting an outline regarding<br><br>Zygo's attempt to collect the amount due, Zygo's declaration and payment of additional premium, Zygo's notice to potential third-parties and potential release, and request for access to the AFM [Martin #47 & Sneed #7]<br><br>**OBJECTION: Duplicative. This Exhibit is identical to Exhibit 33.** |

| 119. | Letter from Weidman to Martin, dated 5/9/2001, regarding Mr. Sneed's request for Mr. Martin to review payment for AFM, attempts to collect from Nan Ya, and placing third-party on notice [Martin #48 & Sneed #8] |

| 120. | Correspondence from Martin to Wu, forwarding draft of Zygo's reply to Royal's letter of 5/7/2001 [Martin #49] |

|  | **OBJECTION: Foundation and Relevance. There is no evidence that the fax cover sheet was ever sent, or that the exhibit was sent to Billy Wu. (*See* Martin Dep. at 238-40).** |
|---|---|
| 121. | Correspondence from Weidman to Martin, dated 5/15/2001, forwarding Royal's response to Zygo's broker's letter of May 7th (responding to reference to Contingency Clause Coverage) [Martin #50] |
| 122. | Letter from Martin to Weidman, dated 6/1/2001, providing chronology of events pertaining to damaged AFMs [Martin #51] |
| 123. | E-mail from Weidman to Martin, dated 6/8/2001, regarding notice to IBM about damaged AFM, current location of AFMs, and shipment of AFM from Nan Ya to Surface Interface [Martin #52] |
| 124. | Letter from Sneed to Daneman, dated 6/14/2001, responding to Royal's letter of 5/15/2001 and declaring for the first time that Zygo was pursuing a claim in respect of the damaged AFM under Policy Clause 52, Contingency Clause, forwarding chronology of events from Mr. Martin, and asserting that Zygo is attempting to determine whether the damaged AFM is still available for survey by Royal[Martin #53] |
| 125. | Notice of Deposition of Zygo by Timothy Smith [Smith #01] |
| 126. | Notice of Deposition of Zygo pursuant to Rule 30(b)(6) [Smith #02] |
| 127. | Letter from counsel for Zygo (Attorney Bjorkman) to counsel for Royal (Attorney Fennell), dated 1/14/2004, regarding topics (from Royal's Rule 30(b)(6) Notice) for which Mr. Smith is Zygo's designated corporate representative [Smith #03] |
| 128. | Organizational Chart of Zygo's Corporate Structure, dated 7/1/2000 & 3/2002, identifying (among others) Mr. Martin and Mr. Smith [Smith #04] |
| 129. | E-mail from Chiang to Muckenhirn, dated 1/28/2000, regarding purchase order for second AFM [Smith #05 & Walch 3] |
| 130. | Email from Chiang to Muckenhirn, dated 2/11/2000, regarding damage to Second AFM and evidence pointing to packaging problem [Smith #06] |
| 131. | Email from Muckenhirn to Wu, dated 2/16/2000, regarding shipment of third tool and conditions for shipment, rejecting packaging issue [Smith #07]<br><br>**OBJECTION: Duplicative. This Exhibit is identical to Exhibits 39 & 89.** |

132. Email from Walch to Muckenhirn and Wilbur, dated 2/18/2000, regarding report on second shipment and meeting with Nan Ya on 2/17/2000 [Smith #08]

133. Cathay Survey Report, dated 2/19/2000, regarding survey of First AFM to Nan Ya and stating opinion that a cause of damage was insufficient packaging [Smith #09]

**OBJECTION: Lack of foundation and authenticity. Inadmissible hearsay to the extent that the document is offered to prove the facts asserted therein. Zygo acknowledges that the document was provided to it and Royal and that it is admissible to prove notice to both parties that a company known as Cathay Inspection Company found that the prime cause of the damage to both AFMs was that they were dropped.**

134. Cathay Supplementary Report, dated 11/17/2000, regarding supplemental survey for salvage value of first damaged AFM; and memo from Walch to Martin, dated 11/9/2000, regarding salvage survey report for first damaged AFM to Nan Ya [Smith #10]

