# Exhibit L

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA, <br> Plaintiff, <br><br> v. <br><br> ZYGO CORPORATION, <br> Defendant. | Civil No. 3:01 CV 1317 (JBA) <br><br><br><br><br> January 18, 2005 |

## ZYGO CORPORATION'S OBJECTIONS TO PLAINTIFF'S CONCLUSIONS OF LAW

**I.  Contract Interpretation (Royal's Conclusions ¶¶ 1-33)**

**A.  Burden of Proof**

Royal claims that Zygo has the burden of proving that it is entitled to recover under the Policy. Royal's Conclusions, ¶ 1. Tellingly, Royal cites no legal authority for that proposition.

In truth, Royal, as plaintiff, carries the burden of proof relating to coverage. *See, e.g., American Nat'l Fire Ins. Co. v. Rose Acre Farms Inc.*, 911 F. Supp. 366, 369 (S.D. Ind. 1995), *aff'd*, 107 F.3d 451 (7th Cir 1997) (where insurer seeks declaratory judgment that coverage does not exist, the insurer, "as the person who seeks the judgment[,] must carry the burden of proving its propriety"). Accordingly, Judge Goettel already correctly determined that "Royal has the burden of proving that the Policy unambiguously attaches additional requirements for unpaid vendor's coverage under Clause 52 and that the premiums and declarations were not in fact covered under the general provisions of the Policy." *Royal Ins. Co. v. Zygo Corp.*, 2003 WL 21960734 (Aug. 15, 2003), at *10.

Moreover, Royal's claim that the contingency clause, which otherwise would apply, does not cover Zygo's loss because of Zygo's failure to declare the shipment separately and pay an

additional premium is akin to an exclusion of coverage under the Policy. To the extent that Zygo is attempting to prove the applicability of an exclusion in the Policy, it is well-established that the "burden of proving an exclusion to a risk otherwise generally insured is on the insurer." *Souper Spud, Inc. v. Aetna Cas. & Sur. Co.*, 5 Conn. App. 579, 585 (1985) (citing *O'Brien v. John Hancock Mut. Life Ins. Co.*, 143 Conn. 25, 29 (1955)). *See also Stamford Wallpaper Co., Inc. v. TIG Ins.*, 138 F.3d 75, 79 (2d Cir. 1998) ("The insurer bears the burden of proving the applicability of a contract term . . . which withdraws from coverage a specific type of liability.")

**B.    Law of the Case**

Royal apparently wants this Court to reconsider the motion for summary judgment it filed in 2003 before Judge Goettel. Royal's Conclusions, ¶ 2. That request is entirely inappropriate at this juncture of the case.

Further, Royal asks the Court not to adhere to the "law of the case" that the Policy is ambiguous. Royal's Conclusions, ¶¶ 3-6. Judge Goettel concluded that the Policy was ambiguous in *Royal II*, 2003 WL 21960734, at * 7, and this Court reached the same conclusion in denying the recent round of summary judgment motions. *See* Memorandum of Decision and Order, dated December 14, 2004, at 26-30. While citing the general exceptions to the law of the case doctrine, Royal's Conclusions, ¶ 5, Royal has provided no analysis of which exception might permit the Court to revisit that issue now. The controlling law has not changed, there is no new evidence on the issue, and there is no need for this Court to correct a clear error to prevent manifest injustice. Accordingly, Royal has given the Court no reason (as none exists) to deviate from the law of the case that the Policy is ambiguous.

Alternatively, should the Court decide to revisit whether the Policy is ambiguous, Zygo contends that it should conclude that the Policy, unambiguously, does **not** contain any

2

requirement to separately report shipments and pay additional premium in order to obtain unpaid vendor coverage, for the reasons set forth in Zygo's Proposed Findings of Fact and Conclusions of Law, ¶¶ 10-12, 89.

