# Exhibit M

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| ROYAL INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) | Civil No. 3:01 CV 1317 (JBA) |
| | ) | |
| v. | ) | |
| | ) | |
| ZYGO CORPORATION, | ) | |
| Defendant. | ) | |
| | ) | January 18, 2005 |

### ZYGO CORPORATION'S MEMORANDUM OF LAW
### IN SUPPORT OF ITS OBJECTIONS TO VARIOUS HEARSAY EVIDENCE

Pursuant to the Court's pretrial order, defendant Zygo Corporation ("Zygo") has asserted objections to certain of Royal's proposed exhibits and has given summary explanations of those objections. *See* Zygo's Objections to Royal's Proposed Exhibit List. Because some of Zygo's objections may require more than a summary explanation, this memorandum is submitted in further support of those objections. Moreover, because Zygo maintains that permitting Royal to introduce the hearsay statements at issue would be error, a detailed submission of legal authority is appropriate.

### BACKGROUND

The particulars of this dispute are described in detail elsewhere in submissions relating to the pretrial order. The evidence at issue with respect to this brief relates to Royal's anticipated use of certain documents in support of two defenses: (i) Royal's claim that Zygo settled with Nan Ya; and (ii) Royal's claim that the way Zygo "packaged" the Second AFM somehow provides it with a defense in this coverage action. While Zygo maintains that neither of these defenses have

any merit and, indeed, the "packaging" defense is not properly in this case,[1] certain documents simply cannot be admitted in support of those defenses.

The issue revolves around a series of emails from Billy Wu to Zygo (the "Billy Wu" emails"), emails from Royal's employee in Taiwan, Richard Chung, to Royal's employee in New York, Joseph Daneman (the "Chung emails"), reports of discussions with Royal's surveyor in Taiwan (Mr. Chen), and the use of this information in various other correspondence.[2]  All of these emails contain double hearsay and cannot be admitted for the truth of their contents. Neither Billy Wu nor Richard Chung will be witnesses at the trial.  There will be no witnesses from Nan Ya either.

Billy Wu ran a company in Taiwan known as Lee-Tech, Inc. ("Lee-Tech")  Lee-Tech was a sales representative in Taiwan for Zygo for its "KMS" product line, which is a different product than the Atomic Force Microscopes ("AFM") that are at issue in this case.  Because of his contacts within the semiconductor industry in Taiwan, Billy Wu and his company were also used by Zygo in assisting with the AFM sale to Nan Ya.  Thus, there is no dispute that Billy Wu was Zygo's agent for certain limited purposes in relation to Zygo's dealings with Nan Ya.  But, Billy Wu is, essentially, a salesman and he was given no responsibility by Zygo with respect to designing or evaluating the crating that was used on Zygo's product.  Nor was he ever given the responsibility of personally packing or unpacking any equipment.[3]  Simply put, the issue of

---

[1] *See* Zygo's Memorandum of Law in Support of its Motion in Limine Concerning Royal's Purported "Packaging" Claim.

[2] *See* Pl. Exs. 41, 85, 86, 104, 105, 138, 147 (Wu statements); Pl. Exs. 25, 27, 42, 46, 143 (Chung and Chen statements); Pl. Exs. 24, 26, 98 (Daneman letters).

[3] Lee-Tech may have had certain responsibility for generally arranging or attending to shipments, such as in dealing with shippers.  But, Billy Wu had no responsibility for the packaging of the equipment, particularly AFMs.

Zygo's packing of its equipment was beyond the scope of any relationship Zygo had with Mr. Wu.

The documents of relevance to this discussion are the August 2000 email from Richard Chung to Joseph Daneman. Pl. Ex. 27. It is expected that Royal will attempt to introduce this email for the truth of the statements in that email concerning Chung's purported communication with Nan Ya. Royal cannot introduce its own employees' out-of-court statement for the truth of its contents. This is particularly true if the statement contains double hearsay.

Zygo does not object to the admission of some of these emails for the limited purpose of demonstrating notice. Further, Zygo intends to introduce the Chung email in support of its bad faith claim insofar as it demonstrates, among other things, Royal's total failure to investigate this claim even when it received e-mails from its Taiwan representative. But, Zygo respectfully requests that the Court rule that these emails cannot be admitted for the truth of the hearsay contained within them.

