**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

----------------------------------------------------------------X

ROYAL INSURANCE COMPANY OF AMERICA,

        Plaintiff,

  - against -                              Case No. CIV 3:01 1317 (JBA)

ZYGO CORPORATION,

        Defendant.

----------------------------------------------------------------X

ROYAL INSURANCE COMPANY OF AMERICA,

        Third-Party Plaintiff,

  - against -

NAN YA TECHNOLOGY CORPORATION,

        Third-Party Defendant.

----------------------------------------------------------------X

**ROYAL INSURANCE COMPANY OF AMERICA'S
MEMORANDUM OF LAW IN OPPOSITION TO
ZYGO CORPORATION'S MOTIONS IN LIMINE**

| | |
|---|---|
| NICOLETTI HORNIG CAMPISE SWEENEY & PAIGE<br>Wall Street Plaza<br>88 Pine Street, Seventh Floor<br>New York, New York 10005<br>(212) 220-3830 | LAW OFFICES OF ROBERT K. MARZIK, P.C.<br>1512 Main Street<br>Stratford, Connecticut 06615<br>(203) 375-4803 |
| Of Counsel | Of Counsel |
| John A.V. Nicoletti<br>Geoffrey J. Ginos | Robert K. Marzik |

*Attorneys for Plaintiff/Third-Party Plaintiff
Royal Insurance Company of America*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. i

PRELIMINARY STATEMENT ........................................................................................... 1

POINT I

    ALLAN ILIAS CAN TESTIFY TO HIS
    UNDERSTANDING OF CONTINGENCY
    COVERAGE IN THE INSURANCE INDUSTRY .......................................................... 1

POINT II

    THE COURT MUST TAKE JUDICIAL NOTICE
    OF THE DESCRIPTION OF CONTINGENCY
    COVERAGE CONTAINED IN ROYAL'S PROPOSED
    FINDINGS OF FACT ...................................................................................................... 4

POINT III

    ROYAL SHOULD BE ALLOWED TO PRESENT
    PACKAGING-RELATED EVIDENCE ........................................................................ 7

    A.    Royal Is Not Asserting Inadequate Packaging Itself As a
           Defense To Coverage But Packaging Is Relevant to Royal's
           Allegation That Zygo Has Impaired Royal's Subrogation Rights ......................... 7

    B.    The Packaging Of The AFMs Is Relevant To Royal's Claim
           That Zygo Has Impaired Royal's Subrogation Rights ............................................ 9

CONCLUSION ....................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

Acadia Ins. Co. v. McNeil,
  116 F.3d 599, 602 (1st Cir. 1997) ........................................................................... 6

Antilles S.S. Co., Ltd. v. Members of American Hull Ins. Syndicate,
  733 F.2d 195, 197 n.2 (2d Cir. 1984) ..................................................................... 7

B&G Plastics, Inc. v. Eastern Creative Indus., Inc.,
  No. 98Civ.0884RMBJCF, 2004 WL 307276, at *8 (S.D.N.Y. Feb. 18, 2004) .......... 2, 4

Backhus v. Transit Cas. Co.,
  549 So.2d 283, 288 (La. 1989) ................................................................................ 6

Continental Oil Co. v. London Steam-Ship Owners' Mut. Ins. Ass'n,
  417 F.2d 1030, 1031 n.2 (5th Cir. 1969) ................................................................. 7

Diesel Tanker A. C. Dodge Inc. v. Stewart,
  262 F.Supp. 6, 9 n.4 (S.D.N.Y. 1966) ..................................................................... 7

E.H. Ashley & Co., Inc. v. Wells Fargo Alarm Services,
  907 F.2d 1274, 1277 (1st Cir. 1990) ....................................................................... 9

Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co.,
  169 F.3d 43, 50 n.10 (1st Cir. 1999) ....................................................................... 6

Firma C-Trade SA v. Newcastle Protection and Indemnity Association (The "FANTI"),
  [1987] 2 Lloyd's Rep 299 (Q.B. (Com. Ct.)) ............................................................ 7

Grubbs v. Gulf Intern. Marine, Inc.,
  975 F.2d 186 (5th Cir. 1992) ................................................................................... 6

Hotel Employees & Restaurant Employees Union, Local 100 of N.Y.
v. City of New York Dep't of Parks & Recreation,
  311 F.3d 534, 540 n. 1 (2d Cir. 2002) ..................................................................... 6

Lightfoot v. Union Carbide Corp.,
  110 F.3d 898, 911 (2d Cir. 1997) ......................................................................... 2, 3

