# Exhibit 1

## MARINE OPEN CARGO POLICY

ROYAL INSURANCE COMPANY OF AMERICA

EXECUTIVE OFFICES:
9300 Arrowpoint Blvd.
Charlotte, NC 28201

Hereinafter Called the Company

| COVERAGE SECTION I: OCEAN CARGO | Policy Number |
|---|---|
| | POC102950 |

1. In consideration of premiums at the agreed rates, payable monthly or on demand, in funds current in the United States, on all shipments coming within the scope of this Policy, reported or not, does insure:

    **ZYGO CORPORATION**
    **LAUREL BROOK RD**
    **MIDDLEFIELD, CT 06455**

    **ASSURED**

    Hereinafter Called the Assured

2. Loss, if any, payable to Assured or order.

    **LOSS PAYABLE**

3. This Policy covers, for account of whom it may concern, shipments of lawful goods and merchandise consisting principally of:

    **PROPERTY INSURED & INSURABLE INTEREST**

    New electro-optical measuring components, parts and related equipment in approved export packing

    Under or on deck, consigned to or shipped by others for account or control of the Assured or in which the Assured has the risk of loss, but excluding shipments either sold or purchased by the Assured subject to terms of sale (or purchase) whereby the Assured is not obligated to furnish Ocean Marine insurance. Notwithstanding the foregoing, this Policy also covers all shipments of lawful goods and merchandise for the account of others from whom the Assured has received written instructions to insure provided such instructions are received prior to any known or reported loss, damage, or accident and prior to sailing of the vessel.

4. Attaching for 100 percent interest on all shipments coming within the scope of the Policy made on and after May 1, 1999 and to remain in force continuously thereafter until cancelled.

    **ATTACHMENT**

5. Always excepting adventures which are illegal under the laws of the United States this Policy covers Property Insured at and from ports and/or places in the world to ports and/or places in the world excluding shipments originating in the United States (meaning the forty-eight (48) contiguous states and the District of Columbia) or Canada for shipment to destination in the Continental United States or Canada.

    **GEOGRAPHICAL LIMITS**

6. This Policy covers shipments of Property Insured by the following conveyances or means of carriage:

    **CONVEYANCES**

    A. Metal self-propelled surface vessels and connecting conveyances by land or otherwise, but excluding shipments by sailing vessels with or without auxiliary power.

    B. Aircraft and connecting conveyances;

    C. Metal barges, but always subject to survey requirements set forth in this Policy.

D.  Trucks and connecting conveyances.

E.  Railcars and connecting conveyances.

F.  Mail (ordinary or registered and including parcel post) by air or otherwise

With respect to shipment(s) by aircraft or by approved metal barges the term "vessel" as used elsewhere in this Policy (except in the LIMIT OF LIABILITY CLAUSE) shall be construed as including aircraft and approved metal barges. It is especially agreed that the words "connecting conveyances", as used above, includes motor vehicles owned or operated by the Assured

7.  Including transit by craft and/or lighter to and from the vessel. Each craft and/or lighter to be deemed a separate insurance. The Assured is not to be prejudiced by any agreement exempting lightermen from liability.

**CRAFT CLAUSE**

8.  The Company shall not be liable for more than:

**LIMITS OF LIABILITY**

|     |   |           |                                                                                                                                                                                          |
|-----|---|-----------|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|     | $ | 2,500,000 | with respect to Property Insured per any one vessel or any one usual connecting conveyance thereto or in any one place at any one time EXCEPT that the liability of the Company shall be further limited to: |
| A.  | $ | 250,000   | as the portion of the foregoing vessel limit which shall apply with respect to Property Insured stowed on deck of any one vessel AND subject to an "On Deck" Bill of Lading;              |
| B.  | $ | 2,500,000 | with respect to Property Insured per any one aircraft or usual connecting conveyance thereto;                                                                                             |
| C.  | $ | 100,000   | with respect to Property Insured per any one approved metal barge or usual connecting conveyance thereto;                                                                                 |
| D.  | $ | 100,000   | with respect to Property Insured per two or more approved metal barges which form part of the same tow but in no event to exceed the limit of liability for any one approved metal barge as per item C. above; |
| E.  | $ | 2,500,000 | with respect to Property Insured per any one truck or usual connecting conveyance thereto;                                                                                                |
| F.  | $ | 2,500,000 | with respect to Property Insured per any one accident or occurrence by truck or usual connecting conveyance thereto;                                                                      |
| G.  | $ | 2,500,000 | with respect to Property Insured per any one railcar or usual connecting conveyance thereto;                                                                                              |
| H   | $ | 2,500,000 | with respect to Property Insured per any one accident or occurrence by rail or usual connecting conveyance thereto;                                                                       |
| I.  | $ | 50,000    | with respect to Property Insured by any one package by mail or parcel post.                                                                                                               |

9.  If the total value at risk exceeds the limit of liability provided by this Policy, the Assured shall nevertheless report the full amount at risk to the Company and shall pay full premium thereon. Acceptance of such reports and premium by the Company shall not alter or increase the limit of liability of the Company, but the Company shall be liable for the full amount of covered loss up to but not exceeding the applicable limit of liability.

**FULL VALUE REPORTING CLAUSE**

10.  Should there be an accumulation of the Property Insured which exceeds the limits expressed in this Policy by reason of any interruption of transit beyond the control of the Assured or by reason of any casualty, or at a transshipping point or on a connecting vessel or conveyance, or by reason of one or more vessels loading from or discharging at the same pier, dock or place, this Policy shall be liable for not

**ACCUMULATION**

more than twice the limit of l   lity that would apply but for the existence (   is clause provided notice be given to the Company as soon as such accumulation is known to the Assured, and additional premium paid if required.

11. Touching the adventures and perils which the Assurers are contented to bear, and take upon themselves, they are of the seas, fires, assailing thieves, jettisons, criminal barratry of the master and mariners, and all other like perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said property except as may be otherwise provided for herein or endorsed hereon.

**PERILS**

12. Additional Perils and Terms of Average:

**ADDITIONAL PERILS AND TERMS OF AVERAGE**

A. New electro-optical measuring components, parts and related equipment in approved export packing, shipped by air (except as connecting conveyances to other than air conveyances and excluding first class air mail and air parcel post) is/are insured:

**AIR**

> Against all risks of physical loss or damage from any external cause irrespective of percentage, excepting those risks excluded by the F. C.& S. and S.R. & C.C. Warranties; also excluding claims for loss or damage arising out of change of temperature or atmospheric pressure (unless specifically included in writing elsewhere herein).

B. Property Insured shipped by First Class Mail and/or Parcel Post (including First Class Air Mail and Air Parcel Post) is insured:

**PARCEL POST AND FIRST CLASS MAIL**

> Against all risks of physical loss or damage from any external cause, irrespective of percentage, excepting those risks excluded by the F.C.&S. and S.R.&C.C. Warranties.

> To come within the coverage afforded by this policy, shipments must be registered or Government Insured whenever such service is available, otherwise the Assured must obtain a certificate of mailing of such package from the Government Post Office.

> Warranted by the Assured that all packages mailed and insured under this Policy will be in strict conformity with the Parcel Post or First Class Mail regulations existing in the country of exportation at the time of shipment or mailing.

C. Property Insured in approved export packing while being shipped by approved metal barges or Property Insured in approved export packing which is subject to an "On Deck Bill of Lading" (which must be so declared to the Company at the time of reporting shipments) is insured against the perils in Clause 11, subject to the following:

**ON DECK & BARGE**

> Warranted free of particular average unless caused by the barge or vessel being stranded, sunk, burnt, on fire or in collision or by discharge of cargo at a port of distress: but losses by jettison and washing overboard shall be paid irrespective of percentage.

D. Other shipments by ocean vessels are insured against the perils named in Clause 11 subject to the following:

**UNDER DECK**

> Warranted free from Particular Average unless the vessel or craft be stranded, sunk or burnt, but notwithstanding this warranty the Company to pay any loss of or damage to the interest insured which may reasonably be attributed to fire, collision or contact of the vessel and/or craft and/or conveyance with any external substance (ice included) other than water, or to discharge of cargo at port of distress. The foregoing warranty, however, shall not apply where broader terms are provided for herein or endorsed hereon.

89033

E.  New electro-optical meas      g components, parts and related equipmet.    UNDER DECK BROADER
approved export packing, not subject to an on deck bill of lading, is/are    TERMS
insured as follows:

    Against all risks of physical loss or damage from any external cause
    irrespective of percentage, excepting those risks excluded by the F. C. &
    S. and S. R. & C. C. Clauses.

F.  New electro-optical measuring cumponents, parts and related equipment in    TRUCK
approved export packing, shipped by-truck is/are insured:

    Against all risks of physical loss or damage from any external cause
    irrespective of percentage, excepting those risks excluded by the F. C. &
    S. and S. R. & C. C. Clauses.

G.  New electro-optical measuring cumponents, parts and related equipment in    RAIL
approved export packing, shipped by rail is/are insured:

    Against all risks of physical loss or damage from any external cause
    irrespective of percentage, excepting those risks excluded by the F. C. &
    S. and S. R. & C. C. Clauses.

13.  Selling Price    VALUATION

Foreign currency to be converted into U.S. dollars at rate of exchange current in    FOREIGN CURRENCY
New York on date of invoice.

14.  It is especially agreed that Property Insured which is shipped in fully enclosed    CONTAINER CLAUSE
containers, vans, or lighters aboard ships and WHICH IS NOT SUBJECT TO AN
ON DECK BILL OF LADING is insured subject to the perils, terms of average,
limits and rates applicable to under deck shipments.

