# Exhibit 3

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-----------------------------------------------------------------------X       Case No.:
ROYAL INSURANCE COMPANY OF AMERICA,            :       3:01 CV 1317 (JBA)
                                               :
                         Plaintiff,            :
                                               :
         -against-                             :
                                               :
ZYGO CORPORATION,                              :
                                               :
                         Defendant.            :
-----------------------------------------------------------------------X       AMENDED
ROYAL INSURANCE COMPANY OF AMERICA,            :       COMPLAINT
                                               :
                         Third-Party Plaintiff, :
                                               :
         -against-                             :
                                               :
NAN YA TECHNOLOGY CORPORATION,                 :
                                               :
                         Third-Party Defendant. :
-----------------------------------------------------------------------X
```

       Plaintiff Royal Insurance Company of America ("Royal") by its attorneys, Robert K. Marzik, Esq. and Nicoletti Hornig Campise Sweeney & Paige, as and for an Amended Complaint ("Complaint") against the defendant Zygo Corporation ("Zygo"), alleges upon information and belief as follows:

## JURISDICTION

       1.  This action is filed under and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

       2.  The following issues constitute questions of insurance coverage under a contract of marine insurance and thereby come within the Admiralty and Maritime jurisdiction of the United States District Court, pursuant to Title 28 U.S.C. § 1333 *et seq.*, and within the

meaning of Rule 9(h) of the Federal Rules of Civil Procedure and within the Admiralty and Maritime jurisdiction of the United States and of this Honorable Court.

      3. An actual controversy of a justiciable nature exists between plaintiff and defendant involving the rights and obligations under a marine contract of insurance and depending on the construction of said contract, the aforesaid controversy can be determined by a judgment of this Court without further suit.

**PARTIES**

      4. At all times relevant, plaintiff Royal Insurance Company of America ("Royal"), was and is an insurance company duly organized under and existing by virtue of the laws of the State of Illinois, having a principal place of business at 9300 Arrowpoint Boulevard, Charlotte, North Carolina 28201 and with an office and place of business at Wall Street Plaza, 88 Pine Street, 28th Floor, New York, New York 10005.

      5. Plaintiff Royal is an insurance company duly licensed to conduct business in, *inter alia,* the States of Connecticut and Massachusetts and is in the business of underwriting and insuring marine risks, including but not limited to issuing first party contracts of insurance for marine and air cargo transit coverages.

      6. At all times relevant, defendant Zygo was and is a corporation or other business entity duly organized under and existing by virtue of, or otherwise licensed or authorized to do business under, the laws of the State of Connecticut, with a principal place of business in the State of Connecticut, and/or is incorporated under the laws of, with a principal place of business in, one of the other states of the United States of America, except defendant is neither incorporated nor has a principal place of business, in either the States of Illinois and/or

2

North Carolina.  The defendant Zygo does have an office located at Laurel Brook Road, Middlefield, Connecticut 06455.

7.  At all times relevant, defendant Zygo was in the business of international commerce and, *inter alia,* offered for sale and did sell on the international market various electronic equipment, including but not limited to the Atom Force Microscope at issue herein.

8.  The amount in controversy under this insurance coverage dispute is in excess of $75,000.00, exclusive of interest and costs.

9.  At all times relevant, Mathog and Moniello Companies, Inc. ("M&M") was and is a corporation duly organized and existing by virtue of, or otherwise licensed or authorized to do business under, the laws of the State of Connecticut and/or one of the other states of the United States with an office and place of business at 100 South Shore Drive (P.O. Box 120650), East Haven, Connecticut 06542.

10. At all times relevant, M&M was and is in the business of insurance brokerage and was and is the insurance broker and agent of the defendant Zygo, for purposes of obtaining the insurance coverages at issue herein.  M&M is not a party to this action.

11. At all times relevant, M&M  was and is engaged, *inter alia,* in the business of brokering marine insurance and was and is the insurance broker and agent of defendant Zygo with regard to the plaintiffs' marine policy at issue herein.

12. On or before May 1, 1999, the defendant Zygo, through its insurance broker M&M, made application in Massachusetts to plaintiff Royal for a Marine Open Cargo Policy.