135. Request for Equipment from Muckenhirn to Girardi, dated 3/7/2000 and handwritten notes [Smith #11]

136. Fax from Girardi to Muckenhirn, dated 3/8/2000, forwarding proposed Temporary Loan Agreement [Smith #12]

137. Email from Muckenhirn to Smith, dated 6/26/2000, regarding Nan Ya's possible purchase of an AFM from Zygo's competitor and expressing Muckenhirn's concern that Nan Ya will return the loaner AFM and buy another machine from Zygo's competitor; and proposing that Billy Wu use his relationship with Nan Ya to pressure payment; e-mail from Smith to Monti, dated 6/26/2000, forwarding message from Muckenhirn that Billy Wu "got trapped" in his discussions with Nan Ya [Smith #13]

138. Email from Lee-Tech to Martin, dated 7/4/2000, regarding meeting between Billy Wu and Nan Ya concerning compensation for damaged AFMs, noting that Nan Ya was insisting that the damaged AFM's packaging was not strong enough, that the packaging of the First and Second AFMs differed, and that Nan Ya would compensate Zygo only for one of these damaged AFMs at most [Smith #14]

**OBJECTION: Hearsay. To the extent that Royal is offering the document to prove the truth of Nan Ya's position with respect to payment of the second AFM, it is inadmissible hearsay. Zygo has no objections to the document being admitted for the purpose of demonstrating notice to Zygo. But, Mr. Wu's recitation of Nan Ya's position is not probative of Nan Ya's or its insurer actual state of mind concerning payment. *See* Zygo Brief.**

139. Email from Martin to Lee-Tech, dated 7/10/2000, regarding Billy Wu fighting for Zygo

| | and request for clarification on Nan Ya's position [Smith #15] |
|---|---|
| 140. | Letter from Martin to Wu, dated 7/10/2000, regarding request for Billy Wu to act as Zygo's agent respecting the damaged AFMs, and setting forth Zygo's proposal to Nan Ya [Smith #16]<br><br>**OBJECTION:  Duplicative.  This Exhibit is identical to Exhibit 45.** |
| 141. | Email from Bunker to Martin, dated 7/14/2000, regarding damage to Zygo's shipment of AFM shipped to Surface Interface [Smith #17]<br><br>**OBJECTION:   Relevance and hearsay.   The e-mail is not related to the Nan Ya shipments.  The author of the e-mail is not a Zygo employee.  The statements is the e-mail are not admissible for their truth.** |
| 142. | Email from Martin to Smith and Wu, dated 8/1/2000, regarding filing a claim for the Second AFM with Royal and requesting cooperation in expediting the claim [Smith #18] |
| 143. | Email from Smith to Martin, dated 8/8/2000, reporting that Billy Wu had been uncooperative with Royal's surveyor in respect of the second damaged AFM and had indicated to Royal's surveyor that a settlement had been reached by Zygo and Nan Ya with respect to that AFM [Smith #19]<br><br>**OBJECTION:   Hearsay.   Smith's e-mail is inadmissible to prove the truth of the statements that:  (i) Mr. Chen actually spoke to Billy Wu; (ii) that Billy Wu actually told Mr. Chen that *he* had already reached an agreement with Nan Ya.  This is classic double hearsay.  *See* Zygo Brief.** |
| 144. | Email from Martin to Wu, dated 9/21/2000, forwarding contact information for Royal's surveyors; e-mail from Lee-Tech to Martin, dated 9/22/2000, regarding contact with Royal's surveyor, that case was closed, and proposing Zygo and Nan Ya share in the cost of the damage to the two AFMs [Smith #20]<br><br>**OBJECTION: Duplicative. This Exhibit is identical to Exhibits 40, 41, & 102.  *See also* Objection to Exhibit 41.** |
| 145. | Email from Muckenhirn to Martin, dated 9/21/2000, regarding interest in the two damaged machines and ownership and contact information for them [Smith #21] |
| 146. | Email from Muckenhirn to Martin, dated 10/4/2000, regarding having Mr. Walch survey for appraisal and pack the loaner, and that Lee-Tech may be playing a fishy game [Smith #22] |
| 147. | Email from Wu to Martin, dated 10/4/2000, regarding Mr. Walch conducting a salvage survey and proposing that Zygo and Nan Ya share in the cost for the damaged AFMs [Smith |