### C. Insurance Broker as Agent

Zygo reserves the right to contest Royal's broad claim that an insurance broker's knowledge and acts are binding on an insured. *See* Royal's Conclusions, ¶¶ 24-26. There clearly are limits to the scope of an insurance broker's agency, and the rule of law is not as broadly applicable as Royal asserts. However, given that Royal did not add these paragraphs to their Proposed Legal Conclusions until Monday afternoon – with a Tuesday filing deadline – Zygo is unable to submit a detailed response at that time.

### D. Construction of the Ambiguous Policy Terms

Royal provides no legal or factual support for its contention that it was the intent of the parties to provide Zygo with unpaid vendor coverage only if it provided Royal with information it "needed to assess that risk." Royal's Conclusions, ¶ 27. The facts in this case will show, through the testimony of Alan Ilias, that Royal would not have done anything to "assess the risk" had Zygo given advance notice of the shipment. See Zygo's Witness Statement of Alan Ilias. Indeed Royal would have done nothing other than, perhaps, charge a nominal premium. Notably this is the only paragraph in Royal's Proposed Conclusions of Law that relates to resolving the ambiguities in the Policy – Royal has done nothing to marshal the extrinsic evidence in support of its position, perhaps because the extrinsic evidence all supports Zygo's interpretation of the Policy. Indeed, Royal's "legal conclusion" boils down to an assertion that the parties' intent was as Royal represents because "Royal says so." There is no basis in law or fact for that conclusion.

3

E.  **Contra Proferentem**

Royal asserts that contra proferentem does not apply to this case because Zygo is a sophisticated commercial entity and the Policy was not issued on a "take-it-or-leave-it" basis. Royal's Conclusions, ¶¶ 31-33. Among authority from the Third and Fifth Circuits, Royal relies on the Second Circuit's decision in *U.S. Fire Ins. Co. v. General Reins. Corp.*, 949 F.2d 569 (2d Cir. 1991), a case decided under New York law and concerning a dispute between two insurance companies, for the proposition that contra proferentem does not apply to sophisticated commercial entities. Royal completely ignores the fact that the Second Circuit, in a later decision, limited *U.S. Fire Ins. Co.* to its facts (where two *insurance companies* were in a dispute) and expressly held that "there is no general rule in New York denying sophisticated businesses the benefit of contra proferentem." *Morgan Stanley Group, Inc. v. New England Ins. Co.*, 225 F.3d 270, 279 (2d Cir. 2000). The *Morgan Stanley* Court concluded, on its facts, that contra proferentem should apply where Morgan Stanley (although sophisticated) did not negotiate its coverage terms with its insurance policy. Similarly, here, there will be no evidence that there was any negotiation concerning the terms at issue in this case. While Zygo was represented by an insurance broker in the transaction that requested contingency coverage, the parties did not negotiate over the terms of Clause 52 – once Zygo requested the coverage, it was provided with Royal's standard contingency clause, without any opportunity for negotiation of the terms.

Further, Connecticut law clearly applies contra proferentem even when the parties are sophisticated business entities. Royal cites three unreported Superior Court decisions (all issued by the same Judge) in support of its position, but none of these cases actually holds that contra proferentem does not apply to commercial relationships. *See ITC Investments, Inc. v. Employers*

4

*Reinsurance Corp.*, 2000 WL 1996233, at * 3 (Conn. Super. Dec. 11, 2000) (Corradino, J.) (stating only that the rule should not be "woodenly applied"); *Cooper v. RLI Ins. Co.*, 1996 WL 367721, at *6 n.1 (Conn. Super. June 3, 1996) (Corradino, J.) (urging courts "to abandon the ambiguity rule in such a context"); *Linemaster Switch Corp. v. Aetna Life and Cas. Corp.*, 1995 WL 462270, at *4 (Conn. Super. July 25, 1995) (Corradino, J.) (stating only that the rule should not be "woodenly applied"). Royal fails to mention that the Connecticut Supreme Court has considered, and rejected, this very argument. *See Imperial Cas. and Indemnity Co. v. State*, 246 Conn. 313, 329 n. 7 (1998) (distinguishing *Linemaster*, rejecting plaintiff's claim that contra proferentem was intended only to benefit unsophisticated consumers, and finding "no reason to deviate from the general rule that ambiguity in an insurance policy is to be interpreted against the drafter").