A.    **Out-of-Court Statements Inadmissible to Prove Truth of Those Statements Concerning Alleged Settlement Between Zygo and Nan Ya**

It is expected that Royal will attempt to introduce these documents in order to prove that Zygo settled with Nan Ya. But, Royal cannot prove its allegation that Zygo reached settlement with Nan Ya unless it can prove that there was a meeting of the minds between the parties. *L&R Realty v. Connecticut Nat'l Bank*, 53 Conn. App. 524, 534-35, 732 A.2d 181, *cert. denied*, 250 Conn. 901, 734 A.2d 984 (1999); *Johnson v. Schmitz*, 237 F. Supp. 2d 183, 189-92 (D. Conn. 2002) (Arterton, J.). In order to establish a meeting of the minds, Royal seeks to introduce purported out-of-court statements allegedly made by Nan Ya representatives and reported by Billy Wu and/or Richard Chung. Royal apparently is offering this hearsay within hearsay to

3

prove the truth of the Nan Ya representatives' assertions concerning an alleged compromise of Zygo's claim. This is forbidden by the double hearsay rule. Fed. R. Evid. 805.

Zygo concedes that Billy Wu was its agent for limited purposes, and therefore certain email communications between him and Zygo may constitute admissions for certain purposes under Fed. R. Evid. 801(d)(2)(D). However, as the case law on Rule 801(d)(2)(D) makes clear, when a party-opponent admission itself contains hearsay, that hearsay is inadmissible unless it falls within its own hearsay exception. In the present case, the out-of-court statements made by Nan Ya representatives and reported by Billy Wu do not fall within a hearsay exception, and therefore cannot be introduced to prove the truth of the representatives' assertions that Nan Ya reached a meeting of the minds with Zygo. The Chung e-mail, on the other hand, is classic hearsay and cannot be used by *Royal* for the truth of the matter asserted. Further, Chung's e-mail also contains double hearsay, as he purports to rely on third-party statements.

The Second Circuit addressed the problem of double hearsay in party-opponent admissions in *Pittman by Pittman v. Grayson*, 149 F.3d 111 (2d Cir. 1998), *cert. denied*, 528 U.S. 818 (1999). In that case, the father of a child who was flown to Iceland by her mother in violation of a court order sued the airline for its participation in the child's removal. *Id.* at 114. The father sought to introduce the testimony of a television news producer who described a conversation she had with one of the airline's flight attendants. *Id.* at 124. According to the news producer's testimony, the flight attendant said that "we helped sneak . . . them out the back way or service entrance at Dulles Airport," but when the news producer asked if the flight attendant was personally involved in this operation, the flight attendant responded: "No, no, this is just a story that I have heard." *Id.* The Second Circuit held:

> [D]ouble-hearsay analysis is required. . . . Even if [the news producer's] testimony were deemed nonhearsay on the theory that statements by [the flight

attendant] were attributable to [the airline], however, the content of [the flight attendant's] statement was itself hearsay because, as "a story that I have heard," it purported to describe statements made to her by others. No basis having been shown for classifying the statement attributed to the unidentified source of [the flight attendant's] statement either as nonhearsay or as an exception to the hearsay rule, the statement attributed to [the flight attendant] was properly excludable on the ground that it contained hearsay.

*Id.*

This conclusion applies with equal force to the present situation, in which Billy Wu's email reports to Zygo contain hearsay – namely, statements that may have been made to Billy Wu by Nan Ya representatives concerning negotiations between Zygo and Nan Ya. Royal seeks to introduce these out-of-court statements to prove the truth of the Nan Ya representatives' assertions. As in *Pittman*, however, these statements are inadmissible hearsay. *Accord Zaken v. Boerer*, 964 F.2d 1319, 1324 (2d Cir.), *cert. denied*, 506 U.S. 975 (1992) (excluding out-of-court statement contained in otherwise admissible deposition testimony of defendant's former employee).

Other courts have adopted the same analysis. In *Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996 (3d Cir. 1988), the Third Circuit held that an age discrimination plaintiff's testimony concerning a statement made to him by his supervisor was inadmissible. The plaintiff testified that his supervisor said "he thought they wanted a younger person." *Id.* at 1001. The plaintiff maintained that this statement was admissible as a party-opponent admission pursuant to Rule 801(d)(2)(D), but the Third Circuit held:

> We are persuaded . . . that the statement, "they wanted a younger person" involves double hearsay. While the mere statement attributed to [the supervisor] may be admissible as a statement attributable to [the defendant corporation's] agent within the scope of his employment . . . the problem presented by this particular statement is that [the supervisor] is claimed to have said that "they" wanted a younger person. . . . In order for the statement to be admissible, there must also be a basis for admitting the statement that "they" made. . . . [The plaintiff] argues that there was no double hearsay. He claims that the statement by [the supervisor]

> is just [the supervisor's] understanding of what [the defendant corporation] wanted and does not reflect a specific declaration by any other individual. The flaw in this argument is that [the plaintiff] ignores the fact that [the supervisor] said "*they* wanted a younger person."