M. W. Zack Metal Co. v. Federal Ins. Co.,
  28 A.D.2d 1109, 1110, 284 N.Y.S.2d 582, 583 (1st Dept. 1967) .............................. 7

Owens-Illinois Glass Co. v. American Coastal Lines, Inc.,
    222 F.Supp. 923, 927 (S.D.N.Y. 1963) ............................................................................ 6

Reliance Ins. Co. v. The ESCAPADE,
    280 F.2d 482, 488 n.11 (5th Cir. 1960) ........................................................................... 7

Shell International Petroleum Co Ltd v. Gibbs (The "SALEM"),
    [1983] 1 Lloyd's Rep 342 (H.L.) ..................................................................................... 7

Sifers v. General Marine Catering Co.,
    892 F.2d 386, 391 n.19 (5th Cir. 1990) ........................................................................... 6

Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd.,
    320 F.3d 1213, 1221-23 (11th Cir. 2003) ........................................................................ 4

The S. C. L. No. 9,
    37 F.Supp. 386, 391 (E.D. Pa. Sep 19, 1939) ................................................................. 6

In re U.S. Lines, Inc.,
    169 B.R. 804, 809 (Bankr. S.D.N.Y. 1994) ..................................................................... 6

United States v. Rea,
    957 F.2d 1206, 1214-15 (2d Cir. 1992) ........................................................................... 2

Wilkinson v. Boats Unlimited, Inc.,
    236 Conn. 78, 88, 670 A.2d 1296, 1302 (Conn. 1996) .................................................... 9

**Statutes**

Fed. R. Evid. 201 ................................................................................................................. 5-7

Fed. R. Evid. 201(d) ................................................................................................................. 6

Fed. R. Evid. 701 ..................................................................................................................... 2

Fed. R. Evid. 704(a) ................................................................................................................. 2

**Secondary Sources**

Arthur E. Brunck, Victor P. Simone, C. Arthur Williams, Jr., Ph.D., Vol. II
    Ocean Marine Insurance 100-01 (1st ed. 1988) ............................................................... 5

R.J. Lambeth, Templeman On Marine Insurance 117-18 (6th ed.) ......................................... 5

## PRELIMINARY STATEMENT

Royal Insurance Company of America ("Royal") submits this Memorandum of Law in opposition to the two motions in limine submitted by Zygo Corporation ("Zygo") seeking: (i) to preclude Allan Ilias from testifying about his perception of the custom and practice in the insurance industry relating to contingency coverage; (ii) to preclude the descriptions of contingency coverage quoted from two learned treatises on insurance, contained in Royal's Proposed Findings of Fact; and (iii) to preclude Royal from presenting any evidence or argument at trial on inadequate packaging.

## POINT I

### ALLAN ILIAS CAN TESTIFY TO HIS UNDERSTANDING OF CONTINGENCY COVERAGE IN THE INSURANCE INDUSTRY

Zygo seeks to preclude Allan Ilias, the former Royal underwriter who negotiated the Policy, including its "unpaid vendor" clause, on Royal's behalf, from testifying about custom and practice in the insurance industry relating to contingency coverage. See Zygo Corporation's Memorandum of Law in Support of its Motion in Limine to Preclude Allan Ilias from Testifying about the Custom and Practice in the Insurance Industry and to Preclude Learned Treatise Evidence ("Evidentiary Motion") at 1-3. It argues that custom and practice can be attested to solely by an expert and that Royal has not disclosed Mr. Ilias as an expert witness. See id. at 2-3.

Royal, however, does not offer Mr. Ilias as an expert, nor does it seek to use him to establish what the custom and practice in the insurance industry was at the time of the Policy's negotiation (the only time relevant to the parties' intent with respect to that Policy). Rather, Mr. Ilias will testify as to ***his personal* understanding at the time of said negotiations** of what the custom and practice in the insurance industry was with respect to contingency coverage. This a proper subject of testimony by a lay witness.

>Rule 701 of the Federal Rules of Evidence provides that:
>
>[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

>One court has recently explained the standard under Rule 701:
>
>Lay opinion testimony is admissible when the inference is a conclusion drawn from a series of personal observations over time. Courts have permitted lay witnesses to testify under Rule 701 to their opinions when those opinions are based on a combination of their personal observations of the incident in question and background information they acquired through earlier personal observations. Moreover, a witness' experience and specialized knowledge obtained in his or her vocation should certainly be taken into consideration.