15.  It is specifically agreed that subsequent to the time the Property Insured leaves the    CONTAINERIZATION,
warehouse at the place named in the special Policy, certificate, or declaration for    CONSOLIDATION,
the commencement of transit, the insurance provided hereunder shall cover the    DECONSOLIDATION
Property Insured while on the premises of carriers, consolidators, freight
forwarders, or similar entities for the purpose(s) of packaging, repackaging,
consolidation, deconsolidation, containerization, or decontainerization only;
provided, however, that such coverage shall apply only for a period not exceeding
thirty (30) days after arrival such premises. HELD COVERED when Property
Insured is at such locations for the previously stated  purposes for period(s)
exceeding thirty (30) days provided that written notice is given to the Company as
soon as known to the Assured, and additional premium paid if required by the
Company. It is especially agreed, however, that in no event shall this clause cover
Property Insured while at any premises owned, operated, leased, or controlled by
the Assured, or while at any location solely for the purpose of storage.

16.  This Policy is extended to cover, but only while the Property Insured is on board a    DELIBERATE DAMAGE
waterborne conveyance, loss of or damage to said property directly caused by    POLLUTION HAZARD
governmental authorities acting for the public welfare to prevent or mitigate a
pollution hazard or threat thereof, provided that the accident or occurrence creating
the situation which required such governmental action would have resulted in a
recoverable claim under this Policy (subject to all of its terms, conditions, and
warranties) if the Insured Property would have sustained physical loss or damage as
a direct result of such accident or  occurrence. This clause shall not increase the
limits of liability provided for in this Policy.

17.  When incurred by reason of a peril insured against the Company will pay    WAREHOUSING &
reasonable landing, warehousing, forwarding and special charges. Also to pay the    FORWARDING
insured value of any package or packages which may be totally lost in loading,    CHARGES PACKAGES
transshipment or discharge.    TOTALLY LOST
LOADING, ETC.

18.  Including the risk of explosion, howsoever or wheresoever occurring during the    EXPLOSION

890371
80

currency of this insurance, unle   xcluded by the F.C. & S. Warranty or the S.F  ' :
C.C. Warranty set forth herein.

19. Where this insurance by its terms covers while on docks, wharves or elsewhere on shore, and/or during land transportation, it shall include the risks of collision, derailment, overturning or like accident to the conveyance, fire, lightning, sprinkler leakage, cyclones, hurricanes, earthquakes, floods (meaning the rising of navigable waters), and/or collapse or subsidence of docks or wharves, claims hereunder payable irrespective of percentage.  **SHORE CLAUSE**

20. This insurance is also specially to cover any loss of or damage to the interest insured hereunder through the bursting of boilers, breakage of shafts or through any latent defect in the machinery, hull or appurtenances, or from faults or errors in the navigation and/or management of the vessel by the master, mariners, mates, engineers or pilots.  **INCHMAREE**

21. This insurance attaches from the time the goods leave the warehouse and/or store at the place named in the Policy for the commencement of the transit and continues during the ordinary course of transit, including customary transshipment, if any, until the goods are discharged overside from the overseas vessel at the final port. Thereafter the insurance continues whilst the goods are in transit and/or awaiting transit until delivered to final warehouse at the destination named in the Policy or until the expiry of fifteen (15) days (or 30 days if the destination to which the goods are insured is outside the limits of the port) whichever shall first occur. The time limits referred to above to be reckoned from midnight of the day on which the discharge overside of the goods hereby insured from the overseas vessel is completed. Held covered at a premium to be arranged in the event of transshipment, if any, other than as above and/or in the event of delay in excess of the above time limits arising from circumstances beyond the control of the Assured.  **WAREHOUSE-TO-WAREHOUSE**

    NOTE:    It is necessary for the Assured to give prompt notice to the Company when they become aware of an event for which they are "held covered" under this Policy and the right to such cover is dependent on compliance with this obligation.

22. A. This insurance attaches from the time the goods leave the warehouse at the place named in the Policy, certificate or declaration for the commencement of the transit and continues until the goods are delivered to the final warehouse at the destination named in the Policy, certificate or declaration, or a substituted destination as provided in Clause C hereunder.  **MARINE EXTENSION CLAUSES**

    B. This insurance specially to cover the goods during:

        1. deviation, delay, forced discharge, reshipment and transshipment;

        2. any other variation of the adventure arising from the exercise of a liberty granted to the shipowner or charterer under the contract of affreightment.

    C. In the event of the exercise of any liberty granted to the shipowner or charterer under the contract of affreightment whereby such contract is terminated at a port or place other than the original insured destination, the insurance continues until the goods are sold and delivered at such port or place; or, if the goods be not sold but are forwarded to the original insured destination or to any other destination this insurance continues until the goods have arrived at final warehouse as provided in Clause A.

    D. If while this insurance is still in force and before the expiry of fifteen (15) days from midnight of the day on which the discharge overside of the goods hereby insured from the overseas vessel at the final port of discharge is completed, the goods are resold (not being a sale within the terms of Clause C) and are to be forwarded to a destination other than that covered by this insurance, the goods are covered hereunder while deposited at such port of discharge until again in

transit or until the expiry the aforementioned fifteen (15) days, which shall first occur. If a sale is effected after the expiry of the aforementioned fifteen (15) days while this insurance is still in force, the protection afforded hereunder shall cease as from the time of the sale.

E.   Held covered at a premium to be arranged in case of change of voyage or of any omission or error in the description of the interest vessel or voyage.

F.   This insurance shall in no case be deemed to extend to cover loss, damage or expense proximately caused by delay or inherent vice or nature of the subject matter insured.

G.   It is a condition of this insurance that there shall be no interruption or suspension of transit unless due to circumstances beyond the control of the Assured.

23.  All shipments to South America insured in U.S. currency shall be subject to the following clause:

SOUTH AMERICA

Notwithstanding anything to the contrary contained in Clauses 21 and 22, the insurance provided hereunder shall continue to cover for sixty (60) days, (ninety (90) days on shipments via the Magdalena River) after completion of discharge of the overseas vessel at port of destination or until the goods are delivered to the final warehouse at destination, whichever may first occur, and shall then terminate.

The time limit referred to above to be reckoned from midnight of the day on which the discharge of the overseas vessel is completed.

24.  This insurance shall not be vitiated by any unintentional error in description of vessel, voyage or interest, or by deviation, overcarriage, change of voyage, transshipment or any other interruption of the ordinary course of transit, from causes beyond the control of the Assured. It is agreed, however, that any such error, deviation or other occurrence mentioned above shall be reported to the Company as soon as known to the Assured, and the additional premium paid if required.

DEVIATION

25.  The Assured not to be prejudiced by the presence of the Negligence Clause and/or Latent Defect Clause in the Bills of Lading and/or Charter Party. The seaworthiness of the vessel as between the Assured and the Company is hereby admitted and the wrongful act or misconduct of the shipowner or his servants causing a loss is not to defeat the recovery by an innocent Assured if the loss in the absence of such wrongful act or misconduct would have been a loss recoverable under the Policy. With leave to sail with or without pilots, and to tow and assist vessels or craft in all situations and to be towed.

BILL OF LADING, ETC. CLAUSE

NOTE:   Wherever the words "ship", "vessel", "seaworthiness", "ship or vessel owner" appear in this Policy, they are deemed to include also the words "aircraft", "airworthiness", "aircraft owner".

26.  Where goods are shipped under a Bill of Lading containing the so-called "Both-to-Blame-Collision" Clause, the Company agrees as to all losses covered by this insurance, to indemnify the Assured for this Policy's proportion of any amount (not exceeding the amount insured) which the Assured may be legally bound to pay to the shipowners under such clause. In the event that such liability is asserted, the Assured agrees to notify the Company who shall have the right at their own cost and expense to defend the Assured against such claim.

BOTH TO BLAME

27.  THE FOLLOWING WARRANTIES SHALL BE PARAMOUNT AND SHALL NOT BE MODIFIED OR SUPERSEDED BY ANY OTHER PROVISION INCLUDED HEREIN OR STAMPED OR ENDORSED HEREON UNLESS SUCH OTHER PROVISION REFERS SPECIFICALLY TO THE RISKS EXCLUDED BY THESE WARRANTIES AND EXPRESSLY ASSUMES SAID

PARAMOUNT WARRANTIES

RISKS:

A. NOTWITHSTANDING ANYTHING HEREIN CONTAINED TO THE CONTRARY THIS INSURANCE IS WARRANTED FREE FROM:    F.C.& S.

    1. capture, seizure, arrest, restraint, detainment, confiscation, preemption, requisition or nationalization, and the consequences thereof or any attempt thereat, whether in time of peace or war and whether lawful or otherwise;

    2. all loss, damage or expense, whether in time of peace or war, caused by (i) any weapon of war employing atomic or nuclear fission and/or fusion or other reaction or radioactive force or matter (ii) any mine or torpedo;

    3. all consequences of hostilities or warlike operations (whether there be a declaration of war or not), but this warranty shall not exclude collision or contact with aircraft, or with rockets or similar missiles (other than weapons of war) or with any fixed or floating object (other than a mine or torpedo), standing, heavy weather, fire or explosion unless caused directly (and independently of the nature of the voyage or service which the vessel concerned or, in the case of a collision, any other vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purposes of this warranty "power" includes any authority maintaining naval, military or air forces in association with a power;

    4. the consequences of civil war, revolution, rebellion, insurrection, or civil strife arising therefrom; or from the consequences of the imposition of martial law, military or usurped power, or piracy.

B. Warranted free from loss, damage, or expense caused by or resulting from:    S.R. & C.C.

    1. strikes, lockouts, labor disturbances, riots, civil commotions or the acts of any person or persons taking part in any such occurrences or disorders;

    2. vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional.