13. Thereafter, plaintiff Royal executed, issued and ultimately delivered into the State of Connecticut a Marine Open Cargo Policy to defendant Zygo, as the named insured, through defendant's agent M&M with an effective date of May 1, 1999, covering merchandise

3

imported and exported by defendant Zygo as described in, and subject to, the terms and conditions of the policy. A copy of the Zygo Marine Open Cargo Policy, Policy No. POC102950 ("the Policy") is annexed hereto and made a part hereof as Exhibit "1".

14. Per Clause 4 of the Policy, the insurance remained in effect from May 1, 1999 until cancelled.

15. From inception, the Policy by its terms identified the various types of merchandise to be insured and the available coverage for each type of merchandise, including but not limited to, the type of merchandise which is the subject matter of this lawsuit.

16. At all times relevant, in and by the and by the terms of the Policy, it was provided:

### PROPERTY INSURED & INSURABLE INTEREST

3. This Policy covers, for account of whom it may concern, shipments of lawful goods and merchandise consisting principally of:

New electro-optical measuring components

Under or on deck, consigned to or shipped by others for account or control of the Assured or in which the Assured has the risk of loss, but excluding shipments either sold or purchased by the Assured subject to terms of sale (or purchase) whereby the Assured is not obligated to furnish Ocean Marine insurance. Notwithstanding the foregoing, this Policy also covers all shipments of lawful goods and merchandise for the account of others from whom the Assured has received written instructions to insure provided such instruction are received prior to any know or reported loss, damage, or accident and prior to sailing of the vessel. (Emphasis added)

17. At all times relevant, in and by the terms of the Policy, it was provided:

### ADDITIONAL PERILS AND TERMS OF AVERAGE

12.     Additional Perils and Terms of Average:

4

A. New electro-optical measuring components, <u>in approved export packing</u>, shipped by air (except as connecting conveyances to other than air conveyances and excluding first class air mail and air parcel post) is/are insured:

Against all risks of physical loss or damage from any external cause irrespective of percentage. (Emphasis added)

18. At all times relevant, in and by the terms of the Policy, it was provided:

**REPORTING LOSSES**

32. Any loss or damage to the property hereby insured must be promptly reported to the Company or to the nearest Settling Agent of the Company and such Agent must be represented on all surveys and must approve proofs of loss and bills of expense… Failure to report loss or damage promptly and to file such proof of loss shall invalidate any claim under this policy. (Emphasis added)

19. At all times relevant, in and by the terms of the Policy, it was provided:

**MACHINERY**

39. When the property insured under this Policy includes a machine consisting when complete for sale or use of several parts, then in case of loss or damage covered by this insurance to any part of such machine, the Company shall be liable only for the proportion of the insured values of the part lost or damaged, or at the Company's option, for the cost and expense, including labor and forwarding charges, of replacing or repairing the lost or damaged part, but, in no event shall the Company be liable for more than the insured value of the complete machine.

20. At all times relevant, in and by the terms of the Policy, it was provided:

**CLAIM AGAINST THIRD PARTIES**

42. In the event of any loss of or damage to property insured hereunder, the Assured shall make claim immediately in

5

writing against the carrier(s), bailee(s) or <u>others involved</u>. (Emphasis added)

21. At all times relevant, in and by the terms of the Policy, it was provided:

## SUBROGATION AND IMPAIRMENT OF RECOVERY

43. It is a condition of this insurance that upon payment of any loss the Company shall be subrogated to all rights and claims against third parties arising out of such loss. It is a further condition of this insurance that if the Assured or his or their assigns have entered or shall enter into any special agreement whereby any carrier or bailee is released from its common law or statutory liability for any loss, or have or shall have waived, compromised, settled or otherwise impaired any right of claim against a third party to which the Company would be subrogated upon payment of a loss without prior agreement of the Company and endorsement hereon, the Company shall be free from liability with respect to such loss, but its right to retain or recover the premium shall not be affected.