#23]

OBJECTION: Duplicative. This Exhibit is identical to Exhibit 105. In addition, the exhibit is inadmissible hearsay to the extent that it is introduced to prove Nan Ya's actual intentions concerning payment for the two damaged AFMs. Zygo agrees that the document is admissible to show notice to Zygo. However, Mr. Wu's statements reflect inadmissible hearsay covering Nan Ya's actual intent regarding payment for the Second AFM. *See* Zygo Brief.

148.    Email from Martin to Wu, dated 10/16/2000, regarding Zygo's insurance company owning the Second AFM, and Nan Ya holding Zygo hostage to insure agreement on the AFMs, and requesting a copy of Nan Ya's survey reports [Smith #24]

149.    Email from Lee-Tech to Martin, dated 10/20/2000, regarding agreement that Zygo will file a claim for the Second AFM with its insurance company and averaging the salvage values; E-mail from Wu to Martin, dated 10/26/2000, regarding agreements with Nan Ya and requesting formal letter, and requesting Mr. Walch to prepare two salvage reports, one real and one for formal report; letter from Martin to Wu, dated 10/27/2000, regarding agreement to resolve AFM dispute, and agreeing to average salvage values [Smith #25]

150.    Meeting Minutes from 11/13/2000 meeting between Zygo and Nan Ya, and translation [Smith #26]

OBJECTION: Foundation. The document is written in Mandarin Chinese. "Knowledge of a foreign language is certainly 'specialized knowledge' within the terms of that Rule [F.R.E. 701], and testimony translating a foreign language into English seems appropriately relegated, in most instances, to the realm of expert testimony." 5 J. Weinstein & M. Berger, *Weinstein's Federal Evidence*, §§901.09 [1], 901.09[2] (2d. ed. 2004). Here, Royal has not disclosed any expert witness who will testify at trial concerning the translation of this document. Indeed, the testimony of any such expert is "always subject to attack, either through cross-examination or presentation of rebuttal evidence." *Id.* at 901.09[2], at 901-87, 88. There is no evidence as to who prepared the alleged English translation of this document that is part of the proposed exhibit, other than the knowledge that it was provided in *Nan Ya's* document production. Clearly, Royal has not identified any expert witness, or lay witness, to testify about the meaning of this document. Accordingly it should not be admitted under Federal Rule of Evidence 901. The document is not admissible.

151.    Letter from Daneman to Weidman, dated 11/10/2000, regarding Royal's Taiwan office/surveyor having communicated with Billy Wu and Tim Smith but that they did not have an answer as to the AFMs, the loss was probably caused by insufficient packaging, and Na Ya's insurer had agreed to settle the claim with Lee-Tech [Smith #27]

OBJECTION: Duplicative. This Exhibit is identical to Exhibit 26. *See also* Objection to Exhibit 26.

152. E-mails from Lee-Tech to Martin, dated 11/19/2000; from Martin to Lee-Tech, dated 11/17/2000; from Lee-Tech to Martin, dated 11/13/2000; from Martin to Lee-Tech, dated 11/13/2000; from Lee-Tech to Smith, dated 11/13/2000, regarding package of damaged AFMs and loaner for return; from Lee-Tech to Smith, dated 11/13/2000, stating that the problem of the two damaged AFMs had been resolved; and from Martin to Lee-Tech, dated 11/13/2000, thanking everyone for their effort to "resolve this situation" [Smith #28]

153. Handwritten notes on net book value for three AFMs [Smith #29]

   **OBJECTION: Foundation and relevance. Mr. Smith testified at his deposition that he had never seen these notes before and he did not recognize the handwriting on them. Smith Dep. at 189-90.**

154. Mr. Sneed's handwritten memorandum from Sneed to Weidman, dated 5/17/2001, regarding writing a strong letter to Royal, putting third-parties on notice, and formally demanding payment from Nan Ya [Sneed #02]