Royal also asserts that contra proferentem should be used only as a doctrine of last resort. Royal's Conclusions, ¶¶ 28-30. Zygo does not dispute that this doctrine should be used as a last resort. In fact, Zygo contends that an examination of the Policy's language and extrinsic evidence, without resort to contra proferentem, clearly calls for the resolution of the ambiguities in the Policy in Zygo's favor. However, to the extent that the Court finds the extrinsic evidence ambiguous, which it should not, Zygo asserts that the doctrine of contra proferentem mandates that the Policy be construed in its favor.

## II.    Spoliation (Royal's Conclusions, ¶¶ 36-61)

Royal asserts that the Court should sanction Zygo for spoliation of evidence because it sold the AFM at issue without prior approval from Royal. Royal's attempt to mislead the Court on the law of spoliation and its applicability to this case must fail.

5

As Judge Margolis stated in *McGinnity v. Metro-North Commuter R.R.*, 183 F.R.D. 58, 60 (D. Conn. 1998), courts apply a five-factor test in analyzing claims of spoliation: "(1) whether the party had a legal duty to preserve the evidence; (2) the degree of the party's culpability in the destruction of the evidence; (3) the relevancy of the destroyed evidence; (4) the prejudice to the opposing party; and (5) the severity of the punishment to be imposed." Royal's claim for spoliation sanctions fails under every prong of this test.

First, Zygo sold the AFM for its salvage value in January 2001, more than six months before Royal made a decision on Zygo's claim or filed the present lawsuit. At the time, Zygo had no way of divining that Royal might institute litigation instead of executing its duty to investigate the claim in good faith. Litigation was not mentioned or ever discussed. No one from Royal ever requested that Zygo retain the damaged AFM. In fact, after months of knowing its exact location and who to contact for access, no one from Royal ever went to see the damaged AFM, and Royal's agent Mr. Chung told Timothy Smith that he did not want or need to see the damaged property. *See* Witness Statement of Timothy Smith. On these facts, Zygo had no legal duty to preserve the damaged AFM. *See, e.g., McGinnity*, 183 F.R.D. at 61 (no legal duty to preserve tapes pre-litigation where "[n]o attorney or insurance adjuster requested" their retention).

Second, Zygo did not sell the AFM with any bad faith or intent to destroy relevant evidence. In *Fujitsu Ltd. v. Federal Exp. Corp.*, 247 F.3d 423 (2d Cir.), *cert. denied*, 534 U.S. 891 (2001), for example, the Court affirmed the trial court's denial of spoliation sanctions where "Fed Ex had failed to demonstrate that Fujitsu's action was an intentional attempt to destroy evidence." *Id.* at 436. On fact strikingly similar to this case, Fujitsu shipped a container of silicon wafers from Narita, Japan to a customer in Austin, Texas in May 1996, using Fed Ex as

6

its carrier. The goods arrived damaged, Fujitsu's customer refused delivery, and the container was returned to Japan in its damaged condition. At some point in July 1996, two months after the damage occurred, Fujitsu disposed of the container and its contents. Fujitsu later sued Fed Ex to recover its loss. Because Fed Ex did not have access to the container to prepare its defense, it asked the trial court for spoliation sanctions against Fujitsu. The trial court refused, and the Second Circuit affirmed, on the grounds that Fujitsu's destruction of the damaged and worthless container was not an intentional attempt to destroy evidence, and that Fed Ex knew of the damaged shipping container immediately and never requested to inspect it during the two months that Fujitsu had retained it.

Similarly, here, Zygo retained the AFM for almost a year after the damage occurred, and Royal made no attempt to inspect it during that time. In fact, Royal's agent Mr. Chung expressly told Timothy Smith that he did not want or need to view the damaged AFM. *See* Zygo's Witness Statement of Timothy Smith. Zygo had no obligation to retain the damaged AFM indefinitely, it eventually needed to dispose of the damaged property, and it attempted to mitigate its damages by selling the AFM for its agreed-upon salvage value. None of those facts warrants a spoliation sanction.