*Id.* at 1002. Again, this analysis applies squarely to the present case. Billy Wu's emails to Zygo report out-of-court statements made by Nan Ya representatives. Royal attempts to characterize these statements as nothing more than Billy Wu's understanding of Nan Ya's position, but this argument is fatally flawed. Billy Wu had no source of information concerning the bargaining position or mental state of the Nan Ya representatives other than *statements they made to him*. He subsequently reported statements to Zygo, although there is no evidence of the accuracy of those reports. Royal can no more introduce Nan Ya's statements to Billy Wu to prove the truth of those statements, than the plaintiff in *Carden* could introduce his supervisor's statements to prove the truth of what "they" reportedly said. *Accord Cedeck v. Hamiltonian Federal Sav. and Loan Ass'n*, 551 F.2d 1136, 1138 (8th Cir. 1977) (excluding out-of-court statement contained in plaintiff's testimony as to what supervisor told plaintiff concerning another person's statement to supervisor).

Likewise, in *Rock v. Huffco Gas & Oil Co.*, 922 F.2d 272 (5th Cir. 1991), the Fifth Circuit deemed out-of-court statements contained in accident reports prepared by agents of the defendants inadmissible to prove the truth of the statements. The plaintiff's deceased husband allegedly injured and re-injured his ankle while working on the defendants' properties, and made statements concerning the cause of his injuries to his supervisors, who prepared accident reports containing the statements. *Id.* at 275-76. The plaintiff argued that these out-of-court statements should be admitted into evidence because they were contained in reports prepared by the defendants' agents, and therefore constituted party-opponent admissions under Rule 801(d)(2)(D). The court disagreed: "The statements to which the plaintiffs have directed our

attention cannot be properly characterized as admissions. . . . [The supervisors] were simply documenting [the plaintiff's husband's] account of the alleged accidents. Nothing in the accident reports, themselves, indicates that the defendants adopted the version of the facts as reported by [the plaintiff's husband]." *Id.* at 281.

The same thing must be said of Billy Wu's email reports to Zygo. Those reports allegedly contain statements and assertions made by Nan Ya representatives. Billy Wu simply documented Nan Ya's purported mental state. Royal has not advanced (and cannot advance) a sound basis for its theory that Nan Ya's statements contained in Billy Wu's reports can be admitted into evidence to prove the truth of those statements, and thereby establish Nan Ya's mental state or a meeting of the minds between Zygo and Nan Ya. Nan Ya's statements reported by others must therefore be excluded.

**B.      Out-of-Court Statements in Billy Wu Emails Inadmissible to Prove Truth of Those Statements Concerning Alleged "Packaging Defense."**

Royal also seeks to introduce out-of-court statements contained in Billy Wu's emails to prove the truth of those statements concerning the alleged inadequacy of Zygo's pre-shipment packaging of the First and Second AFMs. (*See* Pl. Exs. 85, 86) As Zygo has argued in its Motion in Limine Concerning Royal's Purported "Packaging" Claim, Royal did not allege the inadequacy of the packaging in its pleadings, and therefore cannot raise this issue at trial. Any statements contained in Billy Wu's emails concerning the alleged inadequacy of the packaging must therefore be excluded.

Moreover, Billy Wu was not Zygo's agent with respect to the packaging of the AFM shipment. It is hornbook law that for an agent's statement to be considered a party admission "the statement must have related to a matter within the scope of the agency or employment." 5 J. Weinstein, M. Berger, *Weinstein's Federal Evidence* ¶ 801.33[2][a], at 801-71 (2d ed. 2004).

*See also e.g., Litton Sys., Inc. v. AT&T,* 700 F.2d 785, 816 (2d Cir. 1983); *Jacklyn v. Schering-Plough Healthcare Prods. Sales, Corp.,* 176 F.3d 921, 927 (6th Cir. 1999). If the packaging issue is even in the case, it will be Royal's burden, as the proponent, to establish that Billy Wu was Zygo's agent with respect to the packaging. *Id.; See also Bourjaily v. United States,* 483 U.S. 171, 175-76, 107 S. Ct. 2778-79 (1987) (holding that when preliminary facts are in issue the offering party must prove them by a preponderance of the evidence). Because Royal has no proof that Billy Wu's agency extended to the matter of packaging, his out of court statements about the packaging should not be admitted. Fed. R. Evid. 801(d)(2)(D).

Even if Royal is allowed (and it should not be allowed) to raise the packaging issue at trial, and can demonstrate that Wu was Zygo's agent with respect to the packaging (which it cannot), the out-of-court statements contained in Billy Wu's reports to Zygo are not admissible to prove the truth of those statements. The same reasoning applies here as applied in Part A above. Although Zygo concedes that Billy Wu was its agent for certain purposes, and therefore his email reports to Zygo may be admissible for certain purposes as party-opponent admissions under Fed. R. Evid. 801(d)(2)(D), his statements reported in his emails that are offered into evidence to prove the truth of the matter asserted are inadmissible double hearsay unless they fall within a hearsay exception. Fed R. Evid. 805. Billy Wu was a sales representative and he was not Zygo's agent for purposes of packaging the AFMs or surveying the damages when the AFMs were dropped.