B&G Plastics, Inc. v. Eastern Creative Indus., Inc., No. 98Civ.0884RMBJCF, 2004 WL 307276, at *8 (S.D.N.Y. Feb. 18, 2004) (citations omitted). Importantly, the court noted that the "fact that the lay opinion testimony bears on the ultimate issue in the case does not render it inadmissible." Id. (citing Fed. R. Evid. 704(a); United States v. Rea, 957 F.2d 1206, 1214-15 (2d Cir. 1992)). The admissibility of Mr. Ilias' testimony therefore depends "upon whether it satisfies the rational-basis and helpfulness requirements of Rule 701." B&G Plastics, 2004 WL 307276 at *8.

The rational-basis requirement of Rule 701 "'is the familiar requirement of first-hand knowledge or observation.'" Id. (quoting Lightfoot v. Union Carbide Corp., 110 F.3d 898, 911 (2d Cir. 1997)). As the underwriter responsible for negotiating and issuing the marine open cargo policy that is the subject matter of this action and as an underwriter with prior experience with policies involving contingency coverage, Mr. Ilias is certainly in a position to offer an opinion on his perception of the custom and practice in the insurance industry relating to

contingency coverage. Mr. Ilias' opinion is based on both his personal observations of the negotiation and issuance of the Policy at issue and upon relevant background information that he had acquired about the industry from his experience as an underwriter up to that point in time. Whether at the time of negotiations, Mr. Ilias had had prior experience with two hundred or only two policies containing unpaid vendor clauses goes not to the admissibility of his testimony but, rather, as to how much weight the Court will ultimately give that evidence in its analysis of the parties' contractual intent at the time of their Policy negotiations.

Furthermore, Mr. Ilias' testimony will be useful in helping the Court as the trier of fact to understand both the marine insurance industry and the Policy in question.[1] "This helpfulness requirement is designed to provide assurance[] against the admission of opinions which would merely tell the jury what result to reach.'" Id. (quoting Lightfoot, 110 F.3d at 912).

Thus, e.g., testimony from Mr. Ilias concerning *his understanding* of the custom and practice that existed in the marine insurance industry at the time of his negotiations with respect to such things as: the assessment and pricing of unpaid vendor risks; the significance and meaning to an underwriter or broker of a prospective assured's policy application representation that it insured 100% of its shipments; the reasons that an underwriter would have for requiring a separate declaration and additional premium or for declining contingency coverage in particular circumstances; the foregoing based upon his understanding of how provisions like Clause 52 operated and why, and how they were regarded by underwriters and brokers in the insurance industry, will be of potential assistance to the Court in explicating Clause 52's language and assessing the parties' intent with respect thereto.

---

[1] Indeed, should the Court find that Clause 52 of the Policy is ambiguous, Mr. Ilias' testimony on his understanding of contingency coverage and his intent to abide by that understanding will be admissible as extrinsic evidence of Royal's intent in negotiating and issuing the Policy.

3

Although he is not being offered at trial as an expert, the aforesaid testimony of Mr. Ilias, the only underwriter involved in the subject negotiations, can be helpful "in describing a specialized industry to the trier of fact." B&G Plastics, 2004 WL 307276 at *9. Therefore, the Court should not preclude Mr. Ilias from testifying about his perception *at the time that the Policy was negotiated* of the custom and practice in the insurance industry relating to contingency coverage. See Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co., Ltd., 320 F.3d 1213, 1221-23 (11th Cir. 2003) (holding that testimony offered by plaintiff's employees and officers as to whether the plaintiff's bills were in line with similar services provided by similar operations was admissible).

<div style="text-align:center">

**POINT II**

**THE COURT MUST TAKE JUDICIAL NOTICE OF
THE DESCRIPTION OF CONTINGENCY COVERAGE
CONTAINED IN ROYAL'S PROPOSED FINDINGS OF FACT**

</div>

Zygo objects to two of Royal's Proposed Findings of Fact, quoting descriptions of contingency coverage found in two treatises on insurance, on the basis that they are inadmissible hearsay absent expert testimony. Zygo argues that the Proposed Findings of Fact contained in ¶¶ 46 and 47 refer to learned treatise evidence and are inadmissible because Royal has neither identified an expert witness nor listed the treatises on its exhibit list. See Zygo's Evidentiary Motion at 3-4.

The two paragraphs objected to by Zygo provide a description of contingency coverage. It is described as follows:

> ***Contingent Insurance***     In addition to the coverage for F.O.B./F.A.S. shipments described above, an assured selling under those terms may wish to have coverage under his or her own cargo policy for the entire duration of such shipments during ocean transit. When this type of coverage, known as contingent insurance, is added to the seller's open cargo policy, it is often added as an endorsement . . . .