C. Warranted free of claim for loss of market or for loss, damage or deterioration arising from delay, whether caused by a peril insured against or otherwise.    DELAY

D. Notwithstanding anything to the contrary herein, it is hereby understood and agreed that this Policy shall not apply to any loss, damage or expense due to or arising out of, whether directly or indirectly, nuclear reaction, radiation, or radioactive contamination, regardless of how it was caused. However, subject to all provisions of this Policy, if this Policy insures against fire, then direct physical damage to the Property Insured located within the United States, or any territory of the United States or Puerto Rico by fire directly caused by the above excluded perils, is insured, provided that the nuclear reaction, radiation, or radioactive contamination was not caused, whether directly or indirectly, by any of the perils excluded by the F.C. & S. Warranty of this Policy.    NUCLEAR EXCLUSION

Nothing hereunder shall be construed to cover any loss, damage, liability or expense caused by nuclear reaction, radiation or radioactive contamination arising directly or indirectly from the fire mentioned above.

28. Warranted free of claim for loss or damage or expense caused by or resulting from inherent vice or nature of the Property Insured.    INHERENT VICE

29. Warranted that this insurance shall not inure, directly or indirectly, to the benefit of any carrier or bailee.    CARRIER CLAUSE

30. Warranted by the Assured that all shipments made via metal barge and having an insured value of N/A or greater in the aggregate are subject to the approval of a surveyor appointed by this Company with said approval to include the tug, barge,    BARGE SHIPMENTS

towing arrangements, loading, ... wage, and weather.

31. In case of any loss or misfortune, it shall be lawful and necessary to and for the Assured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said Insured Property, or any part thereof, without prejudice to this insurance; to the charges whereof, the Company will contribute according to the rate and quantity of the sum hereby insured; nor shall the acts of the Assured, or Company, in recovering, saving and preserving the Property Insured, in case of disaster, be considered a waiver or an acceptance of an abandonment.

**SUE & LABOR**

32. Any loss or damage to the property hereby insured must be promptly reported to the Company or to the nearest Settling Agent of the Company and such Agent must be represented on all surveys and must approve proofs of loss and bills of expense. If there be no such Agent at or near the port or place where the loss is discovered or the expenses incurred, then such report must be made to the nearest representative of the American Institute of Marine Underwriters or to a Lloyds Agent, and his approval obtained as above. Failure to report loss or damage promptly and to file such proof of loss shall invalidate any claim under this Policy.

**REPORTING LOSSES**

33. General Average and Salvage Charges payable according to United States Laws and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

**GENERAL AVERAGE**

34. The Company shall pay all valid General Average and Salvage charges without adjustment for coinsurance, but in no case shall the Company be liable for more than the insured value of the cargo, or the applicable limit of liability under this Policy, whichever is less.

**CONTRIBUTORY VALUE**

35. No recovery for a Constructive Total Loss shall be had hereunder unless the Insured Property is reasonably abandoned on account of it actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value when the expenditure has been incurred

**CONSTRUCTIVE TOTAL LOSS**

36. In all cases of damage caused by perils insured against, the loss shall be ascertained by a separation and a sale or appraisement of the damaged portion only of the contents of the packages so damaged and not otherwise.

**PARTIAL LOSS**

37. In case of damage affecting labels, capsules or wrappers, the Company, if liable therefor under the terms of this Policy, shall not be liable for more than an amount sufficient to pay the cost of new labels, capsules or wrappers, and the cost of reconditioning the goods, but in no event shall the Company be liable for more than the insured value of the damaged merchandise

**LABELS**

38. In case of damage to property bearing a brand or trademark, or the sale of which carries or implies a guarantee of the Assured, the salvage value of such damaged property shall be determined after the removal of all brands or trademarks or, at the Assured's option, privilege is hereby given the Assured to bring the property to their plant or plants for reconditioning, all reasonable charges and expenses incidental thereto being part of the claim, but not exceeding, in all, the sum insured on damaged property.

**BRANDS & TRADEMARKS**

39. When the property insured under this Policy includes a machine consisting when complete for sale or use of several parts, then in case of loss or damage covered by this insurance to any part of such machine, the Company shall be liable only for the proportion of the insured values of the part lost or damaged, or at the Company's option, for the cost and expense, including labor and forwarding charges, of replacing or repairing the lost or damaged part; but, in no event shall the Company be liable for more than the insured value of the complete machine.

**MACHINERY**

40. In case of loss, such loss to be paid within (30) days after interest in the Property Insured and loss thereto has been established (the amount of the premium if unpaid being first deducted). If settlement is required in a currency other than that of the

**PAYMENT OF LOSS**

United States, the rate of exch· ·e will be that in effect on the date the clair ·s settled.

41. It is expressly agreed that in the event of claim under this Policy the Company, at its option, may either make payment against delivery of instruments securing the Company's right of subrogation or make an advance or a loan without interest (and repayable only out of net recoveries from third parties, in respect of said claim) against delivery of such loan agreement as may be required by the Company. Upon receipt of any advance or loan, the recipient shall use all reasonable means to recover such loss from third parties, and at the Company's request and expense and under its exclusive direction and control, make claim upon and institute legal proceedings against any party which the Company believes is liable for the loss, cooperating fully in the prosecution of such legal proceedings. **COMPANY OPTION**

42. In the event of any loss of or damage to property insured hereunder, the Assured shall make claim immediately in writing against the carrier(s), bailee(s) or others involved. **CLAIM AGAINST THIRD PARTIES**

43. It is a condition of this insurance that upon payment of any loss the Company shall be subrogated to all rights and claims against third parties arising out of such loss. It is a further condition of this insurance that if the Assured or his or their assigns have entered or shall enter into any special agreement whereby any carrier or bailee is released from its common law or statutory liability for any loss, or have or shall have waived, compromised, settled or otherwise impaired any right of claim against a third party to which the Company would be subrogated upon payment of a loss without prior agreement of the Company and endorsement hereon , the Company shall be free from liability with respect to such loss, but its right to retain or recover the premium shall not be affected. **SUBROGATION AND IMPAIRMENT OF RECOVERY**

44. No suit or action against this Company for the recovery of any claim by virtue of this insurance shall be sustainable in any court of law or equity unless commenced within one (1) year of the happening of the physical loss or damage giving rise to the claim.    Should this period of limitation be ruled invalid, suit must be commenced within the shortest contractual period of limitation permitted. **TIME FOR SUIT**

45. Privilege is hereby granted the Assured to countersign the Company's certificates or special policies of insurance for any or all risks covered hereunder; it being agreed, however, that such certificates or special policies will be issued strictly in accordance with the terms and conditions of this Policy. **ISSUANCE OF CERTIFICATES**

The Assured hereby agrees to furnish a copy of each such completed certificate or special Policy to the Company as soon after issuance as practicable.

46. It is a condition of this insurance that all shipments coming within the terms hereof shall be accurately reported to the Company as soon as known to the Assured and amounts accurately declared as soon as ascertained, and failure to make such reports shall render this Policy null and void if this Company shall so elect; provided, however, that unintentional error or omission in making any such report shall not void this insurance provided the same be reported to this Company as soon as known to the Assured. **REPORTING OF SHIPMENTS**

47. This Company shall have the privilege at any reasonable time either before or within one (1) year after cancellation of this Policy, to inspect the records of the Assured as respects shipments coming within the terms of this Policy. **INSPECTION OF RECORDS**

48. Should the terms of this Policy be in conflict with any applicable statute, they are amended to conform to such statute. **CONFORMANCE**

49. This Policy is deemed to be continuous and to cover all shipments as herein provided until canceled by either party giving the other thirty (30) days written notice to that effect, but such cancellation shall not affect any risk on which this insurance has attached prior to the effective date of such notice. Said cancellation shall be effective on the date specified in the notice, but in no event earlier than thirty (30) days from the date of mailing of said notice by either party. **CANCELLATION**

Notwithstanding the foregoing    ice period, however, the Company may ef
immediate cancellation by giving written notice thereof at any time when
premiums have been due and unpaid for a period of sixty (60) days or more. Said
cancellation shall be effective upon receipt by the Assured of said notice or upon
the date specified in the notice, whichever is later.

50. In case the Assured or others shall have effected any other Ocean Marine insurance **OTHER INSURANCE**
directly or indirectly upon the Property Insured, prior in day of date to the time of
attachment of any specific risk hereunder, the Company shall be liable only for so
much as the amount of such prior insurance may be deficient toward fully covering
the property hereby insured, and in this event shall return the premium upon so
much of the sum by them insured as they shall be exonerated by such prior
insurance. In case of any other Ocean Marine insurance upon the said property
subsequent in day of date to the time attachment of any specific risk hereunder, the
Company shall nevertheless be liable for the full extent of the sum by them insured
upon the said risk without right to claim contribution from such subsequent
insurance.

Other Ocean Marine insurance upon the property insured hereunder, dated the same
day as the time of attachment of any specific risk hereunder shall be deemed
simultaneous herewith and the Company shall not be liable for more than a ratable
contribution in the proportion that the sum insured by the Company bears to the
aggregate of such simultaneous insurance.

This insurance shall in all cases be null and void as concerns loss or damage
covered, or which would be covered in the absence of this Policy, by any fire,
inland marine, sprinkler leakage, burglary, or any other form of insurance (except
Ocean Marine insurance) whether prior, simultaneous, or subsequent in date hereto.

51 It is agreed that any loss or damage found upon opening of original shipping **CONCEALED DAMAGE**
packages at the final destination (but not exceeding 90 days after delivery to the
final destination as provided elsewhere in this Policy) shall be adjusted and paid by
the Company in the same manner as though the original shipping packages had
been opened immediately upon their arrival, provided such loss or damage is
otherwise recoverable under the terms of this Policy. Where original shipping
packages arrive at the final destination in a visibly damaged condition, they shall be
opened immediately.