22. At all times relevant, in and by the terms of the Policy, it was provided:

## OTHER INSURANCE

50. In case the Assured or others shall have effected any other Ocean Marine insurance directly or indirectly upon the Property Insured, prior in day of date to the time of attachment of any specific risk hereunder, the Company shall be liable only for so much as the amount of such prior insurance may be deficient toward fully covering the property hereby insured, and in this event shall return the premium upon so much of the sum by them insured as they shall be exonerated by such prior insurance. In case of any other Ocean Marine insurance upon the said property subsequent in day of date to the time attachment of any specific risk hereunder, the Company shall nevertheless be liable for the full extent of the sum by them insured upon the said risk without right to claim contribution from such subsequent insurance.

Other Ocean Marine insurance upon the property insured hereunder, dated the same day as the time of attachment of any specific risk hereunder shall be deemed simultaneous herewith and the Company shall not be

6

liable for more than a ratable contribution in the proportion that the sum insured by the Company bears to the aggregate of such simultaneous insurance.

This insurance shall in all cases be null and void as concerns loss or damage covered, or which would be covered in the absence of this Policy, by any fire, inland marine, sprinkler leakage, burglary, or any other form of insurance (except Ocean Marine insurance) whether prior, simultaneous, or subsequent in date hereto.

23. At all times relevant, in and by the terms of the Policy, it was provided:

### CONTINGENCY

52. It is agreed that on all shipments sold by the Assured on cost and freight or other terms whereby the Assured is not required to furnish ocean marine insurance, this Policy is extended (subject to all its terms and conditions) to cover only the interest of the Assured as an unpaid vendor from the time shipments become at the risk of the customer under the terms of sale until payment of draft but in no event beyond the time when this Company's risk would normally cease under the terms of this Policy. (emphasis added)

It is further understood and agreed that in no event shall this insurance inure to the benefit of the buyer or his underwriter but in the event of a loss occurring which would be collectible hereunder but for such terms of sale and the Assured is unable to collect the purchase price from the buyer in regular course, this Company will advance the amount of such loss pending collection from the buyer. The Assured hereby agrees to use all reasonable means to collect the full amount due from the buyer and reimburse this Company, the latter sharing the expense of such collection in proportion to its interest herein.

The Assured agrees to declare to this Company the value of all shipments covered under the terms of this endorsement and to pay premium thereon at rate to be agreed. (Emphasis added)

24. At all times relevant, in and by the terms of the Policy, it was provided:

### FOB/FAS SHIPMENTS

7

55. This Policy is extended to cover shipments sold by the Assured on F.O.B., F.A.S., cost and Freight or similar terms whereby the Assured is not obligated to furnish ocean marine insurance. This insurance attaches subject to Policy terms and conditions and continues until the goods are loaded on board the overseas vessel or until the Assured's interest ceases, whichever shall first occur. The particulars of all such shipments shall be reported promptly to the Assurer and premium paid on the amounts so declared at the rate of N/A for not exceeding thirty (30) days after attachment of risk. Extension of risk beyond thirty (30) days held covered at rates to be agreed.

25. At all times relevant, in and by the terms of the Policy, it was provided:

**NOTICE OF CHANGE/BROKERS**

58. It is a condition of this Policy, and it is hereby agreed, that the Assured's brokers, MATHOG AND MONIELLO COMPANIES, INC. or any substituted brokers, shall be deemed to be exclusively the agents of the assured and not of the Company. Any notice given or mailed by or on behalf of the Company to the said brokers in connection with or affecting this insurance, or its cancellation shall be deemed to have been delivered to the Assured.

26.     At all times relevant, in and by the terms of Endorsement No. 3, the Policy provided:

Endorsement No. 3         To be attached to and made part of Policy No. POC102950

Assured:   ZYGO CORPORATION

**ANNUAL MARINE DEPOSIT PREMIUM**

Effective May 1, 1999 an annual deposit premium of $18,000. Shall be payable for the period May 1, 1999 through May 1, 2000 and annually thereafter on the anniversary date. This annual deposit premium is payable in quarterly installments.