155. Mr. Sneed's handwritten notes, dated 5/8/2001, regarding specific clauses under the Policy [Sneed #03]

156. Mr. Sneed's handwritten notes, dated 4/19 & 4/26/2001, regarding review of Policy Clause 52, Contingency Clause [Sneed #04]

157. Mr. Sneed's handwritten notes, dated 3/15/2001, regarding Mr. Sneed's review of the documentation on the claim [Sneed #05]

158. Mr. Sneed's handwritten draft, dated 3/20/2001, of a letter to Royal's Daneman regarding coverage under the Policy [Sneed #06]

159. Letter from Sneed to Daneman, dated 3/23/2001, regarding assertions of coverage under the Policy, including the first reference to Policy Clause 52, Contingency [Sneed #09]

   **OBJECTION: Duplicative. This Exhibit is identical to Exhibits 30 & 117.**

160. E-mail from McCorkle to Ash, dated 2/2/2000, stating there are no crates for the AFM, they must be built, and a new Chinese rule about wood crates [Walch #04]

161. E-mail from McGinnis to Zanelli, dated 12/23/1999, regarding dimensions of shipment for First AFM [Walch #05]

162. Photographs of damaged AFM [Walch #06]

   **OBJECTION: Relevance. *See* Zygo's Packaging Motion.**

163. Photographs of damaged AFM [Walch #07]

   OBJECTION: Relevance. *See* Zygo's Packaging Motion.

164. Photographs of damaged AFM [Walch #08]

   OBJECTION: Relevance. *See* Zygo's Packaging Motion.

165. Memo from Walch to Muckenhirn, dated 2/16/2000, regarding summary of shipments over prior two (2) years [Walch #09]

166. Correspondence from Merati to Royal, dated 3/7/2000, regarding damage to second AFM [Walch #10]

167. Memo from Walch to Giradi (Zygo), dated 6/2/2000, regarding quotation for Mr. Walch's time on an unrelated AFM installation [Walch #12]

   OBJECTION: Relevance.

168. Letter from Martin to Wu, dated 10/27/2000, regarding written proposal for resolution of damaged AFMs with Nan Ya [Walch #13]

169. Memo from Walch to Martin, dated 11/9/2000, regarding salvage survey of Second AFM [Walch #14]

   OBJECTION: Duplicative. This Exhibit is identical to Exhibit 110.

170. St. Paul Ocean Marine Policy Schedule of Rates (effective 11/1/01), with a separate contingent rate [Weidman #03]

171. The St. Paul Marine Open Cargo Policy issued to Zygo (effective 7/1/2001) [Weidman #04]

172. Insurance binder from St. Paul to Zygo for ocean marine insurance [Weidman #05]

173. Fireman's Fund Open Marine Insurance Policy for Zygo (effective April 30, 1995) [Weidman #06]

174. Endorsement No. 11 to the Fireman's Fund Open Marine Insurance Policy for Zygo, amending the anniversary date; Endorsement No. 12 amending the rates [Weidman #07]

175. Letter from Bielewicz to Light, dated 1/15/1997, regarding the appointment of Mathog & Moniello as the exclusive agent-of-record for Zygo for all lines of insurance [Weidman #08]