Third, Royal cannot prove that the AFM would be relevant to any issue in this case. *See Kronish v. U.S.*, 150 F.3d at 112, 127 (2d Cir. 1998) ("before we permit the drawing of an adverse inference [for spoliation], we require some showing indicating that the destroyed evidence would have been relevant to the contested issue"). As detailed in Zygo's Motion in Limine Concerning Royal's Purported "Packaging" Claim ("Zygo's Packaging Motion"), whether the AFM was packaged adequately has no bearing on the issue of coverage before this Court. In fact, the cause of or extent of the damage has no role in the determination of coverage.

As this Court stated in its December 2004 Memorandum of Decision and Order on the parties' cross-motions for summary judgment:

> Royal was obligated under the contract to pay the coverage first and, if it ultimately determined that Nan Ya was justified in failing to pay its bill to Zygo, or that Zygo improperly settled the claim without Royal's permission, demand reimbursement from Zygo. Unpaid vendor coverage . . . is insurance for the event that the buyer, Nan Ya, failed to pay the insured, Zygo. It is not related to any specific damage to the microscope, and there is nothing in Clause 52 turning on the *reason* the buyer gave for refusing or failing to pay.

Memorandum of Decision and Order, at 34 (emphasis in original). Accordingly, Royal cannot demonstrate that a review of the damaged AFM would be relevant to any issue in this trial.

Fourth, Royal was not prejudiced by Zygo's sale of the AFM a year after it was damaged in transit to Taiwan. Courts have held that a party cannot be prejudiced by spoliation where they had ample opportunity to inspect the evidence prior to its destruction. *See, e.g., Sterbenz v. Attina*, 205 F. Supp. 2d 65, 72-73 (E.D.N.Y. 2002); *Indemnity Ins. Co. of N. Am. v. Liebert Corp.*, 1998 WL 363834, at *4 (S.D.N.Y. 1998). In *Sterbenz*, for example, plaintiff was involved in a car accident that totaled her car and led to the death of her husband. Her insurance company quickly notified her attorney of the location of the vehicle (Art's Auto Body) and the contact information for that entity, and warned that the vehicle was collecting storage fees and should be removed as soon as possible. Three months later, the insurance company disposed of the vehicle. Plaintiff then sued the insurer, claiming that it had compromised her product liability claim against the automobile manufacturer by disposing of the evidence. The district court disagreed, holding:

> By notifying plaintiff's attorney of the vehicles location in the February 26, 1999 fax, and by waiting until May 17, 1999 to dispose of the vehicle, defendant provided the other side adequate and meaningful opportunity to inspect the evidence. . . . Any detriment suffered by plaintiff was thus the product of her counsel's dilatory and unprofessional handling of the case, and not by any tortious conduct on defendants' part.

8

205 F. Supp. 2d at 73.

Similarly, here, any prejudice Royal may have suffered from its failure to survey or inspect the damaged AFM is due to its own acts or omissions. Zygo gave detailed information about the AFM to Royal several times, *see* Def. Exs. 503, 505, 515, 516, 517, 518, and retained the property for almost a year after the damage had occurred. That Royal failed to inspect the property during that time does not warrant a spoliation sanction.

Last, it is worth noting that spoliation sanctions often arise in the context of discovery disputes, because a party's failure or inability to respond fully to discovery requests brings the issue before for the court. Royal acknowledges as much, stating that "the Court may sanction a party where spoliation prevents that party from complying with its discovery obligations." Royal's Conclusions, ¶ 38. That statement is quite ironic, given that Royal never once asked Zygo to produce the damaged AFM during the lengthy discovery process of this case! Royal now wants this Court to sanction Zygo because it did not retain the damaged AFM, where (1) Royal had ample opportunity over a year's time to inspect the AFM and never did, (2) Royal never once asked Zygo to retain the AFM for any specified period, and (3) Royal never once requested production of or the opportunity to inspect the AFM during the entire course of this litigation. Under these circumstances, raising a claim of spoliation at this late date in a desperate attempt to avoid the merits of this litigation is not only inappropriate, but it is further evidence of Royal's continued bad faith since day one of this dispute.