First, all out-of-court statements *by Nan Ya representatives* concerning the alleged inadequacy of the packaging are inadmissible to prove the truth of those statements. The Nan Ya representatives may indeed have made such statements to Billy Wu, but Royal cannot introduce

8

those out-of-court assertions to prove that, *in fact*, the packaging was inadequate. *See* Part A, *supra*.

Second, although out-of-court statements *by Billy Wu* (if there are any such statements) to the effect that *he believed* the packaging was inadequate may be party-opponent admissions, Royal cannot introduce such statements to prove that, *in fact*, the packaging was inadequate. The question of whether the packaging was, in fact, inadequate requires expert testimony that Billy Wu is not qualified to give. Fed. R. Evid. 701(c), 702.

This precise legal issue – the applicability of the expert testimony rules to party-opponent admissions – was recently addressed in *Aliotta v. National R.R. Passenger Corp.*, 315 F.3d 756 (7th Cir. 2003). In that case, a widow sued a railroad company after her husband was killed by a passing train. The railroad's risk manager "stated during his deposition that high-speed trains create dangerous vacuums along and near their sides, which can potentially suck bystanders to their deaths." *Id.* at 759. The Seventh Circuit held that the risk manager's statements were made within the scope of his employment: "While [the risk manager] is not employed as a scientist, general scientific or mechanical knowledge is undoubtedly learned and applied in the course of his job investigating accidents. Thus, we believe that [the risk manager's] statements are not hearsay under Rule 801(d)(2)(D) and might, if there were no other objections, be admitted as admissions against [the railroad company]." *Id.* at 763. However, the court deemed the risk manager's testimony inadmissible because it did not meet expert testimony requirements. The court rejected the view that party-opponent admissions

> should always be free from the requirements of Rule 701(c), Rule 702 and *Daubert* [*v. Merrill Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)]. And in this particular case, we see no good reason why unqualified and unreliable scientific knowledge should be exempted from the expert evidence rules simply because the speaker is an employee of a party-opponent. Rule 801(d)(2) does not protect [the risk manager's] unreliable scientific testimony from exclusion under

Rule 701(c) and 702, and his statements, as offered for the truth of the matter
contained in them (i.e., the existence of a dangerous "vacuum effect"), were
properly excluded.

*Id.* Under this principle, Billy Wu's statements that he believed the packaging was inadequate

must be excluded, if offered by Royal for the truth of the matter contained in them, because

issues regarding the adequacy of packaging require expert testimony.

Furthermore, and again following *Aliotta*, the court in the present case should not admit

Billy Wu's statements concerning the packaging even for the limited purpose of showing what

Billy Wu believed, or proving that Zygo was aware of potential problems with the packaging,

because the potentially prejudicial effect of these statements outweighs their probative value.

Fed. R. Evid. 403. In *Aliotta*, the court refused to admit the risk manager's testimony to prove

that the railroad company was aware of risks to passengers, even if the testimony was

> accompanied by a limiting instruction disavowing any reliability of the underlying
> scientific proposition. . . . Given the collateral nature of this limited basis for
> introduction of [the risk manager's] statements, we believe they might properly
> have been excluded under Fed. R. Evid. 403. *See United States v. Harwood*, 998
> F.2d 91, 97 (2d Cir. 1993) (holding that hearsay evidence not offered for the truth
> of the matter contained can still be excluded for unfair prejudice).

*Id.* at 763-64. *Accord United States v. Zizzo*, 120 F.3d 1338, 1351-52 (7th Cir. 1997) (holding

that court may exclude party-opponent admission if probative value outweighed by risk of

prejudice); *United States v. Manafzadeh*, 592 F.2d 81, 89 (2d Cir. 1979) (same). Also, there is

no issue on this case relating to Wu's state of mind. His opinion in this regard is simply not

relevant. The same reasoning applies in the present case. Billy Wu's statements about the

packaging have no expert basis, and to admit those statements to show his (or Zygo's) state of

mind would risk unfairly prejudicing Zygo. Therefore, the statements should be excluded.

## CONCLUSION

For the reasons set forth in this memorandum, this Court should sustain Zygo's Objections to Royal's Proposed Exhibits Nos. 24, 25, 26, 27, 41, 42, 46, 85, 86, 98, 104, 105, 138, 143 and 147, and preclude Royal from admitting them at trial.

DEFENDANT
ZYGO CORPORATION

By: _____

Ian E. Bjorkman (ct 11648)
Erika L. Amarante (ct 22393)
Wiggin and Dana LLP
One Century Tower
P.O. Box 1832
New Haven, CT 06508-1832
Tel. 203-498-4496
Fax: 203-782-2889
ibjorkman@wiggin.com
Its Attorneys