<div style="text-align:center">4</div>

* * *

>The assured who obtains contingent insurance in other instances (and there are many who do for business reasons) relies first upon the buyer's insurance and the buyer's integrity. If, however, for any reason the buyer does not honor his or her financial obligations, either in part or totally, and physical loss or damage occurs that would otherwise be covered under the shipper's policy, the shipper's underwriter guarantees payment for the loss of or damage to the goods insured in the form of a loan to the assured. Thus, if the assured should ever recover from the consignee the amount originally defaulted by the consignee, the assured would reimburse his or her underwriter for the amount of the loan.

Royal's Proposed Findings of Fact ¶ 46.

>. . . [I]n certain circumstances the seller might, after the sale of the goods, still have a contingent interest in them. For example, the seller of goods sold on f.o.b. (free on board) terms will usually insure the goods from his factory or warehouse up to 'f.o.b.', i.e. up to the point of shipment, when the risk in the goods passes to the buyer and the seller's interest ceases. It is obvious that the seller has an ordinary insurable interest in the goods up to that point. The insurance from 'f.o.b.' on to the final destination will be effected by the buyer as a separate insurance in his own name. It sometimes happens, however, that for some reason the buyer does not take up the documents and in the event of that contingency the ownership of and risk in the goods will remain with, or revert to, the seller. The contingent interest after shipment can be insured by the seller, in addition to the ordinary insurance on the goods in the seller's name up to 'f.o.b.'.

Royal's Proposed Findings of Fact ¶ 47.

It is entirely appropriate for these descriptions of contingency coverage - one of the central issues in this case - to be contained in Royal's Proposed Findings of Fact. The descriptions are found, respectively, in Arthur E. Brunck, Victor P. Simone, C. Arthur Williams, Jr., Ph.D., Vol. II <u>Ocean Marine Insurance</u> 100-01 (1st ed. 1988) (published by the Insurance Institute of America) and R.J. Lambeth, <u>Templeman On Marine Insurance</u> 117-18 (6th ed.).

Rule 201 of the Federal Rules of Evidence provides that the Court may take "judicial notice of adjudicative facts." Under Rule 201(b)(2) "'[a] judicially noticed fact must be one not subject to reasonable dispute in that it is . . . capable of accurate and ready determination by

5

resort to sources whose accuracy cannot be questioned.'" Hotel Employees & Restaurant Employees Union, Local 100 of N.Y. v. City of New York Dep't of Parks & Recreation, 311 F.3d 534, 540 n. 1 (2d Cir. 2002) (quoting Fed. R. Evid. 201(b)(2)). A court must take judicial notice when "requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

A court may take judicial notice of facts contained in authoritative texts. See, e.g., Hotel Employees & Restaurant Employees Union, Local 100 of N.Y. v. City of New York Dep't of Parks & Recreation, 311 F.3d at 540 n.1 (taking judicial notice of description of Lincoln Center); Owens-Illinois Glass Co. v. American Coastal Lines, Inc., 222 F.Supp. 923, 927 (S.D.N.Y. 1963); The S. C. L. No. 9, 37 F.Supp. 386, 391 (E.D. Pa. Sep 19, 1939), aff'd, 114 F.2d 964 (3d Cir. 1940). The descriptions of contingency coverage contained in Royal's Proposed Findings of Fact are set forth in authoritative texts on marine insurance that are appropriate candidates for judicial notice.

Ocean Marine Insurance has been described as being one of the "leading commentators upon the subject of marine insurance." Sifers v. General Marine Catering Co., 892 F.2d 386, 391 n.19 (5th Cir. 1990). It has been cited by several courts for its statements on marine insurance. See, e.g., Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 169 F.3d 43, 50 n.10 (1st Cir. 1999); Acadia Ins. Co. v. McNeil, 116 F.3d 599, 602 (1st Cir. 1997); Grubbs v. Gulf Intern. Marine, Inc., 975 F.2d 186 (5th Cir. 1992), withdrawn on other grounds, opinion on reh'g, 985 F.2d 762 (5th Cir. 1993); Sifers, 892 F.2d at 391 n.19; In re U.S. Lines, Inc., 169 B.R. 804, 809 (Bankr. S.D.N.Y. 1994), rev'd on other grounds, 220 B.R. 5 (S.D.N.Y. 1997); Backhus v. Transit Cas. Co., 549 So.2d 283, 288 (La. 1989).