52. It is agreed that on all shipments sold by the Assured on cost and freight or other **CONTINGENCY**
terms whereby the Assured is not required to furnish ocean marine insurance, this
Policy is extended (subject to all its terms and conditions) to cover only the interest
of the Assured as an unpaid vendor from the time shipments become at the risk of
the customer under the terms of sale until payment of draft but in no event beyond
the time when this Company's risk would normally cease under the terms of this
Policy.

It is further understood and agreed that in no event shall this insurance inure to the
benefit of the buyer or his underwriter but in the event of a loss occurring which
would be collectible hereunder but for such terms of sale and the Assured is unable
to collect the purchase price from the buyer in regular course, this Company will
advance the amount of such loss pending collection from the buyer. The Assured
hereby agrees to use all reasonable means to collect the full amount due from the
buyer and reimburse this Company, the latter sharing the expense of such collection
in proportion to its interest herein.

The Assured agrees to declare to this Company the value of all shipments covered
under the terms of this endorsement and to pay premium thereon at rates to be
agreed.

53. This Policy covers expenses incurred for the removal of all debris of the property **DEBRIS REMOVAL**
insured hereunder which may be occasioned by loss caused by any of the perils
insured except that the Company shall not be liable for more than 10% of the
insured value of the property insured. Nothing contained herein shall be construed

to cover any clean up expens    or which the assured may be liable under pollution statute.

54. It is agreed that on all shipments purchased by the Assured on C.I.F. terms, this Policy covers the difference in conditions between such other insurance and the terms and conditions of insurance provided in this Policy for the property involved.

**DIFFERENCE IN CONDITIONS**

All shipments insured hereunder to be valued at the amount of the seller's insurance but subject always to the limits of liability provided in this Policy.

The Assured agrees to declare all such shipments to this Company and pay premium thereon at rates to be agreed.

55. This Policy is extended to cover shipments sold by the Assured of F.O.B., F.A.S., cost and Freight or similar terms whereby the Assured is not obligated to furnish ocean marine insurance. This insurance attaches subject to Policy terms and conditions and continues until the goods are loaded on board the overseas vessel or until the Assured's interest ceases, whichever shall first occur. The particulars of all such shipments shall be reported promptly to the Assurer and premium paid on the amounts so declared at the rate of N/A for not exceeding thirty (30) days after attachment of risk. Extension of risk beyond thirty (30) days held covered at rates to be agreed.

**FOB/FAS SHIPMENTS**

56. In the event of refusal or inability of the Assured or other consignee to accept delivery of goods or merchandise insured hereunder, this insurance is extended to cover such shipments, whether or not the original voyage was insured hereunder, subject to Policy valuation and insuring conditions, during delay and/or return or until otherwise disposed. The Assured agrees to report the facts of such situations as soon as practicable after they have knowledge of them and pay premium, if required, at rates to be agreed.

**RETURN SHIPMENTS**

57. If, by the terms of this Policy, coverage is provided for loss due to theft, it is understood to include the unexplained disappearance of packages or other shipping units from containers; whether said containers arrive at final insured destination with original seals intact or not.

**SHORTAGE FROM CONTAINERS**

It is a condition of this insurance that the Assured shall render all reasonable assistance to the Company in subrogating against the party and/or parties responsible for any loss paid under this clause.

It is a further condition of this insurance that the Assured shall not divulge the existence of the insurance provided by this clause to anyone outside the Assured's organization. Violation of this condition shall void this insurance provided by this clause as respects containers which arrive at final destination with original seals intact.

58. It is a condition of this Policy, and it is hereby agreed, that the Assured's brokers, MATHOG AND MONIELLO COMPANIES, INC or any substituted brokers, shall be deemed to be exclusively the agents of the Assured and not of the Company. Any notice given or mailed by or on behalf of the Company to the said brokers in connection with or affecting this insurance, or its cancellation shall be deemed to have been delivered to the Assured.

**NOTICE OF CHANGE/BROKERS**

ROYAL & SUNALLIANCE

AUTHORIZED REPRESENTATIVE

MARINE OPEN CARGO POLICY

## COVERAGE SECTION II: DOMESTIC TRANSPORTATION INSURANCE

| ASSURED: | ZYGO CORPORATION | Policy Number POC102950 |
|---|---|---|

1. Effective as to all shipments made on and after May 1, 1999 this Policy is hereby extended, subject to its terms and conditions, to cover shipments of Property Insured while in due course of transit within the continental (excluding Alaska) United States and Canada:

   A. While in the care of:

      (1) any railroad;

      (2) any common carrier, public truckman or transfer company;

      (3) any motor carrier operating under contract to the Assured;

      (4) any certificated air carrier or air express company.

   B. While in or on vehicles owned or operated by the Assured.

2. This insurance attaches at the time the Property Insured leaves the initial point of shipment and covers continuously until delivered at destination, but only while in the due course of transit.

3. This insurance does not cover:

   A. Accounts, bills, deeds, notes, securities, evidences of debt, money, bullion, valuable papers or jewelry;

   B. Property shipped by mail or parcel post;

   C. Samples in the care or custody of any sales person;

   D. Property accepted by the Assured acting as a common or contract carrier;

4. Property insured under this section is insured against all risks of direct physical loss or damage from any external cause except as excluded below and elsewhere in this Policy.

5. This insurance does not cover any loss, damage or expense caused by:

   A. The risks excluded by the F.C. & S., S.R. & C.C., Delay, Inherent Vice and Nuclear Exclusion warranties set forth in Section I of this Policy;

   B. Loss of use or other consequential loss;

   C. Extremes of temperature or changes in atmospheric pressure;

   D. Infidelity or any dishonest act committed by the Assured, the Assured's employees or authorized representative, or anyone to whom the Insured Property may be entrusted (carriers for hire excepted);

   E. Seizure or destruction by any governmental authority unless acting to prevent the spread of any fire which would otherwise be covered hereunder.

6. Property insured under this coverage section is valued, premium included:

   A. At the amount of the invoice (including all charges in the invoice) plus any prepaid or advanced or guaranteed freight not included in the invoice plus 10% of the foregoing items; or

   B. At the amount declared if declared prior to any known or reported loss or accident, but in no event shall the amount declared be less than the amount

**COVERAGE**

**ATTACHMENT & TERMINATION**

**PROPERTY NOT COVERED**

**PERILS**

**EXCLUSIONS**

**VALUATION**

arrived at by the formulas    ified in 6.a.; or

C.  At the actual cash value of the property insured at the time and place of such loss or accident if there is no invoice and the valuation has not been declared prior to known or reported loss or accident.

7.  The company shall not be liable under this coverage section for more than the limit(s) stated below:                                                                      **LIMITS**

A.  $2,500,000 any one conveyance (vehicle, railcar or aircraft).

B.  $2,500,000 any one accident or occurrence.

8.  Each claim for loss or damage resulting from any one accident or occurrence shall    **DEDUCTIBLE** be separately adjusted, and from each separately adjusted claim the sum of N/A shall be deducted.

9.  It is a condition of this insurance that the Assured shall keep an accurate record of    **RECORD OF SHIPMENTS** all shipments covered hereunder

The Assured agrees to report to the Company the total value, calculated in accordance with Valuation clause contained herein, of shipments made during the reporting period(s) as shown below, and to pay premium thereon at the rate(s) shown below.

Rate per $100: Included

Reports to be made: Annually

If a deposit premium for Section II is shown elsewhere in this Policy, all earned premium hereunder shall be applied against such deposit until such time as it is fully earned. Once the deposit premium is fully earned, any additional earned premium shall become due and payable as of the date shipments are reported.

10.  It is a condition of this insurance that upon payment of any loss the Company shall    **SUBROGATION &** be subrogated to all rights and claims against third parties arising out of such loss. It    **IMPAIRMENT OF** is a further condition of this insurance that the Company shall not be bound to pay    **RECOVERY** any loss if, by agreement or act of the Assured or his or their assigns, the right of recovery of the Assured for loss of or damage to the Property Insured against any carrier, bailee, or third party has been impaired, released or lost.

11.  Notwithstanding the immediately preceding Clause 10. permission is granted the    **WAIVER CLAUSE** Assured to accept from carriers (only) those bills of lading, receipts or contracts of transportation containing a release or limitation as to the value of the goods provided that:

A.  Such acceptance be made prior to any known or reported loss, damage or accident;

B.  Such bills of lading, receipts or contracts or transportation are those customarily issued by such carriers.

12.  It is expressly agreed that the insurance under this Coverage Section shall not cover    **OTHER INSURANCE** to the extent of any other valid and collectible insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property, and this Company shall be liable for loss or damage only for the excess beyond the amount of such other insurance, provided such loss or damage would otherwise be recoverable hereunder.

13.  It is understood and agreed that in the event the Policy to which this Coverage    **TERMINATION** Section is attached is canceled, coverage under this Coverage Section is automatically terminated as of the date of such cancellation.

Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, declarations or agreements of the Policy other than as expressly stated in this Coverage Section.

ROYAL & SUNALLIANCE

AUTHORIZED REPRESENTATIVE

890

## MARINE OPEN CARGO POLICY

### COVERAGE SECTION III: WAREHOUSE STORAGE INSURANCE

ASSURED: ZYGO CORPORATION

Policy Number
POC 102950

1. It is understood and agreed that, subject to all terms and conditions which do not conflict with the provisions set forth herein, this Policy is extended to cover property insured under Section I which is the property of the Assured or the property of others from whom the Assured has written instructions to insure while temporarily stored in warehouses at locations listed in the attached Schedule.