The assured agrees to furnish this Assurer (within 30 days of the anniversary) with reports of gross sales for the policy year

8

and the Assurer to calculate premium thereon at .023 per $100 of total gross sales. (Marine and War) Earned premium in excess of the deposit shall be due and payable to this Assurer immediately.

In the event of cancellation, the Assurer will report all gross sales up to and including the date of cancellation and pay additional premium as may be required.

27.     At all times relevant, in and by the terms of Endorsement No. 5, the Policy provided:

Endorsement No. 5     To be attached to and made part of Policy No. POC102950

### SPECIAL TERMS AND CONDITIONS

### REPLACEMENT BY AIR

It is agreed that where there is physical loss or damage which is the subject of a claim hereunder and it is necessary to forward replacements by air, Underwriters will pay the extra costs so involved, notwithstanding that the original consignment was not dispatched by air. Subject always to final settlement of claim for cargo and for costs not exceeding 10% of insured value.

28.     At all times relevant, in and by the terms of the Schedule of Rates, it was provided:

### SCHEDULE OF RATES

POLICY NO: POC102950

ASSURED:     ZYGO CORPORATION

2.  Applying to under deck shipments of Property Insured made on and after: 5/1/1999.

3.  By:

B. Aircraft of Regularly Scheduled, Certificate Commercial Air Carriers.

4. RATES PER $100 On:

New electro-optical measuring components, parts and    Vessel    Air

To/From:  Places in World
To/From:  Place in
World                                    .023    .023

5. Duty, if covered, at:  one-third of the above marine rates.

10. Domestic Transit, if covered, at rate(s) shown in Section II, Clause 9.B

11. Warehouse Storage, if covered, at rates specified in Section III, Schedule of Approved Locations.

12. Processing, if covered, at rates specified in the Schedule of Approved Processing Locations.

13. Other property, vessels or voyages not provided for herein, at rates to be agreed.

## THE MULTIPLE SALES TRANSACTIONS

### First Shipment

29. Prior to January 5, 2000, defendant Zygo sold to Nan Ya Technology Corporation ("Nan Ya"), a business entity located in Taipei, Taiwan, one (1) Atom Force Microscope ('AFM") for export from the United States and for delivery to Taiwan.

30. The sale by defendant Zygo to Nan Ya was for USD $690,000.00 on an "F.O.B. U.S. Airport" basis without any obligation on the part of defendant Zygo to insure the subject AFM during its air carriage from the United States to Taiwan.

31. On or before January 19, 2000, defendant Zygo contracted with Lynden International ("Lynden") or some other inland carrier in the United States to deliver the first AFM, after crating, to a U.S. airport for ultimate air carriage to Taiwan.

10

32.    On before January 21, 2000, the AFM's components were packed into four (4) crates, and thereafter transported by Lynden Air Freight ("LAF") or some other designated domestic/inland common carrier to a U.S. airport and thereafter placed into the possession of China Airlines for international air carriage to Taiwan.

33.    At all times prior to and during the transportation of the subject shipment of the AFM to the U.S. airport, the AFM in its four (4) crates was in good order and condition.

34.    At all times prior to and after delivery of the AFM to the U.S. airport, the AFM's components in their respective four (4) crates were in good order and condition.

35.    On or about January 21, 2000, the AFM's components, in their respective four (4) crates, were loaded onto the aircraft at the U.S. airport in good order and condition and sometime thereafter it is reported that one (1) of the components in one (1) of the four (4) crates was alleged to have been damaged.

36.    At this time, defendant Zygo has failed to establish that the single, damaged component of the AFM cannot be repaired, including all associated expenses, at a cost less than the approximate USD $690,000.00 value of the AFM.

37.    Although contractually obligated to pay 80% of the purchase price upon delivery to the U.S. airport, when Nan Ya allegedly found that one (1) of the components of the AFM was damaged upon delivery to Nan Ya in Taiwan, Nan Ya refused to pay the amount due and owing at that time.

38.    To encourage Nan Ya to make payment for the allegedly damaged AFM, defendant Zygo agreed to ship a replacement AFM with payment due only upon receipt of the replacement AFM in good order and condition at Nan Ya's facility in Taiwan.