| | |
|---|---|
| 176. | Letter from Weidman to Mabe, dated 5/9/2001, regarding two proposals for renewal by Royal for the Ocean Marine Insurance Policy with Zygo; handwritten notes regarding new terms [Weidman #09] |
| 177. | Letter from Martin to Weidman, dated 7/21/2000, regarding two separate insurance issues, including the damaged AFM with Nan Ya and the damaged AFM with Surface Interface [Weidman #11] |
| 178. | E-mail from Weidman, with a copy to Zdanis, dated 4/22/2002, regarding changing the dates for Zygo's Marine Insurance in light of shipping history for past eight to ten months [Weidman #12] |
| 179. | Correspondence from Weidman to St. Paul Insurance, providing a description of Zygo and its loss history, a quote from AIG, a loss run provided by Royal, and an application for insurance [Weidman #13] |
| 180. | Correspondence from Weidman to St. Paul Insurance, providing a description of Zygo and its loss history, a quote from AIG, a loss run provided by Royal, and an application for insurance [Weidman #13A] |
| 181. | Handwritten notes regarding instructions for quoting insurance [Weidman #14] |
| 182. | E-mail from DePino to Lacombe of Royal, dated 8/7/2003, regarding reducing the premium for International Package policy [Weidman #15] |
| 183. | Zygo's Minimum Crating Guidelines for Large Product Shipments [Weidman #16] |
| | **OBJECTION: Relevance and Foundation.** The document is irrelevant because the "packaging issue" is not properly in this case. *See* Packaging Motion. Even if this issue were before the Court, this document is dated January 31, 2001, about one year after the AFM shipment to Taiwan. Further, the AFM shipments were not packaged by Zygo. Moreover, there is no foundation evidence as to whether, or how, this document was ever used by Zygo. There will also be no expert testing or testimony as to whether the AFM package comported with the terms of this document. |
| 184. | Correspondence from Kelly to Jeannette, dated 4/28/1998, regarding sample ocean marine cargo policy by American Home Assurance Company, of the American International Group [Weidman #17] |
| | **OBJECTION: Relevance.** |
| 185. | Sample ocean marine cargo policy by American Home Assurance Company, of the |

American International Group, Inc. [Weidman #18]

**OBJECTION: Relevance.**

186.  Producer Order Form, dated 5/5/97, highlighting coverages accepted and declined at renewal [Weidman #19]

**OBJECTION: Relevance and foundation. The author, Matthew Weidman, testified (Dep. at 172-73) that he had no idea whether the document was sent to anyone in the form of this exhibit.**

187.  Application for ocean marine insurance for the period of 2000-2001 or 2001-2002 [Weidman #20]

**OBJECTION: Relevance and foundation.**

188.  Application for ocean marine insurance for the period of 1998 or 1999 [Weidman #21]

**OBJECTION: Relevance and foundation.**

189.  Presentation by Mathog & Moniello to Zygo of its insurance coverage, including marine insurance for the term 5/1/1999 to 5/1/2000 [Weidman #22]

190.  E-mail from Daneman to Chung, dated 6/15/2000, regarding survey of damaged AFM [Weidman #23]

191.  E-mail from Weidman to Daneman, dated 8/1/2000, regarding contact information for Royal's surveyor to use regarding the damaged AFM [Weidman #24]

192.  Endorsement No. 14 to the St. Paul ocean marine insurance policy for Zygo, amending the minimum premium and rate to .0784% [Weidman #25]

193.  American Home Assurance Company's Marine Open Cargo Policy to Zygo (effective 5/1/1998) [ZYGO #01000 – 01035]

194.  Correspondence between counsel for Royal and counsel for Zygo and counsel Mathog & Moniello regarding production of the AIG Policy (Letter from counsel for Royal (Attorney Fennell) to counsel for Mathog & Moniello (Attorney Weldon), dated 3/4/04; letter from counsel for Mathog & Moniello (Attorney Weldon) to counsel for Royal (Attorney Fennell), dated 3/12/04; letter from counsel for Mathog & Moniello (Attorney Weldon) to counsel for Royal (Attorney Ginos), dated 3/26/04; letter from counsel for Royal (Attorney Ginos) to counsel for Zygo (Attorney Bjorkman), dated 4/2/04; letter from counsel for Royal (Attorney Fennell) to counsel for Zygo (Attorney Bjorkman), dated 4/30/04; letter from counsel for Royal (Attorney Ginos) to counsel for Mathog & Moniello (Attorney Weldon), dated 5/5/04; e-mail from counsel for Royal (Attorney Fennell) to counsel for Zygo

(Attorney Bjorkman), dated 5/14/04; letter from counsel for Royal (Attorney Ginos) to counsel for Mathog & Moniello (Attorney Weldon) and counsel for Zygo (Attorney Bjorkman), dated 5/19/04).