For each of the foregoing reasons, the Court should reject Royal's attempt to insert the issue of spoliation into this case.

### III. Subrogation (Royal's Conclusions ¶¶ 62-70)

Royal claims generally that an indemnitee's act or omission in breach of its duty can discharge an indemnitor from its duty to indemnify. Royal's Conclusions, ¶ 64. Tellingly, it cites no Connecticut law in support of that proposition, relying instead on, among other authorities, a legal encyclopedia and a 1934 case from Louisiana. The one Connecticut case on point, *Wolthausen v. Trimpert*, 93 Conn. 260 (1919), which Royal fails to cite, states a somewhat more relaxed rule:

> The duty of the indemnitee, in a contract to bear the loss the indemnitee may suffer on an account held by him against a third party, is, unless otherwise provided, to act in good faith and to use ordinary care, or, to put it the other way, not to be negligent in respect to the loss for which indemnity is claimed. . . . *If the indemnitee is not negligent, it matters not that it may afterwards appear that some other action would have been more successful.*

93 Conn. at 269 (emphasis added).

Further, even if Royal had accurately stated in law in Connecticut, it makes no effort to apply that law to the facts of this case. The simple truth is that there will be no evidence at trial that Zygo breached any duty to Royal or increased Royal's risk or liability under the Policy. *See* Zygo's Proposed Findings of Fact and Conclusions of Law, ¶¶ 19-27, 106-11.

**A. Settlement.** Curiously, Royal discusses the unremarkable legal principle that generally states that a release can destroy an insurer's subrogation rights. Royal's Conclusions, ¶¶ 65-68. But, starkly absent from Royal's conclusion of law is any discussions of legal principles by which it could possibly prove that Zygo released Nan Ya. There is no discussion of the hornbook law requiring proof of an agreement to demonstrate a settlement. *See, e.g., Johnson v. Schmitz*, 237 F. Supp. 2d 183, 189, 192 (D. Conn. 2003) (Arterton, J.) (finding no valid and enforceable settlement agreement where there was no "meeting of the minds" between the parties). *See also L&R Realty v. Connecticut Nat'l Bank*, 53 Conn. App. 524, 524, 732 A.2d

10

181 (1999) ("If the minds of the parties have not truly met, no enforceable contract exists."). And there is no discussion of how the facts of this case might fit the operative law. Of course, that is because Royal cannot prove an agreement. The document written in Chinese in the November 13, 2000 meeting does not memorialize an agreement and is not even admissible. Royal must know that it cannot prove a meeting of the minds when it has no evidence of Nan Ya's intent. Accordingly, Royal ignores this entire issue in the Proposed Conclusions of Law.

**B. "Packaging" Issue.** Apparently, paragraphs 69 and 70 are meant to describe the "legal" bases for Royal's claim that the issue concerning the adequacy of the packaging of the AFM is relevant to this case. Not surprisingly, there is not a single legal citation in this discussion even though Royal rests on such sweeping statements as: "Zygo was obligated under Clause 43 to survey the subject damages...." Paragraph 69. Further, Royal's argument is based on the premise that Zygo failed to permit Royal to survey the damage. But, of course, the law is that Royal had an obligation to investigate once it was put on notice of the dispute with Nan Ya, and there is not a shred of admissible evidence that anyone from Royal even contacted Nan Ya and requested an inspection. The only evidence on this point will be Timothy Smith's testimony that Royal's agent in Taiwan did **not** want to go to Nan Ya to see the Cargo. Zygo respectfully incorporates its brief on the "packaging" issue herein.