6

Similarly, Templeman on Marine Insurance has been routinely cited by American and British courts upon the subject of marine insurance. See, e.g., Antilles S.S. Co., Ltd. v. Members of American Hull Ins. Syndicate, 733 F.2d 195, 197 n.2 (2d Cir. 1984); Continental Oil Co. v. London Steam-Ship Owners' Mut. Ins. Ass'n, 417 F.2d 1030, 1031 n.2 (5th Cir. 1969); Reliance Ins. Co. v. The ESCAPADE, 280 F.2d 482, 488 n.11 (5th Cir. 1960); Diesel Tanker A. C. Dodge Inc. v. Stewart, 262 F.Supp. 6, 9 n.4 (S.D.N.Y. 1966); M. W. Zack Metal Co. v. Federal Ins. Co., 28 A.D.2d 1109, 1110, 284 N.Y.S.2d 582, 583 (1st Dept. 1967); Shell International Petroleum Co Ltd v. Gibbs (The "SALEM"), [1983] 1 Lloyd's Rep 342 (H.L.); Firma C-Trade SA v. Newcastle Protection and Indemnity Association (The "FANTI"), [1987] 2 Lloyd's Rep 299 (Q.B. (Com. Ct.)).

Both of these learned treatises are recognized world-wide as being authoritative – they are, in fact, the two ocean marine insurance treatises referenced in the Encyclopedia Britannica Online as sources for information on marine insurance. The Court must take judicial notice of the descriptions of contingency coverage contained in Royal's Proposed Findings of Fact because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Fed. R. Evid. 201(b)(2).

## POINT III

### ROYAL SHOULD BE ALLOWED TO PRESENT PACKAGING-RELATED EVIDENCE

A.   **Royal Is Not Asserting Inadequate Packaging Itself As A Defense To Coverage But Packaging Is Relevant to Royal's Allegation That Zygo Has Impaired Royal's Subrogation Rights**

Zygo seeks to preclude Royal from presenting any evidence or argument at trial relating to the inadequate packaging of the second atomic force microscope (the "Second AFM"). See Memorandum of Law in Support of Defendant Zygo Corporation's Motion in Limine

Concerning Royal's Purported "Packaging" Claim ("Packaging Motion") at 3-4. The basis for Zygo's request is misplaced. It argues that Royal has never pled or asserted inadequate packaging as a defense to coverage. See id. That is true, but Royal does not seek to prove that the packaging of the Second AFM was inadequate (such proof would be problematic, to say the least, given Zygo's spoliation of this evidence) or that any such inadequacy is itself a defense to coverage under the Policy.

Rather, Nan Ya's allegation of inadequate packaging and Zygo's failure to adequately investigate that allegation or to permit Royal to do so are relevant to Royal's defense that Zygo has impaired Royal's prospective subrogation rights. The so-called "packaging issue" that Zygo constantly refers to is in fact the "subrogation issue" and has been deliberately mislabeled by Zygo in an attempt to divert attention from the nature of its breach of Royal's subrogation rights against Nan Ya and the resulting severe prejudice to Royal.

As discussed in greater detail in Royal's Motion in Limine, Royal's subrogation rights have been greatly prejudiced by Zygo's: (i) failure properly to investigate Nan Ya's defense that it was not obligated to pay Zygo for the damaged Second AFM under their sales contract because that damage was caused by inadequate packaging; (ii) failure to preserve the damaged AFMs; (iii) failure to allow Royal a reasonable opportunity to inspect them before their abandonment by Zygo on Nan Ya's loading dock compromised their evidentiary integrity; and (iv) assertion of an alleged insurable interest and unpaid vendor claim only after it had disposed of said evidence. Royal should be allowed to introduce "packaging"-related evidence not because it pertains to any defense that coverage must be denied because insufficient packing caused the damage to this cargo, but, rather, because it pertains directly to and underlies Royal's claim that Zygo has severely impaired Royal's prospective subrogation rights against Nan Ya.

8

B. **The Packaging Of The AFMs Is Relevant To Royal's Claim That Zygo Has Impaired Royal's Subrogation Rights**

Zygo asserts incorrectly that Nan Ya's allegations of inadequate packaging would have no bearing on any subrogation action brought by Royal against Nan Ya. See Packaging Motion at 4-5. It argues that "Nan Ya specified that Zygo should use Lynden Air Freight, but did not detail the type or manner of packaging for the AFM." Id. at 4. Zygo represents to the Court that, as the shipment of the Second AFM was on a F.O.B. ("free on board") basis, Nan Ya assumed the risk that the AFM could be damaged in transit under any and all circumstances.