   **PROPERTY COVERED**

2. There is no coverage hereunder for:

   **PROPERTY EXCLUDED**

   A. Property consisting of accounts, bills, bullion, currency, evidences of debt, money, notes or securities, jewelry or precious stones;

   B. Property insured during an import or export voyage under Section I of this Policy which has been sold and delivered by the Assured or by an agent of the Assured;

   C. Property which has been placed on sale by the Assured or by his agent as part of the Assured's or other importer's (in the case of import shipments where, prior to any known or reported loss, damage or accident, the Assured has received written instructions to insure for the account of others) stock in trade at a point of sale or distribution;

   D. Property at any location for purposes or manufacture, processing or other change in the form of such property.

3. Coverage hereunder applies only while Property Insured is located at the approved locations shown in the attached Schedule and only for amounts not exceeding the limits shown opposite each location.

   **APPROVED LOCATIONS & LIMITS**

4. Property insured under this Coverage Section is valued, premium included:

   **VALUATION**

   A. At the amount of the invoice (including all charges in the invoice) plus any prepaid or guaranteed freight not included in the invoice plus 10% of the foregoing items; or

   B. At the amount declared prior to any known or reported loss or accident, but in no event shall the amount declared be less than the amount arrived at by the formula specified in paragraph A directly above; or

   C. At the actual cash value of the Property Insured at the time and place of such loss or accident if there is no invoice and the valuation has not been declared prior to known or reported loss or accident.

5. Property insured under this section is insured against all risks of direct physical loss or damage from any external cause except as excluded below and elsewhere in this Policy.

   **PERILS INSURED**

6. This insurance does not cover any loss, damage or expense caused by:

   **EXCLUSIONS**

   A. The risks excluded by the F.C. & S., S.R. & C.C., Delay, Inherent Vice and Nuclear Exclusion warranties set forth in Section I of this Policy;

   B. Loss of use or other consequential loss;

   C. Any unexplained disappearance or shortage found upon taking inventory or audit;

   D. Infidelity or any dishonest act committed by the Assured, the Assured's

employees or authorized representatives, or anyone to whom the insured property may be entrusted (carriers for hire excepted).

E. Seizure or destruction by any governmental authority unless acting to prevent the spread of any fire which would otherwise be covered hereunder.

7. Each claim for loss or damage resulting from any one accident or occurrence shall be separately adjusted and the sum shown in the attached schedule shall be deducted from the amount of each separately adjusted claim.

DEDUCTIBLE

8. It is a condition of this insurance that the Assured shall report to the Company within thirty (30) days after the end of each reporting period shown below the total value of all Insured Property at each location shown in the attached Schedule as of the last day of each month and shall pay premium thereon at the rates shown. The total values of the Insured Property shall be calculated in accordance with the Valuation Clause of this coverage section.

REPORTS & PREMIUM

Reports to be made: Annually

If a deposit premium for Section III is shown elsewhere in this Policy, all earned premium hereunder shall be applied against such deposit until such time as it is fully earned. Once the deposit premium is fully earned, any additional earned premium shall become due and payable as of the date the values are reported to the Company.

At the time of any loss, if the Assured has failed to file with the Company reports of values as above required, this Extension of Coverage, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values filed prior to the loss, and further, if such delinquent report is the first report of values herein required to be filed, liability shall be limited to 90% of the amount for which the Company would otherwise be liable.

9. Notwithstanding the foregoing, it is agreed that if the total value at risk exceeds any limit of liability expressed above, the Assured will report the full amount at risk to the company and shall pay full premium thereon.

FULL VALUE<br>REPORTING

Acceptance of such report and premium by the Company shall not alter or increase the limit of liability of the Company, but the Company shall be liable for the full amount of covered loss up to but not exceeding the applicable limit of liability. It is further agreed that payment by the Company of any covered loss shall not serve to reduce the limit(s) of liability shown herein.

10. It is a condition of this insurance that upon payment of any loss the Company shall be subrogated to all rights and claim against third parties arising out of such loss. It is a further condition of this insurance that the Company shall not be bound to pay any loss if, by agreement or act of the Assured or by his or their assigns, the right of recovery of the Assured for loss of or damage to the Property Insured, against any carrier, bailee, or third party has been impaired, released or lost.

SUBROGATION &<br>IMPAIRMENT OF<br>RECOVERY

11. As concerns coverage provided in this Section (only), permission is granted the Assured to accept from warehousemen (only) those warehouse receipts or storage contracts containing a release or limitation as to the value of the Insured Property provided that:

WAIVER CLAUSE,<br>WAREHOUSE<br>RECEIPTS, STORAGE

A. Such acceptance is made prior to any known or reported loss, damage, or accident;

B. Such warehouse receipts or storage contracts are those customarily issued by such warehousemen

12. It is expressly agreed that the insurance under this coverage section shall not cover to the extent of any other valid and collectible insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property, and this Company shall be liable for loss or damage only for the excess beyond the amount of such other insurance, provided such loss or damage would

OTHER INSURANCE

otherwise be recoverable hereu!

13. It is hereby understood and agreed that in the event the Policy to which this **TERMINATION** coverage section is attached is canceled, coverage under this coverage section is automatically terminated as of the date of cancellation.

Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, declarations or agreements of the Policy other than as expressly stated in this Coverage Section.

ROYAL & SUNALLIANCE

AUTHORIZED REPRESENTATIVE

MARINE OPEN CARGO POLICY

## PROCESSING LOCATION COVERAGE ENDORSEMENT

| | | Policy Number |
|---|---|---|
| ASSURED: | ZYGO CORPORATION | POC102950 |

1.  It is understood and agreed that, subject to all terms and conditions which do not conflict with the provisions set forth herein, this policy is extended to cover property consisting of: **PROPERTY COVERED**

    A. Property insured under Section I which is the property of the Assured or the property of others from whom the Assured has written instructions to insure while temporarily stored at locations listed in the attached Schedule for the purpose of processing.

    B. Property other than that described above which is the property of the Assured and which is described in the attached Schedule while at any of the locations listed in the Schedule.

2.  There is no coverage hereunder for: **PROPERTY EXCLUDED**

    A. Property consisting of accounts, bills, bullion, currency, evidences of debt, money, notes or securities, jewelry or precious stones;

    B. Contraband or property in the course of illegal transportation or trade.

    C. Property which has been placed on sale by the Assured or by his agent as part of the Assured's or other importer's (in the case of import shipments where, prior to any known or reported loss, damage or accident, the Assured has received written instructions to insure for the account of others) stock in trade at a point of sale or distribution.

3.  Coverage hereunder applies only while Property Insured is located at the approved locations shown in the attached Schedule and only for amounts not exceeding the limits shown opposite each location. **APPROVED LOCATIONS & LIMITS**

4.  Property insured under this Coverage Section is valued, premium included: **VALUATION**

    A. Property Insured in transit to processing locations shall be valued at the amount of the invoice including all charges which form a part of the invoice price, or if no invoice at the Assured's cost, plus any incurred, prepaid and/or advance and/or guaranteed freight not included in the invoice.

    B. Property Insured while at processing locations shall be valued on the basis provided for in Clause A., plus all labor charges incurred at time of loss.

    C. Property Insured in transit from processing locations shall be valued on the basis provided in Clause A., plus all labor charges incurred; plus any incurred, prepaid and/or guaranteed and/or advanced freight not included in the invoice.

5.  Property insured under this section is insured against all risks of direct physical loss or damage from any external cause except as excluded below and elsewhere in this policy. **PERILS INSURED**

6.  This insurance does not cover any loss, damage or expense caused by: **EXCLUSIONS**

    A. The risks excluded by the F.C. & S., S.R. & C.C., Delay, Inherent Vice and Nuclear Exclusion warranties set forth in Section I of this policy;

    B. Loss of use or other consequential loss except as may be hereinafter provided in writing;

    C. Any unexplained disappearance or shortage found upon taking inventory or

audit;

D. Infidelity or any dishonest act committed by the Assured, the Assured's employees or authorized representatives, or anyone to whom the Property Insured property may be entrusted (carriers for hire excepted).

E. Seizure or destruction by any governmental authority unless acting to prevent the spread of any fire which would otherwise be covered hereunder.

F. Wear and tear, inherent vice, latent defect, gradual deterioration, insects, vermin, or rodents.

G. Short circuit, blowout or other electrical damage or disturbance within the covered property. But any ensuing direct loss caused by a peril insured hereunder is covered.

H. Mechanical breakdown or machinery failure. But any ensuing direct loss caused by a peril insured hereunder is covered.

I. Faulty, inadequate or defective design, specifications, workmanship or materials.

J. Spoilage, contamination, leakage, breakage, marring, scratching, corrosion, rust, dampness or dryness, cold or heat.

K. Earthquake, landslide, earth movement, but direct loss caused by any ensuing fire or explosion is covered.

L. Volcanic eruption, explosion, but direct loss by ensuing fire is covered

M. Flood, surface water, waves, tides, tidal waves, overflow of any body of water or their spray, all whether wind driven or not;

N. Mudslide or mudflow;

O. Water that backs up from any sewer or drain;

P. Any release of water impounded by a dam, but ensuing direct loss caused by fire or explosion is covered.

7. Each claim for loss or damage resulting from any one accident or occurrence shall be separately adjusted and the sum shown in the attached schedule shall be deducted from the amount of each separately adjusted claim.   **DEDUCTIBLE**

8. It is a condition of this insurance that the Assured shall report to the Company within thirty (30) days after the end of each reporting period shown below the total value of all Insured Property at each location shown in the attached Schedule as of the last day of each month and shall pay premium thereon at the rates shown. The total values of the Insured Property shall be calculated in accordance with the Valuation Clause of this coverage section.   **REPORTS & PREMIUM**

Reports to be made: Annually

If a deposit premium for this coverage section is shown elsewhere in this policy, all earned premium hereunder shall be applied against such deposit until such time as it is fully earned. Once the deposit premium is fully earned, any additional earned premium shall become due and payable as of the date the values are reported to the Company.