**Replacement AFM**

39.    In due course, and in accordance with defendant Zygo's offer to send a replacement AFM, Nan Ya paid for the first AFM.

40.    Ultimately, Nan Ya submitted the claim for damage to the AFM's component part to its Taiwanese insurer who paid for at least part of the loss.

41.    Although having a right of possession to the damaged AFM, the Taiwanese insurer did not take custody and control over the allegedly damaged AFM, which is either now in the possession of defendant Zygo or has been otherwise disposed of by the defendant.

**Replacement Shipment**

42.    On or about January 31, 2000, defendant Zygo sold to Nan Ya, a replacement AFM for export from the United States and for delivery to Taiwan.

43.    The sale by defendant Zygo to Nan Ya was for USD $690,000.00 on an "F.O.B. U.S. Airport" basis without any obligation on the part of defendant Zygo to insure the subject replacement AFM during its air carriage from the United States to Taiwan.

44.    On or before February 4, 2000, defendant Zygo contracted with Lynden International ("Lynden") or some other inland carrier in the United States to deliver the replacement to AFM, after crating, to a U.S. airport for ultimate air carriage to Taiwan.

45.    On or before February 4, 2000, the replacement AFM's components were packed into four (4) crates, and thereafter transported by Lynden Air Freight ("LAF") or some other designated domestic/inland common carrier to a U.S. airport and thereafter placed into the possession of China Airlines or some other international air carrier for international air carriage to Taiwan.

12

46.   At all times prior to and during the transportation of the replacement AFM to the U.S. airport, the said replacement AFM, in its four (4) crates, was in good order and condition.

47.   At all times prior to and after delivery of the replacement AFM to the U.S. airport, the said AFM's components in their respective four (4) crates were at all times in good order and condition.

48.   On or after February 4, 2000, the replacement AFM's components, in their respective four (4) crates, were loaded onto the aircraft at the U.S. airport in good order and condition and sometime thereafter it is alleged that one of the components in one (1) of the four (4) crates was reported to have been damaged.

49.   At this time, defendant Zygo has failed to establish that the single, damaged component of the replacement AFM cannot be repaired, including all associated expenses, at a cost less than the approximate USD $690,000.00 value of the replacement AFM.

50.   Although contractually obligated to pay the purchase price upon delivery to the U.S. airport, when Nan Ya allegedly found that one (1) of the components of the replacement AFM was damaged upon delivery to Nan Ya in Taiwan, Nan Ya refused to pay the amount due and owing at that time.

51.   To encourage Nan Ya to make payment for the replacement AFM, albeit allegedly damaged, defendant Zygo agreed to ship a "loaner" AFM.

52.   In due course and in accordance with defendant Zygo's offer to send a "loaner" AFM,  Nan Ya accepted the "loaner", but eventually returned it (with payment) to defendant Zygo.

13

## INSURANCE CLAIM

53.     On or about March 7, 2000, defendant Zygo, through its agent M&M, gave notice of claim in New York to plaintiff Royal for the alleged constructive total loss of the replacement AFM, which was sold to Nan Ya on an F.O.B. U.S. Airport terms for ultimate delivery to Nan Ya in Taiwan.

54.     Between mid-March, 2000 and mid-May, 2001, plaintiff Royal conducted investigations into the subject claim to determine if the replacement AFM, which was sold to Nan Ya and which was destined for delivery to Taiwan, was in fact insured under plaintiff's policy, and if so, attempted to determine if the replacement AFM was a constructive total loss.

55.     Between mid-March, 2000 and mid-May, 2001, defendant Zygo determined that the cost of returning and repairing both the first AFM and the replacement AFM was in the total amount of approximately USD $600,000.00 or USD $300,000.00 per AFM.

56.     Although duly demanded by plaintiff Royal, defendant Zygo has failed and refused to identify the location, and/or disposition, of the original and replacement AFMs.

57.     To date, defendant Zygo has made no reasonable efforts to collect from its purchaser Nan Ya the sales price for the replacement AFM.