**OBJECTION:** Relevance and Foundation. The correspondence relating to this discovery dispute is irrelevant to any issue in this case. Zygo did not have a copy of this insurance policy, nor did its broker, Mathog & Moniello ("M&M"). Accordingly, as a courtesy, Zygo requested that its broker obtain a copy of the policy from AIG, which it did. M&M then gave the document to Zygo's counsel who produced it to Royal. Royal could have subpoenaed AIG when it determined that neither Zygo nor M&M had a copy. Rather than requiring Royal to do so, Zygo cooperated. The AIG policy was not withheld from Royal.

| | |
|---|---|
| 195. | Order Confirmation from Nan Ya to Zygo, dated 1/5/2000 for the First AFM [ZYGO #00339] |
| 196. | Correspondence from Chiang to Girradi, dated 1/6/2000, enclosing purchase order from Nan Ya for the First AFM [ZYGO #00357 – 00358] |
| 197. | Letter from Daneman to Merati, dated 3/20/2000, regarding Zygo's failure to respond to Royal's letter of 3/8/2000 [RY 00275] |
| 198. | Letter from Daneman to Merati, dated 4/19/2000, regarding Zygo's failure to respond to Royal's letters of 3/8/2000 and 3/20/2000 [RY 00273] |
| 199. | Handwritten notes, dated 4/28/2000, by Mr. Ilias regarding conversation with Weidman about damaged AFM [RY 00449] |
| 200. | Handwritten notes, dated 5/18/2000, by Mr. Ilias regarding conversation with Weidman about withdrawing the claim for the damaged AFM [RY 00447] |
| 201. | Letter from Daneman to Weidman, dated 2/5/2001, stating Royal had no new information from its surveyor and Royal had not received a response to its letter raising coverage issues [RY 00147] |
| 202. | Zygo Leetech – Nan Ya AFM project status printout [NY 000008 – 000010]<br>**OBJECTION: Relevance and foundation.** |
| 203. | Correspondence from Lee-Tech to Nan Ya, dated 10/30/2000, forwarding Mr. Martin's agreement to resolve the dispute with Nan Ya [NY 000284] |
| 204. | Letter from counsel for Royal (Attorney Nicoletti) to counsel for Zygo (Attorney |

| | Bjorkman), dated 7/26/2002, regarding opposing Nan Ya's motion |
|---|---|
| 205. | Letter from Ilias to Weidman, dated 9/29/2000, regarding Royal's intention to cancel and handwritten notes that Zygo was having difficulty replacing coverage. [RY 00417] |
| 206. | Letter from Ilias to Weidman, dated 11/1/2000, regarding surveys and handwritten notes regarding extending the Policy period [RY 00412] **OBJECTION: Relevance. This document does not relate to Nan Ya AFMs.** |
| 207. | E-mail from Ilias to Weidman, dated 11/9/2000, regarding extending coverage with modifications and handwritten notes that Zygo agreed to changes [RY00407] **OBJECTION: Relevance and hearsay. This document cannot be offered for the truth concerning the actual changes to Zygo's coverage and premiums.** |
| 208. | E-mail from Ilias to Weidman, dated 11/2/2000, regarding proposed coverage modifications [RY00408] **OBJECTION: Relevance and hearsay. This document cannot be offered for the truth concerning the actual changes to Zygo's coverage and premiums.** |
| 209. | Correspondence from Ilias to Weidman, dated 4/17/2001, regarding proposed terms for renewal of the Policy for 2001-2002 term [RY 00368] |
| 210. | E-mails between Ilias and Weidman, dated 5/8/2001 and 5/10/2001, regarding proposed terms for renewal of the Policy for 2001-2002 term [RY 00362 – 00363] |
| 211. | Handwritten note on correspondence from Weidman to Ilias on correspondence dated 5/11/2001, requesting extension of Policy term [RY 00358] |
| 212. | Correspondence from Zdanis to Ilias, dated 5/1/2000, regarding binding Zygo's ocean marine insurance effective 5/1/2000 [RY 00448] |

DEFENDANT
ZYGO CORPORATION

By: _____

Ian E. Bjorkman (ct 11648)
Erika L. Amarante (ct 22393)
Wiggin and Dana LLP
P.O. Box 1832
New Haven, CT  06508-1832
Tel. 203-498-4496
Fax: 203-782-2889
ibjorkman@wiggin.com
Its Attorneys