**C. Paragraph 70 issues.**

As described in Zygo's brief in further support of its objection to Royal's trial exhibits, Billy Wu had no expertise concerning packaging and his "opinion" about packaging, set forth in two documents, was directly contradicted by other Zygo representatives, including Kelvin Walch and Sylvain Muckenhirn, who had direct responsibility for shipping AFMs. *See* Royal's Conclusions, ¶ 70(b)(1). Royal does not cite to any legal authority for the proposition that

11

getting such "notice" from a sales agent required it to do anything other than it did – notify its insurer.

Further, the conclusions of Nan Ya's surveyors concerning the cause of the damage is inadmissible hearsay. *See* Royal's Conclusions, ¶ 70(b)(2). But, to the extent that report is admissible for any purpose it was notice that the surveyors found that the "prime cause" of the damage was the package being dropped. Again, there is no legal citation for the proposition that Zygo, having received such a report, was required to do anything other than it did – notify its insurer.

There is no evidence that "insufficient packing" is the reason that Nan Ya did not pay for the Second AFM. *See* Royal's Conclusions, ¶ 70(b)(3). And, as this Court already recognized, the reason(s) Nan Ya might give for refusing to pay is not relevant to this dispute. *See* Memorandum of Decision and Order, at 34 ("there is nothing in Clause 52 turning on the *reason* the buyer gave for refusing or failing to pay") (emphasis in original). Given the terms of the unpaid vendor clause, Zygo did what it was supposed to do when it learned that it was going to be paid. It notified Royal. It was Royal's obligation to then pay Zygo and assert Zygo's claim against Nan Ya; not assert Nan Ya's defenses against its own insured, Zygo.

It was not incumbent on Zygo, as the insured, to inform Royal of the exact clause and basis under which it was seeking coverage. *See* Royal's Conclusions, ¶ 70(c). Once Zygo notified Royal of its loss – which was all it was required to do – Royal had a duty to investigate the claim in good faith and determine if coverage existed under any provision of the Policy. Notably, once again, Royal cites no law for the backwards proposition that *Zygo* had to identify the clause under which it was seeking coverage.

12

Zygo did contradict Royal's "belief" that Zygo had settled. *See* Royal's Conclusions, ¶ 70(d). For example, Zygo's broker specifically told Royal that Zygo had not settled. Def. Ex. 553, 556, 559. It is notable that Royal apparently received some information from its agent in mid-August 2000, did nothing to investigate or verify the information, and did not even communicate with Zygo's broker until almost three months later. Def. Exs. 525, 532. Again, Royal does not cite any law concerning this legal "issue."

Zygo sold the Damaged AFMs for the salvage value that Nan Ya agreed to. *See* Royal's Conclusions, ¶ 68(e). Royal does not cite any law for the proposition that selling the goods impaired its subrogation rights.

## IV.    Damages (Royal's Conclusions, ¶¶ 71-77)

### A.    Constructive Total Loss

Royal asserts that Zygo bears the burden of proving a constructive total loss. *See* Royal's Conclusions, ¶¶ 71-75. None of the cases Royal cites for this proposition apply Connecticut law, and they all deal with damage to sea vessels, which is the area in which the constructive total loss doctrine developed. *See, e.g., Calmar S.S. Corp. v. Scott*, 209 F.2d 852, 854 (2d Cir. 1954) (discussing history and development of constructive total loss doctrine). Royal does not point to a single case applying a theory of constructive total loss under Connecticut law to a damaged machine.

Further, Royal's conclusion is that Zygo bears the burden of proving that repair and recovery of the AFM would cost in excess of 50% of its stated value. *See* Royal's Conclusions, ¶¶ 73, 75. Zygo easily meets this burden. Zygo's evidence will show that the AFM had a pre-damage value of $690,000 and that after the damage, it had a salvage value of $28,925. *See* Def.

13

Exs. 531, 535, 540. Royal has never asserted that the AFM was worth even a cent more than the salvage value.