But, that representation by Zygo is specious, as it deliberately and disingenuously ignores the terms of its sales contract with Nan Ya for the Second AFM, which, among other things, explicitly provides:

> 7. Packing: Equipments/materials covered by this order shall be packed in such a manner as will be adequate for seaborne or airborne export shipment as the case may be. Such packing must be sufficient to secure safe arrival at destination fully covering such overseas shipping hazards as rough handling and possible collision. *For any loss or damage in transit attributable to improper packing, Buyer may at its own discretion either take compensation or request replacement* from the Seller in accordance with provisions specified in above mentioned paragraph 5.

Ex. 22 to Affidavit of Geoffrey J. Ginos, Esq., executed on January 18, 2005, in Support of Royal Insurance Company of America's Motion in Limine (emphasis added).

As Zygo's subrogee, Royal would stand in Zygo's shoes. Any defense under the sales contract that Nan Ya would have against Zygo, it would also have against Royal. See Wilkinson v. Boats Unlimited, Inc., 236 Conn. 78, 88, 670 A.2d 1296, 1302 (Conn. 1996) ("any defense which a wrongdoer has against the insured is good against the insurer subrogated to the rights of the insured"). If Nan Ya can assert the sales contract's "Packing" clause against Zygo, it can assert that clause against Royal. See, e.g., E.H. Ashley & Co., Inc. v. Wells Fargo Alarm Services, 907 F.2d 1274, 1277 (1st Cir. 1990) (finding the contention that an insurer, as subrogee

9


of an insured's rights under a contract, is not bound by the terms of the contract "is frivolous"). Hence, Nan Ya's sales contract defense of inadequate packaging, which was pled as its Twenty-Second Affirmative defense in Nan Ya's Amended Answer to Royal's Third-Party Complaint, is entirely relevant both to any subrogation action brought by Royal and to Royal's allegation in this action that Zygo has impaired Royal's prospective subrogation rights. Therefore, Royal should not be precluded from introducing "packaging"-related evidence at the trial of this action.

## CONCLUSION

For the foregoing reasons, Zygo's motions in limine should be denied.

Dated:   New York, New York
         January 24, 2005

                              Respectfully submitted,

                              LAW OFFICES OF ROBERT K. MARZIK, P.C.
                              1512 Main Street
                              Stratford, Connecticut  06615
                              (203) 375-4803

                                      - and -

                              NICOLETTI HORNIG CAMPISE SWEENEY & PAIGE

By:   _____
      GEOFFREY J. GINOS (CT 19578)
      Wall Street Plaza
      88 Pine Street, Seventh Floor
      New York, New York 10005-1801
      Tel: (212) 220-3830
      Fax: (212) 220-3780
      gginos@nicolettihornig.com
      (FILE NO.: 21000055 JAVN/GJG)

      *Attorneys for Plaintiff/Third-Party Plaintiff*
      *Royal Insurance Company of America*

**TO:**

Ian E. Bjorkman, Esq.
Wiggin & Dana
One Century Tower
New Haven, Connecticut 06508
Tel: (203) 498-4496

Tait Graves, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, California 94304-1050
Tel: (650) 565-3574

Daniel L. FitzMaurice, Esq.
& Charlsa D. Broadus, Esq.
Day, Berry & Howard LLP
City Place I
Hartford, Connecticut 06103-3499
Tel: (860) 275-0100

## CERTIFICATION OF SERVICE

This is to certify that a copy of the foregoing filing, "ROYAL INSURANCE COMPANY OF AMERICA'S MEMORANDUM OF LAW IN OPPOSITION TO ZYGO CORPORATION'S MOTIONS IN LIMINE," was sent *via* federal express this 24th day of January, 2005 to:

Ian E. Bjorkman, Esq.
Wiggin & Dana
One Century Tower
New Haven, Connecticut 06508

Charlsa D. Broadus, Esq.
Day, Berry & Howard LLP
City Place I
Hartford, Connecticut 06103-3499

Tait Graves, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, California 94304-1050

Robert K. Marzik, Esq.
Law Office of Robert K. Marzik, P.C.
1512 Main Street
Stratford, Connecticut 06615

GEOFFREY J. GINOS (CT 19578)

X:\Public Word Files\21\55\Legal\Royal's Opposition to Zygo's Motions In Limine (Final).1.24.05.kom.wmf.s.mm.doc

12