At the time of any loss, if the Assured has failed to file with the Company reports of values as above required, this Extension of Coverage, subject otherwise to all its terms and conditions, shall cover only at the locations and for not more than the amounts included in the last report of values filed prior to the loss, and further, if such delinquent report is the first report of values herein required to be filed, liability shall be limited to 90% of the amount for which the Company would otherwise be liable.

9. Notwithstanding the foregoing, it is agreed that if the total value at risk exceeds any   **FULL VALUE**

limit of liability expressed abov... the Assured will report the full amount at ris... to the company and shall pay full ... aum thereon.

Acceptance of such report and premium by the Company shall not alter or increase the limit of liability of the Company, but the Company shall be liable for the full amount of covered loss up to but not exceeding the applicable limit of liability. It is further agreed that payment by the Company of any covered loss shall not serve to reduce the limit(s) of liability shown herein.

10. It is a condition of this insurance that upon payment of any loss the Company shall be subrogated to all rights and claim against third parties arising out of such loss. It is a further condition of this insurance that the Company shall not be bound to pay any loss if, by agreement or act of the Assured or by his or their assigns, the right of recovery of the Assured for loss of or damage to the Property Insured, against any carrier, bailee, or third party has been impaired, released or lost.

SUBROGATION & IMPAIRMENT OF RECOVERY

11. It is expressly agreed that the insurance under this coverage section shall not cover to the extent of any other valid and collectible insurance whether prior or subsequent hereto in date, and by whomsoever effected, directly or indirectly covering the same property, and this Company shall be liable for loss or damage only for the excess beyond the amount of such other insurance, provided such loss or damage would otherwise be recoverable hereunder.

OTHER INSURANCE

12. It is hereby understood and agreed that in the event the policy to which this coverage section is attached is canceled, coverage under this coverage section is automatically terminated as of the date of cancellation.

TERMINATION

ROYAL & SUNALLIANCE

AUTHORIZED REPRESENTATIVE

In witness whereof, this Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned below by a duly authorized representative of this Company.

Corporate Secretary

*Terry Broderick*

President

ROYAL & SUNALLIANCE

Countersigned By _____

AUTHORIZED REPRESENTATIVE

Authorized Representative

89016-1  1193

| | |
|---|---|
| Endorsement No. 1 | To be attached to and made part of Policy No. POC102950 |

| | |
|---|---|
| Assured | ZYGO CORPORATION |

| | |
|---|---|
| Effective | 5/1/1999 |

### S.R. & C.C. ENDORSEMENT
(American Institute December 2, 1993)

THIS INSURANCE ALSO COVERS:

(1) Physical loss of or damage to the property insured directly caused by strikers, locked-out workmen, or persons taking part in labor disturbances or riots or civil commotions; and

(2) Physical loss of or damage to the property insured directly caused by vandalism, sabotage or malicious act, which shall be deemed also to encompass the act or acts of one or more persons, whether or not agents of a sovereign power, carried out for political, terroristic or ideological purposes and whether any loss, damage or expense resulting therefrom is accidental or intentional; PROVIDED that any claim so recoverable under this subsection (2) be not excluded by the FC&S warranty in the policy to which this endorsement is attached.

While the property insured is at risk under the terms and conditions of this Insurance within the United States of America, the Commonwealth of Puerto Rico, the Virgin Islands and Canada, this insurance is extended to cover physical loss of or damage to the property insured directly caused by acts committed by an agent of any government, party or faction engaged in war, hostilities or other warlike operations, provided such agent is acting secretly and not in connection with any operation of military or naval armed forces in the country where the described property is situated.

Nothing in this endorsement shall be construed to include or cover any loss, damage or expense directly or indirectly arising from, contributed to or caused by any of the following, whether due to a peril insured against or otherwise:

    a.   change in temperature or humidity;

    b.   the absence, shortage, or withholding of power, fuel, or labor of any description whatsoever during any strike, lockout, labor disturbance, riot or civil commotion;

    c.   loss of market or loss, damage or deterioration arising from delay;

    d.   hostilities, warlike operations, civil war, revolution, rebellion or insurrection, or civil strife arising therefrom, except to the limited extent that the acts of certain agents acting secretly have been expressly covered above;

    e.   nuclear reaction, radiation or radioactive contamination.

The Assured agrees to report all shipments attaching under this cover and to pay premiums therefor at the rates established by the Company from time to time.

This endorsement may be canceled by either party upon forty-eight hours written, telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any risks which have already attached hereunder.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

AUTHORIZED REPRESENTATIVE
Authorized Representative

Endorsement No. 2

To be attached to and made part of Policy No. POC102950

Assured    ZYGO CORPORATION

Effective    5/1/1999

## DUTY

This insurance also covers, subject to policy terms of average, the risk of partial loss by reason of perils insured against on the duties imposed on goods imported into the United States and insured hereunder, it being understood and agreed, however, that when the risk upon the goods continues beyond the time of landing from the overseas vessel, the increased value, consequent upon the payment of such duties, shall attach as an additional insurance upon the goods from the time such duty is paid or becomes due, to the extent of the amounts thereof actually paid or payable.

Any limit of liability expressed in this policy shall be applied separately to such increased value.

The Assured warrants that on all risks insured hereunder a separate amount shall be reported sufficient to cover the said duty, upon which the rate of premium shall be an agreed percentage of the merchandise rate.

The Assured will, in all cases, use reasonable efforts to obtain abatement or refund of duties paid or claimed in respect of goods lost, damage or destroyed. The Assured consents to permit the company or its representatives at the company's expense to file any claims in the name of the Assured with U.S. Customs which the company deems necessary for the recovery of duties reimbursed by the Company to the Assured. All recoveries based on such claims shall accrue to the benefit of the Company and shall be remitted to the company promptly upon receipt from Customs by the Assured. It is further agreed that the Assured shall, when the company so elects, surrender the merchandise to the customs authorities and recover duties thereon as provided by law, in which event the claim under this policy shall be only for a total loss of the merchandise so surrendered and expenses.

This insurance on duty and/or increased value shall terminate at the end of the import movement covered under this policy (including the Warehouse to Warehouse and/or Marine Extension Clauses incorporated therein), but nothing contained in these clauses shall alter or affect any coverage granted elsewhere in the policy during the storage or transit subsequent thereto.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

Authorized Representative

Endorsement No. 3

To be attached to and made part of Policy No. POC102950

Assured     ZYGO CORPORATION

Effective     5/1/1999

## ANNUAL MARINE DEPOSIT PREMIUM

Effective May 1, 1999 an annual deposit premium of **$18,000.** Shall be payable for the period May 1, 1999 through May 1, 2000 and annually thereafter on the anniversary date. This annual deposit premium is payable in quarterly installments.

The Assured agrees to furnish this Assurer (within 30 days of the anniversary) with reports of gross sales for the policy year and the Assurer to calculate premium thereon at .023 per $100 of total gross sales. (Marine and War) Earned premium in excess of the deposit shall be due and payable to this Assurer immediately.

In the event of cancellation, the Assurer will report all gross sales up to and including the date of cancellation and pay additional premium as may be required.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

AUTHORIZED REPRESENTATIVE
Authorized Representative

8905

| Endorsement No. 4 | To be attached to and made part of Policy No. POC102950 |
|---|---|

Assured      ZYGO CORPORATION

Effective     5/1/1999

## PROFIT SHARING AGREEMENT

It is understood and agreed effective May 1, 1999, and annually thereafter the Assured shall participate in profits, if any, if the gross marine premium exceeds $25,000. for each period and on the following basis:

1)      Gross marine premium (excluding War & S.R. & C.C. and Warehouse premium) recorded by underwriters for the period under consideration.

2)      Less 50% of the gross marine premium (for insurance company expenses) and,

3)      Less all paid and outstanding losses recorded by the company in the period under consideration (such losses to be reduced by the amount of recoveries made, if any).

4)      The balance remaining after No. 3 above is deemed to be the profit for the purpose of this agreement. The Assured shall participate in the profit 50/50 with the Assurance.

5)      At the end of six months following the end of each profit sharing period a provisional adjustment amounting to one half of the Assured's estimated profit share (if any) shall be paid by these Assurers, with a subsequent final adjustment for the balance of the Assured's profit share shall be made twelve months after the end of each profit sharing period.

6)      In the event of cancellation by the Assured, there shall be no profit sharing adjustment for the year in which the cancellation became effective; however, if the policy is cancelled by underwriters, then a profit sharing adjustment will be made up to the date of cancellation. No profit sharing adjustments shall be made for periods less than eight months.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

AUTHORIZED REPRESENTATIVE
Authorized Representative

Endorsement No. 5

To be attached to and made part of Policy No. POC102950

Assured     ZYGO CORPORATION

Effective     5/1/1999

## SPECIAL TERMS AND CONDITIONS

### DEMURRAGE CHARGES

If the Assured is instructed by this Company to hold an intermodal container, and if the Assured is assessed a late penalty and/or demurrage charge for holding the intermodal container past the return date, this Company will pay the late penalties and/or demurrage charges. The amount this Company will pay shall be the charges assessed from the time this Company directs the Assured to hold the container until the time this Company informs the Assured that the container can be released.