58.     To satisfy its customer Nan Ya, defendant Zygo has released and/or otherwise discharged Nan Ya from any further responsibility from making payment for the replacement AFM.

59.     At no time did defendant Zygo declare or report to plaintiff Royal the original or replacement AFM for "Contingency" coverage under the Policy.

14

60. At no time, did defendant Zygo negotiate to pay and/or pay additional premium for "Contingency" coverage under the Policy for the original and/or replacement AFM.

61. Notwithstanding the fact that there is no coverage for damage to and/or loss of the replacement AFM, defendant Zygo continues to demand for payment under the Policy for the loss of same.

62. On or about July 13, 2001, Royal has issued and caused to be delivered to defendant Zygo a declination of coverage for any claim under the Policy for the replacement AFM.

## AS AND FOR A FIRST CAUSE OF ACTION

63. Repeats and realleges each and every allegation set forth in paragraphs "1" through "62", inclusive of the Complaint as if more fully set forth herein.

64. Defendant Zygo was not obligated to provide insurance under the Policy or otherwise for either the first and/or replacement AFMs, which were sold to Nan Ya and which were destined for delivery to Taiwan, as evidenced by the sales transactions which were on an F.O.B. U.S. Airport basis.

65. By virtue of the foregoing, defendant Zygo can make no claim under the general terms and conditions of the Policy, which do not attach to any shipment sold by defendant Zygo without the obligation to provide insurance for same during transit; and therefore, there is no coverage for the subject claim under the Policy.

## AS AND FOR A SECOND CAUSE OF ACTION

66. Repeats and realleges each and every allegation set forth in paragraphs "1" through "65", inclusive of the Complaint as if more fully set forth herein.

15

67.    Even if coverage were to attach under Clause 55 of the Policy, particularly the "FOB/FAS Shipments" clause, the coverage provided under that section of the Policy specifically terminated and came to an end once the shipments arrived at the U.S. airport.

68.    The shipment of the first and replacement AFMs, which were sold to Nan Ya, were damaged, if at all, after their respective deliveries to the U.S. airport.

69.    By virtue of the foregoing, defendant Zygo has not presented a claim which is recoverable under the terms and conditions of the Policy and therefore, is not entitled to any recovery for the subject loss under the Policy.

## AS AND FOR A THIRD CAUSE OF ACTION

70.    Repeats and realleges each and every allegation set forth in paragraphs "1" through "69", inclusive of the Complaint as if more fully set forth herein.

71.    In and by the terms of Clause 52 of the Policy, which is entitled "Contingency", defendant Zygo was obligated "to declare to this Company (plaintiff Royal) the value of all shipments covered under the terms of this endorsement and to pay premium thereon at rates to be agreed" to obtain coverage under and pursuant to Clause 52.

72.    At no time did defendant Zygo declare the first and/or replacement of the AFM to plaintiff Royal for coverage under Policy Clause 52.

73.    At no time did defendant Zygo negotiate with, and/or pay additional premiums, to plaintiff Royal for shipments to be declared under Clause 52 for coverage, including but not limited to the first and/or replacement AFMs.

74.    In and by the terms of Clause 52, defendant Zygo agreed to use all reasonable means to collect the full price due from Nan Ya for the sale of the replacement AFM.

75.    At no time did defendant Zygo make any reasonable effort to collect the purchase price from its Taiwanese customer, Nan Ya, for the replacement AFM.

76.    By virtue of the foregoing, coverage under the Policy never attached to the first and/or replacement AFMs, which were sold to Nan Ya for delivery to Taiwan and therefore, defendant Zygo is not entitled to any recovery for the subject loss under Clause 52 of the Policy.

### AS AND FOR A FOURTH CAUSE OF ACTION

77.    Repeats and realleges each and every allegation set forth in paragraphs "1" through "76", inclusive of the Complaint as if more fully set forth herein.

78.    In and by the terms of Clause 43 of the Policy, it was and is a condition of this insurance that defendant Zygo not waive, compromise, settle or otherwise impair any rights of claim against a third party to which Royal would be subrogated upon payment of a loss.