### B.   Estoppel

Royal's assertion that Zygo is now estopped because it failed to contradict Royal's assumption that Zygo had settled the claim with Nan Ya is false as a matter of fact and law. *See* Royal's Conclusions, ¶¶ 76-77. Zygo continually denied having settled the claim, every time Royal presented it with the issue. *See e.g.*, Def. Ex. 553. That Royal refused to believe Zygo's statements, instead favoring its insured's adversary in order to deny the claim in bad faith, does not prevent Zygo from continuing to assert that it never settled the claim. Further, Royal has not provided the Court with any law to support its assertion that an insured can be estopped from making a claim because it failed to discharge the insurer's duty to investigate a claim. Had Royal properly executed its non-delegable duty to investigate this claim, it would have learned in the usual course that Zygo did not settle the claim. Zygo cannot now be made to suffer for Royal's bad faith, purposeful ignorance on the settlement issue.

Similarly, Royal's contention that Zygo is estopped because it did not identify which of the Policy's clauses might cover its claim also fails. Of course, Royal provides no authority for the remarkable proposition that Zygo had to correctly pick and choose among the various potential clauses in order for Royal to provide coverage. It is the duty of the insurer, not the insured, to investigate a claim and determine if coverage exists under any of the clauses of the Policy. And if the policy covers the loss, the insurer has an obligation to pay. Zygo, as insured, had no obligation to pick out the precise clause(s) under which there might be coverage. Asserting an insurance claim is not intended to be a cat and mouse game.

14

V.   **Bad faith (Royal's Conclusions, ¶¶ 78-104)**

Zygo has three responses to Royal's legal conclusions on the bad faith claims. First, Royal incorrectly relies on *Bergen v. Standard Fire Ins. Co.*, Docket No. CV 93044099S, 1997 WL 809957 (Conn. Super. Ct. Dec. 31, 1997), and *McCauley Enterprises, Inc. v. New Hampshire Ins. Co.*, 716 F. Supp. 718 (D. Conn. 1989), as support for its propositions of bad faith law. *See* Royal's Conclusions, ¶¶ 82, 84, 87, 89, 96, 98. This Court already has held that *Bergen* "mischaracterizes" Connecticut law. *United Technologies Corp. v. American Home Assur. Co.*, 118 F. Supp. 2d 181, 187-88 (D. Conn. 2000). *United Technologies* also held that *McCauley* "does not reject the existence of a cause of action under Connecticut law for 'procedural bad faith,' but rather holds that the plaintiff failed to adduce sufficient evidence on such a claim to survive summary judgment." 118 F. Supp. 2d at 187.

Second, Royal claims that "[a]n insurer has a right to fairly dispute a claim made under the policy" and "may challenge claims that are fairly debatable." Royal's Conclusions, ¶ 87. Even if that were an accurate statement of the law, that does not give an insurance company license to create the debate by taking the position of its insured's adversary. Here, Royal not only contested Zygo's claim, but it now takes the position that Zygo did not package the equipment properly and then settled the dispute with Nan Ya. Shockingly, Royal takes this position even though it conducted no investigation and never even interviewed one Zygo employee. Moreover, Royal adopted Nan Ya's position as its own in sworn statements. *See* Def. Ex. 570. Simply put, that is not "fairly" disputing debatable claims. It is a bad faith attempt to avoid the claim at all costs.

Third, Zygo agrees with Royal that an insurer may not deny a claim on the basis of unsupported determination resulting from its arbitrary failure or refusal to properly perform the

15

claims examination function. *See* Royal's Conclusions, ¶ 88; *see also Uberti v. Lincoln Nat'l Life Ins. Co.*, 144 F. Supp. 2d 90, 104 (D. Conn. 2001). That is exactly what happened here, and the Court should conclude that Royal engaged in bad faith.

DEFENDANT
ZYGO CORPORATION

By: _____
Ian E. Björkman (ct 11648)
Erika L. Amarante (ct 22393)
Wiggin and Dana LLP
P.O. Box 1832
New Haven, CT 06508-1832
Tel. 203-498-4496
Fax: 203-782-2889
ibjorkman@wiggin.com
Its Attorneys

\15160\1\48804.1

16