### REPLACEMENT BY AIR

It is agreed that where there is physical loss or damage which is the subject of a claim hereunder and it is necessary to forward replacements by air, Underwriters will pay the extra costs so involved, notwithstanding that the original consignment was not dispatched by air. Subject always to final settlement of claim for cargo and for costs not exceeding 10% of insured value.

All other terms and conditions remaining unchanged.

ROYAL & SUN ALLIANCE

AUTHORIZED REPRESENTATIVE
Authorized Representative

| Endorsement No. 6 | To be attached to and made part of Policy No. POC102950 |

| Assured | ZYGO CORPORATION |

| Effective | 5/1/1999 |

## SALESPERSON'S SAMPLES

**PROPERTY COVERED**
Merchandise consisting principally of Salesperson's Samples in custody or control of the principals of the Insured when acting as salespeople, employees, or their traveling salespeople.

**AMOUNT INSURED AND LIMIT OF LIABILITY**
The amount insured hereunder is $300,000. With respect to samples in custody or control of any one salesperson, or employee.

**THIS SECTION INSURES AGAINST**
All risk of physical loss or damage from any external cause, except as hereinafter excluded.

**THIS SECTION DOES NOT INSURE AGAINST**

(a) Property while in private passenger automobiles is warranted free from claim for theft from an unattended vehicle if property is not in a completely locked compartment and out of sight and that must be the result of forcible entry;

(b) Loss or damage caused by wear and tear, gradual deterioration, insects, vermin or inherent vise, delay, loss of use or loss of market;

(c) Loss or damage caused by or arising from dishonesty of salespersons, their employees, or Insured's employees, or persons to whom the property may be entrusted;

(d) Loss or damage caused by or resulting from the perils of the War Risk exclusion as defined in the policy to which this section is attached;

**THIS SECTION DOES NOT COVER**

(a) Within the places of business of the Insured, or where their salespeople or employees have permanent salesrooms or permanent offices;

(b) Furs, or articles consisting principally of fur;

(c) Pearls, precious and semi precious stones, jewels, jewelry, watches, watch movements, gold, silver, platinum other precious metals or alloys thereof.

**VALUATION AND DEDUCTIBLE**
Valued per the Valuation Clause #13 in the Marine Section of this policy.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

AUTHORIZED REPRESENTATIVE.
Authorized Representative

Endorsement No. 7        To be attached to and made part of Policy No. POC102950

| Assured | ZYGO CORPORATION |
|---|---|

| Effective | 5/1/1999 |
|---|---|

## EXHIBITION COVER

It is understood and agreed that this policy, subject to all its terms and conditions, is extended to cover goods and/or merchandise which have been insured for the export or import voyage under this policy while on exhibition or trade fairs, not to exceed 30 days at any one location. Where there is no invoice, the property insured hereunder shall be valued at reproduction cost plus incurred delivery charges, less reasonable depreciation.

The limit of liability under this endorsement shall not exceed $2,500,000 any one loss, casualty or disaster.

The Assured agrees to identify and declare all shipments where this coverage is required indicating the length of time required and complete address of the location and shall pay additional premium to be included of value. Additional time may be granted at additional premium to be agreed, provided notice given to the Assurer prior to expiration of the time agreed upon, as indicated in the original report.

Warranted that the property insured hereunder will be confined within a fully enclosed building at all times during exhibition.

## THIS ENDORSEMENT DOES NOT INSURE AGAINST LOSS, DAMAGE OR EXPENSE CAUSED BY OR RESULTING FROM:

A. Delay, loss of market, indirect or consequential loss of any kind;

B. Shortage unless and Assured can prove how it occurred.

C. Wear and tear, mechanical breakdown, inherent vice, latent defect, gradual deterioration, or depreciation, insects, vermin, or by processing or any work upon the property unless fire or explosion ensues, and then only for direct loss or damage caused by such ensuing fire or explosion.

D. Corrosion, rust, dampness of atmosphere, freezing, overheating, extremes of temperature, contamination, change in flavor, color, or finish, shrinkage, evaporation or loss in weight.

E. Misappropriation, secretion, conversion, infidelity or any dishonest act done by or at the instigation of the Assured or other party of interest, his or their employees or agent.

F. Short circuit, blow-out or other electrical disturbances within any article insured hereunder, unless fire or explosion ensued, and then only for direct loss or damage caused by such ensuing fire or explosion.

G. Theft from any automobile, motorcycle or other vehicle, occurring while such vehicles are unattended, unless at time of such theft the windows, doors and compartments of the vehicle are securely closed and locked and such theft results from forcible entry evidenced by visible marks. This exclusion shall not apply to property in the custody of carriers for hire.

H. Error, omission or deficiency in design, specifications or materials unless fire or explosion ensues and then only for the loss, damage or expense resulting from such fire or explosion.

It is further understood and agreed that in the event the property insured is not sold overseas and providing that this insurance has not otherwise terminated, this insurance is further extended to cover, subject to its terms and conditions and in consideration of additional premium to be agreed, the return trip. The Assured agrees to identify and declare all such return shipments.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

AUTHORIZED REPRESENTATIVE
Authorized Representative

89037
88

WAR RISK OPEN POLICY
American Institute (December 2, 1993)

Royal Insurance Company of America

EXECUTIVE OFFICES:
9300 Arrowpoint Blvd.
Charlotte, NC  28201

**MARINE DEPARTMENT**
Hereinafter Called the Company

Policy Number

POCW102950

THIS POLICY OF INSURANCE WITNESSETH, that in consideration of premiums as agreed to be paid, the Company does make insurance and cause ZYGO CORPORATION to be insured, lost or not lost, for account of whom it may concern, against War Risks only, in accordance with the terms and conditions hereinafter set forth.

To apply to shipments made on or after May 1, 1999.

The Company shall not be liable hereunder for more than $2,500,000 by any one vessel.

In cases where the total value(s) at risk on any one vessel exceed(s) the limit of liability as set forth in this Policy, the Assured agrees, nevertheless, to report to the Company full value(s) at risk and to pay premium thereon at the agreed rates. The Assured further agrees that acceptance of such reports and premium by the Company shall not serve to revoke or to overrule the limit of liability set forth in this Policy; however, subject to the limit of liability, the Company in accepting these reports does agree to pay partial losses covered by this Policy without reduction by reason of any coinsurance which otherwise may have existed in the absence of this special agreement.

Subject to the provisions of Clause 4 of this Policy, should there be an accumulation of interests exceeding the above limit of liability by reason of any interruption of transit beyond the control of the Assured or by reason of any casualty, and/or after the interests have been discharged from the incoming overseas Vessel at an intermediate port or place for on-carriage from that or any other port of place by another overseas Vessel, and/or on the oncarrying overseas Vessel, this Policy shall attach for the full amount at risk (but in no event for more than twice the Policy limit which would be applicable to any one Vessel) provided written notice be given to the Company as soon as known to the Assured.

This Policy shall cover only those shipments which are insured against marine risks under Policy No. POC102950 of this Company, it being agreed that the description of such shipments, the valuations thereof, the voyage, the designation of the overseas Vessel (which shall be construed to include aircraft if included under the marine policy) on which the goods are to be carried and the ports and/or places of loading and discharge, as reported under said Policy against marine risks, shall be deemed incorporated herein. Notwithstanding the foregoing, this policy shall not cover purely domestic shipments by air between points in the United States of America (excluding Alaska and Hawaii).

Any loss payable hereunder shall be payable in funds current in the United States to the order of Assured or order thirty days after full proofs of loss and proofs of interest have been filed with the Company.

1.  (a)  This insurance is only against the risks of capture, seizure, destruction or damage by men-of-war, piracy, takings at sea, arrests, restraints, detainments and other warlike operations and acts of kings, princes and peoples in prosecution of hostilities or in the application of sanctions under international agreements, whether before or after declaration of war and whether by a belligerent or otherwise, including factions engaged in civil war, revolution, rebellion or insurrection, or civil strife arising therefrom; the imposition of martial law, military or usurped power, and including the risks of aerial bombardment, floating or stationary mines and stray or derelict torpedoes.  Warranted not to abandon (on any ground other than physical damage to ship or cargo) until after condemnation of the property insured.

    (b)  This insurance also covers, but only while the property insured is on board a waterborne conveyance, loss of or damage to said property directly caused by governmental authorities acting for the public welfare to prevent or mitigate a pollution hazard or threat thereof, provided that the accident or occurrence creating the situation which required such governmental action would have resulted in a recoverable claim under this Policy (subject to all of its terms, conditions and warranties) if the property insured would have sustained physical loss or damage as a direct result of such accident or occurrence.

2.  Warranted free from any claim based upon loss of, or frustration of, the insured voyage or adventure caused by arrests, restraints or detainments.

3. This insurance does not cover any loss, damage or expense directly or indirectly arising from, contributed to, or caused by any of the following causes:

   (a) Commandeering, preemption, requisition or nationalization by the government (defacto or otherwise) of the country to or from which the goods are insured.

   (b) Seizure or destruction under quarantine, environmental or customs regulations.

   (c) Delay, deterioration and/or loss of market.

   (d) Nuclear Reaction, radiation or radioactive contamination, regardless of how it was caused.

4. (a) The insurance against the risks enumerated in Clause 1, except the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged referred to in (b) below, shall not attach to the interest hereby insured or to any part thereof.

   (i) prior to being on board an overseas Vessel (For the purpose of this Clause 4 an overseas Vessel shall be deemed to mean a Vessel carrying the interest from one port or place to another where such voyage involves a sea passage by that Vessel).

   (ii) after being discharged overside from an overseas Vessel at the intended port or place of discharge, or after the expiry of 15 days from midnight of the day of arrival of the overseas Vessel at the intended port of place of discharge, whichever shall first occur.