79.    Under the "Contingency" coverage provided under Clause 52 of the Policy, plaintiff Royal, upon making payment of this claim, should have all rights of defendant Zygo to seek payment under the original sales contract from defendant Zygo's customer, Nan Ya for the replacement AFM.

80.    In an attempt to satisfy its customer Nan Ya, defendant Zygo has impaired and/or waived plaintiff Royal's rights of recovery against Nan Ya under the original Zygo/Nan Ya sales contract for the replacement AFM.

17

81.    By virtue of the foregoing, defendant Zygo, because of its breach of the conditions under Clause 43 of the Policy, can make no claim under the Policy and therefore, there is no coverage for the subject claim under the Policy.

### Alternatively,

### AS AND FOR A FIFTH CAUSE OF ACTION

82.    Repeats and realleges each and every allegation set forth in paragraphs "1" through "81", inclusive of the Complaint as if more fully set forth herein.

83.    In and by the terms of Clause 39 of the Policy, it is provided that "When the property insured under this Policy includes a machine consisting when complete for sale or use of several parts, that in case of loss or damage covered by this insurance to any part of such machine, the Company shall be liable only for the proportion of the insured's value of the part lost or damaged, or at the Company's option, for the cost and expense, including labor and forwarding charges, of replacing or repairing the lost or damaged part...."

84.    Even assuming coverage under the Policy for the replacement AFM – albeit denied by plaintiff Royal, the limit of defendant Zygo's recovery is the cost of the component part or the cost of repairing the component part, whichever is less.

85.    By virtue of the foregoing, defendant Zygo's recovery, if at all, under the Policy is limited to the cost of replacing and/or repairing the damaged component, whichever is less.

### AS AND FOR A SIXTH CAUSE OF ACTION

86.    Repeats and realleges each and every allegation set forth in paragraphs "1" through "85", inclusive of the Complaint as if more fully set forth herein.

87.    Even assuming that Royal has any obligation under Clause 52 of the Policy to advance to Zygo the unpaid purchase price of the replacement AFM, which is denied, in and by the terms of Clause 52, it was and is a condition of this insurance that such advance be made "pending collection from the buyer," and, it was and is a further condition of said insurance that Zygo "use all reasonable means to collect the full amount due from the buyer and reimburse this Company . . . ."

88.    Zygo has permitted the statute of limitations to run on its sales contract claims against Nan Ya for the unpaid purchase price of the replacement AFM, which makes it impossible for Zygo to now bring suit against Nan Ya and/or otherwise fulfill its obligation to use all reasonable means to collect said unpaid purchase price from Nan Ya and repay any advance from Zygo required in the event that coverage is found to exist under Clause 52, thereby resulting in an anticipatory failure of said material conditions of coverage under Clause 52 and requiring dismissal of Zygo's claims herein.

WHEREFORE, plaintiff Royal Insurance Company of America demands judgment on the First, Second, Third, Fourth and Sixth Causes of Action of the within Complaint, declaring that plaintiff is under no obligation to indemnify defendant Zygo Corporation for the subject claim under the Policy or otherwise and alternatively, for judgment on the Fifth Cause of Action of the within Complaint declaring that Royal's liability is limited to be the cost of

19

repairing the damaged component part of the replacement AFM and for whatever further relief the Court deems just and proper, together with costs and disbursements of this action.

Dated: January 25, 2005.

NICOLETTI HORNIG CAMPISE SWEENEY & PAIGE
Attorneys for Plaintiff/Third-Party Plaintiff
ROYAL INSURANCE COMPANY OF AMERICA

By: _Geoffrey J. Ginos_____
Geoffrey J. Ginos, Esq. (CT 19578)
Wall Street Plaza
88 Pine Street, 7th Floor
New York, New York 10005-1801
(212) 220-3830
(FILE NO.: 21000055 JAVN)

-and-

Robert K. Marzik, Esq.
The Law Office of Robert K. Marzik, P.C.
1512 Main Streeet
Stratford, Connecticut 06597
Tel.:(203) 375-4803
Fax: (203) 386-0136

E:\Shared\wfennell\COMPLAINT, PROPOSED AMENDED.doc