   (iii) after expiry of 15 days from midnight of the day of arrival of the overseas Vessel at an intermediate port or place to discharge the interest for on-carriage from that or any other port or place by another overseas Vessel, but shall reattach as the interest is loaded on the on-carrying overseas Vessel. During the said period of 15 days the insurance remains in force whether the interest is awaiting transit or in transit between the overseas Vessels.

   (iv) for the purposes of the Clause 4 arrival at the intended port or place of discharge shall be deemed to mean that time when the overseas Vessel first berths, anchors, moors or is secured in an area subject to regulation by the authorities of such port or place.

   (b) The insurance against the risks of floating or stationary mines and stray or derelict torpedoes, floating or submerged, attaches as the interest hereby insured is first loaded on a lighter, craft or vessel after leaving the warehouses at point of shipment in transit for the destination declared hereunder, and ceases to attach as the interest is finally landed from the vessel, craft or lighter prior to delivery to warehouse at such destination.

   (c) If the contract of affreightment is terminated at a port or place other than the destination named therein such port or place shall be deemed the intended port or place of discharge for the purpose of this Clause 4.

   (d) Shipments by mail, if covered by this Policy, are insured continuously from the time of leaving the sender's premises until delivered to the place of address.

   (e) Shipments by air (other than by air mail), if covered by this Policy are insured subject to the same terms and conditions as shipments by overseas Vessel.

   (f) It is a condition of this insurance that the Assured shall act with reasonable dispatch in all circumstances within their control.

   (g) If anything contained in the Policy shall be inconsistent with this Clause 4 it shall to the extent of such inconsistency be null and void.

5. This insurance shall not be vitiated by deviation, overcarriage, change of voyage, or by any error or unintentional omission in the description of interest, vessel or voyage, provided the same be communicated to the Company as soon as known to the Assured and an additional premium paid if required.

6. And in case of any loss or misfortune, it shall be lawful and necessary to and for the Assured, his or their factors, servants and assigns, to sue, labor and travel for, in and about the defense, safeguard and recovery of the said goods, and merchandises, or any part thereof, without prejudice to this insurance; nor shall the acts of the Assured or Company, in recovering, saving and preserving the property insured, in case of disaster, be considered a waiver or an acceptance of an abandonment; and to the charges whereof, the said Company will contribute according to the rate and quantity of the sum hereby insured.

7. General Average and Salvage Charges payable according to United States laws and usage and/or as per Foreign Statement and/or as per York-Antwerp Rules (as prescribed in whole or in part) if in accordance with the Contract of Affreightment.

8. It is agreed that the reports of shi     nts made under the policy against marine ri     mentioned above shall be deemed to be reports under this Policy also, and the Assured agrees to pay premiums on all shipments insured under the Policy at the war risk rates of the Company as fixed from time to time.

9. No claim shall be payable hereunder which arises from collision, contact with any fixed or floating object (other than a mine or torpedo), stranding, heavy weather or fire unless caused directly (and independently of the nature of the voyage or service which the Vessel concerned or, in the case of a collision, any other Vessel involved therein, is performing) by a hostile act by or against a belligerent power; and for the purpose of this paragraph "power" includes any authority maintaining naval, military or air forces in association with a power.

10. No recovery for a Constructive Total Loss shall be had hereunder unless the property insured is reasonably abandoned on account of its actual total loss appearing to be unavoidable, or because it cannot be preserved from actual total loss without an expenditure which would exceed its value if the expenditure had been incurred.

11. It is agreed that this Policy is a separate and wholly independent contract and is not subject to any terms or conditions of the Policy against marine risks above mentioned (whether physically attached thereto or not) except as such terms or conditions shall have been expressly incorporated herein by reference.

12. This insurance may be canceled by either party upon forty-eight hours written, telegraphic or telefaxed notice to the other party, but such cancellation shall not affect any shipment on which this insurance has attached under the terms of Clause 4 hereof prior to the effective date of such notice. Shipments on which this insurance has not so attached but for which, prior to the effective date of such notice, bills of lading have been issued and (in the case of exports) Certificates or special policies have been issued and negotiated, shall be covered from the time of loading on the overseas Vessel, as provided in Clause 4 at the rates of the Company, provided that, prior to said effective date, such shipments were at the risk of the Assured and were covered under the said Policy against marine risks.


In the event of loss which may give rise to a claim under the Policy, prompt notice shall be given to this Company.

ROYAL & SUNALLIANCE

_Authorized Representative_

| Endorsement No. 1 | To be attached to and made part of Policy No.  POCW102950 |
|---|---|

| Assured | ZYGO CORPORATION |
|---|---|

| Effective | 5/1/1999 |
|---|---|

### ANNUAL WAR RISK DEPOSIT PREMIUM

In consideration of the issuance of this War Risk Policy, a War Risk deposit premium of $2,000 shall be payable on the effective date of the policy and annually thereafter on the anniversary date.

The Assured agrees to furnish the Company with reports of shipments Annually as otherwise provided in this War Risk Policy and the Company to calculate premium thereon at rates current as of sailing date.

When the premium so earned exceeds the deposit premium charged, the additional premium shall be immediately due and payable to this Company.

In the event of cancellation, the Assured will report all shipments at risk up until and including the date of cancellation and pay additional premiums as may be required.  In no event shall the earned premium be less than the amount shown above.

All other terms and conditions remaining unchanged.

ROYAL & SUNALLIANCE

AUTHORIZED REPRESENTATIVE
Authorized Representative

In witness whereof, this Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned below by a duly authorized representative of this Company

*Joyce W. Wheeler*
Corporate Secretary

*Terry Broderick*
President

ROYAL & SUNALLIANCE

Countersigned By: _____
AUTHORIZED REPRESENTATIVE
Authorized Representative

B9037

## SCHEDULE OF RATES

POLICY NO:    POC102950

ASSURED:    ZYGO CORPORATION

1.    Applying to under deck shipments of Property Insured made on and after: 5/1/1999.
2.    By:
   A.    Vessels that are
   (1)    metal-hulled, self propelled vessels which are not over 20 years of age nor less than 1000 net registered tons and which are classed A1 American Record or equivalent by a member of the International Association of Classification Societies; or
   (2)    vessels over 20 years of age which are approved by this Company, and which are not less than 1000 net registered tons and classed as in (1) above, but only while operating in their regular trades;
   but in either case excluding vessels built:
   (A)    for service on the Great Lakes;
   (B)    solely for military or naval service; or
   (C)    for the carriage of dry bulk or liquid bulk cargoes, and which are more than 15 years of age, unless specifically approved by this Company.
   B.    Aircraft of Regularly Scheduled, Certificate Commercial Air Carriers;
   D.    Truck.
   E.    Rail.

3.    RATES PER $100 On:

| New electro-optical measuring components, parts and related equipment in approved export packing | Vessel | Air | Truck | Rail |
|---|---|---|---|---|
| To/From: Places in World | | | | |
| To/From: Places in World | .023 | .023 | NA | NA |

4.    Duty, if covered, at one-third of the above marine rates.
5.    On-Deck shipments at rates to be agreed.
6.    Minimum $ 10.00 per any one Declaration.
7.    Minimum $ 10.00 per any one Certificate.
8.    Marine rates are subject to change on thirty (30) days notice.
9.    Risks of War and Strikes, Riots and Civil Commotions, if covered, at the rates current on date of shipment.
10    Domestic Transit, if covered, at rate(s) shown in Section II, Clause 9.B.
11.    Warehouse Storage, if covered, at rates specified in Section III, Schedule of Approved Locations.
12.    Processing, if covered, at rates specified in the Schedule of Approved Processing Locations.
13.    Other property, vessels or voyages not provided for herein, at rates to be agreed.

(Above rate inclusive of Marine and War except to areas "on application")

ROYAL & SUNALLIANCE

AUTHORIZED REPRESENTATIVE

890371

| Assured | ZYGO CORPORATION | Policy Number: POC102950 |
|---------|------------------|--------------------------|
| Effective | 5/1/1999 | |

## SCHEDULE OF APPROVED PROCESSING LOCATIONS

| LOCATION | DEDUCTIBLE | RATE | LIMIT |
|----------|------------|------|-------|
| 1.  Zygo Corporation<br>Laurel Brook Road<br>Middlefield, CT 06455 | N/A | Included | * |
| 2.  Zygo Advanced Imaging Systems<br>650 North Mary Avenue<br>Sunnyvale, CA 94086 | N/A | Included | * |
| 3.  Zygo Automation Systems<br>2505-A Trade Centre Avenue<br>Longmont, CO 80503 | N/A | Included | * |
| 4.  Zygo Vision Systems<br>2193-B Anchor Court<br>Newbury Park, CA 81320 | N/A | Included | * |

\* Four locations as listed above have a blanket limit of $2,500,000.

Warranted the Assured report to this company any processing locations used of $500,000 and above that are not already listed in the Schedule of approved locations.

It is understood and agreed that a $10,000. deductible shall apply on all claims for Flood and Quake.

ROYAL & SUN ALLIANCE

AUTHORIZED REPRESENTATIVE

| Assured | ZYGO CORPORATION | Policy Number: POC102950 |

| Effective | 5/1/1999 |

## SCHEDULE OF APPROVED WAREHOUSE LOCATIONS

|    | LOCATION | DEDUCTIBLE | RATE | LIMIT |
|----|----------|------------|------|-------|
| 1. | Unnamed Locations | N/A | Included | $2,500,000 |

Warranted the Assured report to this company any Warehouse locations used of $500,000 and above.

It is understood and agreed that a $10,000. deductible shall apply on all claims for flood and quake.

ROYAL & SUNALLIANCE

*H|c·l·7L·*

AUTHORIZED REPRESENTATIVE

BR0378